**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | |
| CUSTOMS AND TAX ADMINISTRATION OF THE KINGDOM OF DENMARK (SKATTEFORVALTNINGEN) TAX REFUND SCHEME LITIGATION | MASTER DOCKET 18-md-2865 (LAK) |

**DEFENDANTS' SUPPLEMENTAL RULE 56.1 STATEMENT OF MATERIAL FACTS**
**IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, as modified by the Court's Orders dated November 16, 2021 (ECF No. 675) and March 24, 2022 (ECF No. 745), Defendants listed on Exhibit A to this Statement ("Defendants") respectfully state that the following are the material facts as to which there is no genuine issue to be tried:

## I.    The Plaintiff

1.      In the event of a shortfall in the collection of tax receipts for any reason, SKAT does not suffer any financial loss.  Rule 44.1 Decl. of Kasper Bech Pilgaard ("Pilgaard Decl.") ¶ 54.

2.      SKAT is able to file claims in Denmark seeking the recovery of dividend withholding tax previously paid out to foreign shareholders.  Pilgaard Decl. ¶¶ 83-85, 91.

## II.    SKAT's Administration Of Dividend Withholding Tax Refunds

3.      A dedicated portion of SKAT's current website describes "five refund requirements" with which a shareholder must comply in order to obtain a refund of Danish

dividend tax.  Declaration of Nicholas S. Bahnsen, dated April 29, 2022 ("Bahnsen Decl."), Exs. 20, 39 (Ekstrand Tr. 138:3-22).

4.     SKAT's website explains that the buyer of shares from a borrower is the beneficial owner of the dividends and can be entitled to a refund.  Bahnsen Decl. Ex. 20.

5.     SKAT's website does not provide any guidance relating to the timing of a securities lending transaction relative to the sale of borrowed shares.  *Id.*

6.     SKAT does not require applicants seeking refunds of dividend withholding tax to determine if SKAT collected dividend withholding tax from the company issuing the dividend. *See id.*

7.     SKAT does not inform applicants seeking refunds of dividend withholding tax whether dividend withholding tax was collected by SKAT.

8.     SKAT does not publicly disclose the amount of dividend withholding tax SKAT collects from each dividend paying company.

9.     U.S. pension plans could not obtain reclaims of withholding tax—or gross dividends—directly from the issuers of Danish securities.  *See* Bahnsen Decl. Ex. 39 (Ekstrand Tr. 72:16-18, 75:3-11).

10.    The Danish Central Securities Depository—VP Securities—is not able to pay shareholders a refund of dividend withholding tax.  Bahnsen Decl. Ex. 39 (Ekstrand Tr. 73:18-22).

11.    SKAT's Form 06.003 ("Claim to Relief from Danish Dividend Tax") at all relevant times expressly required refund applicants to identify the "beneficial owner."  Declaration of Andrew S. Dulberg, dated April 29, 2022 ("Dulberg Decl."), Ex. 4; Declaration of Brandon Dillman ("Dillman Decl.") Ex. 93 (Ekstrand Dep. Ex. 3016).

12.    The purpose of SKAT's tax refund application process was to confirm that the claimant seeking the refund was the "beneficial owner."  Bahnsen Decl. Ex. 39,   (Ekstrand Dep. 254:4-12, 136:19-25 ("[Y]ou have to be the beneficial owner in order to claim a refund.")); *id.* Ex. 44 (Jeppesen Dep. 86:2-20, 94:18-25 ("The essential question is whether the person applying for the refund is in fact the beneficial owner."), 132:2-133:3, 139:19-140:4 ("Whether they were the beneficial owner or not is the question.")); *see also id*. Ex. 42 (Brøchner Dep. 85:4-9 ); *id.* Ex. 40 (Rømer Dep. 81:3-13).

13.    It is SKAT's stated position that the question of beneficial ownership is what this case is "all about."  Ekstrand Dep. 232:1-14 ("But fundamentally, this is a case that is all about whether or not you are the beneficial owner of the shares where you are attempting to claim a refund . . . .").

14.    SKAT's "operational definition" of "beneficial ownership" conformed at all times with the definition of the term under the OECD Model Treaty and its Commentaries, as reflected in SKAT's legal guidelines.  *See* Response to Interrogatory No. 11 (citing SKAT's Legal Guide on Danish Tax Matters and in the Double Taxation Treaty); *see also* Dulberg Decl. Ex. 105 (Ekstrand Dep. 50:13-21  (referring to SKAT's "legal guidelines" for a statement of what SKAT "considered to be the beneficial owner"), 76:8-77:8 , 78:1-7, 233:17-234:14); Bahnsen Decl. Ex. 44 (Jeppesen Dep. 98:16-99:15 ("[I]nformation about who the beneficial owner was and determination thereof was already in our legal guidelines.")).

15.    The "beneficial owner" of a security is not necessarily the registered owner of the security.  *See* Bahnsen Decl. Ex. 47 (Sorensen Dep. 44:8-12, 49:10-51:2, 42:16-43:7 (the term "beneficial owner" does not "mean anything" to VP Securities), 58:7-12 (VP Securities does not

use the term "beneficial owner"), 132:16-23, 141:13-142:7); *see also id.* Ex. 44 (Jeppesen Dep. 123:20-126:6).

### III.    SKAT Knew It Was Paying Out Refunds Blindly

16.    Lisbeth Rømer was, from 2002 through her retirement in December 2013, the head of SKAT's unit responsible for the administration of dividend withholding tax reclaims.  Bahnsen Decl. Ex. 40 (Rømer Tr. 28:5 – 32:9).

17.    During the approximately 11 years Rømer was in charge of dividend tax administration, she made multiple attempts to alert senior SKAT management of problems she had identified with SKAT's process for issuing refunds of withheld dividend tax.  Bahnsen Decl. Exs. 40 (Rømer Tr. 30:8-31:12, 31:24-32:2, 32:25-33:18), 41 (Daugaard Tr. 72:22-73:8 (noting his concern upon learning that Rømer's warnings had not been taken seriously)).

18.    In a memo dated November 15, 2004, Rømer warned that there was no check performed by SKAT to determine whether a refund of dividend tax was made twice.  Bahnsen Decl. Exs. 21, 40 (Rømer Tr. 106:6-9).

19.    In a memo dated March 16, 2005, Rømer warned that it was not possible to confirm whether the refund claimant was the recipient of the dividend.  Bahnsen Decl. Exs. 22, 40 (Rømer Tr. 122:17-23).

20.    SIR is SKAT's internal audit division, sometimes known as "internal review." Bahnsen Decl. Exs. 39 (Ekstrand Tr. 66:25–67:5), 41 (Daugaard Tr. 24: - 25:3), 42 (Brochner Tr. 35:13-18).  In 2006, SIR issued a report warning that SKAT did not satisfactorily control the administration of dividend withholding tax refunds.  Bahnsen Decl. Exs. 23, 39 (Ekstrand Tr. 239:10-21), 40 (Rømer Tr. 144:13-146:17).

21.     In 2006, Lisbeth Rømer and others prepared a document entitled "Problemkatalog" that identified various deficiencies within the administration of dividend withholding tax refunds and proposed solutions to those problems. Bahnsen Decl. Exs. 24, 40 (Rømer Tr. 146:18-147:21; 152:11-153:5; 155:2-15; 159:17-160:9).

22.     The Problemkatalog identified both the existence of nominee (omnibus) accounts and the practice of stock lending as potentially resulting in loss of tax revenue. Bahnsen Decl. Ex. 43 (Zester Tr. 95:10-16).

23.     The Problemkatalog proposed that SKAT enact stricter documentation requirements for reclaim applicants to demonstrate eligibility to reclaims. Bahnsen Decl. Exs. 24, 39 (Ekstrand Tr. 246:16–248:20), 40 (Rømer Tr. 159:17-160:9).

24.     At no time before August 2015 did SKAT change the documentation requirements associated with dividend withholding tax reclaim applications. Bahnsen Decl. Exs. 39 (Ekstrand Tr. 248:11-25), 40 (Rømer Tr. 162:9–12), 42 (Brochner Tr. 143:16–144:5).

25.     In 2007, SKAT's chief internal legal officer, Leif Normann Jeppesen, drafted a memorandum warning that stock lending and short sales created the risk of multiple claims to ownership of the same dividend, and that SKAT's documentation requirements in support of reclaim applications did not allow SKAT to establish the beneficial owner before paying a reclaim. Bahnsen Decl. Exs. 25, 44 (Jeppesen Tr. 123:20-125:21, 132:2-16, 133:14–23).

26.     At the time Jeppesen drafted the warning, SKAT had not clarified who, as between the owner who lends shares and a buyer who subsequently buys those shares from the borrower without knowledge they are borrowed, is the beneficial owner of the dividend associated with the shares. Bahnsen Decl. Ex. 44 (Jeppesen Tr. 123:20-25, 125:15-126:6, 132:24 – 133:3, 133:14-23).

27.     In 2007, Jeppesen suggested that SKAT request information on whether the shares subject to a reclaim application had been lent.  Bahnsen Decl. Ex. 25.

28.     At no time before August 2015 was SKAT's legal guide updated to include guidance resolving the question of who, as between the owner who lends shares and a buyer who subsequently buys those shares from the borrower without knowledge they are borrowed, is the beneficial owner of the dividend associated with the shares.  *See* Bahnsen Decl. Ex. 50 at pp. 145 – 177 (containing relevant sections of SKAT's legal guide during the relevant period); SKAT Response to Request for Admission No. 95.

29.     Prior to August 2015, the SKAT website describing the requirements for a dividend withholding tax reclaim included no statement that a claim must state whether the shares were borrowed from or lent to others at the time when the dividend distribution was approved.  *See* Bahnsen Decl. Ex. 50 at pp. 125-127 (containing printouts of SKAT webpages).

30.     As of May 2021, SKAT's website describing the requirements for a dividend withholding tax reclaim included a statement that a claim must state whether the shares were borrowed from or lent to others at the time when the dividend distribution was approved.  Bahnsen Decl. Exs. 20, 39 (Ekstrand. Tr. 138:9 – 139:21).

31.     Rømer understood beneficial ownership of a dividend to require only ownership of the shares at the time the company declares a dividend.  Bahnsen Decl. Ex. 40 (Rømer Tr. 94:19-22).

32.     Dorthe Pannerup Madsen, who supervised the dividend withholding tax administration from Rømer's retirement at the end of 2013 through August 2015, never thought about the issue of beneficial ownership.  Bahnsen Decl. Ex. 45 (Madsen Tr. 142:3-7).

33.     According to Jeppesen, the risk was that both the owner who lends shares and a buyer who subsequently buys those shares from the borrower without knowledge they are borrowed might be able to claim in good faith that each is the owner of the dividend entitled to a reclaim.  Bahnsen Decl. Ex. 44 (Jeppesen Tr. 124:2-13, 125:1-126:6).

34.     Both the Ministry of Taxation and SKAT have concluded that a purchaser of shares from a borrower of those shares is the beneficial owner of any dividends associated with those shares.  Bahnsen Decl. Exs. 20, 39 (Ekstrand Tr. 137:7-19).

35.     In a memo dated 11 August 2008, Rømer warned that SKAT's inability to identify foreign shareholders of Danish securities (and, therefore, the beneficial owner of shares) persisted.  Bahnsen Decl. Exs. 26, 40 (Rømer Tr. 170:17-171:13).

36.     In a memo dated 2 December 2009 and submitted to SIR in connection with an audit of the dividend tax administration, Rømer warned that it was not possible to ensure the accuracy of dividend reclaims paid to foreign shareholders.  Bahnsen Decl. Ex. 27.

37.     In connection with the same audit, Rømer explained to SIR that SKAT had, for years, been paying a great deal of money in the form of dividend tax reclaims without any real possibility of checking that the correct amounts are paid, and that she feared "a huge gap in dividend taxation."  Bahnsen Decl. Exs. 28, 40 (Rømer Tr. 186:17–187:18).

38.     In May 2010, SIR issued another report highlighting deficiencies in SKAT's administration of dividend withholding tax refunds.   Bahnsen Decl. Ex. 30.

39.     The 2010 SIR report followed a request by the then-head of the Department of the Ministry of Taxation, Peter Loft, that SIR investigate whether SKAT had refunded more dividend tax to foreign shareholders than was paid to SKAT.  Bahnsen Decl. Exs. 29 (at ¶ 66), 40 (Rømer Tr. 176:7-21, 178:6-14), 41 (Daugaard Tr. 54:3-55:13).

40.     The 2010 SIR report identified the risk that SKAT might be refunding dividend taxes more than once per dividend on account of its inability to identify the correct beneficial owner of the dividend.  Bahnsen Decl. Exs. 30, 40 (Rømer Tr. 198:18–199:10), 41 (Daugaard Tr. 107:19-25, 116:7-117:1, 122:10-13, 123:16-21, 188:10-25).

41.     The author of that 2010 SIR report characterized it as a flashing red light warning to SKAT.  Bahnsen Decl. Ex. 41 (Daugaard Tr. 148:4 – 16).

42.     By December 21, 2010, SKAT had not formed a working group to address the issues identified in the 2010 SIR report.  Bahnsen Decl. Ex. 41 (Daugaard Tr. 131:20-132:1).

43.     In an October 4, 2011 written warning, Rømer warned of the possibility of dividend withholding tax refund fraud flowing from SKAT's inability to identify the foreign recipient of dividends.  Bahnsen Decl. Exs. 31, 39 (Ekstrand Tr. 261:3-22).

44.     In 2013, SIR issued a further report identifying deficiencies with SKAT's administration of dividend withholding taxes.  Bahnsen Decl. Exs. 32, 40 (Rømer Tr. 212:1-5 (noting the same problems as identified in 2010 SIR report were still pending in 2013)).

45.     The 2013 SIR Report was not received by the Ministry of Taxation's permanent secretary and chief administrative officer, Jens Brochner, as a result of "a regrettable mistake of procedures in the department."  Bahnsen Decl. Ex. 42 (Brochner Tr. 119:24–120:4, 136:16–18).

46.     SKAT used a computer system to verify the amount of taxes, including dividend withholding taxes, that companies owed to SKAT.  Bahnsen Decl. Ex. 39 (Ekstrand Tr. 105:19-106:3).

47.     Within the system, SKAT maintained data purportedly reflecting the total value of dividends paid in a given year.  Bahnsen Decl. Ex. 39 (Ekstrand Tr. 113:14-17).

48.    According to the information in SKAT's system, Novo Nordisk issued dividends worth slightly more than 10 billion kroner.  Bahnsen Decl. Ex. 39 (Ekstrand Tr. 110:23-111:1).

49.    According to Novo Nordisk's annual report, it issued dividends worth more than 12.9 million kroner in 2014.  Bahnsen Decl. Ex. 34.

50.    According to Novo Nordisk's annual report, 30% of its shareholders resided in North America.  Bahnsen Decl. Exs. 34, 39 (Ekstrand Tr. 117:9-12).

51.    To the extent SKAT purported to apply controls and procedures to its administration of dividend withholding tax, those efforts did not include any analysis of beneficial ownership, whether the purchaser bought borrowed shares, whether the shareholder had loaned the shares, or whether anyone else had previously sought a refund for the shares in question.  Bahnsen Decl. Ex. 45 (Madsen Tr. 150:1-13, 162:22-163:20); Dulberg Decl. Ex. 11.

52.    Denmark's State Prosecutor for Serious Economic and International Crime (SØIK) provided information to SKAT related to the alleged dividend withholding tax fraud.  Dulberg Decl. Ex. 102 (Ahlefeld-Engel Tr. 59:1-60:10).

53.    In September 2015, following an August 29, 2015 request that SIR investigate "presumed fraud" in connection with dividend withholding tax refunds, SIR issued another report. Bahnsen Decl. Ex. 37; Dulberg Decl. Ex. 2 (Response to Request for Admission No. 86).

