# Exhibit 68

skat.dk

# Obligation to withhold interest tax on interest paid to the parent company in Luxembourg

| | |
|---|---|
| Date of release | 17 Nov 2010 09:13 |
| Date of judgment / ruling / decision / control signal | 01 Nov 2010 14:50 |
| SKM number | SKM2010.729.LSR |
| Authority | The National Tax Court |
| Case number | 09-01483 |
| Document type | Order |
| Overall topics | treasure |
| Topics Topics | Corporate taxation + Foreign income |
| Keywords | Withholding tax, interest tax, parent company, Luxembourg, double taxation agreement |
| Summary | One company was not deemed to be liable to withholding tax on interest paid to the parent company in Luxembourg. |
| Reference (s) | The Corporation Tax Act § 2, para. 1, letters c and d<br>The Tax Control Act § 3 B The<br>Withholding Tax Act § 65 D |
| Reference | - |
| Editorial notes | The case has been brought before the courts and subsequently dismissed |

The complaint is due to the fact that the company H1 A / S is considered liable to withhold interest tax on interest paid to its parent company in Luxembourg, cf. the withholding tax act 65 D and the corporation tax act § 2, paragraph. 1, letter d, as the parent company is not considered a "beneficial owner" / rightful owner of the interest.

**The National Tax Tribunal's decision**
The National Tax Tribunal amends SKAT's decision, as H1 A / S is not considered liable to withhold tax on the interest in question.

**Summary of case information**
A number of private equity funds bought H1 A / S via a holding company, G1 Sarl, Luxembourg.

According to the representative, the immediate investors in the various private equity funds are several hundred institutional investors, including pension funds, banks, investment associations and companies, other private equity funds ("fund of funds"), a number of companies and hundreds of private individuals.

One company owned by the private equity funds, G2 A / S, offered the existing shareholders in the company G3 A / S to buy the company at a price k. G2 A / S was to function as a holding company for G3 A / S. G2 A / S had not had any activity since its inception.

G2 A / S signed the credit facility agreements required for the acquisition of G3 A / S. There were three loan packages. According to all three loan agreements, it was a condition that the investors deposited x DKK, and the amount had to be paid in the day before accepting the purchase of G3 A / S.

The day after the expiry of the offer - which was accepted by more than 90% of the shareholders - H1 A / S was founded by the private equity funds. In connection with the foundation, G2 A / S was contributed in kind, thus G2 A / S became a wholly owned subsidiary of H1 A / S.

A few days later, the share capital in H1 A / S was increased by a cash deposit of a total of x. The new shares were subscribed for by the existing shareholders, ie. private equity funds.

On the same day, the private equity funds deposited all their shares in H1 A / S in G1 Sarl against consideration in shares in G1 Sarl. G4 Sarl

The following day, an annual report was submitted for H1 A / S 'first financial year from the foundation. On the same day, the annual general meeting of H1 A / S was held, where it was decided to pay a dividend of DKK x to the parent company, G4 Sarl

On the same day, G4 Sarl granted two loans to H1 A / S - a convertible loan and a non-convertible loan.

Also on this day, H1 A / S made an increase in the share capital in G2 A / S by cash payment of x DKK.

At the end of the same year, the convertible loan with accrued interest was converted into shares in H1 A / S. In the middle of the following year, the non-convertible loan with accrued interest was also converted into share capital in H1 A / S.

Regarding the Luxembourg companies, G1 and G4, it is stated that they have registered an address in Luxembourg, that they do not have employees, that they are managed by a Board and Managers who are identical in the two companies, and that the day-to-day administration, etc. . is handled by one of the private equity funds' management companies.

G1 Sarl and G4 Sarl have i.a. expensed "staff costs", which amounts form part of the companies' payment to the management company.

