# Exhibit 77

LR2000.99/00-4330-00098    SKM2001.76.LR    TfS 2001, 146

# Ligningsrådets afgørelse af 12. december 2000, j.nr. 99/00-4330-00098

TfS 2001, 146

SKM2001.76.LR

### Aktielån efter Finansrådets standardvilkår, udbytte, baisse forretning, aktieavance, lån til eje

I en bindende forhåndsbesked svarede Ligningsrådet på spørgsmål vedrørende den skattemæssige behandling af aktielåneordninger etableret efter Finansrådets standardvilkår. Standardvilkårene var tidligere forelagt Ligningsrådet ved bindende forhåndsbesked offentliggjort i TfS 1999.408. De nu rejste spørgsmål vedrørte den skattemæssige behandling af låntager samt beskatningen af eventuelle udbytter fra det børsnoterede selskab, hvis aktier indgik i låneordningen. Ligningsrådet besvarede spørgsmålene således, at låntager i et aktielån skal avancebeskattes af en eventuel opnået gevinst i låneperioden. Udbytter udbetalt til låntager beskattes hos denne som udbytte, hvorimod långiver i det omfang denne i medfør af standardvilkårene modtager refusioner af udbytte fra låntager indkomstbeskattes.

---

### Skatterådet - Ligningsrådet

*Spørgsmål*

. Det ønskes oplyst, om en låntager, der er en fysisk person eller et selskab, som ikke er omfattet af aktieavancebeskatningslovens § 3, skal medregne henholdsvis over- og underskud, der fremkommer ved salg af aktier, som denne har lånt i henhold til en aktielåneordning, som beskrevet i Ligningsrådets afgørelse offentliggjort i TfS 1999.408, som en del af den skattepligtige indkomst ?

2. Beskattes udbytte, som låntager efter reglerne i standardvilkårenes punkt 8 (udbytte, der betales til låntager i låneperioden, og som denne afregner til långiver) skal betale til långiver, som almindelig skattepligtig indkomst hos långiver ?

3. Har låntager fradrag for det beløb, der betales til långiver efter reglerne i standardvilkårenes pkt. 8?

4. Beskattes låntager af det udbytte, han modtager i låneperioden, som udbytteindkomst og ikke som almindelig indkomst?

5. Har det betydning for besvarelsen af spørgsmål 2 og 3, om låntager besidder aktierne på det tidspunkt, hvor der betales udbytte?

*Svar*

Ad. spørgsmål 1

Se sagsfremstilling og begrundelse.

Ad. spørgsmål 2

Långiver beskattes som almindelig indkomst af de overførsler han modtager fra låntager i hele udlånsperioden. Se sagsfremstilling og begrundelse.

Ad. spørgsmål 3

Låntager har kun fradrag for overførte udbytter i det omfang udgiften til overførslerne opfylder de almindelige betingelser for at være driftsomkostninger for låntager. Se sagsfremstilling og begrundelse.

Ad. spørgsmål 4

I det omfang låntager modtager udbytte fra det selskab de udlånte aktier vedrører beskattes dette som udbytte. Se sagsfremstilling og begrundelse.

Ad. spørgsmål 5

Nej, se besvarelse af spørgsmål 2 og 3.

*Sagsfremstilling og begrundelse*

Forespørgeren skitserede i sin anmodning et aktielånearrangement følgende de standardvilkår som Finansrådet havde fremlagt for Ligningsrådet i forbindelse med bindende forhåndsbesked offentliggjort i TfS 1999.408.

I det skitserede arrangement udlåner långiver i en periode en generisk bestemt ydelse - her aktier i et børsnoteret selskab - til låntager. Låntager har i perioden ret til at råde over aktierne som ejer. Låntager er forpligtet til ved låneforholdets ophør, at tilbagelevere en ydelse, der svarer til det lånte i mængde og pålydende værdi. Dvs. at låntager i låneperioden har ret til at realisere det lånte, for ved låneforholdets ophør at købe og tilbagelevere aktier i samme selskab til samme pålydende værdi. Forholdet må karakteriseres som et lån til eje.

Ligningsrådet tog i TfS 1999.408 stilling til långivers forhold i et lånearrangement som det beskrevne. Det fremgik af Ligningsrådets afgørelse, at långiver ikke skattemæssigt anses for at have realiseret den udlånte aktiebeholdning. Kun såfremt der ikke sker fuld indfrielse med aktier af samme type og mængde, anses långiver for at have afstået den del af de lånte aktier, som ikke returneres i følge aftalen.