54.    The 2015 SIR report concluded that SKAT had not yet implemented a number of important recommendations that allow for SKAT to make sure that dividend tax is not wrongfully refunded.  Bahnsen Decl. Ex. 37; Dulberg Decl. Ex. 2 (Response to Request for Admission No. 86).

55.    The 2015 SIR report concluded that SKAT does not check whether the recipient of the dividend held the shares when the distribution was made.  Bahnsen Decl. Ex. 37; Dulberg Decl. Ex. 2 (Response to Request for Admission No. 86).

56.    The 2015 SIR report concluded that limitations on the information reported to SKAT about stocks held in omnibus accounts meant that in the majority of cases, SKAT does not have information about the individual dividend recipient to allow for a control of the veracity of the reclaim application.  Bahnsen Decl. Ex. 37; Dulberg Decl. Ex. 2 (Response to Request for Admission No. 86).

57.    The Danish National Audit Office (*Rigsrevisionen*) issued a report in 2016 concluding that the 2010 SIR report clearly warned about problems with reimbursement of dividend tax.  Bahnsen Decl. Exs. 29 (at ¶ 69), 41 (Daugaard Tr. 139:15-23; 140:2-4 (agreeing with the National Audit Office's conclusion)).

58.    The Rigsrevisionen report noted that the Ministry of Taxation's awareness of the inability to identify the foreign owners of shares held in omnibus accounts was among the reasons that the Ministry, in February 2010, decided to participate in the OECD TRACE project. Bahnsen Decl. Ex. 29 at ¶ 67.

59.    The Rigsrevisionen report concluded that the Ministry of Taxation implemented no compensating controls to address the inability to identify foreign owners of shares held in omnibus accounts during the period that SKAT pursued the OECD TRACE project.  *Id.* at ¶ 68.

60.    The Rigsrevisionen report concluded that the 2013 SIR Report pointed to a general need for SKAT to protect itself better from wrongful reimbursement of dividend tax.  *Id.*  at ¶ 45.

61.    Jette Zester, one of the authors of the Problemkatalog, was not surprised to learn of alleged dividend tax reclaim fraud because she had identified that SKAT did not always know the

beneficial owner of a dividend while at SKAT and raised that issue in the Problemkatalog. Bahnsen Decl. Ex. 43 (Zester Tr. 123:3-23).

## IV.    **The Solo Pension Plans**

62.    The RJM Plan's trust provides that:  "The assets purchased, acquired and retained by the Trustee for investment may include . . . every kind of property . . . including . . . government obligations, corporation obligations of every kind, preferred and common stocks . . . buy and sell call and put options, and limited partnership interests  . . . ."  Bahnsen Decl. Ex. 51.

63.    The Basalt Plan's trust provisions authorize the trustee to "Invest and reinvest . . . in any property . . . . whether or not productive of income . . . including, without limitation, common and preferred stock, bonds, notes . . . without being limited to the classes of property in which trustees are authorized by law or any rule of court to invest trust funds and without regard to the proportion any such property may bear to the entire amount of the Trust Fund."  Dulberg Decl. Ex. 18 (JHVM_0009979 – JHVM_0009980).

64.    The Roadcraft Plan's trust provisions authorize the trustee to "Invest and reinvest . . . in any property . . . . whether or not productive of income . . . including, without limitation, common and preferred stock, bonds, notes . . . without being limited to the classes of property in which trustees are authorized by law or any rule of court to invest trust funds and without regard to the proportion any such property may bear to the entire amount of the Trust Fund."  Dulberg Decl. Ex. 20 at WH_MDL_00139411-12; *see also* Bahnsen Decl. Ex. 52 (purpose of LLC is to "invest in property of any kind, domestic or foreign . . . by any method . . . .").

65.    The IRS is the federal agency with the primary authority to determine a retirement plan's tax qualified status.  Bahnsen Decl. Ex. 87 (Wagner Rebuttal ¶ 7).

66.    To be qualified as tax-exempt, a U.S. pension plan must be formed and operated in accord with specific, objective requirements set out in section 401(a) of the Internal Revenue Code. There are no other requirements for qualification.  Bahnsen Decl. Ex. 10 at ¶ 9.

67.    The issuance of a formal determination or opinion letter establishes that the IRS considers a plan to be tax-qualified in its form.  Bahnsen Decl. ex. 87 (Wagner Rebuttal ¶ 7); *id.* Ex. 10 at ¶ 11.

68.    It is not impermissible for a plan to invest in a partnership and receive its allocable share of partnership profits.  Bahnsen Decl. Ex. 87 (Wagner Rebuttal ¶ 20).

69.    It is permissible under the Internal Revenue Code for sponsors to establish multiple pension plans.  Bahnsen Decl. Ex. 87 (Wagner Rebuttal ¶ 27).

70.    Engaging in a prohibited transaction is not grounds for the IRS to disqualify a plan. Bahnsen Decl. Ex. 88 (Wagner Report ¶¶ 105, 113); *id*. Ex. 87 (Wagner Rebuttal ¶ 16).

71.    The RJM audit lasted almost two years.  *Compare* Dulberg Decl. Ex. 16 at WH_MDL_00356182 *with id.* Ex. 50 at WH_MDL_00358607.

72.    In the course of the audit, the IRS received information relating to Avanix Management LLC Roth 401(k) Plan, Batavia Capital Pension Plan, Battu Holdings LLC Roth 401(k) Plan, Calypso Investments LLC Pension Plan, Cavus Systems LLC Roth 401(k) Plan, Crucible Ventures LLC Roth 401(k) Plan, Hadron Industries LLC Roth 401(k) Plan, Limelight Global Productions LLC Roth 401(k) Plan, Michelle Investments LLC Pension Plan, Monomer Industries LLC Roth 401(k) Plan, Plumrose Industries LLC Roth 401(k) Plan, Remece Investments LLC Pension Plan, Routt Capital LLC Solo 401(k) Plan, f/k/a Routt Capital Pension Plan and Trust, True Wind Investments LLC Roth 401(k) Plan, and Xiphias LLC Pension Plan. Bahnsen Decl. Ex. 9 at ¶ 42 (citing Bahnsen Decl. Exs. 53-55).

73.    The IRS did not choose to initiate separate audits of any of the non-RJM plans about which it received documents in the course of the RJM Audit.

74.    The IRS has not set aside or revoked the qualification of any pension plan defendant.

75.    The RJM Plan, Roadcraft Plan, and Basalt Plan funded their accounts at Solo Custodians with cash.  Bahnsen Decl. Exs. 77-78, 85-86.

## V.    The Solo Trades

76.    In the case of the RJM Plan, the decision of whether or not to purchase shares of Danish securities was made by the U.S. pension plan.  *See, e.g.*, Bahnsen Decl. Ex. 46 (Markowitz Tr. 440:24-441:10).

77.    The pension plan defendants did not know the identity of the seller of the Danish securities.  *See, e.g.*, *id.* (Markowitz Tr. 338:18-339:2).

78.    A trade confirmation is a final and binding agreement to exchange money for shares.  *See, e.g.*, Bahnsen Decl. Exs. 13 (at ¶ 32), 56-58.

## VI.    Specific Solo Bellwether Trades

79.    The RJM Plan paid total fees of DKK 179,471.22 in connection with the transactions described in paragraphs 129 to 146 of the JSUMF.  Bahnsen Decl. Ex. 12 at ¶ 161.

## VII.    Defendant Altbach Did Not Communicate With SKAT Or Know About Communications With SKAT[1]

80.    Defendant Ronald Altbach was introduced to the pension plan opportunity by John van Merkensteijn in or about June 2014.  Bahnsen Decl. Ex. 73 (Altbach Tr. 27:13-22); Declaration

---

1.  The fact statements in this section apply with equal force to David Zelman, Perry Lerner, Robin Jones, Joseph Herman, and Edwin Miller.

of Ronald Altbach, dated April 29, 2022 ("Altbach Decl.") at ¶ 2.  Based on the description from

van Merkensteijn, Altbach understood the opportunity involved transactions that involved pension

plans.  Bahnsen Decl. Ex. 73 (Altbach Tr. 28:1-7); Altbach Decl. ¶ 2.

81.     In June or July 2014, van Merkensteijn introduced Altbach to the attorneys at Kaye

Scholer LLP ("KS").  Bahnsen Decl. Ex. 73 (Altbach Tr. 56:18-57:7); Altbach Decl. ¶ 3.

82.     Altbach understood that KS attorneys would be responsible for tasks including

forming entities and Roth 401(k) plans for such entities, opening bank accounts, preparing

agreements and otherwise documenting the pension plan opportunity. Altbach Decl. ¶ 3; Bahnsen

Decl. Ex. 73 (Altbach Tr. 83:5 – 84:5).

83.     Altbach attended a meeting with KS to discuss the opportunity at which time

Altbach was asked by KS to sign "a bunch of signature pages."  Bahnsen Decl. Ex. 73 (Altbach

Tr. 56:18-58:23, 59:17-60:4; 63:13-68.1; 77:23 - 78:5); Altbach Decl. ¶ 3.

84.     The Roadcraft Technologies LLC (the "Roadcraft LLC") was formed by KS.

Bahnsen Decl. Ex. 73 (Altbach Tr. 62:5-9; 91:14-19; 92:16-22); Altbach Decl. ¶ 4.

85.     Altbach was instructed to open a bank account for the Roadcraft LLC and to fund

the bank account in a nominal amount.  Bahnsen Decl. Ex. 73 (Altbach Tr. 141:25-143:11);

Altbach Decl. ¶ 4.

86.     After the Roadcraft LLC was established, in July 2014 it sponsored a pension

plan, the Roadcraft Technologies LLC Roth 401(k) Plan (the "Roadcraft Plan").  JSUMF ¶ 81;

Bahnsen Decl. Exs. 73 (Altbach Tr. 76:11-14), 74.  Altbach was not involved in the establishment

of the Roadcraft Plan other than executing various signature pages.  Altbach Decl. ¶ 5; Bahnsen

Decl. Ex. 73 (Altbach Tr. 43:15-24).  Altbach is the trustee for the Roadcraft Plan.  Bahnsen Decl.

Ex. 73 (Altbach Tr. 145:10 – 12); Altbach Decl. ¶ 5.  Altbach is the sole beneficiary of the Roadcraft Plan.  JSUMF ¶ 81.

87.     In or about July 23, 2014, Altbach was asked by KS to execute a Limited Power of Attorney (the "Limited POA") which gave Michael Ben-Jacob ("MBJ") authority to act on behalf of "entities beneficially owned by [Altbach] or established by [Altbach]" including the Roadcraft Plan.  Bahnsen Decl. Exs. 73 (Altbach Tr. 77:16 – 78:5), 79.   At no point did Altbach agree that MBJ would serve as an agent for him personally. Altbach Decl. ¶ 7.

88.     The Limited POA provided MBJ would serve as the Roadcraft Plan's agent in connection with establishing the LLC and pension plan, trading transactions and the opening of custody accounts.  Bahnsen Decl. Ex. 79; Altbach Decl. ¶ 6.  It also provided that MBJ had the authority to "execute…tax reclaim agreements" for the Roadcraft Plan.  *Id*.  There is no provision in the Limited POA expressly permitting the delegation of the agent's duties.  *Id*.  The Limited POA was executed in New York and is governed by New York law.  *Id*.

89.     In August 2014, MBJ, in his capacity as the "attorney-in-fact" for the Roadcraft Plan, executed an agreement between the Roadcraft Plan and Goal Taxback Limited ("Goal") pursuant to which Goal was to provide tax reclamation outsourcing services to the Roadcraft Plan. Bahnsen Decl. Ex. 80.

90.     Altbach did not have knowledge of, or communicate with, Goal.  Altbach Decl. ¶ 9.  Altbach did not execute an agreement with Goal or have knowledge of its contents.  Bahnsen Decl. Ex. 80; Altbach Decl. ¶ 9.  MBJ did not discuss the agreement with Altbach or provide him with a copy.  Altbach Decl. ¶ 9.

91.     On or about August 22, 2014, MBJ, in his capacity as "attorney-in-fact" for the Roadcraft Plan, executed a power of attorney appointing Goal (the "Goal POA").  Bahnsen Decl.

Ex. 81; Altbach Decl. ¶ 10.  The Goal POA identified "Roadcraft Technologies LLC Roth 401(K)" as the principal.  *Id*.  The Goal POA authorized Goal to serve as the Roadcraft Plan's agent in connection with the tax reclaim application submissions to SKAT.  *Id*.  The Goal POA permitted Goal to delegate its authority to "nominees or agents or delegates." *Id*.

92.    Altbach did not execute the Goal POA.  *Id*.  Altbach did not have knowledge of the existence of the power of attorney authorizing Payment Agent Goal to communicate with SKAT in connection with the submission of reclaim applications on behalf of the Roadcraft Plan. Altbach Decl. ¶ 10.  Altbach did not have any conversations with MBJ concerning the appointment of any other agent for the Roadcraft Plan, whether pursuant to the Limited POA or otherwise, or the delegation of MBJ's duties to another agent.  Altbach was not informed that the Roadcraft Plan had an agent or agents other than MBJ.  Altbach Decl. ¶ 11.

93.    Altbach did not see and was not aware of the reclaim applications submitted on behalf of the Roadcraft Plan and the documents and forms contained therein.  Bahnsen Decl. Ex. 73 (Altbach Tr. 138:12-140:21); Altbach Decl. ¶¶ 12.  Altbach has never communicated with SKAT regarding the reclaim applications or any other matter.  Altbach Decl. ¶ 13.

94.    Goal prepared and submitted reclaim applications on November 27, 2014, April 29, 2015 and May 15, 2015 to SKAT on behalf of the Roadcraft Plan.  JSUMF ¶¶ 190 - 192.  The reclaim applications Goal submitted included a cover letter, a standard tax-refund form entitled "Claim to Relief from Danish Dividend Tax," a "credit advice" from the broker custodian, the Goal POA by which MBJ authorized Goal to act on behalf of the Roadcraft Plan, and a statement from the United States Internal Revenue Service (the "IRS") confirming that the Roadcraft Plan was a qualified pension plan under section 401(a) of the Internal Revenue Code.  JSUMF ¶¶190 – 192.

95.    The reclaim applications submitted on behalf of the Roadcraft Plan included the Goal POA executed by MBJ on behalf of the Roadcraft Plan.  Bahnsen Decl. Ex. 81.  The reclaim applications did not include a copy of the Limited POA executed by Altbach appointing MBJ as the agent of the Roadcraft Plan.  Bahnsen Decl. Ex. 82.

96.    No reclaim applications were submitted to SKAT on behalf of Altbach individually.  Altbach Decl. ¶ 13.

97.    No trading was conducted, nor dividends received, on behalf of Altbach individually.  Altbach Decl. ¶ 8.

98.    SKAT does not allege that Altbach or other individual defendants had actual knowledge of the reclaim applications, the powers of attorney authorizing the Payment Agents or the contents of or statements in such documents.  Bahnsen Decl. Exs. 3 (at ¶¶ 41-44), 83.

99.    SKAT does not allege that Payment Agent Goal had knowledge of the purported falsity of the statements in the reclaim applications or formed the intent to commit fraud in connection with the reclaim applications it submitted on behalf of the Roadcraft Plan.  Bahnsen Decl. Ex. 3 (at ¶¶ 31-37, 72-76).

## VIII.  Defendants Roger Lehman and Doston Bradley And Their Respective Plans Did Not Receive Any Monies Directly From SKAT

100.    Defendant Roger Lehman did not receive any monies directly from SKAT.  *See* Expert Report of Bruce G. Dubinsky (Dec. 31, 2021) at ¶¶ 244-245.

101.    Moreover, according to SKAT's own forensic accounting expert, Bruce Dubinsky, "[n]o money from the refunds was paid to Lehman's Plans."  *Id.* at ¶ 245; *see also* Dubinsky Report Table 4 ("Amount Paid to Plan" for The FWC Capital LLC Pension Plan equals "$ -" and "0.0%" "% of Refund").