**SKAT's decision**
SKAT has increased H1 A / S 'tax payment with withholding tax on interest.

SKAT has referred to the Corporation Tax Act, section 2, subsection. 1, letter d. It follows that interest from sources in this country regarding debt that a company covered by § 1 has to legal persons as mentioned in the Tax Control Act § 3 B (controlled debt) - with certain exceptions - is limited taxable here to the country, unless such taxation is to be waived under the EU Interest / Royalties Directive, Directive 2003/49 EC, or a double taxation treaty. Neither the directive nor the Danish / Luxembourg DBO, Executive Order no. 95 of 23 September 1982 of the double taxation agreement of 17 November 1980, precludes Denmark from taxing the interest amount, as G4 Sarl is not considered a "beneficial owner" of the interest amount, just as there is in the case of controlled debt, cf. section 3B of the Tax Control Act, as the creditor is G4 Sarl

SKAT has assumed that the conditions for the application of the special exceptions in the Corporation Tax Act, section 2, subsection 1. litra d, 4.-6. sentence, has not been met, as no information has been provided regarding the underlying ownership structure, etc., which indicates that the conditions for applying the exceptions have been met.

<u>The Danish / Luxembourg DBO</u>

Pursuant to section 11 (1) of the DBO. For the purposes of paragraph 1, interest arising in a Contracting State and payable to a resident of the other Contracting State if that person is the beneficial owner of the interest shall be taxable only in that other State.

The DBO must be interpreted in the light of the comments on the OECD model agreement. In it, the question of the understanding of the term "beneficial owner" is now addressed in particular in points 12, 12.1 and 12.2 of Article 10 (on dividends). These comments show that the DBO does not in itself cut off / limit source state taxation of interest unless the rightful owner of the interest is domiciled in the other Contracting State. Decisive for the determination of the rightful owner is, according to the comments, whether the formal interest recipient merely acts as a "flow unit" (conduit) for another person who actually receives the income in question.

A DBO thus does not cut off source state taxation when the underlying owners - who are not themselves resident in a country with which a DBO has been entered into - have disposed of the amounts in advance or automatically, or it must otherwise be assumed that the holding company has not any practical option to dispose of otherwise than determined by the owners.

G4 Sarl is therefore not considered a "beneficial owner", as the company has no activities and as the company has no independent right to dispose of the interest amounts. As G4 Sarl is only deposited as an intermediate holding company, which in fact has no authority to dispose of these amounts in any other way than the underlying ownership structure decides, the Danish / Luxembourg DBO is not considered to cut off a source state taxation of the interest amounts. On the contrary, there is no commercial purpose for the contribution of the intermediate holding company, which is therefore seen as having no other purpose than to seek to avoid Danish withholding tax (or obtain other tax benefits).

EU law

The case law of the European Court of Justice is that there is nothing to prevent companies established in another Member State from invoking EU law - including the harmonized rules that follow from e.g. the Interest / Royalties Directive - when it can be assumed that the establishment of a holding company in another Member State "aims to avoid withholding tax on payments to non-European companies if such a construction serves no commercial purpose", cf. Commission interpretation of "Purely artificial arrangements" published in OJ 2008 C 116/13.

This interpretation is supported by the case law of the European Court of Justice, cf. Cadbury Schweppes (Case C-196/04) and Halifax (Case C-255/02).

EU law can therefore not to a greater extent than the DBOs based on the Model Convention be considered to prevent Denmark from implementing a withholding tax on interest, etc., when the rightful owners of the amounts in question are persons domiciled outside the EU.

Lack of independent disposal right in G4 Sarl

The distribution and simultaneous re-lending of almost the entire amount distributed constituted a cash flow determined in advance by the underlying owners, so that G4 Sarl in relation to these dispositions can be claimed to have been a pure "administrator" or a pure "tool" for the underlying owners' dispositions.

The reason why the convertible loan is included in the financing structure is that the loan is a so-called hybrid financing instrument, as the loan is considered a loan according to Danish rules, so that the interest expense is deductible, while the loan in Luxembourg is considered equity with the consequence that interest payments are considered as tax-free dividends. It is stated that a convertible loan between a Luxembourg lender and a Danish borrower is a well-known hybrid financing instrument, and that the Danish tax benefits arising from the right to deduct have been counteracted with the introduction of section 2 B of the Corporation Tax Act, according to which such a convertible loan according to Danish rules with effect from 13 December 2006 is considered equity.