Forespørgeren, i den ansøgning der nu forelå for Ligningsrådet, anførte, at der ikke ved anvendelsen af aktielåneordningen opstår et fuldmagtsforhold mellem långiver og låntager, der bevirker, at den indtægt/det tab, der fremkommer ved låntagers dispositioner i forhold til tredjemand, beskattes hos långiver, fordi låntager handler på långivers vegne. Som følge heraf, og da der som omtalt foreligger et udlån, mente forespørgeren, at der ikke i skattemæssig henseende kunne statueres et salg af aktier hos långiver. En senere tilbagelevering af de lånte aktier kan derfor heller ikke udløse skattemæssige konsekvenser for långiver, da låneforholdet blot herved ville blive bragt til ophør.

Vedrørende den skattemæssige behandling af låntager bemærkede forespørgeren, at Ligningsrådet i TfS 1999.408 tilkendegav, at aktielåneordningen for så vidt angår disponeringen over aktier mellem långiver og låntager ikke var realisation. Forespørgeren mente derfor, at der ikke kan opgøres en anskaffelsessum for de konkrete aktier, som låntager sælger til tredjemand. Ligeledes kan der ikke opgøres en afståelsessum for de konkrete aktier, som låntager erhverver fra tredjemand og tilbagesælger til långiver.

Låntagers dispositioner i forhold til tredjemand består således efter forespørgerens opfattelse af hhv. afståelse og erhvervelse af to forskellige aktieposter, hvor der for hver transaktion kun vil kunne opgøres enten en afståelses- eller en anskaffelsessum. Forespørgeren mente derfor ikke, aktieavancebeskatningslovens forudsætning om, at der for hver aktiepost kan opgøres en anskaffelsessum og en afståelsessum, er opfyldt, hvorfor disse regler ikke kan finde anvendelse. Det fremgår dog af den nævnte tidligere afgivne bindende forhåndsbesked, at låntager i de situationer, hvor långiver foretager dækningskøb i henhold til standardvilkårenes punkt 13.2, anses for at have erhvervet aktierne, og eventuel gevinst/tab beskattes efter reglerne i aktieavancebeskatningsloven.

Det var på denne baggrund forespørgerens opfattelse, at låntager, hvad enten der ville blive tale om et selskab eller en fysisk person, ikke skattemæssigt skal medregne den indtægt, der fremkommer ved, at låntager sælger aktierne til tredjemand (til kursværdien på dette tidspunkt) og senere erhverver aktier fra en anden tredjemand (formentlig til en anden kurs), ligesom der ikke er skattemæssigt fradrag for eventuelt tab, jf. statsskattelovens § 4, jf. § 5.

Forespørgeren anførte yderligere, at en gevinst dog skal medregnes til den skattepligtige indkomst, ligesom der er skattemæssigt fradrag for et eventuelt tab, såfremt der statueres spekulation.

Besidder låntager på et tidspunkt i låneperioden en post aktier i samme børsnoterede selskab udover dem, der indgår i aktielånet, mente forespørgeren, at disse skal holdes uden for opgørelsen af et eventuelt over- eller underskud vedrørende aktielånet.

Vedrørende spørgsmål 2 anførte forespørgeren, at standardvilkårenes punkt 4 medfører, at ejendomsretten overgår til låntager. Långiver ejer således ikke aktierne på det tidspunkt, hvor "udbyttet" bliver afregnet til långiver efter reglerne i standardvilkårenes punkt 4. Da långiver ikke ejer aktierne på afregningstidspunktet, mente forespørgeren, at "udbyttet" vil skulle beskattes hos långiver som almindelig indkomst og ikke som udbytte.

Vedrørende spørgsmål 3 anførte forespørgeren, at der i skatteretten gælder et nettoindkomstprincip, som medfører, at låntager har skattemæssigt fradrag for det "udbytte", der skal betales til långiver, efter standardvilkårenes punkt 8.

Forespørgeren var i forhold til spørgsmål 4 af den opfattelse, at der ville være tale om udbytte.

Mht. til spørgsmål 5 var det forespørgerens opfattelse, at det ingen betydning har for besvarelsen af 2 og 3, om låntager ejer aktierne på det tidspunkt, hvor der udbetales udbytte.

Told- og Skatteregionen udtalte bl.a, at låntager i det skitserede arrangement i låneperioden har ret til at råde over aktierne som ejer. Forpligtelsen består i, ved låneforholdets ophør, at tilbagelevere en ydelse, der svarer til det lånte i mængde og pålydende værdi. Det vil sige, at låntager i låneperioden har ret til at realisere det lånte, for ved låneforholdets ophør, at købe og tilbagelevere aktier i samme selskab til samme pålydende værdi.