102.    Defendant Doston Bradley also did not receive any monies directly from SKAT. *See* Dubinsky Report at ¶¶ 251-254.

103.    Mr. Dubinsky also confirmed, as he did with regard to Lehman, that no "funds were paid to Bradley's Plans or associated LLCs."  *Id.* at ¶ 251; *see also* Dubinsky Report Table 4 ("Amount Paid to Plan" for The Proper Pacific LLC 401(k) Plan equals "$ -" and "0.0%" "% of Refund").

104.    Solo Capital and its related entities' tax reclaim activities were not limited to Denmark.  Solo also generated funds from tax reclaims filed in other European countries such as Belgium and Austria.  *See* Lehman Tr., Vol. 1 at 60:18-24, 77:5-13, 257:5-8; Bradley Tr. 230:19-231:2; *see, e.g.*, FWCCAP00000141-155; FWCCAP00000228-256; PROPPACIF00000098-108; PROPPACIF00000109-112; PROPPACIF00000147-175.

## IX.    ED&F Bellwether Plan Formation & Funding

105.    The AIG Plan is a U.S. resident under the Convention and Protocol Between the United States and Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, U.S.-Den., Aug. 19, 1999, S. Treaty Doc. No. 106-12, as amended by the Protocol Amending Tax Convention with Denmark, U.S.-Den., May 2, 2006, S. Treaty Doc. No. 109-19 (the "Treaty").  Dillman Decl., Ex. 90, SKAT's Response to Defendants' Request for Admission No. 113.

106.    The AIG Plan was "organized under the laws of" the United States, as provided in Article 22.2e of the Treaty.  Dillman Decl. Ex. 90, SKAT's Response to Defendants' Request for Admission No. 115.

107.    The AIG Plan's trust provisions authorize the trustee to "invest assets in any form of property, including common and preferred stocks . . . or in any other property, real or personal,

foreign or domestic, having a ready market . . . ."  Dillman Decl. Ex. 94, at AIG_00000411; Dillman Decl. Ex. 95, at AIG_00000494.

108.    The Riverside Plan is a U.S. resident under the Convention and Protocol Between the United States and Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, U.S.-Den., Aug. 19, 1999, S. Treaty Doc. No. 106-12, as amended by the Protocol Amending Tax Convention with Denmark, U.S.-Den., May 2, 2006, S. Treaty Doc. No. 109-19 (the "Treaty").  Dillman Decl. Ex. 90, SKAT's Response to Defendants' Request for Admission No. 113.

109.    The Riverside Plan was "organized under the laws of" the United States, as provided in Article 22.2e of the Treaty.  Dillman Decl. Ex. 90, SKAT's Response to Defendants' Request for Admission No. 115.

110.    There is no record evidence that the IRS has disqualified the AIG Plan.

111.    There is no record evidence that the IRS has disqualified the Riverside Plan.

## X.    ED&F Custody Relationship, Powers of Attorney, Acer

112.    Schulman never had any direct communications with ED&F.  Dillman Decl. Ex. 97, Deposition of David Schulman ("Schulman Dep.") 135:8-24, 152:25-153:8; Ex. 142, RIVER_00000285.

113.    The Riverside Plan never had direct communications with ED&F concerning the Riverside Plan's trading in Danish securities, except through Acer.  Schulman Dep. 135:8-24, 152:25-153:8); Dillman Decl. Ex. 142, RIVER_00000285.

114.    Schulman never placed an order to trade in Danish securities through ED&F individually.  Schulman Dep. 135:8-24, 152:25-153:8; Dillman Decl. Ex. 142, RIVER_00000285.

115.    The AIG Plan never had direct communications with ED&F concerning the AIG Plan's trading in Danish securities, except through Acer.  Dillman Decl. Ex. 98, Deposition of Robert Crema ("Crema Dep.") 26:3–14; 55:16–22; Ex. 143, AIG_00000669.

116.    Crema never placed an order to trade in Danish securities through ED&F individually.  Crema Dep. 26:3–14; 55:16–22; Dillman Decl. Ex. AIG_00000669.

117.    At no time prior to 2020 had Schulman ever seen a tax voucher prepared by ED&F. Schulman Dep. 198:16-202:4.

118.    Stacey Kaminer is a member of Acer Investment Group, LLC ("Acer").  Dillman Decl. Ex. 96, Declaration of Stacey Kaminer ("Kaminer Decl.") ¶ 1.

119.    From 2013 through 2015, Kaminer, who held the role of head trader at Acer, was the representative of Acer who dealt with ED&F regarding Danish securities trading for the AIG and Riverside Plans.  Kaminer Decl. ¶¶ 4, 7-8; Dillman Decl. Ex. 144, Deposition of Stacey Kaminer ("Kaminer Dep.") 38:8–39:11.

120.    In Kaminer's role with Acer as agent for the AIG and Riverside Plans, she would receive, review, and analyze trading information, trade confirmations, account statements, and tax vouchers, among other things, sent by ED&F.  She would also communicate with ED&F with respect to the AIG and Riverside Plans' trading, including by instructing ED&F on behalf of the Pension Plans.  Kaminer Decl. ¶ 8.

121.    Kaminer communicated with ED&F by phone prior to any transaction in Danish securities to confirm the details of the transactions, including the pricing of the securities, the number of shares available, and the proposed settlement periods.  Through communications with ED&F, Kaminer would be advised about the liquidity and financing availability in relation to

Danish securities transactions.  Kaminer Decl. ¶¶ 10, 11; Kaminer Dep. 98:25–99:5, 291:13–292:1, 374:5–20.

## XI.    **The English Litigation**

122.    In 2018, SKAT brought suit in the High Court of Justice (the "English Action"), alleging that it had issued millions of dollars in dividend withholding tax refunds on the basis of purportedly false or fraudulent statements contained in refund applications received between August 2012 and July 2015.  *See, e.g.*, Dillman Decl. Ex. 134, Particulars of Claim ¶¶ 3(a)-(b), 13; Ex. 135, Fifth Amended Particulars of Claim ("5APC") ¶¶ 3(a)-(b), 13, 52; Ex. 137, Re-Re-Amended Particulars of Claim ¶¶ 3(a)-(b), 13, 52.

123.    According to SKAT, the disputed tax refund applications had been made by a handful of tax reclaim agents generally purporting to act on behalf of various United States pension plans, Canadian pension plans, and/or "entities in Malaysia, UK or Luxembourg."  5APC ¶¶ 3(b), 5(a), 14, 14A; Dillman Decl. Ex. 137, Re-Re-Amended Particulars of Claim ¶¶ 3(b), 5(a), 14, 14A.

124.    On September 12, 2018, SKAT filed its Particulars of Claim in England against 69 defendants, including ED&F.  *See* Dillman Decl. Ex. 134, Particulars of Claim ¶¶ 2(c), 5(b).

125.    SKAT's claims in the English Action were directed at multiple categories of defendants, including the "Alleged Fraud Defendants" and the "Non-Fraud Defendants."  5APC ¶¶ 2(b)-(c); Re-Re-Amended Particulars of Claim ¶¶ 2(b)-(c).

126.    ED&F was named among the "Non-Fraud Defendants" in the English Action.  *See* 5APC ¶¶ 2(c), 3(k); Re-Re-Amended Particulars of Claim ¶¶ 2(c), 3(k).

127.    SKAT alleged unjust enrichment and negligent misrepresentation in connection with the production of "tax vouchers" by ED&F and the other Non-Fraud Defendants.  *See* Dillman Dec. Ex. 136, Re-Amended Schedule 5T ¶¶ 3-25.

128.    At all relevant times while SKAT's claims against ED&F in England were pending, ED&F remained a "Non-Fraud Defendant."  *See* 5APC ¶¶ 2(c), 3(k).

129.    In the English Action, SKAT maintained that withholding tax refund applications were governed by the Danish Withholding Tax Act.  *See* Dillman Decl. Ex. 138, Claimant's Further Particulars Regarding the Validity of WHT Refund Applications, at ¶¶ 5-7, 32-33, 39, 45, 48-49.

130.    In the English Action, SKAT indicated that it understood the "beneficial owner" to be the "entity that actually benefits from the interest economically and has the power freely to determine the use to which it is put, as opposed to an intermediary or nominee that is bound to pay the amounts it receives to another person."  Dillman Decl. Ex. 136, Re-Amended Schedule 5T ¶ 14.

131.    SKAT has amended its Particulars of Claim five times, most recently in August 2020.  *See* 5APC.

132.    In the English Action, SKAT did not allege that the Danish securities transactions executed by ED&F were anything other than actual trades involving actual shares.  *See* 5APC.

133.    The English High Court of Justice ultimately determined that SKAT's claims should be tried in three stages.  *See* Dillman Decl. Ex. 139, July 2020 CMC Order ¶¶ 2-10; Dillman Decl. Ex. 140, *Skatteforvaltningen v. Solo Capital Partners LLP*, [2021] EWHC 974 (Comm) at ¶ 4.

134.    The first stage, designated the "Revenue Rule Trial," was to address a single, threshold question:  Whether any of SKAT's claims fell within a rule of English law known as "Dicey Rule 3."  *See* Dillman Decl. Ex. 139, July 2020 CMC Order ¶ 2, Annex B ¶ 1; Dillman

Decl. Ex. 140, *Skatteforvaltningen v. Solo Capital Partners LLP*, [2021] EWHC 974 (Comm) at ¶ 4.

135.    The Revenue Rule Trial was conducted over the course of several days in late March 2021.  Dillman Decl. Ex. 140, *Skatteforvaltningen v. Solo Capital Partners LLP*, [2021] EWHC 974 (Comm) (caption).

136.    Justice Baker concluded that all of SKAT's claims were foreclosed under Dicey Rule 3, mandating dismissal in full.  Dillman Decl. Ex. 140, *Skatteforvaltningen v. Solo Capital Partners LLP*, [2021] EWHC 974 (Comm) at ¶¶ 118-20, 177 ("[B]y the application of Dicey Rule 3 in these proceedings, all of SKAT's claims fall to be dismissed."); *see also* Dillman Decl. Ex. 141, *Skatteforvaltningen v. Solo Capital Partners LLP*, [2022] EWCA Civ 234 at ¶ 9 ("In a closely-reasoned and comprehensive judgment, the judge concluded that all SKAT's claims were inadmissible as a consequence of Dicey Rule 3.").

137.    SKAT chose not to pursue an appeal of Justice Baker's decision with respect to the applicability of Dicey Rule 3 to SKAT's claims against ED&F.  *See* Dillman Decl. Ex. 141, *Skatteforvaltningen v. Solo Capital Partners LLP*, [2022] EWCA Civ 234 at ¶¶ 7, 27, 145.

138.    According to SKAT's counsel, the decision not to pursue an appeal of Justice Baker's decision with respect to the applicability of Dicey Rule 3 to SKAT's claims against ED&F was made for "pragmatic reasons."  Dillman Decl. Ex. 141, *Skatteforvaltningen v. Solo Capital Partners LLP*, [2022] EWCA Civ 234 at ¶ 27.

139.    The English Court of Appeal found that SKAT was bound by the lower court's holding and that SKAT's action against ED&F was, by necessary implication, a "revenue matter." *See* Dillman Decl. Ex. 141, *Skatteforvaltningen v. Solo Capital Partners LLP*, [2022] EWCA Civ 234 at ¶¶ 150, 153-54.

140.    The Court of Appeal additionally held that the application of Dicey Rule 3 as against SKAT's claims against ED&F was not inconsistent with the Brussels Recast Regulation. Dillman Decl. Ex. 141, *Skatteforvaltningen v. Solo Capital Partners LLP*, [2022] EWCA Civ 234 at ¶¶ 147-54.

## XII.    The AIG Plan and Riverside Plan's Trades in Danish Securities

141.    According to SKAT, "[f]or the purposes of Danish tax laws (including in relation to the liability to pay withholding tax and the eligibility for a refund of withholding tax), a share is acquired or disposed of at the time when a final and binding agreement exists on the acquisition or disposal."  Dillman Decl. Ex. 138, Claimant's Further Particulars Regarding the Validity of WHT Refund Applications, at ¶ 15.3.

### *Riverside – TDC A/S March 2014*

142.    On March 6, 2014, Stacey Kaminer provided ED&F with a trade instruction to purchase 2,150,000 shares of TDC DC stock on behalf of the Riverside Plan with trade date March 6, 2014 and settlement date March 12, 2014.  *See* Dillman Decl. Ex. 100, ED&F-00041310 at ED&F-00041311.

143.    On March 6, 2014, ED&F on behalf of the Riverside Plan purchased 2,150,000 shares of TDC DC with trade date March 6, 2014 and settlement date March 12, 2014 from Volcafe. The total number of TDC DC shares ED&F purchased from Volcafe for pension plans using Acer as their representative and agent was 22,300,000.  ED&F provided confirmation of this trade to Stacey Kaminer.  *Id*. at ED&F-00041311, ED&F-00041320.

144.    ED&F's purchase from Volcafe was confirmed by a MT545 SWIFT message showing delivery of 2,150,000 TDC DC shares by Volcafe to ED&F's depot account at BNP Paribas S.A. ("BNP").  *Id.* at ED&F-00041328.

145. Also on March 6, 2014, Volcafe purchased 2,150,000 shares of TDC DC with trade date March 6, 2014 and settlement date March 12, 2014. Volcafe purchased 2,150,000 shares from ED&F Man Professional Trading Dubai ("MPT Dubai"). The total number TDC DC shares sold by MPT Dubai to Volcafe was 22,300,000. *Id.* at ED&F-00041322-24.

146. As of March 7, 2014, the Riverside Plan's Account Equity Statement at ED&F reflects ownership of 2,150,000 shares of TDC DC stock credited to the Riverside Plan. There was no sale, transfer, or rehypothecation of these shares until on or after March 7, 2014. *Id.* at ED&F-00041329.

147. ED&F's dividend reconciliation sheet for TDC DC stock shows that the Riverside Plan held a long position of 2,150,000 shares not settled by record date. The dividend reconciliation sheet states that these shares would create a payable dividend amount to the Riverside Plan of DKK 3,452,900.00 at the gross dividend rate of DKK 2.20 per share and net dividend rate equal to 73% of the gross dividend amount. *Id.* at ED&F-00041332-33.

148. The dividend reconciliation sheet shows the net dividend amount payable to the Riverside Plan can be traced back to MPT Dubai, which held a net short position in TDC, via Volcafe. *Id.*

149. ED&F's ShadowSuite system shows that DKK 3,452,900.00 was booked to the Riverside Plan's account at ED&F with description "CASH DIV - TDC DC." *Id.* at ED&F-00041334.

150. The Riverside Plan's account statement for the month of March 2014 provided by ED&F showed the crediting to the Riverside Plan of DKK 3,452,900.00, with a notation of "CASH DIV - TDC DC - PD 12/03/14." Dillman Decl. Ex. 111, at RIVER_00000086.

***Riverside – Danske A/S March 2014***

151.    On March 17, 2014, Stacey Kaminer provided ED&F with a trade instruction to purchase 2,000,000 shares of DANSKE DC stock on behalf of the Riverside Plan with trade date March 18, 2014 and settlement date March 24, 2014. *See* Dillman Decl. Ex. 101, ED&F-00046709 at ED&F-00046710-11.

152.    On March 18, 2014, ED&F on behalf of the Riverside Plan purchased 2,000,000 shares of DANSKE DC with trade date March 18, 2014 and settlement date March 24, 2014 from Volcafe. The total number of DANSKE DC shares ED&F purchased from Volcafe for pension plans using Acer as their representative and agent was 26,125,000.  ED&F provided confirmation of this trade to Stacey Kaminer. *Id.* at ED&F-00046710-11, ED&F-00046740, ED&F-00046746-48.

153.    ED&F's purchase from Volcafe was confirmed by a MT545 SWIFT message showing delivery of 2,000,000 DANSKE DC shares by Volcafe to ED&F's depot account at BNP. *Id.* at ED&F-00046755.