The advantage of this loan was thus that H1 A / S could continuously deduct the interest expenses without G4 Sa rl being taxed on the interest income. According to the representative, it was not planned from the beginning that the loan would be converted by the end of 2005, as it actually did.

The loan arrangement is characterized by the fact that H1 A / S could under no circumstances be expected - at least not within a foreseeable period - to be able to pay the debt with accrued interest, so it seems in advance that the debt conversion should be carried out, although it may not have been decided exactly when the debt conversion was to take place, just as the whole coherent arrangement (distribution, re-lending and conversion) appears as a pre-determined method, the sole purpose of which was to achieve a tax saving by exploiting the asymmetry between the Danish and Luxembourg tax rules.

From the original loan documents, it appears in several places that this intra-group loan maneuver has been planned from the start. Eg. no distinction is made between whether the private equity funds' own financing is invested as share capital or as subordinated shareholder loans.

Although it has been noted that "Managers" have formally approved the conversion, it is the view that, on the whole, it has been the underlying owners who have been able to decide how accrued interest amounts should be disposed of.

No documents have been submitted that make it probable - e.g. in the form of documents that analyze the advantages and disadvantages of a conversion - that G4 Sa rl has in fact had an independent right of disposal in relation to the accrued interest amounts, including in relation to deciding whether and when a conversion should take place.

<u>Interest rate royalty directive</u>

In particular with regard to the question of whether withholding tax is to be waived under the Interest / Royalties Directive, it has been noted that the term "beneficial owner" is explicitly stated in Article 1 (1) of the Interest / Royalties Directive, which reads as follows:

"Article 1

Scope and procedure

Payments of interest or royalties arising in a Member State shall be exempt from any tax in that State, whether levied by withholding or withholding tax, provided that the rightful owner of the interest or royalties in question is a company. in another Member State or a permanent establishment situated in another Member State and belonging to a company of a Member State.

For this reason alone, it is undoubted that EU law does not preclude the implementation of a withholding tax on interest in Denmark in cases where the rightful owner is not domiciled in the EU.

<u>Controlled debt</u>

SKAT does not agree that there is no controlled debt and that the basic condition for limited tax liability of interest, cf. the Corporation Tax Act, section 2, subsection. 1, 1st sentence, thus not fulfilled.

The use of the term "beneficial owner" in the double taxation agreements and the Interest / Royalties Directive means that special requirements are set as a condition for obtaining the benefits contained in the Double Taxation Agreement and the Interest / Royalties Directive.

The concept of rightful owner is neither used in the Corporation Tax Act, section 2, subsection. 1, letter d, 1st sentence, or in the Corporation Tax Act § 3 B, and there is nothing in the wording of these provisions that can justify an interpretation according to which there is no controlled debt covered by the obligation to withhold tax, if the creditor in the debt ratio after a correct interpretation of the DBO / Directive can not be considered the rightful owner. There are also no statements in the preparatory work that speak in support of such an interpretation.

It is thus not the same legal qualification that must be made when, on the one hand, according to the Corporation Tax Act, section 2, subsection. 1, letter d, 1st sentence, cf. the Tax Control Act § 3 B, must be decided whether it is a controlled debt, and on the other hand must be decided whether the creditor in this debt relationship is "rightful owner" according to the double taxation agreement and interest. - / the Royalties Directive. As it is not the same legal qualification, it is not possible to conclude from one qualification to the other qualification, as stated by the complainant.

A parent company that owns more than 50% of the share capital in a subsidiary - as is the case with G4 Sarl, which owns the entire share capital in the subsidiary H1 A / S - controls this company in the sense in which this term is used in section 3 of the Tax Control Act. B, para. 2, and this applies even if decisions and transactions in the parent company are actually determined by e.g. an underlying group of owners, and even if the parent company by virtue of this has no real possibility of disposing of the amounts received.