Regionen var derfor ikke enig i forespørgerens synspunkt vedrørende beskatning af låntager. Regionen anførte, at låntager i skattemæssig henseende skal anses som erhverver af aktiekapitalen ved låneaftalens indgåelse, og at låntagers råden/disponeren over kapitalen, derfor kan medføre en skattepligtig indkomst. Afståelse af de lånte aktier skal således behandles efter reglerne i aktieavancebeskatningslovens § 2.

Regionen var endvidere uenig i forespørgerens synspunkt om, at der ikke kan fastsættes en anskaffelsessum, idet man ud fra den daglige gennemsnitskurs "Alle handler" vil kunne foretage en værdiansættelse af den udlånte aktiekapital. Denne kurs ville formentlig også skulle anvendes i tilfælde af en evt. erstatningsretlig opgørelse af det udlånte.

Kommunen udtalte bl.a., at det forventede transaktionsforløb i visse tilfælde måtte betragtes som en baisse-spekulation, dvs. en forretning, hvor der spekuleres i et faldende marked.

Kommunen var, som regionen, uenig med forespørgeren, når denne mente, at salg til tredjemand og efterfølgende køb måtte betragtes som to handler, hvor der i den første situation, salgssituationen, ikke findes nogen anskaffelsessum, og hvor der ved genanskaffelses- og tilbageleveringsforløbet ikke registreres nogen salgssum, hvorfor der efter forespørgerens opfattelse ikke overhovedet ville kunne opgøres en avance. Tab eller avance vil kunne opføres som differencen mellem salgs- og genanskaffelsespris.

Told og Skattestyrelsen udtalte at, det fremgik af standardvilkårenes punkt 4.1, at ejendomsretten til aktierne overgår til låntager. På baggrund af den indgåede aftale om lån til eje kan låntager frit råde over aktierne og herved også opnå en avance ved aktiepostens overdragelse til tredjemand. Låntager skal derfor beskattes efter reglerne i aktieavancebeskatningsloven.

Dette gælder således også for den eventuelle gevinst låntager kan opnå ved en baissespekulationsforretning (spekulation i aktiernes eventuelle kurstab), jf. Meddelelser fra Landsskatteretten 1966, nr. 13 samt TfS 1989, nr. 471.

I forbindelse med spørgsmål 2 var det styrelsens opfattelse, at långiver skal beskattes som personlig indkomst af udbytteoverførslerne, uanset om låntager besidder aktierne eller har afstået disse.

Mht. spørgsmål 3 og 4 var det styrelsens opfattelse, at låntager, i det omfang han modtager udbytte fra selskabet, skal udbyttebeskattes. Låntager har dog, såfremt almindelige betingelser herfor er opfyldt, mulighed for at fratrække udgift til refusioner til långiver i medfør af standardvilkårenes punkt 8 som en driftsomkostning.

Mht. spørgsmål 5 svarede Ligningsrådet, at det fremgik af svarene på spørgsmål 2 og 3, at det ingen betydning har om de lånte aktier videreoverdrages til tredjemand.

Ligningsrådet tilsluttede sig i det hele Told- og Skattestyrelsens indstilling og begrundelse.

| LR2000.99/00-4300-00098 | SKM2001.76.LR | TfS 2001, 146 |

The Assessment Council's Decision of December 12, 2000, J. No. 99 / 00-4330-00098

TfS 2001, 146

SKM2001.76.LR

**Share loans according to the Financial Council's standard conditions, dividends, bearish trading, equity gains, loan to own**

In a binding advance notice, the Assessment Council responded to the question concerning the tax consequential treatment of share loan schemes established according to the Financial Council's standard conditions. Previously, the standard conditions were presented to the Assessment Council with a binding advance notice published in TfS 1999.408. The problems now raised concerned the tax consequential treatment of borrowers and taxation of eventual dividends from the exchange-listed company, if the shares were part of the loan scheme. The Assessment Council replied to the questions such that borrowers of a share loan will be taxed on gains of a possible profit realized in the loan period. Dividends paid to borrowers are taxed to them as dividends, whereas the lender is taxed on income to the extent that they receive dividend refunds from the borrower pursuant to the standard conditions.