154.    Also on March 18, 2014, Volcafe purchased 2,000,000 shares of DANSKE DC from MPT Dubai with trade date March 18, 2014 and settlement date March 24, 2014. The total number DANSKE DC shares sold by MPT Dubai to Volcafe was 26,125,000.  *Id.* at ED&F-00046750-52.

155.    As of March 19, 2014, the Riverside Plan's Account Equity Statement at ED&F reflects ownership of 2,000,000 shares of DANSKE DC stock credited to the Riverside Plan. There was no sale, transfer, or rehypothecation of these shares until on or after March 19, 2014. *Id.* at ED&F-00046756.

156.    ED&F's dividend reconciliation sheet for DANSKE DC stock shows that the Riverside Plan held a long position of 2,000,000 shares not settled by record date.  The dividend

reconciliation sheet states that these shares would create a payable dividend amount to the Riverside Plan of DKK 2,920,000.00 at the gross dividend rate of DKK 2.00 per share and net dividend rate equal to 73% of the gross dividend amount. *Id.* at ED&F-00046759-60.

157.    The dividend reconciliation sheet shows the net dividend amount payable to the Riverside Plan can be traced back to MPT Dubai, which held a net short position in Danske, via Volcafe. *Id.*

158.    ED&F's ShadowSuite system shows that DKK 2,920,000.00 was booked to the Riverside Plan's account at ED&F as "CASH DIV - DANSKE DC." *Id.* at ED&F-00046761.

159.    The Riverside Plan's account statement for the month of March 2014 provided by ED&F showed the crediting to the Riverside Plan of DKK 2,920,000.00, with a notation of "CASH DIV - DANSKE DC - PD 24/03/14." Dillman Decl. Ex. 111, at RIVER_00000086.

***Riverside – Novo Nordisk A/S-B March 2014***

160.    On March 20, 2014, Stacey Kaminer provided ED&F with a trade instruction to purchase 2,000,000 shares of NOVOB DC stock on behalf of the Riverside Plan with trade date March 20, 2014 and settlement date March 26, 2014. *See* Dillman Decl. Ex. 102, ED&F-00049490 at ED&F-00049491-92.

161.    On March 20, 2014, ED&F DC on behalf of the Riverside Plan purchased 2,000,000 shares of NOVOB with trade date March 20, 2014 and settlement date March 26, 2014. The total number of NOVOB DC shares ED&F purchased for pension plans using Acer as their representative and agent was 22,000,000: 10,000,000 shares of NOVOB DC were purchased from ED&F's internal inter-dealer broker ("IDB") and 12,000,000 shares of NOVOB DC were purchased from Volcafe. ED&F provided confirmation of this trade to Stacey Kaminer. *Id.* at ED&F-00049491, ED&F-00049497, ED&F-00049510-13.

162.    ED&F's purchases were confirmed by MT545 SWIFT messages showing delivery of 10,000,000 NOVOB DC shares by ED&F's internal IDB and 12,000,000 NOVOB DC shares by Volcafe to ED&F's depot account at BNP.  *Id.* at ED&F-00049521-35.

163.    Also on March 20, 2014, ED&F's internal IDB purchased 10,000,000 shares of NOVOB from MPT Dubai with trade date March 20, 2014 and settlement date March 26, 2014 and Volcafe purchased 12,000,000 shares of NOVOB DC from MPT Dubai with trade date March 20, 2014 and settlement date March 26, 2014. *Id.* at ED&F-00049516-19.

164.    As of March 21, 2014, the Riverside Plan's Account Equity Statement at ED&F reflects ownership of 2,000,000 shares of NOVOB DC stock credited to the Riverside Plan.  There was no sale, transfer, or rehypothecation of these shares until on or after March 21, 2014.  *Id.* at ED&F-00049536.

165.    ED&F's dividend reconciliation sheet for NOVOB DC stock shows that the Riverside Plan held a long position of 2,000,000 shares not settled by record date.  The dividend reconciliation sheet states that these shares would create a payable dividend amount to the Riverside Plan of DKK 6,570,000.00 at the gross dividend rate of DKK 4.50 per share and net dividend rate equal to 73% of the gross dividend amount. *Id.* at ED&F-00049539-40.

166.    The dividend reconciliation sheet shows the net dividend amount payable to the Riverside Plan can be traced back to MPT Dubai, which held a net short position in NOVOB DC, via Volcafe. *Id.*

167.    ED&F's ShadowSuite system shows that DKK 6,570,000.00 was booked to the Riverside Plan's account at ED&F as "CASH DIV - NOVOB DC."  *Id.* at ED&F-00049541.

168.    The Riverside Plan's account statement for the month of March 2014 provided by ED&F showed the crediting to the Riverside Plan of DKK 6,570,000.00, with a notation of "CASH DIV - NOVOB DC - PD 26/03/14."  Dillman Decl. Ex. 111, at RIVER_00000086.

### Riverside – Tryg A/S April 2014

169.    On April 2, 2014, Stacey Kaminer provided ED&F with a trade instruction to purchase 175,000 shares of TRYG DC stock on behalf of the Riverside Plan with trade date April 3, 2014 and settlement date April 9, 2014.  *See* Dillman Decl. Ex. 103, ED&F-00044891 at ED&F-00044892.

170.    On April 3, 2014, ED&F on behalf of the Riverside Plan purchased 175,000 shares of TRYG DC with trade date April 3, 2014 and settlement date April 9, 2014 from Volcafe. The total number of TRYG DC shares ED&F purchased from Volcafe for pension plans using Acer as their representative and agent was 800,000.  ED&F provided confirmation of this trade to Stacey Kaminer.  *Id.* at ED&F-00044892, ED&F-00044895-98.

171.    ED&F's purchase from Volcafe was confirmed by MT545 SWIFT messages showing delivery of 800,000 TRYG DC shares by Volcafe to ED&F's depot account at BNP.  *Id.* at ED&F-00044905-06

172.    Also on April 3, 2014, Volcafe purchased 800,000 shares of TRYG DC from MPT Dubai with trade date April 3, 2014 and settlement date April 9, 2014.  *Id.* at ED&F-00044899-901.

173.    As of April 4, 2014, the Riverside Plan's Account Equity Statement at ED&F reflects ownership of 175,000 shares of TRYG DC stock credited to the Riverside Plan.  There was no sale, transfer, or rehypothecation of these shares until on or after April 4, 2014.  *Id.* at ED&F-00044907.

174.    ED&F's dividend reconciliation sheet for TRYG DC stock shows that the Riverside Plan held a long position of 175,000 shares not settled by record date.  The dividend reconciliation sheet states that these shares would create a payable dividend amount to the Riverside Plan of DKK 3,449,250.00 at the gross dividend rate of DKK 27.00 per share and net dividend rate equal to 73% of the gross dividend amount. *Id.* at ED&F-00044910-11.

175.    The dividend reconciliation sheet shows the net dividend amount payable to the Riverside Plan can be traced back to MPT Dubai, which held a net short position in Tryg, via Volcafe. *Id.*

176.    ED&F's ShadowSuite system shows that DKK 3,449,250.00 was booked to the Riverside Plan's account at ED&F as "CASH DIV – TRYG DC."  *Id.* at ED&F-00044912.

177.    The Riverside Plan's account statement for the month of April 2014 provided by ED&F showed the crediting to the Riverside Plan of DKK 3,449,250.00, with a notation of "CASH DIV - TRYG DC - PD 09/04/14."  Dillman Decl. Ex. 112, at RIVER_00000096.

***Riverside – DS Norden A/S April 2014***

178.    On April 23, 2014, Stacey Kaminer provided ED&F with a trade instruction to purchase 322,500 shares of DNORD DC stock on behalf of the Riverside Plan with trade date April 23, 2014 and settlement date April 29, 2014.  *See* Dillman Decl. Ex. 104, ED&F-00076758 at ED&F-00076759-60.

179.    On April 23, 2014, ED&F on behalf of the Riverside Plan purchased 322,500 shares of DNORD DC with trade date April 23, 2014 and settlement date April 29, 2014 from Volcafe. The total number of DNORD DC shares ED&F purchased from Volcafe for pension plans using Acer as their representative and agent was 860,000.  ED&F provided confirmation of this trade to Stacey Kaminer.  *Id.* at ED&F-00076759, ED&F-00076763 ED&F-00076767-69.

180.    ED&F's purchase from Volcafe was confirmed by MT545 SWIFT messages showing delivery of 860,000 DNORD DC shares by Volcafe to ED&F's depot account at BNP. *Id.* at ED&F-00076775-76

181.    Also on April 23, 2014, Volcafe purchased 860,000 shares of DNORD DC from MPT Dubai with trade date April 23, 2014 and settlement date April 29, 2014.  *Id.* at ED&F-00076770-72.

182.    As of April 24, 2014, the Riverside Plan's Account Equity Statement at ED&F reflects ownership of 322,500 shares of DNORD DC stock credited to the Riverside Plan.  There was no sale, transfer, or rehypothecation of these shares until on or after April 24, 2014.  *Id.* at ED&F-00076777.

183.    ED&F's dividend reconciliation sheet for DNORD DC stock shows that the Riverside Plan held a long position of 322,500 shares not settled by record date.  The dividend reconciliation sheet states that these shares would create a payable dividend amount to the Riverside Plan of DKK1,177,125.00 at the gross dividend rate of DKK 5.00 per share and net dividend rate equal to 73% of the gross dividend amount.  *Id.* at ED&F-00076780.

184.    The dividend reconciliation sheet shows the net dividend amount payable to the Riverside Plan can be traced back to MPT Dubai, which held a net short position in DS Norden, via Volcafe.  *Id.*

185.    ED&F's ShadowSuite system shows that DKK 1,177,125.00 was booked to the Riverside Plan's account at ED&F as "CASH DIV - DNORD DC."  *Id.* at ED&F-00076781.

186.    The Riverside Plan's account statement for the month of May 2014 provided by ED&F showed the crediting to the Riverside Plan of DKK 1,177,125.00, with a notation of "CASH DIV - DNORD DC - PD 29/04/14."  Dillman Decl. Ex. 112, at RIVER_00000105.

*Riverside – Coloplast A/S May 2014*

187.    On May 8, 2014, Stacey Kaminer provided ED&F with a trade instruction to purchase 1,100,000 shares of COLOB DC stock on behalf of the Riverside Plan with trade date May 8, 2014 and settlement date May 14, 2014.  *See* Dillman Decl. Ex. 105, ED&F-00045466 at ED&F-00045467-68.

188.    On May 8, 2014, ED&F on behalf of the Riverside Plan purchased 850,000 shares of COLOB DC with trade date May 8, 2014 and settlement date May 14, 2014 from Sunrise Brokers ("Sunrise"). The total number of COLOB DC shares ED&F purchased from Sunrise for pension plans using Acer as their representative and agent was 4,300,000.   ED&F provided confirmation of this trade to Stacey Kaminer.  *Id.* at ED&F-00045467-68, ED&F-00045484-86, ED&F-00045489.

189.    ED&F's purchase from Sunrise was confirmed by MT545 SWIFT messages showing delivery of 4,300,000 COLOB DC shares by Sunrise to ED&F's depot account at BNP. *Id.* at ED&F-00045496-501.

190.    Also on May 8, 2014, Sunrise purchased 4,300,000 shares of COLOB DC from MPT Dubai with trade date May 8, 2014 and settlement date May 14, 2014.  *Id.* at ED&F-00045490.

191.    As of May 9, 2014, the Riverside Plan's Account Equity Statement at ED&F reflects ownership of 850,000 shares of COLOB DC stock credited to the Riverside Plan.  There was no sale, transfer, or rehypothecation of these shares until on or after May 9, 2014.  *Id.* at ED&F-00045502.

192.    ED&F's dividend reconciliation sheet for COLOB DC stock shows that the Riverside Plan held a long position of 850,000 shares not settled by record date.  The dividend

reconciliation sheet states that these shares would create a payable dividend amount to the Riverside Plan of DKK2,482,000.00 at the gross dividend rate of DKK 4.00 per share and net dividend rate equal to 73% of the gross dividend amount. *Id.* at ED&F-00045506-07.

193.    The dividend reconciliation sheet shows the net dividend amount payable to the Riverside Plan can be traced back to MPT Dubai, which held a net short position in Coloplast, via Volcafe. *Id.*

194.    ED&F's ShadowSuite system shows that DKK 2,482,000.00 was booked to the Riverside Plan's account at ED&F as "CASH DIV - COLOB DC." *Id.* at ED&F-00045508.

195.    The Riverside Plan's account statement for the month of May 2014 provided by ED&F showed the crediting to the Riverside Plan of DKK 2,482,000.00, with a notation of "CASH DIV - COLOB DC - PD 14/05/14." Dillman Decl. Ex. 113, at RIVER_00000105.

### *Riverside– TDC A/S March 2015*

196.    On March 4, 2015, Stacey Kaminer provided ED&F with a trade instruction to purchase 2,000,000 shares of TDC DC stock on behalf of the Riverside Plan with trade date March 4, 2015 and settlement date March 6, 2015.  *See* Dillman Decl. Ex. 106, ED&F-00043382 at ED&F-00043383-84; Dillman Decl. Ex. 91, Response to ED&F's Request for Admission No. 166(a).

197.    On March 4, 2015, ED&F on behalf of the Riverside Plan purchased 2,000,000 shares of TDC DC with trade date March 4, 2015 and settlement date March 6, 2015 through its internal inter-dealer broker.   ED&F provided confirmation of this trade to Stacey Kaminer. Dillman Decl. Ex. 106 at ED&F-00043383, ED&F-00043385, ED&F-00043389; Dillman Decl. Ex. 91, Response to ED&F's Request for Admission No. 166(b).

198.    ED&F's purchase from the internal IDB were confirmed by two MT545 SWIFT messages showing delivery of 2,000,000 TDC DC shares by the internal IDB desk to ED&F's depot account at Skandinaviska Enskilda Banken ("SEB").  Dillman Decl. Ex. 106 at ED&F-00043397-98.

199.    Also on March 4, 2015, ED&F's internal IDB purchased from ED&F's client facilitation account 2,000,000 shares of TDC DC with trade date March 4, 2015 and settlement date March 6, 2015. ED&F's client facilitation account had, on February 12, 2015, borrowed, pursuant to a GMSLA, 2,000,000 TDC DC shares from Macquarie Bank Limited. Dillman Decl. Ex. 106 at ED&F-00043391, ED&F-00043395.

200.    As of March 6, 2015, the Riverside Plan's Account Equity Statement at ED&F reflects ownership of 2,000,000 shares of TDC DC stock credited to the Riverside Plan.  There was no sale, transfer, or rehypothecation of these shares until on or after March 6, 2015.  *Id.* at ED&F-00043399.

201.    ED&F's dividend reconciliation sheet for TDC DC stock shows that the Riverside Plan held a long position of 1,400,000 shares of the 31,515,200 shares housed in ED&F Man's depot account at SEB, account number 05295142806, as of record date.  The dividend reconciliation sheet states that these shares would create a payable dividend amount to the Riverside Plan of DKK 1,460,000.00 at the gross dividend rate of DKK 1.00 per share and net dividend rate equal to 73% of the gross dividend amount, out of a total dividend entitlement of DKK 23,006,096.00 for all shares housed in the depot account.  *Id.* at ED&F-00043402.

202.    ED&F received an MT566 SWIFT message showing a cash dividend payment on account of 31,515,200 shares of stock of "TDC" in account number 05295142806.  The MT566

SWIFT states that DKK 23,006,096.00 was the posted net dividend amount, net of DKK 8,509,104.00 in tax. *Id.* at ED&F-00043403.

203.    ED&F's ShadowSuite system shows that DKK 1,460,000 was booked to the Riverside Plan's account at ED&F as "CASH DIV - TDC DC." *Id.* at ED&F-00043404.