When a controlled company is a Danish company that is a debtor in relation to the controlled debt, and the controlling company is domiciled abroad, the basic condition for withholding tax is that the interest is met, even if the creditor company is not within the meaning of the DBOs and the Directive. "rightful owner" of the interest.

Furthermore, the fact that SKAT has not considered G4 Sarl to be the rightful owner of the interest in relation to the double taxation agreement and the interest / royalty directive does not mean that there must be a breach of the holding structure itself as such or of the individual dispositions in the arrangement. Thus, it has not been claimed that G4 Sarl is not a creditor in terms of property law in the loan relationship that has been established.

In the contested decision, SKAT has not found it necessary to take a position on who the limited taxable person (s) are. This is because the decisive factor in relation to the issue of limited tax liability according to the wording of the Corporation Tax Act, section 2, subsection 1, letter d, is solely whether the interest / royalty directive or the DBO with

Luxembourg entails that withholding tax must be waived. It is also noted here that the tax liability is finally fulfilled upon deduction.

SKAT is therefore of the opinion that the decision that G4 Sarl is not the rightful owner of the interest does not imply that there is no controlled debt.

<u>International case law</u>

In its review, SKAT has referred to international case law, including the Indofood case from March 2006 from the British Court of Appeal. The question in the case concerning withholding tax on interest paid by an Indonesian company to a Mauritius company was whether the withholding tax could be avoided by depositing a Dutch company between the Indonesian company and the Mauritius company. The question was whether the Dutch company would be considered the "beneficial owner" of the interest payments, so that these payments would be recognized in relation to the Dutch-Indonesian double taxation agreement. The Court of Appeal ruled that the Dutch company would not be the "beneficial owner" of the interest income under the Indonesian-Dutch agreement. The concept of "beneficial owner" should, according to the Court of Appeal, be understood from an "international fiscal meaning" which could not be deduced from the domestic law of the Contracting States. This relationship was deduced by the Court from the OECD's comments as well as Philip Baker's comment on the OECD's model agreement. The decision emphasized that there was no other practical possibility than that an amount of interest paid by the Indonesian company to the Dutch company would be immediately carried over to cover the Dutch company's obligation to pay the exact same amount of interest to the company in Mauritius. .

Furthermore, reference is made to the Prévost case from February 2009 from the Canadian Federal Court of Appeal, which concerned dividend tax on dividends paid from a Canadian company to a Dutch holding company owned by a Swedish and an English company. The question was whether the Dutch company was the "beneficial owner" in relation to the dividend. This found the Canadian Federal Court of Appeal was the case. In the judgment, it was apparently given decisive weight that the holding company was not a party to the shareholder agreement entered into between the two company shareholders and that they could not take legal action ("take action") against the holding company if it did not comply with the dividend policy in the shareholder agreement. The decision was based on the fact that the cash flows in question had not been determined in advance. Thus, as in the Indofood case, it was not sufficient that there was no practical probability that the dividend would not be paid further. In SKAT's view, this requirement has no support in the Model Agreement, the comments thereon or elsewhere. On the contrary, the concept of "beneficial owner" is based on a "substance over form" way of thinking "and it is not compatible with this way of thinking that in determining that the concept requires a legal obligation to repay to the person considered" beneficial owner " .

The representative's views on the change in practice refer to the fact that it is not an expression of a fixed administrative practice that SKAT has not previously found reason to refuse exemption from dividend tax, etc. A possible (erroneous) lack of tax intervention and correction can not constitute practice and can not create any administrative practice binding on SKAT not to impose withholding tax on dividends.

The view on the issue of liability states that the fact that SKAT in connection with its assessment of the case has examined a large number of complicated issues and has given the company an opportunity to comment on these various views and issues, can not be taken into account that SKAT has been "extremely doubtful as to whether the case should be raised". On the contrary, after its thorough investigations, SKAT has just raised the matter and asserted the liability for the withholding tax not withheld.

It is the complainant who must prove that no negligence has been shown on the part of the company.