**Tax Council – Assessment Council**

**Questions**

1. Clarification is desired about whether a borrower who is a physical person or a company, which is not covered by the taxation of share gains act § 3, should count surplus and deficit, respectively, that results from sale of shares, that they have borrowed in relation to a share loan scheme, as described in the Assessment Council's decision disclosed in TfS 1999.408, as part of taxable income?

2. Will a dividend be taxed, which a borrower will pay to a lender according to the regulations in sentence 8 of the standard conditions (a dividend that is paid to a borrower in the loan period, and which he settles with a lender), as taxable income for the lender?

3. Does the borrower get a deduction for the amount that is paid to the lender according to the regulations of sentence 8 in the standard conditions?

4. Is the borrower taxed for the dividend he receives in the loan period as dividend income and not as general income?

5. Is it of significance for the response to questions 2 and 3 whether the borrower possesses the share at the time, when the dividend is paid?

*Responses*

To Question 1

See case presentation and justification.

To Question 2

The lender is taxed as general income on the transfers he receives from the borrower in the entire period of the loan.  See case presentation and justification.

To Question 3

The borrower only gets a deduction for transferred dividends to the extent the expense of the transfer fulfills the general conditions of operating costs for the borrower.  See case presentation and justification.

To Question 4

To the extent the borrower receives a dividend from the company the borrowed shares concern, it is taxed as a dividend.  See case presentation and justification.

To Question 5

No, see the response to questions 2 and 3.

*Case presentation and justification*

In the request, the inquirer outlined a share loan arrangement following the standard conditions that the Financial Council presented to the Assessment Council in connection with a binding advanced notice published in TfS 199.408.

In the arrangement outlined, a lender will lend a generically determined grant for a period of time – here shares in an exchange-listed company – to a borrower.  The borrower has a right of command over the shares as property for the given period.  The borrower is obligated to return the benefit, which corresponds to the borrowed item in quantity and face value, at the termination of the loan's conditions.  That means that the borrower has a right in the given period to realize the borrowed item to buy or return the shares in the same company at the same face value before the termination of the loan's conditions.  The loan's condition may be characterized as a loan to own.

In TfS 1999.408 the Assessment Council took the position on the lender's situation in a loan arrangement as that described.  From the Assessment Council's decision, it emerged that, for tax purposes, the lender is not considered to have used the loaned shareholding.  As far as a full redemption of shares of the same type and quantity does not occur, the lender is considered to have given up that part of the loaned shares that are not returned as a result of the agreement.

In the application now before the Assessment Council, the inquirer alleges that, in the application of the share loan scheme, there does not exist a proxy relationship between the lender and the borrower, which causes the gain/loss that arises from the borrower's arrangement with a third party to be taxed on the lender, as the borrower is acting on the lender's behalf.  As a consequence, and since there is a loan as mentioned, the inquirer is of the opinion that a sale of shares by the lender could not be established in regard to taxation.  A later return of the borrowed shares may therefore not call forth tax consequences for the lender since the loan condition would be brought to termination.

Concerning the treatment of the lender for tax purposes, the inquirer remarked that the Assessment Council, in TfS 1999.408, expressed that the loan share scheme, insofar as it concerns the arrangement of shares between the lender and the borrower, is not use.  The inquirer therefore was of the opinion that a purchase price for the concrete shares, which the borrower sells to a third party, cannot be calculated.  Likewise, a relinquishment price for the concrete shares, which the borrower acquires from a third party and are sold back to the lender cannot be calculated.

According to the inquirer's understanding, the borrower's arrangement in relation to a third party consists of relinquishment and acquisition, respectively, of two different shareholdings, where for each transaction either a relinquishment price or a purchase price could be calculated.  Therefore, the inquirer was not of the opinion that the provision of the capital gains tax act is fulfilled, i.e. that a relinquishment price and purchase price can be calculated for each shareholding, so these regulations cannot be applied.  However, it emerges from the above-mentioned binding advance notice that, in those situations where the lender makes cover purchases according to sentence 13.2 of the standard conditions, the borrower is considered to have acquired the shares and the eventual gain/loss is taxed according to the regulations in the capital gains tax act.

With this background, it was the inquirer's understanding that the borrower, whether a company or a physical person, will not include for tax purposes the gain that is realized from the borrower selling the shares to a third party (at the market value at the time) and later acquire shares from another third party (presumably at another rate), likewise there will be no deduction for tax purposes, cf. national tax act § 4, § 5.

The inquirer further alleged that a gain should be included in taxable income, likewise a deduction for a possible loss for tax purposes, if speculation is established.