204.    The Riverside Plan's account statement for the month of March 2015 provided by ED&F showed the crediting to the Riverside Plan of DKK 1,460,000.00, with a notation of "CASH DIV - TDC DC - PD 10/03/15." Dillman Decl. Ex. 114, at RIVER_00000164.

### Riverside – DSV A/S March 2015

205.    On March 11, 2015, Stacey Kaminer provided ED&F with a trade instruction to purchase 850,000 shares of DSV DC stock on behalf of the Riverside Plan with trade date March 11, 2015 and settlement date March 13, 2015. *See* Dillman Decl. Ex. 107, ED&F-00038285 at ED&F-00038286-87; Dillman Decl. Ex. 91, Response to ED&F Request for Admission No. 108(a); Kaminer Decl. at ¶ 12; Kaminer Decl., Ex. A.

206.    On March 11, 2015, ED&F on behalf of the Riverside Plan purchased 1,700,000 shares of DSV DC with trade date March 11, 2015 and settlement date March 13, 2015 through its internal inter-dealer broker; 850,000 of these DSV DC shares were purchased on behalf of the Riverside Plan. ED&F provided confirmation of this trade to Stacey Kaminer. Dillman Decl. Ex. 107 at ED&F-00038286-87 and ED&F-00038289; Dillman Decl. Ex. 91, Response to ED&F Request for Admission No. 108(b). Kaminer Decl. at ¶ 14; Kaminer Decl., Ex. A.

207.    Stacey Kaminer understood from her written trade instructions sent to ED&F and her receipt of the trade confirmation for 1,700,000 shares of DSV DC with trade date March 11, 2015 and settlement date March 13, 2015, that 850,000 of these DSV DC shares were purchased on behalf of the Riverside Plan on March 11, 2015. Kaminer Decl. at ¶ 14.

208.    ED&F's purchase from the internal IDB was confirmed by two MT545 SWIFT messages showing delivery of 850,000 DSV DC shares by the internal IDB desk to ED&F's depot account at SEB.  Dillman Decl. Ex. 107 at ED&F-00038293-94.

209.    Also on March 11, 2015, ED&F's internal IDB purchased a total of 1,700,000 shares of DSV DC from Morgan Stanley with trade date March 11, 2015 and settlement date March 13, 2015. *Id.* at ED&F-00038291.

210.    As of March 12, 2015, the Riverside Plan's Account Equity Statement at ED&F reflects the purchase of 850,000 shares of DSV DC stock credited to the Riverside Plan.  There was no sale, transfer, or rehypothecation of these shares until on or after March 12, 2015.  *Id.* at ED&F-00038295.

211.    Stacey Kaminer understood from receipt of the Riverside Plans' Account Equity Statement provided to Acer by ED&F in March 2015 that the Riverside Plan had purchased 850,000 shares of DSV DC on March 11, 2015, that ED&F was holding the Riverside Plan's right to these shares for the Riverside Plan as of March 11, 2015, and that the trade settled on March 13, 2015.  Kaminer Decl. at ¶ 15; Kaminer Decl., Ex. B.

212.    ED&F's dividend reconciliation sheet for DSV DC stock shows that the Riverside Plan held a long position of 850,000 shares of the 1,700,000 shares housed in ED&F Man's depot account at SEB, account number 05295142806, as of record date.  The dividend reconciliation sheet states that these shares would create a payable dividend amount to the Riverside Plan of DKK 992,800.00 at the gross dividend rate of DKK 1.60 per share and net dividend rate equal to 73% of the gross dividend amount, out of a total dividend entitlement of DKK 1,985,600.00 for all shares housed in the depot account.  Dillman Decl. Ex. 107 at ED&F-00038298.

213.    ED&F received an MT566 SWIFT message showing a cash dividend payment on account of 1,700,000 shares of stock of "DSV B" in account number 05295142806.  The MT566 SWIFT states that DKK 1,985,600.00 was the posted net dividend amount, net of DKK 734,400.00 in tax.  *Id.* at ED&F-00038299.

214.    ED&F's ShadowSuite system shows that DKK 992,800.00 was booked to the Riverside Plan's account at ED&F as "CASH DIV - DSV DC."  *Id.* at ED&F-00038300.

215.    The Riverside Plan's account statement for the month of March 2015 provided by ED&F showed the crediting to the Riverside Plan of DKK 992,800.00, with a notation of "CASH DIV - DSV DC - PD 17/03/15."  Dillman Decl. Ex., at RIVER_00000164.

216.    Stacey Kaminer understood the entry of a "CASH DIV - DSV DC - PD 17/03/15" to mean that the Riverside Plan had received a dividend net of any withholding taxes in relation to its holding over the ex-date of 850,000 shares of DSV DC and that ED&F was holding that dividend for the Riverside Plan in the Riverside Plan's account at ED&F.  Kaminer Decl. at ¶ 16; Kaminer Decl., Ex. B

217.    Stacey Kaminer understood that the tax vouchers provided by ED&F were ED&F's confirmation that the Riverside Plan had received a dividend in relation to its holding of 850,000 shares of DSV DC and that the Riverside Plan had suffered withholding taxes.  Kaminer Decl. ¶ 17; Kaminer Decl., Ex. C.

***Riverside – Pandora A/S March 2015***

218.    On March 17, 2015, Stacey Kaminer provided ED&F with a trade instruction to purchase 300,000 shares of PNDORA DC stock on behalf of the Riverside Plan with trade date March 17, 2015 and settlement date March 19, 2015.  *See* Dillman Decl. Ex. 108, ED&F-00043997 at ED&F-00043998-99; Response to ED&F's Request for Admission No. 177(a).

219.    On March 17, 2015, ED&F on behalf of the Riverside Plan purchased 300,000 shares of PNDORA DC with trade date March 17, 2015 and settlement date March 19, 2015 through its internal inter-dealer broker in three shapes:  one lot of 150,000 shares and two lots of 75,000 shares.  ED&F provided confirmation of this trade to Stacey Kaminer.  *Id.* at ED&F-00043998, ED&F-00044001; Dillman Decl. Ex. 91, Response to ED&F's Request for Admission No. 177(b).

220.    ED&F's purchases from the internal IDB were confirmed by three MT545 SWIFT messages showing delivery of 300,000 PNDORA DC shares by the Internal IDB desk to ED&F's depot account at Skandinaviska Enskilda Banken ("SEB").  Dillman Decl. Ex. 108 at ED&F-00044006-08.

221.    Also on March 17, 2015, ED&F's internal IDB purchased a total of 300,000 shares of PNDORA DC with trade date March 17, 2015 and settlement date March 19, 2015.  The internal IDB purchased one lot of 150,000 shares from Merrill Lynch, and two lots of 75,000 shares from UBS London.  *Id.* at ED&F-00044003-04.

222.    As of March 19, 2015, the Riverside Plan's Account Equity Statement at ED&F reflects ownership of 300,000 shares of PNDORA DC stock credited to the Riverside Plan.  There was no sale, transfer, or rehypothecation of these shares until on or after March 19, 2015.  *Id.* at ED&F-00044009.

223.    ED&F's dividend reconciliation sheet for PNDORA DC stock shows that the Riverside Plan held a long position of 300,000 shares of the 700,950 shares housed in ED&F Man's depot account at SEB, account number 05295142806.  The dividend reconciliation sheet states that these shares would create a payable dividend amount to the Riverside Plan of DKK 1,971,000 at the gross dividend rate of DKK 9.00 per share and net dividend rate equal to 73% of

the gross dividend amount, out of a total dividend entitlement of DKK 4,605,241.50 for all shares housed in the depot account.  *Id.* at ED&F-00044012.

224.    ED&F received an MT566 SWIFT message showing a cash dividend payment on account of 700,950 shares of stock of "PANDORA HOLDING" in account number 05295142806. The MT566 SWIFT states that DKK 4,605,241.50 was the posted net dividend amount, net of DKK 1,703,308.50 in tax.  *Id.* at ED&F-00044013.

225.    ED&F's ShadowSuite system shows that DKK 1,971,000 was booked to the Riverside Plan's account at ED&F as "CASH DIV - PNDORA DC."  *Id.* at ED&F-00044014.

226.    The Riverside Plan's account statement for the month of March 2015 provided by ED&F showed the crediting to the Riverside Plan of DKK 1,971,000.00, described as a "CASH DIV - PNDORA DC - PD 23/03/15."  Dillman Decl. Ex. 114, at RIVER_00000164.

### Riverside – Danske A/S March 2015

227.    On March 13, 2015, Stacey Kaminer provided ED&F with a trade instruction to purchase 1,200,000 shares of DANSKE DC stock on behalf of the Riverside Plan with trade date March 13, 2015 and settlement date March 17, 2015.  *See* Dillman Decl. Ex. 109, ED&F-00047364 at ED&F-00047365-66; Dillman Decl. Ex. 91, Response to ED&F's Request for Admission No. 227(a).

228.    On March 13, 2015, ED&F on behalf of the Riverside Plan purchased 4,5000,000 shares of DANSKE DC with trade date March 13, 2015 and settlement date March 17, 2015 through its internal inter-dealer broker, 1,200,000 DANSKE DC shares were purchased on behalf of the Riverside Plan.  ED&F provided confirmation of this trade to Stacey Kaminer.  Dillman Decl. Ex. 109, at ED&F-00047365, ED&F-00047371, ED&F-00047377; Dillman Decl. Ex. 91, Response to ED&F's Request for Admission No. 227(b).

229.    ED&F's purchase from the internal IDB was confirmed by MT545 SWIFT messages showing delivery of 4,500,00 DANSKE DC shares by the internal IDB desk to ED&F's depot account at SEB.  Dillman Decl. Ex. 109 at ED&F-00047387-89.

230.    Also on March 13, 2015, ED&F's internal IDB purchased a total of 4,500,000 shares of DANSKE DC with trade date March 13, 2015 and settlement date March 17, 2015.  The internal IDB purchased 3,500,000 shares from Citi Group Global Market Limited, and 1,000,000 shares from Merrill Lynch.  *Id.* at ED&F-00047378-79.

231.    As of March 19, 2015, the Riverside Plan's Account Equity Statement at ED&F reflects ownership of 1,200,000 shares of DANSKE DC stock credited to the Riverside Plan.  There was no sale, transfer, or rehypothecation of these shares until on or after March 19, 2015.  *Id.* at ED&F-00047390.

232.    ED&F's dividend reconciliation sheet for DANSKE DC stock shows that the Riverside Plan held a long position of 1,200,000 shares of the 24,805,000 shares housed in ED&F Man's depot account at SEB, account number 05295142806, as of record date.  The dividend reconciliation sheet states that these shares would create a payable dividend amount to the Riverside Plan of DKK 4,818,000.0 at the gross dividend rate of DKK 5.50 per share and net dividend rate equal to 73% of the gross dividend amount, out of a total dividend entitlement of DKK 99,592,075.00 for all shares housed in the depot account.  *Id.* at ED&F-00047393.

233.    ED&F received an MT566 SWIFT message showing a cash dividend payment on account of 24,805,000 shares of stock of "DANSKE BANK A?S" in account number 05295142806.  The MT566 SWIFT states that DKK 99,592,075.00 was the posted net dividend amount, net of DKK 36,835,425 in tax.  *Id.* at ED&F-00047394.

234.    ED&F's ShadowSuite system shows that DKK 4,818,000 was booked to the Riverside Plan's account at ED&F as "CASH DIV - DANSKE DC." *Id.* at ED&F-00047395.

235.    The Riverside Plan's account statement for the month of March 2015 provided by ED&F showed the crediting to the Riverside Plan of DKK 4,818,000.00, with a notation of "CASH DIV - DANSKE DC - PD 23/03/15." Dillman Decl. Ex. 114, at RIVER_00000164.

### Riverside – Novo Nordisk A/S March 2015

236.    On March 13, 2015, Stacey Kaminer provided ED&F with a trade instruction to purchase 1,400,000 shares of NOVOB DC stock on behalf of the Riverside Plan with trade date March 13, 2015 and settlement date March 17, 2015. *See* Dillman Decl. Ex. 110, ED&F-00049905 at ED&F-00049906-07; Dillman Decl. Ex. 91, Response to ED&F's Request for Admission No. 261(g).

237.    On March 13, 2015, ED&F on behalf of the Riverside Plan purchased 4,000,000 shares of NOVOB DC with trade date March 13, 2015 and settlement date March 17, 2015 through its internal inter-dealer, 1,400,000 DANSKE DC shares were purchased on behalf of the Riverside Plan.  ED&F provided confirmation of this trade to Stacey Kaminer.  Dillman Decl. Ex. 110 at ED&F-00049906, ED&F-00049910, ED&F-00049914; Dillman Decl. Ex. 91, Response to ED&F's Request for Admission No. 261(b).

238.    ED&F's purchase from the internal IDB were confirmed by MT545 SWIFT messages showing delivery of 4,000,000 NOVOB DC shares by the internal IDB desk to ED&F's depot account at SEB.  Dillman Decl. Ex. 91 at ED&F-00049930-33.

239.    Also on March 13, 2015, ED&F's internal IDB purchased a total of 4,000,000 shares of NOVOB DC with trade date March 13, 2015 and settlement date March 17, 2015.  The

internal IDB purchased 3,000,000 shares from Citi Group Global Market Limited, and 1,000,000 shares from Merrill Lynch. *Id.* at ED&F-00049915-16.

240.    As of March 19, 2015, the Riverside Plan's Account Equity Statement at ED&F reflects ownership of 1,400,000 shares of NOVOB DC stock credited to the Riverside Plan.  There was no sale, transfer, or rehypothecation of these shares until on or after March 19, 2015.  *Id.* ED&F-00047390.

241.    ED&F's dividend reconciliation sheet for NOVOB DC stock shows that the Riverside Plan held a long position of 1,400,000 shares of the 5,600,000 shares housed in ED&F Man's depot account at SEB, account number 05295142806, as of record date.  The dividend reconciliation sheet states that these shares would create a payable dividend amount to the Riverside Plan of DKK 5,110,000.00 at the gross dividend rate of DKK 5.00 per share and net dividend rate equal to 73% of the gross dividend amount, out of a total dividend entitlement of DKK 20,440,000.00 for all shares housed in the depot account.  *Id.* at ED&F-00049937.

242.    ED&F received an MT566 SWIFT message showing a cash dividend payment on account of 5,600,000 shares of stock of "NOVO NORDISK" in account number 05295142806. The MT566 SWIFT states that DKK 20,440,000 was the posted net dividend amount, net of DKK 7,560,000 in tax.  *Id.* at ED&F-00049938.

243.    ED&F's ShadowSuite system shows that DKK 5,110,000 was booked to the Riverside Plan's account at ED&F as "CASH DIV - NOVOB DC."  *Id.* at ED&F-00049939.

244.    The Riverside Plan's account statement for the month of March 2015 provided by ED&F showed the crediting to the Riverside Plan of DKK 5,110,000.00, with a notation of "CASH DIV - NOVOB DC - PD 24/03/15."  Dillman Decl. Ex. 114, at RIVER_00000164.

***AIG – Coloplast A/S December 2013***

245.    On December 5, 2013, Stacey Kaminer provided ED&F with a trade instruction to purchase 500,000 shares of COLOB DC stock on behalf of the AIG Plan with trade date December 5, 2013and settlement date December 11, 2013.  *See* Dillman Decl. Ex. 115, ED&F-00044985 at ED&F-00044986; Dillman Decl. Ex. 91, Response to ED&F's Request for Admission No. 197(a).

246.    On December 5, 2013, ED&F on behalf of the AIG Plan purchased 500,000 shares of COLOB DC with trade date December 5, 2013and settlement date December 11, 2013 from its internal inter-dealer broker.  ED&F provided confirmation of this trade to Stacey Kaminer. Dillman Decl. Ex. 115 at ED&F-00044986, ED&F-00044988; Dillman Decl. Ex. 91, Response to ED&F's Request for Admission No. 197(b).