It should be emphasized that the starting point is that withholding must take place and that no further investigations have been carried out by the company in order to clarify whether the conditions for non-withholding were met, and that stricter requirements must be set as a result of the community of interest. to the company's diligence.

It is thus SKAT's opinion that there is a limited tax liability to Denmark of the interest in question, cf. the Corporation Tax Act, section 2, subsection. 1, letter d. Furthermore, it is SKAT's opinion that the company is liable for the payment of the dividend tax, cf. section 65 D of the Withholding Tax Act.

**The company's claim and arguments**
The company's representative has filed a claim that the company's withholding obligation regarding interest to the parent company be abolished.

In support of the principal claim, it has generally been argued that neither G4 Sarl nor the underlying owners (the ultimate investors in the private equity funds) are subject to limited tax liability in Denmark of the interest payments to G4 Sarl in question, cf. 1 (d) in conjunction with Article 11 of the Double Taxation Agreement between Denmark and Luxembourg and the Interest / Royalties Directive (2003/49 EC).

It is claimed that G4 Sarl is the beneficial owner of the interest received within the meaning of both the Double Taxation Agreement and the Interest / Royalties Directive.

It has been pointed out that G4 Sarl has neither paid out nor credited the interest amounts to the ultimate investors. In connection with the debt conversions, the interest on the two loans has been tied up as share capital in H1 A / S.

Furthermore, it has been argued that SKAT's decision that it is the ultimate investors who are the rightful owners of the interest rates implies that there is no controlled debt, cf. the Corporation Tax Act, section 2, subsection. 1, letter d, 1st sentence.

In addition, it has been argued that SKAT's decision is an expression of a tightening of a fixed administrative practice with retroactive effect, and that such a law cannot be legally implemented without appropriate notice.

Regarding the DBO between Denmark and Luxembourg, it is stated that the term "beneficial owner" is neither defined in the Danish-Luxembourg double taxation agreement nor in the model agreement. While Article 10 (on dividends) of the current model agreement essentially corresponds to the provision in the 1977 version, the comments on the "beneficial owner" concept have been significantly expanded over the years. Point 12 of the comments relied on by SKAT was given its current content in the revision in 2003. New in relation to previous versions of the comments is the remark that the term "rightful owner" is not used in a narrow technical sense, but must be seen in connection with and in the light of the intent and purpose of the agreement, including avoiding double taxation and preventing tax evasion and avoidance.

This is further elaborated in point 12.1 in that, firstly, it would not be in accordance with the intention and purpose of the agreement if the source country were to provide relief by payment to an agent or intermediary ("agent or nominee"), as he is not the owner of income and thus not taxed in its country of domicile, which is why there is no double taxation. This corresponds to the commentary on the 1977 model agreement.

Secondly, it is stated about "conduit companies":

"It would also not be in accordance with the intent and purpose of the agreement for the source State to grant relief or exemption from tax in cases where a person resident in a Contracting State other than as an agent or intermediary merely acts as a <u>"conduit" for another person who actually receives that income</u>. For these reasons, the report "Double Taxation Conventions and the Use of Conduit Companies" prepared by the Committee on Fiscal Affairs concludes that a "flow-through company" cannot normally be considered the rightful owner if it, although the formal owner, actually has very narrow powers which, in relation to the income in question, make it a "nullity" or administrator acting on behalf of other parties. "(emphasis added).

There are in the comments to the model agreement etc. no basis for assuming that it is not decisive whether the dividend amounts have been passed on to the underlying owners. The point is that the dividend must have benefited the beneficial owner.

Regarding availability of the dividend, etc. is stated that it can easily be assumed that neither the decision to vote for the distribution of a dividend nor to lend the amount to H1 A / S are spontaneous management decisions in G4 Sarl All major decisions in any group - f .ex. on acquisitions of companies, major distributions, establishment of financing structure, etc. - is taken in the first instance by the top management of the group. Thereafter, the decisions are implemented by the relevant corporate bodies of the respective companies. Neither the individual companies as such nor the individual management members are, as a starting point, obliged to implement the planned decisions, but refusal to do so can of course lead to the members in question being replaced in accordance with the rules of the Companies Act. It cannot be the case that what

Furthermore, it can not disqualify a company from being a "beneficial owner", that it only runs a business as a holding company, and that it therefore has neither an independent office nor its own employees.