If the borrower, at a time during the loan period, possesses a holding of shares in the same exchange-listed company beyond those which are a concern of the share loan, the inquirer was of the opinion that these should be held outside of the calculation of a possible surplus or deficit regarding the share loan.

Concerning question 2, the inquirer alleged that the standard conditions' point 4 implies that the property right transfers to the borrower.  The lender thus does not own the shares at the time when "the dividend" is settled to the lender according to the regulations in the standard conditions' point 4.  Since the lender does not own the shares at the time of the settlement, the inquirer was of the opinion that "the dividend" should be taxed as general income and not as dividends.

Concerning question 3, the inquirer alleged that a net income principle applies in the tax law which implies that the borrower has a deduction for tax purposes for the "dividend" that will be paid to the lender according to the standard conditions' point 8.

In relation to question 4, the inquirer was of the understanding that it deals with dividends.

Concerning question 5, it was the inquirer's understanding that for the response 2 and 3 it has no significance whether the borrower owns the shares at the time a dividend is paid.

The Customs and Tax Region also stated that the borrower in the outlined arrangement in the loan period has a right of command over the shares as owner.  The obligation consists of returning a grant which corresponds to borrowed quantity and face value at the termination of the condition.  That means that the borrower has a right to use the loaned item to buy and return shares in the same company at the same face value before the termination of the loan condition.

Therefore, the Region was not in agreement with the inquirer's point of view concerning taxing the borrower.  The Region stated that, regarding taxation, the borrower should be considered the acquirer of the share capital upon conclusion of the loan agreement and that the borrower's command/disposition over the capital may therefore imply taxable income.  Relinquishment of the borrowed shares will thus be treated according to the regulations in the capital gains tax act § 2.

Furthermore, the Region disagreed with the inquirer's point of view that a purchase price cannot be established as a valuation of the borrowed share capital may be made from the daily average of "all trades".  This rate will also presumably be used in the case of possible tort law inventory of the loaned item.

The Municipality also stated that the expected course of the transaction may be regarded as a bear speculation in certain cases, i.e. a transaction that is a speculation on a falling market.

The Municipality, as well as the Region, were not in agreement with the inquirer, when they stated that sale to a third party and subsequent purchase should not be regards as two trades, where in the first situation, the sale, there is no purchase price, and where no sale amount is registered in the course of reacquisition and return, and so a gain could not be calculated at all according the inquirer's understanding.  Loss or gain could be calculated as the difference between the sale and reacquisition price.

The Customs and Tax Board stated that it proceeded from the standard conditions point 4.1 that the ownership right to the share's transfers to the borrower.  In the context of the concluded agreement of a loan to own, the borrower may freely use the shares and thereby also obtain a gain upon the shareholding's transfer to a third party.  The borrower will then be taxed according to the regulations in the capital gains tax act.

This applies also to the possible gain a borrower may obtain with a bearish trade (speculation in the shares' possible loss of value), cf. Notices of the High Tax Court 1966, no. 13 and TfS 1989, no.471.

In connection with question 2 it was the board's understanding that the lender will be taxed as personal income on the dividend carry over, regardless of whether the borrower possess the shares or has relinquished them.

Concerning question 3 and 4, it was the board's understanding that a borrower, to the extent he receives a dividend from the company, shall be taxed on dividends.  However, the borrower has, so far as the general conditions are fulfilled, a possibility of deducting the cost of remunerations to the lender pursuant to the standard conditions' point 8 as an operating cost.

Concerning question 5, the Assessment Council replied that it emerged from the replies to questions 2 and 3 that it has no significance whether the borrowed shares are transferred to a third party.

The Assessment Council approved the whole Custom and Tax Board's position and foundation.

Case 1:18-md-02865-LAK    Document 801-77    Filed 05/12/22    Page 10 of 10



100 Park Avenue, 16th Fl

New York, NY 10017

www.consortra.com

STATE of NEW YORK    )
                     )            ss:
COUNTY of NEW YORK   )

### CERTIFICATE OF ACCURACY

This is to certify that the attached document, "TfS 2001.146.LR" - originally written in Danish, -- is, to the best of our knowledge and belief, a true, accurate, and complete translation into English.

Dated: 4/14/2022

_____

Heather Cameron
Projects Manager
Consortra Translations

Sworn to and signed before ME
This 14th day of April, 2022

_____
Notary Public

JAMES G MAMERA
Notary Public - State of New York
No. 01MA6157195
Qualified in New York County
My Commission Expires Dec. 4, 2022

Your legal translation partner