247.    ED&F's purchase from the internal IDB was confirmed by a MT545 SWIFT message showing delivery of 500,000 COLOB DC shares by the internal IDB desk to ED&F's depot account at BNP.  Dillman Decl. Ex. 115 at ED&F-000449911.

248.    Also on December 5, 2013, ED&F's internal IDB purchased a total 2,000,000 shares of COLOB DC from Mitsubishi UFJ Securities ("Mitsubishi") with trade date December 5, 2013 and settlement date December 11, 2013.  *Id.* at ED&F-00044989.

249.    As of December 6, 2013, the AIG Plan's Account Equity Statement at ED&F reflects ownership of 500,000 shares of COLOB DC stock credited to the AIG Plan.  There was no sale, transfer, or rehypothecation of these shares until on or after December 6, 2013.  *Id.* at ED&F-00044992.

250.    ED&F's dividend reconciliation sheet for COLOB DC stock shows that the AIG Plan held a long position of 500,000 shares not settled by record date.  The dividend reconciliation sheet states that these shares would create a payable dividend amount to the AIG Plan of DKK 2,555,000 at the gross dividend rate of DKK 7.00 per share and net dividend rate equal to 73% of

the gross dividend amount. The dividend reconciliation sheets show the net dividend amount payable from ED&F's internal IDV. *Id.* at ED&F-00044995-96.

251.    ED&F received confirmation from Mitsubishi of payment of a market claim dividend on 4,800,000 COLOB DC shares, 500,000 belonging to the AIG Plan, in the amount DKK 24,528,000.00. *Id.* at ED&F-00044997- ED&F-00045000.

252.    ED&F's ShadowSuite system shows that DKK 2,555,000 was booked to the AIG Plan's account at ED&F as "CASH DIV – COLOB DC." *Id.* at ED&F-00045001.

253.    The AIG Plan's account statement for the month of December 2013 provided by ED&F showed the crediting to the AIG Plan of DKK 2,555,000.00, with a notation of "CASH DIV - COLOB DC - PD 11-12-2013." Dillman Decl. Ex. 127, at AIG_00000151.

### AIG – TDC A/S March 2014

254.    On March 5, 2014, Stacey Kaminer provided ED&F with a trade instruction to purchase 1,000,000 shares of TDC DC stock on behalf of the AIG Plan with trade date March 4, 2014 and settlement date March 10, 2014. *See* Dillman Decl. Ex. 116, ED&F-00040919 at ED&F-00040920-21.

255.    On March 5, 2014, ED&F on behalf of the AIG Plan purchased 1,000,000 shares of TDC DC with trade date March 5, 2014 and settlement date March 10, 2014 from Volcafe. The total number of TDC DC shares ED&F purchased for pension plans using Acer as their representative and agent was 2,000,000. ED&F provided confirmation of this trade to Stacey Kaminer. *Id.* at ED&F-00040920, ED&F-00040922-24, ED&F-00040931-33.

256.    ED&F's purchase from Volcafe was confirmed by a MT545 SWIFT message showing delivery of 1,000,000 TDC DC shares by Volcafe to ED&F's depot account at BNP. *Id.* at ED&F-00040977.

257.    Also on March 6, 2014, Volcafe purchased two lots of 1,000,000 shares of TDC DC from Morgan Stanley with trade date March 5, 2014 and settlement date March 10, 2014. *Id.* at ED&F-00040935-37.

258.    ED&F's dividend reconciliation sheet for TDC DC stock shows that the AIG Plan held a long position of 1,000,000 shares of the 24,845,000 shares housed in ED&F Man's depot account at BNP, account number 778523F. The dividend reconciliation sheet states that these shares would create a payable dividend amount to the AIG Plan of DKK 1,606,000.00 at the gross dividend rate of DKK 2.20 per share and net dividend rate equal to 73% of the gross dividend amount, out of a total dividend entitlement of DKK 39,901,070.00 for all shares housed in the depot account. *Id.* at ED&F-00040983-40984.

259.    ED&F received an MT566 SWIFT message showing a cash dividend payment on account of 24,845,000 shares of stock of "TDC SHS" in account number 778523F. The MT566 SWIFT states that DKK 39,901,070.00 was the posted net dividend amount, net of DKK 14,757,930 in tax. *Id.* at ED&F-00040985.

260.    On March 6, 2014, Stacey Kaminer provided ED&F with a second trade instruction to purchase 2,000,000 shares of TDC DC stock on behalf of the the AIG Plan with trade date March 6, 2014 and settlement date March 12, 2014. *Id.* at ED&F-00040938.

261.    On March 6, 2014, ED&F on behalf of the AIG Plan purchased 2,000,000 shares of TDC DC with trade date March 6, 2014 and settlement date March 12, 2014 from Volcafe. The total number of TDC DC shares ED&F purchased from Volcafe for pension plans using Acer as their representative and agent was 22,300,000. ED&F provided confirmation of this trade to Stacey Kaminer. *Id.* at ED&F-00040938, ED&F-00040939.

262.    ED&F's purchase from Volcafe was confirmed by a MT545 SWIFT message showing delivery of 2,000,000 TDC DC shares by Volcafe to ED&F's depot account at BNP. *Id.* at ED&F-00040978.

263.    Also on March 6, 2014, Volcafe purchased 2,000,000 shares of TDC DC from ED&F Man Professional Trading Dubai ("MPT Dubai) with trade date March 6, 2014 and settlement date March 12, 2014. The total number TDC DC shares sold by MPT Dubai to Volcafe was 22,300,000. *Id.* at ED&F-00040949-51.

264.    ED&F's dividend reconciliation sheet for TDC DC stock shows that the AIG Plan held a long position of 2,000,000 shares, which shares had not yet settled into an ED&F depot account as of the record date.  The dividend reconciliation sheet states that these shares would create a payable dividend amount to the AIG Plan of DKK 3,212,000.00 at the gross dividend rate of DKK 2.30 per share and net dividend rate equal to 73% of the gross dividend amount. *Id.* at ED&F-00046759-60.

265.    The dividend reconciliation sheet shows the net dividend amount payable to the AIG Plan can be traced back to MPT Dubai, which held a net short position in TDC, via Volcafe. *Id.*

266.    On March 6, 2014, Stacey Kaminer provided ED&F with a third trade instruction to purchase 2,000,000 shares of TDC DC stock on behalf of the AIG Plan with trade date March 6, 2014 and settlement date March 12, 2014. *Id.* at ED&F-00040954.

267.    On March 6, 2014, ED&F on behalf of the AIG Plan purchased 2,000,000 shares of TDC DC with trade date March 6, 2014 and settlement date March 12, 2014 from ED&F's internal IDB. The total number of TDC DC shares ED&F purchased the internal IDC for pension

plans using Acer as their representative and agent was 6,000,000. ED&F provided confirmation of this trade to Stacey Kaminer. *Id.* at ED&F-00040954, ED&F-00040956, ED&F-00040965.

268.    ED&F's purchase from the internal IDB was confirmed by a MT545 SWIFT message showing delivery of 2,000,000 TDC DC shares by the internal IDB to ED&F's depot account at BNP. *Id.* at ED&F-00040979.

269.    Also on March 6, 2014, ED&F's internal IDB purchased 3 x 2,000,000 shares of TDC DC from Lutetia Capital with trade date March 6, 2014 and settlement date March 12, 2014. *Id.* at ED&F-00040972-75.

270.    ED&F's dividend reconciliation sheet for TDC DC stock shows that the AIG Plan held a long position of 2,000,000 shares not settled by record date from this. The dividend reconciliation sheet states that these shares would create a payable dividend amount to the AIG Plan of DKK 3,212,000.00 at the gross dividend rate of DKK 2.30 per share and net dividend rate equal to 73% of the gross dividend amount. This dividend cannot be traced back to MPT Dubai, and the dividend reconciliation sheet contains a "YES" in the "CLAIM?" column. *Id.* at ED&F-00040983-84.

271.    ED&F then made an outside market claim for the dividend from Lutetia Capital, received confirmation from Lutetia Capital of payment of the dividend on 6,000,000 TDC DC shares, 2,000,000 belonging to the AIG Plan, in the amount DKK 9,636,000.00. *Id.* at ED&F-00040986-87.

272.    As of March 7, 2014, the AIG Plan's Account Equity Statement at ED&F reflects ownership of 5,000,000 shares of TDC DC stock credited to the AIG Plan. There was no sale, transfer, or rehypothecation of these shares until on or after March 7, 2014. *Id.* at ED&F-00040980.

273.    ED&F's ShadowSuite system shows that a total DKK 8,030,000.00 was booked to the AIG Plan's account at ED&F as "CASH DIV - TDC DC."  *Id.* at ED&F-00040988-90.

274.    The AIG Plan's account statement for the month of March 2014 provided by ED&F showed the crediting to the AIG Plan of a total of DKK 8,030,000.00, with a notation of "CASH DIV - TDC DC - PD 12/03/14."  Dillman Decl. Ex. 128, at AIG_00000172.

### AIG – Danske A/S March 2014

275.    On March 17, 2014, Stacey Kaminer provided ED&F with a trade instruction to purchase 3,000,000 shares of DANSKE DC stock on behalf of the AIG Plan with trade date March 17, 2014 and settlement date March 20, 2014.  *See* Dillman Decl. Ex. 117, ED&F-00045804 at ED&F-00045805.

276.    On March 17, 2014, ED&F purchased 3,000,000 shares of DANSKE DC with trade date March 18, 2014 and settlement date March 20, 2014 from ED&F's internal IDB. ED&F provided confirmation of this trade to Stacey Kaminer.  *Id.* at ED&F-00045805, ED&F-00045807.

277.    ED&F's purchase from ED&F's internal IDB was confirmed by a MT545 SWIFT message showing delivery of 3,000,000 DANSKE DC shares by ED&F's internal IDB to ED&F's depot account at BNP.  *Id.* at ED&F-00045857.

278.    Also on March 17, 2014, ED&F's internal IDB purchased 3,000,000 shares of DANSKE DC from HSBC Bank PLC with trade date March 17, 2014 and settlement date March 20, 2014. *Id.* at ED&F-00045809.

279.    ED&F's dividend reconciliation sheet for DANSKE DC stock shows the AIG Plan held a long position of 3,000,000 shares of the 23,125,000 shares housed in ED&F Man's depot account at BNP, account number 778523F.  The dividend reconciliation sheet states that these shares would create a payable dividend amount to the AIG Plan of DKK 4,380,000.00 at the gross

dividend rate of DKK 2.00 per share and net dividend rate equal to 73% of the gross dividend amount, out of a total dividend entitlement of DKK 33,762,500 for all shares housed in the depot account. *Id.* at ED&F-00045863-64.

280.    ED&F received an MT566 SWIFT message showing a cash dividend payment on account of 3,000,000 shares of "DANSKE BANK A/S" in account number 778523F. The MT566 SWIFT states that DKK 4,380,000 was the posted net dividend amount, net of DKK 1,620,000 in tax. *Id.* at ED&F-00045865.

281.    On March 17, 2014, Stacey Kaminer provided ED&F with a second trade instruction to purchase 4,750,000 shares of DANSKE DC stock on behalf of the the AIG Plan with trade date March 18, 2014 and settlement date March 24, 2014. *Id.* at ED&F-00045812-13.

282.    On March 18, 2014, ED&F on behalf of the AIG Plan purchased 4,750,000 shares of DANSKE DC with trade date March 18, 2014 and settlement date March 24, 2014 from Volcafe. The total number of DANSKE DC shares ED&F purchased from Volcafe for pension plans using Acer as their representative and agent was 26,125,000. ED&F provided confirmation of this trade to Stacey Kaminer. *Id.* at ED&F-00045812, ED&F-00045814, ED&F-00045848-50.

283.    ED&F's purchase from Volcafe was confirmed by two MT545 SWIFT messages showing delivery of 4,750,000 DANSKE DC shares by Volcafe to ED&F's depot account at BNP. *Id.* at ED&F-00045858-59.

284.    Also on March 18, 2014, Volcafe purchased 4,750,000 shares of DANSKE DC from MPT Dubai with trade date March 18, 2014 and settlement date March 24, 2014. The total number DANSKE DC shares sold by MPT Dubai to Volcafe was 26,125,000. *Id.* at ED&F-00045852-54.

285.    ED&F's dividend reconciliation sheet for DANSKE DC stock shows the AIG Plan held a long position of 4,750,000 shares of the 48,015,000 shares sold to ED&F by Volcafe, which can further be traced to a short position of 48,015,000 shares held by MPT Dubai.  The dividend reconciliation sheet states that these 4,750,000 shares would create a payable dividend amount to the AIG Plan of DKK 6,935,000.00 at the gross dividend rate of DKK 2.00 per share and net dividend rate equal to 73% of the gross dividend amount.  *Id.* at ED&F-00045863-64.

286.    As of March 19, 2014, the AIG Plan's Account Equity Statement at ED&F reflects ownership of 7,750,000 shares of TDC DC stock credited to the AIG Plan.  There was no sale, transfer, or rehypothecation of these shares until on or after March 19, 2014.  *Id.* at ED&F-00045860.

287.    ED&F's ShadowSuite system shows that DKK 11,315,000.00 was booked to the AIG Plan's account at ED&F as "CASH DIV - DANSKE DC."  *Id.* at ED&F-00045866-87.

288.    The AIG Plan's account statement for the month of March 2014 provided by ED&F showed the crediting to the AIG Plan of a total of DKK 11,315,000.00, with a notation of "CASH DIV - DANSKE DC - PD 24/03/15."  Dillman Decl. Ex. 128, at AIG_00000172.

***AIG – Novo Nordisk A/S-B March 2014***

289.    On March 20, 2014, Stacey Kaminer provided ED&F with a trade instruction to purchase 3,500,000 shares of NOVOB DC stock on behalf of the AIG Plan with trade date March 20, 2014 and settlement date March 26, 2014.  *See* Dillman Decl. Ex. 118, ED&F-00048728 at ED&F-00048729-30.

290.    On March 20, 2014, ED&F on behalf of the AIG Plan purchased 3,500,000 shares of NOVOB DC with trade date March 20, 2014 and settlement date March 26, 2014. The total number of NOVOB DC shares ED&F purchased for pension plans using Acer as their

representative and agent was 22,000,000: 10,000,000 shares of NOVOB DC were purchased from ED&F's internal IDB and 12,000,000 shares of NOVOB DC were purchased from Volcafe. ED&F provided confirmation of this trade to Stacey Kaminer. *Id.* at ED&F-00048729, ED&F-00048747, ED&F-48748-51.

291.    ED&F's purchases were confirmed by MT545 SWIFT messages showing delivery of 10,000,000 NOVOB DC shares by ED&F's internal IDB and 12,000,000 NOVOB DC shares by Volcafe to ED&F's depot account at BNP. *Id.* at ED&F-00048759-73.

292.    Also on March 20, 2014, ED&F's internal IDB purchased 10,000,000 shares of NOVOB from MPT Dubai with trade date March 20, 2014 and settlement date March 26, 2014 and Volcafe purchased 12,000,000 shares of NOVOB DC from MPT Dubai with trade date March 20, 2014 and settlement date March 26, 2014. *Id.* at ED&F-00048754-57.

293.    As of March 21, 2014, the AIG Plan's Account Equity Statement at ED&F reflects ownership of 3,500,000 shares of NOVOB DC stock credited to the AIG Plan. There was no sale, transfer, or rehypothecation of these shares until on or after March 21, 2014. *Id.* at ED&F-00048774.

294.    ED&F's dividend reconciliation sheet for NOVOB DC stock shows that the AIG Plan held a long position of 3,500,000 shares not settled by record date. The dividend reconciliation sheet states that these shares would create a payable dividend amount to the AIG Plan of DKK 11,497,500.00 at the gross dividend rate of DKK 4.50 per share and net dividend rate equal to 73% of the gross dividend amount. *Id.* at ED&F-00048778-79.