Regarding the abuse provision in double taxation agreements, it is stated that there is no such provision in the Danish Luxembourg double taxation agreement. The "beneficial owner" provision cannot be used as a general abuse provision.

Regarding the internal law concept "right income recipient", it is stated that there are no special reasons why G4 Sarl, which is the sole owner of the shares in H1 A / S, should not be the right income recipient under Danish law - and thus also the rightful owner (" beneficial owner ") under the double taxation agreement - of the interest in question.

The concept of "beneficial owner" is taken over from the common law legal tradition (primarily the UK and USA), which operates with a distinction between economic and legal ownership, where "beneficial owner" relates to economic ownership.

It is debated whether the term "beneficial owner" should be interpreted autonomously (internationally), ie. without the involvement of internal law, or whether the term - at least in case of doubt - must be interpreted in accordance with internal law, in accordance with Article 3 (1). 2, in the OECD's model agreement and the Danish-Luxembourg agreement.

If it is to be interpreted in accordance with internal law, the interpretation of "beneficial owner" / rightful owner will be internal Danish tax law that must be used as a basis. In the representative's opinion, it must be assumed that the Danish courts will apply the court-created principle of the right recipient of income. Reference is hereby made to Jacob Bundgaard and Niels Winther-Sørensen's article on the rightful owner of international group financing published in SR-SKAT 2007.395, where it i.a. It is concluded that on the basis of the Danish case law on interpretation of internal law, the Danish courts will be inclined to regard the company which, according to a Danish tax law assessment, is considered the rightful recipient of income, to also be a "beneficial owner". Furthermore, reference is made to Aage Michelsen's book International Tax Law, 3rd edition, 2003, p. 426, in which i.a. states that the provisions on "beneficial owner" will only apply to actual pro forma cases. And in that case, they are superfluous, as the same result can be achieved here by applying general principles of law. Reference is further made to the Minister of Taxation's answer of 6 November 2006 to question 5 474, which states that the principle of the correct income recipient must be used to determine who "receives" the interest. The term "rightful recipient of income" must be considered to be very similar to the term "beneficial owner" used in the double taxation agreements. as the same result can be achieved here by applying general legal principles. Reference is further made to the Minister of Taxation's answer of 6 November 2006 to question 5 474, which states that the principle of the correct income recipient must be used to determine who "receives" the interest. The term "rightful recipient of income" must be considered to be very similar to the term "beneficial owner" used in the double taxation agreements. as the same result can be achieved here by applying general legal principles. Reference is further made to the Minister of Taxation's answer of 6 November 2006 to question 5 474, which states that the principle of the correct income recipient must be used to determine who "receives" the interest. The term "rightful recipient of income" must be considered to be very similar to the term "beneficial owner" used in the double taxation agreements.

For the understanding of the term "beneficial owner" reference is made to foreign judgments, including the above-mentioned Indofood case from the English Court of Appeal, which is considered to have circumstances other than the case of dividend where the dividend had remained in the dividend-receiving company.

Reference is also made to the Prévost case from the Canadian Court of Appeal. The judgment states that the facts highlighted by the court in support of Prévost Holding's 'beneficial owner' are such circumstances as to characterize an ordinary holding company which has no other function than to be a holding company. The judgment thus rejects - in a situation where there has actually been a flow of dividends to the ultimate owners - that it should have any significance that the ultimate owners have decided in advance that dividends must be distributed through the companies, and that the holding company has no other activity and physical framework than those resulting from being a pure holding company.