295.    The dividend reconciliation sheet shows the net dividend amount payable to the AIG Plan can be traced back to MPT Dubai, which held a net short position in Novo Nordisk, via Volcafe and ED&F's internal IDB. *Id.*

296.    ED&F's ShadowSuite system shows that DKK 11,497,500.00 was booked to the AIG Plan's account at ED&F as "CASH DIV - NOVOB DC."  *Id.* at ED&F-00048780.

297.    The AIG Plan's account statement for the month of March 2014 provided by ED&F showed the crediting to the AIG Plan of DKK 11,497,500.00, with a notation of "CASH DIV - NOVOB DC - PD 26/03/14."  Dillman Decl. Ex. 128, at AIG_00000172.

***AIG – Novozymes A/S February 2015***

298.    On February 25, 2015, Stacey Kaminer provided ED&F with a trade instruction to purchase 750,000 shares of NZYMB DC stock on behalf of the AIG Plan with trade date February 25, 2015 and settlement date March 2, 2015.  *See* Dillman Decl. Ex. 119, ED&F-00076389 at ED&F-00076390.

299.    On February 25, 2015, ED&F on behalf of the AIG Plan purchased 750,000 shares of NZYMB DC stock with trade date February 25, 2015 and settlement date March 2, 2015 from ED&F's internal IDB.  ED&F provided confirmation of this trade to Stacey Kaminer.  *Id.* at ED&F-00076390, ED&F-00076392.

300.    ED&F's purchase from ED&F's internal IDB was confirmed by a MT545 SWIFT message showing delivery of 750,000 NZYMB DC shares by from ED&F's internal IDB to ED&F's depot account at SEB.  *Id.* at ED&F-00076398.

301.    Also on February 25, 2015, ED&F's internal IDB purchased 750,000 shares of NZYMB DC stock from MPT Dubai with trade date February 25, 2015 and settlement date March 2, 2015, 2014.  *Id.* at ED&F-00076394-95.

302.    As of February 26, 2015, the AIG Plan's Account Equity Statement at ED&F reflects ownership of purchased 750,000 shares of NZYMB DC stock credited to the AIG Plan.

There was no sale, transfer, or rehypothecation of these shares until on or after February 26, 2015. *Id.* at ED&F-00076399.

303.    ED&F's dividend reconciliation sheet for NZYMB DC stock shows that the AIG Plan held a long position of 750,000 shares not settled by record date.  The dividend reconciliation sheet states that these shares would create a payable dividend amount to the AIG Plan of DKK 1,642,500 at the gross dividend rate of DKK 3.00 per share and net dividend rate equal to 73% of the gross dividend amount.  *Id.* at ED&F-00076402.

304.    The dividend reconciliation sheet shows the net dividend amount payable to the AIG Plan can be traced back to MPT Dubai, which held a net short position in Novozymes, via Volcafe.  *Id.*

305.    ED&F's ShadowSuite system shows that DKK 1,642,500.00 was booked to the AIG Plan's account at ED&F as "CASH DIV – NZYMB DC."  *Id.* at ED&F-00076403.

306.    The AIG Plan's account statement for the month of March 2015 provided by ED&F showed the crediting to the AIG Plan of DKK 1,642,500.00, with a notation of "CASH DIV - NZYMB DC - PD 02/03/15."  Dillman Decl. Ex. 129, at AIG_00000261.

### AIG – Tryg A/S April 2014

307.    On April 2, 2014, Stacey Kaminer provided ED&F with a trade instruction to purchase 50,000 shares of TRYG DC stock on behalf of the AIG Plan with trade date April 2, 2014 and settlement date April 7, 2014.  *See* Dillman Decl. Ex. 120, ED&F-00044535 at ED&F-00044536; Dillman Decl. Ex. 91, Response to ED&F's Request for Admission No. 188(a).

308.    On April 2, 2014, ED&F on behalf of the AIG Plan purchased 50,000 shares of TRYG DC with trade date April 2, 2014 and settlement date April 7, 2014 from Link.  ED&F provided confirmation of this trade to Stacey Kaminer.  Dillman Decl. Ex. 120 at ED&F-

00044536, ED&F-00044538, ED&F-00044541-42; Dillman Decl. Ex. 91, Response to ED&F's Request for Admission No. 188(b).

309.    ED&F's purchase from Link was confirmed by a MT545 SWIFT message showing delivery of 50,000 TRYG DC shares from Link to ED&F's depot account at BNP.  Dillman Decl. Ex. 120 at ED&F-00044546.

310.    As of April 4, 2014, the AIG Plan's Account Equity Statement at ED&F reflects ownership of 50,000 shares of TRYG DC stock credited to the AIG Plan.  There was no sale, transfer, or rehypothecation of these shares until on or after April 4, 2014.  *Id.* at ED&F-00044547.

311.    ED&F's dividend reconciliation sheet for TRYG DC stock shows that the AIG Plan held a long position of 50,000 shares of the 73,000 shares housed in ED&F Man's depot account at BNP, account number 778523F, settled by record date.  The dividend reconciliation sheet states that these shares would create a payable dividend amount to the AIG Plan of DKK 985,500 at the gross dividend rate of DKK 27.00 per share and net dividend rate equal to 73% of the gross dividend amount, out of a total dividend entitlement of DKK 1,438,830.00 for all shares housed in the depot account.  *Id.* at ED&F-00044551-52.

312.    ED&F received an MT566 SWIFT message showing a cash dividend payment on account of 73,000 shares of stock of "TRYG A/S" in account number 778523F.  The MT566 SWIFT states that DKK 1,438,830.00 was the posted net dividend amount, net of DKK 532,170 in tax.  *Id.* at ED&F-00044553.

313.    ED&F's ShadowSuite system shows that DKK 985,500 was booked to the AIG Plan's account at ED&F as "CASH DIV - TRYG DC."  *Id.* at ED&F-00044554.

314.    The AIG Plan's account statement for the month of April 2014 provided by ED&F showed the crediting to the AIG Plan of DKK 985,500.00, with a notation of "CASH DIV - TRYG DC - PD 09/04/14."  Dillman Decl. Ex. 130, at AIG_00000184.

### AIG – AP Moeller – Maersk A/S - B April 2014

315.    On March 28, 2014, Stacey Kaminer provided ED&F with a trade instruction to purchase 1,000 shares of MAERSKB DC stock on behalf of the AIG Plan with trade date March 28, 2014 and settlement date April 2, 2014.  *See* Dillman Decl. Ex. 121, ED&F-00077536 at ED&F-00077537; Dillman Decl. Ex. 91, Response to ED&F's Request for Admission No. 300(a).

316.    On March 28, 2014, ED&F on behalf of the AIG Plan purchased 1,000 shares of MAERSKB DC with trade date March 28, 2014 and settlement date April 2, 2014 from its internal inter-dealer broker.  ED&F provided confirmation of this trade to Stacey Kaminer. Dillman Decl. Ex. 121 at ED&F-00077537, ED&F-00077539; Dillman Decl. Ex. 91, Response to ED&F's Request for Admission No. 300(b).

317.    ED&F's purchase from the internal IDB was confirmed by a MT545 SWIFT messages showing delivery of 1,000 MAERSKB DC by the internal IDB desk to ED&F's depot account at BNP.  Dillman Decl. Ex. 121 at ED&F-00077543.

318.    Also on March 28, 2014, ED&F's internal IDB purchased 1,000 shares of MAERSKB DC from HSBC Bank PLC with trade date March 28, 2014 and settlement date April 2, 2014. *Id.* at ED&F-00077541.

319.    As of April 1, 2014, the AIG Plan's Account Equity Statement at ED&F reflects ownership of 1,000 shares of MAERSKB DC stock credited to the AIG Plan.  There was no sale, transfer, or rehypothecation of these shares until on or after April 1, 2014.  *Id.* at ED&F-00077544.

320. ED&F's dividend reconciliation sheet for MAERSKB DC stock shows that the AIG Plan held a long position of 1,000 shares of the 12,500 shares housed in ED&F Man's depot account at BNP, account number 778523F, settled by record date. The dividend reconciliation sheet states that these shares would create a payable dividend amount to the AIG Plan of DKK 1,022,000 at the gross dividend rate of DKK 1400.00 per share and net dividend rate equal to 73% of the gross dividend amount, out of a total dividend entitlement of DKK 12,775,000.000 for all shares housed in the depot account. *Id.* at ED&F-00077547-48.

321. ED&F received an MT566 SWIFT message showing a cash dividend payment on account of 12,500 shares of stock of "AP MOELLER MASERK A/S" in account number 778523F. The MT566 SWIFT states that DKK 12,775,000.00 was the posted net dividend amount, net of DKK 4,725,000 in tax. *Id.* at ED&F-00077549.

322. ED&F's ShadowSuite system shows that DKK 1,022,000 was booked to the AIG Plan's account at ED&F as "CASH DIV - MAERSKB DC." *Id.* at ED&F-00077550.

323. The AIG Plan's account statement for the month of April 2014 provided by ED&F showed the crediting to the AIG Plan of DKK 1,022,000.00, with a notation of "CASH DIV - MAERSKB DC - PD 09/04/14." Dillman Decl. Ex. 130, AIG_00000184.

### *AIG – TDC A/S August 2014*

324. On August 7, 2014, Stacey Kaminer provided ED&F with a trade instruction to purchase 3,400,000 shares of TDC, DC stock on behalf of the AIG Plan with trade date August 7, 2014 and settlement date August 11, 2014. *See* Dillman Decl. Ex. 122, ED&F-00042261 at ED&F-00042262-63; Dillman Decl. Ex. 91, Response to ED&F's Request for Admission No. 150(a).

325.    On August 7, 2014, ED&F on behalf of the AIG Plan purchased 3,400,000 shares of TDC DC with trade date August 7, 2014 and settlement date August 11, 2014 through its internal inter-dealer broker.  The total number of TDC DC shares ED&F purchased from the internal IDB for pension plans using Acer as their representative and agent was 16,601,000.  ED&F provided confirmation of this trade to Stacey Kaminer.  Dillman Decl. Ex. 122 at ED&F-00042262, ED&F-00042266, ED&F-00042274; Dillman Decl. Ex. 91, Response to ED&F's Request for Admission No. 150(b).

326.    ED&F's purchase from the internal IDB was confirmed by a MT545 SWIFT messages showing delivery of 3,400,000 TDC DC shares by the Internal IDB desk to ED&F's depot account at SEB.  Dillman Decl. Ex. 122 at ED&F-00042324.

327.    Also on August 7, 2014, ED&F's internal IDB purchased from ED&F's client facilitation account 3,400,000 shares of TDC DC with trade date August 7, 2014 and settlement date August 11, 2014. The total number of shares purchased from ED&F's client facilitation account was 16,601,000. *Id.* at, ED&F-00042277.

328.    Prior to August 7, 2015, ED&F's client facilitation account had borrowed 16,601,000 shares of TDC DC.  The 16,601,000 shares were made up of: 2,800,000 from Maple Securities on 14 July 2014; 2,750,000 from ING Bank on 15 July 2014; 2,245,000 from ING Bank on 17 July 2014; 500,000 from Jefferies on 18 July 2014; 500,000 from Maple Securities on 18 July 2014; 161,000 from ING Bank on 15 July 2014; 1,145,000 from Jefferies on 30 July 2014; 1,500,000 from ING Bank on 30 July 2014; and 5,000,000 from Morgan Stanley on 30 July 2014. *Id.* at ED&F-00042280-302.

329.    MT544 SWIFT messages confirm the stock borrows showing delivery of 16,601,000 from the respective banks to ED&F's depot account at SEB. *Id*. at ED&F-00042309-23.

330.    As of August 8, 2014, the AIG Plan's Account Equity Statement at ED&F reflects ownership of 3,400,000 shares of TDC DC stock credited to the AIG Plan. There was no sale, transfer, or rehypothecation of these shares until on or after August 8, 2014. *Id.* at ED&F-000442325.

331.    ED&F's dividend reconciliation sheet for TDC DC stock shows that the AIG Plan held a long position of 3,400,000 shares of the 40,913,000 shares housed in ED&F Man's depot account at SEB, account number 05295142806, settled by record date. The dividend reconciliation sheet states that these shares would create a payable dividend amount to the AIG Plan of DKK 3,723,000.00 at the gross dividend rate of DKK 1.50 per share and net dividend rate equal to 73% of the gross dividend amount, out of a total dividend entitlement of DKK 44,799,735.00 for all shares housed in the depot account. *Id.* at ED&F-00042328-29.

332.    ED&F received an MT566 SWIFT message showing a cash dividend payment on account of 40,913,000 shares of TDC in account number 05295142806. The MT566 SWIFT states that DKK 44,799,735.00 was the posted net dividend amount, net of DKK 16,569,765 in tax. *Id.* at ED&F-00042330.

333.    ED&F's ShadowSuite system shows that DKK 3,723,000 was booked to the AIG Plan's account at ED&F as "CASH DIV - TDC DC." *Id.* at ED&F-00042333.

334.    The AIG Plan's account statement for the month of August 2014 provided by ED&F showed the crediting to the AIG Plan of DKK 3,723,000.00, with a notation of "CASH DIV - TDC DC - PD 13/08/14." Dillman Decl. Ex. 123, ED&F-00177423.

335.    ED&F prepared a tax voucher for the AIG Plan confirming that the AIG Plan held 3,400,000 shares of TDCA/S stock over the ex-dividend date of August 8, 2014.  The tax voucher states that the AIG Plan received a dividend in the amount of DKK 3,723,000.00 and indicates "WHT Suffered" in the amount of DKK 1,377,000 at a tax rate of 27% of the gross dividend amount.  Dillman Decl. Ex. 122, ED&F-00042261.

336.    From August 2014 through March 2015, the AIG Plan held 3,400,000 shares of TDC DC stock, which it had acquired in August 2014.  Dillman Decl. Ex. 131, AIG_00000262.

337.    The AIG Plan's account statement for the month of March 2015 provided by ED&F showed the crediting to the AIG Plan of DKK 3,400,000, with a notation of "STCK LOAN DIV - TDC DC - PD 10/03/14."  *Id.* at AIG_00000261.

338.    For the March 2015 dividend event concerning TDC DC, the AIG Plan did not suffer any withholding tax.  *Id.* at AIG_00000261.

339.    There is no record evidence that ED&F provided a tax voucher for the AIG Plan in relation to the March 2015 dividend event concerning the AIG Plan's holdings of 3,400,000 shares of TDC DC stock, and no withholding tax refund application was submitted in connection with these holdings.

### AIG – Chr. Hansen Holding A/S November 2014

340.    On November 28, 2014, Stacey Kaminer provided ED&F with a trade instruction to purchase up to 1,000,000 shares of CHR DC stock on behalf of the AIG Plan.  The instruction states that November 27, 2014 had been "overlooked as a possible trading day" due to the U.S. Thanksgiving holiday, and asks ED&F if an accommodation could be made.  *See* Dillman Decl. Ex. 124, ED&F-00026785 at ED&F-00026786.

341.    ED&F on behalf of the AIG Plan purchased 800,000 shares of CHR DC with trade date November 27, 2014 and settlement date December 1, 2014 through its internal IDB.  ED&F provided confirmation of this trade to Stacey Kaminer.  *Id.* at ED&F-00026786, ED&F-00026788.

342.    ED&F's purchase from the internal IDB was confirmed by a MT545 SWIFT messages showing delivery of 800,000 CHR DC shares by the Internal IDB desk to ED&F's depot account at SEB.  *Id.* at ED&F-00026799.

343.    ED&F's internal IDB purchased from ED&F's client facilitation account 800,000 shares of CHR DC with trade date November 27, 2014 and settlement date December 1, 2014. *Id.* at, ED&F-00026791.

344.    Prior to November 27, 2014, ED&F's client facilitation account had borrowed 800,000 shares of CHR DC from Morgan Stanley. *Id.* at, ED&F-00026792-97.

345.    As of November 28, 2014, the AIG Plan's Account Equity Statement at ED&F reflects ownership of 800,000 shares of CHR DC stock credited to the AIG Plan.  There was no sale, transfer, or rehypothecation of these shares until on or after November 28, 2014.  *Id.* at ED&F-00026800.