It has been argued that this is not controlled debt, cf. the Corporation Tax Act, section 2, subsection. 1, letter d, according to which it is a requirement that there is debt to foreign legal persons as mentioned in the Tax Control Act § 3 B (controlled debt). In the present case, this means that an ultimate investor can only be subject to limited tax liability in Denmark on interest if the investor in question (i) is a legal person, (ii) controls H1 A / S, cf. section 3 B of the Tax Control Act, and ( iii) is domiciled in a state outside the EU with which Denmark does not have a double taxation agreement.

The immediate investors in the various private equity funds are several hundred institutional investors, including pension funds, banks, investment associations and companies, other private equity funds ("fund of funds"), a number of companies and hundreds of private individuals. Private individuals do not meet condition (i).

A number of the immediate investors are themselves fiscally transparent, especially the so-called fund of funds - ie. other private equity funds that have invested in those private equity funds - why it is not immediately possible to state exactly how many ultimate investors there are in the funds.

Of the investors of whom the funds are aware, however, it is the case that the vast majority of investors are domiciled in states with which Denmark has entered into double taxation agreements. These investors do not meet the condition (iii).

None of the ultimate investors controls H1 A / S within the meaning of section 3 B of the Tax Control Act. Thus, none of the investors fulfills condition (ii).

It appears from section 3 B of the current Tax Control Act that it is a condition that a controlling influence is exercised, by which is meant ownership or disposal of voting rights. so that more than 50% of the share capital is owned directly or indirectly or more than 50% of the votes are held.

None of the ultimate investors owns - together with group companies - more than 50% of the share capital or has more than 50% of the votes in H1 A / S, and no investor thus has a controlling influence under § 3 B. There is thus no control debt.

The consequence of SKAT's view that G4 Sarl is not the rightful owner of the interest does not imply that there is no controlled debt, means that G4 Sarl and its underlying owners have ended up in a tax "vacuum" without claim to tax exemption.

If the private equity funds (ie the ultimate investors) had granted the loans directly to H1 A / S, they would - undeniably - not have been subject to limited tax liability on the interest, already because in that case there would be no controlled debt.

Now the loan has been granted by G4 Sarl, and it is therefore - in SKAT's opinion - a controlled debt. On the other hand, the company - still in SKAT's view - is not the rightful owner of the interest, and there is therefore limited tax liability on the interest.

SKAT cannot simply state that the immediate recipient of the interest is not the rightful owner of these, but must relate to who in that case is the rightful owner (s). It must then be decided whether the rightful owner (s) is liable to pay tax on these interest pursuant to section 2 (1) of the Danish Corporation Tax Act. 1, letter d, cf. section 3 B of the Tax Control Act. Whether this is the case depends on whether the debt is controlled and on taxation that the interest must be waived or reduced under the Interest / Royalties Directive or under the double taxation agreement with the country in which the rightful owner is domiciled - which is not necessarily Luxembourg. SKAT must, with the remark in the contested decision that the amount of interest tax can be changed to the extent that documentation is obtained that no interest tax should be withheld, considered to agree to this. The same remarks are contained in the decision on dividend tax, etc. Already because none of the ultimate investors control the debt, there can be no question of limited tax liability.

The representative's view is that the Luxembourg parent company must be considered the rightful owner and the rightful recipient of the interest, but if the Luxembourg company were not to be considered the rightful owner, the fiction must be fully implemented so that the ultimate owners are both rightful owners and rightful owners. income recipients of the interest, and that the question of whether the control conditions in the Corporation Tax Act § 2, paragraph. 1, letter d, is met, must be determined according to the circumstances of the ultimate owners.

Thus, should the National Tax Court be of the opinion that the Luxembourg parent company is not the rightful owner and that there is at the same time controlled debt, it will be necessary to look at the circumstances of the ultimate owners.

It is further argued that this is an aggravating change of practice with retroactive effect, and that such a tightening of practice cannot legally be implemented without prior notice of the new views which SKAT will consider crucial for this new practice, cf. thus e.g. UfR 1983.8 H.

It is SKAT's interpretation of what is meant by "beneficial owner" that has changed, just as SKAT has changed its perception of when a foreign company is entitled to tax exemption under the Interest / Royalties Directive.