346.    ED&F's dividend reconciliation sheet for CHR DC stock shows that the AIG Plan held a long position of 800,000 shares of the 4,080,000 shares housed in ED&F Man's depot account at SEB, account number 05295142806, settled by record date.  The dividend reconciliation sheet states that these shares would create a payable dividend amount to the AIG Plan of DKK 2,210,680.00 at the gross dividend rate of DKK 3.77 per share and net dividend rate equal to 73% of the gross dividend amount, out of a total dividend entitlement of DKK 11,228,568.00 for all shares housed in the depot account.  *Id.* at ED&F-00026803.

347.    ED&F received an MT566 SWIFT message showing a cash dividend payment on account of 4,080,000 shares of stock of "CHR HANSEN HOLDING" in account number 05295142806.  The MT566 SWIFT states that DKK 11,228,568.00 was the posted net dividend amount, net of DKK 4,153,031 in tax.  *Id.* at ED&F-00026804.

348.    ED&F's ShadowSuite system shows that DKK 2,210,680.00 was booked to the AIG Plan's account at ED&F as "CASH DIV - CHR DC."  *Id.* at ED&F-00026805.

349.    The AIG Plan's account statement for the month of December 2014 provided by ED&F showed the crediting to the AIG Plan of DKK 2,201,680.00, with a notation of "CASH DIV - CHR DC - PD 02/12/14."  Dillman Decl. Ex. 131, at AIG_00000241.

### AIG – Coloplast A/S December 2014

350.    On December 3, 2014, Stacey Kaminer provided ED&F with a trade instruction to purchase 1,500,000 shares of COLOB DC stock on behalf of the AIG Plan with trade date December 3, 2014 and settlement date December 5, 2014.  *See* Dillman Decl. Ex. 125, ED&F-00045535 at ED&F-00045536-37; Dillman Decl. Ex. 91, Response to ED&F's Request for Admission No. 204(a).

351.    On December 3, 2014, ED&F on behalf of the AIG Plan purchased 1,500,000 shares of COLOB DC with trade date December 3, 2014 and settlement date December 5, 2014 through its internal inter-dealer broker.  ED&F provided confirmation of this trade to Stacey Kaminer.  Dillman Decl. Ex. 125 at ED&F-00045536, ED&F-00045543; Dillman Decl. Ex. 91, Response to ED&F's Request for Admission No. 204(b).

352.    ED&F's purchase from the internal IDB was confirmed by two MT545 SWIFT messages showing delivery by the internal IDB desk to ED&F's depot account at SEB.  Dillman Decl. Ex. 125 at ED&F-00045550-51.

353.    Also on December 3, 2014, ED&F's internal IDB purchased a total of 1,500,000 shares of COLOB DC from Morgan Stanley with trade date December 3, 2014 and settlement date December 5, 2014. *Id.* at ED&F-00045548.

354.    As of on December 5, 2014, the AIG Plan's Account Equity Statement at ED&F reflects ownership of 1,500,000 shares of COLOB DC stock credited to the AIG Plan. There was no sale, transfer, or rehypothecation of these shares until on or after December 5, 2014. *Id.* at ED&F-00045552.

355.    ED&F's dividend reconciliation sheet for COLOB DC stock shows that the AIG Plan held a long position of 1,500,000 shares of the 4,630,000 shares housed in ED&F Man's depot account at SEB, account number 05295142806. The dividend reconciliation sheet states that these shares would create a payable dividend amount to the AIG Plan of DKK 8,212,500 at the gross dividend rate of DKK 7.50 per share and net dividend rate equal to 73% of the gross dividend amount, out of a total dividend entitlement of DKK 25,349,250.00 for all shares housed in the depot account. *Id.* at ED&F-00045555.

356.    ED&F received an MT566 SWIFT message showing a cash dividend payment on account of 4,630,000 shares of stock of "COLOPLAST B" in account number 05295142806. The MT566 SWIFT states that DKK 25,349,250.00 was the posted net dividend amount, net of DKK 9,375,750.00 in tax. *Id.* at ED&F-00045556.

357.    ED&F's ShadowSuite system shows that DKK 8,212,500 was booked to the AIG Plan's account at ED&F as "CASH DIV - COLOB DC." *Id.* at ED&F-00045557.

358.    The AIG Plan's account statement for the month of December 2014 provided by ED&F showed the crediting to the AIG Plan of DKK 8,212,500.00, with a notation of "CASH DIV - COLOB DC - PD 09/12/14." Dillman Decl. Ex. 131, at AIG_00000241.

*AIG – AP Moeller – Maersk A/S -B March 2015*

359.    On March 30, 2015, Alan Goldman provided ED&F with a trade instruction to purchase 5,000 shares of MAERSKB DC stock on behalf of the AIG Plan with trade date March 30, 2015.  *See* Dillman Decl. Ex. 126, ED&F-00078083 at ED&F-00078084-85; Dillman Decl. Ex. 91, Response to ED&F's Request for Admission No. 307(a).

360.    On March 30, 2015, ED&F on behalf of the AIG Plan purchased 4,000 shares of MAERSKB DC with trade date March 30, 2015 and settlement date April 1, 2015 through its internal inter-dealer broker. The total number of MAERSKB DC shares ED&F purchased for pension plans using Acer as their representative and agent was 9,595, made up of three lots of 4,000, 3,570, and 2,025 shares respectively.  ED&F provided confirmation of this trade to Alan Goldman.  Dillman Decl. Ex. 126 at ED&F-00078084, ED&F-00078091, ED&F-00078094; Dillman Decl. Ex. 91, Response to ED&F's Request for Admission No. 307(b).

361.    ED&F's purchase from the internal IDB was confirmed by a MT544 SWIFT message showing delivery of 9,595 MAERSKB DC shares by the internal IDB desk to ED&F's depot account at SEB.  Dillman Decl. Ex. 126 at ED&F-00078104-06.

362.    Also on March 30, 2015, ED&F's internal IDB purchased from ED&F's client facilitation account 9,595 shares of MAERSKB DC with trade date March 30, 2015 and settlement date April 1, 2015. *Id.* at, ED&F-00078095.

363.    Prior to March 30, 2015, ED&F's client facilitation account had borrowed 9,595 shares of MAERSKB DC: 4,000 shares were borrowed from Maple Securities (UK) Ltd on March 10, 2015; 3,570 shares were borrowed from Jefferies International on March 11, 2015; and 2,025 shares were borrowed from Jefferies International on March 30, 2015.  *Id.* at, ED&F-00078096-99.

364.    MT544 SWIFT messages confirm the stock borrows showing delivery of 9,595 from the respective banks to ED&F's depot account at SEB *Id.* at ED&F-00078101-03.

365.    As of March 31, 2015, the AIG Plan's Account Equity Statement at ED&F reflects ownership of 4,000 shares of MAERSKB DC stock credited to the AIG Plan.  There was no sale, transfer, or rehypothecation of these shares until on or after March 31, 2015.  *Id.* at ED&F-00078107.

366.    ED&F's dividend reconciliation sheet for MAERSKB DC stock shows that the AIG Plan held a long position of 4,000 shares of the 126,314 shares housed in ED&F Man's depot account at SEB, account number 05295142806.  The dividend reconciliation sheet states that these shares would create a payable dividend amount to the AIG Plan of DKK 5,755,320.00 at the gross dividend rate of DKK 1971.00 per share and net dividend rate equal to 73% of the gross dividend amount, out of a total dividend entitlement of DKK 181,744,372.62 for all shares housed in the depot account.  *Id.* at ED&F-00078110.

367.    ED&F received an MT566 SWIFT message showing a cash dividend payment on account of 126,314 shares of stock of "MOELLER MAERSK B" in account number 05295142806.  The MT566 SWIFT states that DKK 181,744,372.62 was the posted net dividend amount, net of DKK 67,220,521.38 in tax.  *Id.* at ED&F-00078111.

368.    ED&F's ShadowSuite system shows that DKK 5,755,320.00 was booked to the AIG Plan's account at ED&F as "CASH DIV - MAERSKB DC."  *Id.* at ED&F-00078112.

369.    The AIG Plan's account statement for the month of April 2015 provided by ED&F showed the crediting to the AIG Plan of DKK 5,755,320.00, with a notation of "CASH DIV - MAERSKB DC - PD 07/04/15."  Dillman Decl. Ex. 132, at AIG_00000268.

370.    The transactions included in Appendix F of the December 31, 2021 Expert Report of Graham Wade are transactions under which ED&F (or one of its clients) did in fact obtain what Mr. Wade describes as a "real dividend," *i.e.*, a dividend paid by the issuer net of withholding tax. Dillman Decl. Ex. 99, Wade Report ¶¶ 70, 162.

371.    There is no record evidence that ED&F made any attempt to reclaim from SKAT any tax withheld on any Danish securities acquired by the AIG Plan.

372.    There is no record evidence that ED&F made any attempt to reclaim from SKAT any tax withheld on any Danish securities acquired by the Riverside Plan.

373.    For the AIG and Riverside Plans' trading in Danish securities, Stacey Kaminer was involved in Acer's due diligence process, by which she would determine what the dividend per share was and what the yield would be.  She would also review publicly available information about the issuing company.  She communicated with ED&F by phone prior to any transaction in Danish securities for the AIG and Riverside Plans to confirm the details of any transaction, including the pricing of the securities, the number of shares available, and the proposed settlement periods.  It was her practice to enter into trades on behalf of the AIG and Riverside Plans over the phone with ED&F and subsequently send confirmatory emails.  Kaminer Decl. ¶¶ 8–10.

374.    For all but one of the Danish securities transactions for the AIG and/or Riverside Plans, Stacey Kaminer emailed ED&F prior to the ex-date of a dividend event, instructing ED&F to purchase Danish securities for the AIG and/or Riverside Plans.  The instructions would typically include the price for the securities, the number of shares, and which of the plans would be trading in the securities.  Stacey Kaminer would also, typically, instruct ED&F to hedge the transaction, typically with the sale of a single stock future.  The details of Stacey Kaminer's instructions to ED&F would have been worked out ahead of time with ED&F to ensure that ED&F had the

liquidity and financing available to it to facilitate the trades.  Kaminer Decl. ¶ 11; Kaminer Dep. 98:25–99:5, 291:13–292:1, 374:5–20.

375.    After Stacey Kaminer communicated trade instructions to ED&F, ED&F provided confirmations of the trade and the relevant hedging transaction.  Stacey Kaminer received these confirmations on the same day she sent the written trade instructions.  The trade confirmations from ED&F contained information concerning the AIG and/or Riverside Plans' transactions, including the name of the security purchased, the number of shares purchased, the share price, the trade date, and the settlement date.  Kaminer Decl. ¶ 13.

376.    Stacey Kaminer understood from her written trade instructions sent to ED&F and her receipt of a related trade confirmation that the AIG and/or Riverside Plans identified in the trade confirmations had purchased the identified shares as of or on the trade date identified in the trade confirmation.  Kaminer Decl. ¶¶ 13, 14.

377.    Stacey Kaminer understood from the Account Equity Statements provided by ED&F, in conjunction with the trade confirmations, that the AIG and/or Riverside Plans had purchased the securities on the trade date and had settled on the relevant settlement date and that ED&F was holding the relevant pension plan's right to these shares for the relevant pension plan. Kaminer Decl. ¶ 15.

378.    Stacey Kaminer understood the entry of a "CASH DIV" on the Account Equity Statements provided by ED&F to mean that the AIG and/or Riverside Plan had received a dividend net of withholding taxes and that ED&F was holding the relevant pension plan's right to these shares for the relevant pension plan.  Kaminer Decl. ¶ 16.

379.    For each of the Danish securities transactions by the AIG and/or Riverside Plans, ED&F provided a tax voucher.  Stacey Kaminer understood that the tax vouchers provided by

ED&F were confirmation by ED&F, which she believed was a highly reputable and regulated entity, that the AIG and/or Riverside Plans had received a dividend and had suffered withholding taxes.  Kaminer Decl. ¶¶ 5, 17.

380.    Stacey Kaminer understood that the AIG and/or Riverside Plans had received a dividend and had suffered withholding taxes and believed that the AIG and/or Riverside Plans were entitled to submit withholding-tax refund applications to SKAT based on (i) her experience in dividend arbitrage and (ii) the information available to her, including (a) the trade confirmations provided by ED&F showing that the relevant trade was executed prior to the relevant ex-date; (b) the AIG and/or Riverside Plans' account statements reflecting receipt and ownership of a dividend designated as a "CASH DIV;" and (c) the subsequent receipt of a tax voucher from ED&F. Kaminer Decl. ¶ 18.

381.    Robert Crema relied on the information conveyed to him by Kaminer about the AIG Plan's Danish trades and dividends received.  Robert Crema Dep. 172:21-176:25.

382.    David Schulman relied on Acer to conduct, on behalf of the Riverside Plan, all of the Riverside Plan's trading through ED&F.  Schulman Dep. 76:14–77:1-6; 120 13–21; 122:2–123:5; 135:8-24, 137:13–21; 152:25-153:8.

383.    In October 2016, SKAT stated that "[the AIG Plan], as a pension fund—with a single participant and the resulting limited amounts of deposits—did not have the sufficient capital basis to be able to make investments in Danish shares of the amount underlying … previous requests for payment of withheld dividend tax."    Dillman Decl. Ex. 133, SKAT_MDL_001_008120.  SKAT's reference to "previous requests for payment of withheld dividend tax" is a reference to the payments at issue in SKAT's claims in this action against the

AIG Plan.  *Id.*; Bahnsen Dec. Ex. 6, SKAT's Amended Complaint, Docket Entry # 89 in related action 18-cv-09841.

## XIII.  **Market Practices**

384.    There is no record evidence that any defendant had any knowledge with respect to the holdings of SKAT's sub-custodians.

385.    Netting refers to the practice of offsetting credits and debits.  *See, e.g.*, Bahnsen Decl. Ex. 13 at ¶ 113 (describing net settlement).

386.    SKAT engages in netting.  In particular, as of August 1, 2013, company taxes are paid on a balance principle, in which a company's tax liabilities to SKAT are aggregated and offset by any tax credits/refunds due from SKAT to that company.  Bahnsen Decl. Ex. 38.  SKAT's collection of dividend withholding tax will consequently depend on other taxes due from and any credits/refunds due to the dividend-issuing company.  *Id.*  As an example, a company with a 50 million kroner tax credit and 50 million kroner dividend withholding tax liability would make no payment to SKAT.  *See* Bahnsen Decl. Ex. 39 (Ekstrand Tr. 99:3-101:13).  SKAT does not separately account for its receipt of dividend withholding tax.  Bahnsen Decl. Ex. 38.

387.    Clearing and settling firms (including custodians) can engage in "net settlement," whereby equal and opposite transactions entered into by clients of the same custodian can be settled on the same day without any change in the custodian's holdings.  Bahnsen Decl. Ex. 13 at ¶ 113.

388.    Denmark's central securities depositary, VP Securities, allows for net simultaneous settlement of funds and securities.  Bahnsen Decl. Exs. 13 (at ¶ 115), 47 (Sorensen Vol. 1 Tr. 15:21-16:9; 82:2-7; Vol. 2 Tr. 16:2-17:9).

389.    Financial intermediaries use a practice called "internalization" in which long and short positions from a dealer's client pool are matched to reduce net funding requirements.  As a Bank of England Statement of Policy explains, if a prime broker has two clients that are taking opposite positions on the same asset (one long, the other short), the broker may internally net these amounts to avoid having to fund the positions elsewhere, such that a client short position is therefore funding a client long position.  Bahnsen Decl. Ex. 13 at ¶ 117 (citing Bahnsen Decl. Ex. 60).

390.    The European Securities and Markets Authority has reported that equity trades worth trillions of Euros were settled through internalized settlement.  Bahnsen Decl. Ex. 13 at ¶ 116.