SKAT's interpretation of the term "beneficial owner" is the same in relation to dividends and interest, and it is therefore irrelevant to the complainant's view that the rules on limited tax liability on interest were first introduced by Act no. 221 of 31/3 2004.

Regarding the issue of liability, reference is made to the fact that section 69 of the Withholding Tax Act states that a company that pays interest is liable for the lack of withholding, unless the company proves that no "negligence" has been shown.

Considering that H1 A / S 'understanding of the relevant rules is in accordance with the administrative practice that the tax authorities have followed uninterruptedly over the years, and that SKAT itself has been extremely doubtful as to whether there were grounds for raising in this case, it is obvious that H1 A / S has not shown negligence. It is thus - already for this reason - impossible to collect interest tax from H1 A / S.

**The National Tax Court's remarks and justification**

H1 A / S has paid dividends to the parent company, G4 Sarl On the same day, almost the entire distributing amount was lent via a concertable loan and a non-convertible loan back to H1 A / S, which also made an increase on the same day. of the share capital in G2 A / S by payment of x DKK. G2 A / S has used the amount to purchase G3 A / S. At the end of the year, the convertible loan with accrued interest was converted into share capital in H1 A / S. Mid next year is also the non-convertible loan. with accrued interest converted to share capital in H1A / S. The company G4 Sarl, Luxembourg, is owned by G1 Sarl, Luxembourg, which in turn is owned by a number of private equity funds, as the immediate investors in it are unknown.

According to the Corporation Tax Act, section 2, subsection 1, letter d, companies etc. domiciled abroad are in principle limited taxpayers of interest and capital gains from sources in this country regarding debt to foreign legal persons as mentioned in the Tax Control Act § 3 B (controlled debt). The tax liability does not include interest if the taxation of interest is to be waived or reduced under Directive 2003/49 / EC on a common system of taxation applicable to interest and royalties paid between associates in different Member States, or under a double taxation agreement with the State receiving company, etc. is domiciled. By controlled debt is meant, cf. section 3 B of the current Tax Control Act, i.a. debt to foreign legal entities,

According to the double taxation agreement between Denmark and Luxembourg (Executive Order no. 95 of 23 September 1982), Article 11, para. For the purposes of paragraph 1, interest arising in a Contracting State paid to a person in the other Contracting State may be taxed in that other State only if that person is the beneficial owner of the interest.

According to the Interest / Royalties Directive (Directive 2003/49 / EC), according to Article 1, it is a condition for the abolition of withholding tax on interest, etc., that the company in another Member State that receives interest, etc., is the rightful owner ("binificial"). owner "). This only applies if the paying company and the received company are associated as mentioned in the Directive (25% ownership).

In a previous ruling, which relates to withholding tax on the dividend to G4 Sarl, cf. the Corporation Tax Act, section 2, subsection 1, letter c, the company upheld that the dividend was not covered by the limited tax liability under the provision. Following the decision, G4 Sarl was considered the rightful owner of the dividend under the nature of the double taxation agreement. 10 pcs. The decision emphasized that the dividend was not re-channeled to the company's parent company, G1 Sarl, or its shareholders, but was instead used for lending to H1 A / S, and from there to a capital increase in H1 A / S 'Danish subsidiary. with a view to this company's acquisition of G3 A / S.

As the interest in question after the debt conversions has also not been re-channeled to G4 Sarl's parent company or its shareholders, G4 Sarl is also not considered a "flow-through company" in relation to the interest rates. G4 Sarl is hereby also considered the rightful owner of the interest, cf. the double taxation agreement art. 11, para. 1.

Hereafter, and since the concept of rightful owner within the meaning of the directive here must be understood in the same way as in the double taxation agreement, G4 Sarl is covered by both the collective agreement and the directive's advantages on the abolition of interest tax, cf. 1, letter d.

H1 A / S has thus not been obliged to withhold withholding tax on the interest, cf. section 65 D of the Withholding Tax Act.