# Exhibit 30



## SKATrEMINISTERIET

**Revisionsrapport**

**Intern Revision**
Revisionscenter København

internrevision@skat.dk

10. maj 2010

J.nr. 09-172022
Plan nr.: 09-203
Finansår: 2009

Departementschef
Peter Loft

*Last*
*18. 5. 10*

# Undersøgelse af Provenuet fra kildebeskatningen af udlændinge – udbytteskat

## 1.    Indledning

*Baggrunden for undersøgelsen*

Skatteministeriet har i forbindelse med et forsøg på at opgøre provenuet fra kildebeskatningen af valutariske udlændinges udbytter fra danske aktieselskaber og investeringsforeninger stødt på den problemstilling, at det ikke kan udelukkes, at der refunderes for meget kildeskat via den såkaldte refusionsordning.

Ca. 75.000 danske selskaber udlodder hvert år udbytte, og den årlige udlodning har været op til ca. 300 milliarder ifølge modtagne angivelser.

Intern Revision har den 21. oktober 2009 fået en henvendelse fra Departementschefen om en revisionsmæssig undersøgelse vedrørende refusionsordningen.

*Kort om udbytteskat*

Når et selskab udlodder udbytte, skal udbytteskat behandles efter reglerne i Kildeskattelovens §§ 65-67.

Efter kildeskattelovens § 66, stk. 2 skal selskaber, der vedtager udbetaling af udbytte meddele oplysning om vedtagelsen (angivelse). Meddelelsen skal indgives senest i den følgende måned efter nævnte vedtagelse af udbytteudlodning samtidig med udløbet af selskabets frist for indberetning til indkomstregisteret af indeholdt A-skat og arbejdsmarkedsbidrag.

Efter skattekontrolloven § 9B, stk. 1 og 2 og § 10A skal selskaber og foreninger m.v., som har pligt til at indeholde udbytteskat i henhold til kildeskattelovens § 65, hvert år foretage indberetning af udbyttemodtagere, hvortil der er udloddet udbytte i det forudgående kalenderår.

I de tilfælde, hvor et dansk børsnoteret selskab udlodder udbytte til aktionærerne, administreres udbytteskatten og reduktion af Værdipapircentralen (VP). Selskabet angiver på baggrund af modtagne oplysninger fra VP. VP fremsender elek-

Confidential Pursuant to Protective Order

tronisk indberetning til SKAT den 20. i januar året efter udlodningsåret.

Unoterede selskaber angiver og indberetter selv udloddet udbytte til SKAT. Angivelse af udbytte skal ske senest den 10. i den efterfølgende måned efter vedtagelsen af udbyttet og indberetning til SKAT den 20. januar året efter udlodningsåret.

Hvor modtageren af udbyttet er omfattet af kildeskattelovens § 2, stk. 1 (begrænset skattepligt) kan der ansøges om at få refunderet skatten ned til satsen i dobbeltbeskatningsoverenskomsten.

## 2.    Revisionsområde

Undersøgelsen har omfattet en gennemgang af hvordan opgørelsen af nettoprovenuet fra Kildebeskatningen af udlændinge understøttes af relevante love, systemer samt data- og statistisk materiale.

Undersøgelsen blev gennemført i perioden oktober 2009 til april 2010.

## 3.    Afgrænsning

Undersøgelsen har omfattet udbytter udloddet af selskaber og investeringsforeninger i Danmark, som omfattet af Ligningslovens § 16A.

Indeholdesfri udlodninger til udenlandske moderselskaber indgår ikke i denne undersøgelse.

Undersøgelse har ligeledes ikke omfattet maskeret udbytte eksempelvis i forbindelse med goder/bolig mv.

## 4.    Revisionsmål

Målet med den revisionsmæssige undersøgelse har været, at undersøge om:

- Der kan opgøres et korrekt nettoprovenu fra refusionsordningen ud fra de indberetninger, der indsendes til SKAT om udbytter,
- SKAT mangler indberetninger/oplysninger til at kunne opgøre et korrekt nettoprovenu fra refusionsordningen,
- Forretningsprocesserne til opkrævning af udbytteskat er dokumenteret og kendte,
- Regnskab og IT-systemer i tilstrækkelig grad understøtter en korrekt opgørelse af nettoprovenu fra refusionsordningen.

Confidential Pursuant to Protective Order                    SKAT_MDL_001_00281059

## 5.    Vurderingskriterier

Undersøgelsen omfattede følgende vurderingskriterier:

- Lovbekendtgørelse 2009-03-11 nr. 176 om påligningen af indkomstskat til staten (ligningsloven),
- Lovbekendtgørelse 2005-11-14 nr. 1086 om Kildeskatteloven,
- Bekendtgørelse 2009-12-11 nr. 1247 om kildeskat (kildeskattebekendtgørelsen)
- Lovbekendtgørelse 2009-10-26 nr. 1001 om indkomstbeskatning af aktieselskaber mv. (selskabsskatteloven),
- Lovbekendtgørelse 2005-11-24 nr. 1126 om Skattekontrolloven,
- Dobbeltbeskatningsoverenskomsterne,
- Cirkulære nr. 63 af 1993-04-28 om reduktion af udbytteskat i henhold til dobbeltbeskatningsoverenskomster (VP-ordningen).

## 6.    Revisionsmetode

Revisionen er foretaget ved hjælp af møder og interviews med Skatteministeriet Jura og Samfundsøkonomi, det daværende Hovedcenter, Proces & Digitalisering – nu Borger og Virksomhed samt Midtjylland, Regnskab.

Endvidere er der foretaget indsamling, gennemgang og vurdering af relevant materiale i form af interne beskrivelser, vejledninger og forretningsgange.

Undersøgelsen er gennemført af Jens Lundgaard, Tina Laustsen, Linda Severinsen og Bo Daugaard.

## 7.    Iagttagelser

### 7.1    Organisering og ansvarsplacering af opgaven

Ansvaret for SKATs proces til håndtering af udbyttebeskatning deles af flere procesejere. Der er ikke defineret et overordnet ansvar for hele processen.

Pr. 1. oktober 2006 blev der i Skattecenter Ballerup oprettet et kompetencecenter vedrørende udbytte- og royaltyskat. Pr. 1. januar 2009 blev kompetencecentret organisatorisk flyttet til Midtjylland, Regnskab, i en afdeling benævnt Regnskab 2.

Ifølge intern meddelelse af 21. november 2006 (gældende til 2. november 2009) er det kompetencecentrets arbejdsopgaver, at taste blanketter vedrørende indberetning og angivelse, foretage rykkerprocedure vedrørende manglende indberetninger og angivelse, behandling af ansøgninger om refusion, attestation af skattepligt for danskere med udenlandske aktier, bogholderiopgaven vedrørende udbytte samt kontrol og afstemning af betaling og angivelse mv.

Confidential Pursuant to Protective Order                    SKAT_MDL_001_00281060

Regnskab 2 har oplyst, at det ikke ligger indenfor deres arbejdsområde at udføre egentlig kontrol omkring udbytteindberetningerne. Regnskab 2 udfører kun kontrol med, at der er angivet det udbytte, som er vedtaget i det enkelte selskab. Al anden form for kontrol omkring udbyttebeskatning ligger i Indsats.
Intern Revision har modtaget en procesbeskrivelse for udbytteskat. Intern Revision har i samarbejde med Regnskab 2 opdateret denne (se bilag 1).

Borger og Virksomhed er procesejer for udbytteangivelserne og de obligatoriske indberetninger om udbyttemodtagere. For udbytteangivelserne har der været en navngiven procesejer, men det er først ultimo 2009, at der er udpeget en navngiven procesejer for indberetningerne af udbytteskat. Årsagen hertil er, at der ikke har været fokus på området tidligere.

## 7.2   Indberetning og angivelse af udbytteskat

Der modtages årligt op til 150.000 blanketter, der tastes manuelt ind i systemerne. TastSelv blev indført 1. januar 2004 og brugen heraf er kun langsomt blevet forøget. Der er p.t. ca. 20 % af selskaberne, som anvender TastSelv.

Det udloddende selskab skal angive og betale udbytteskat i måneden efter vedtagelsen af udbytte, mens indberetning af udbyttemodtagere skal ske senest den 20. januar det efterfølgende år, jf. skattekontrollovens § 9.

### 7.2.1  Børsnoterede selskaber

Børsnoterede selskaber/investeringsforeninger angiver udbytte på baggrund af afstemningslister fra VP. Indberetning af udbyttemodtagere foretages elektronisk af VP på vegne af det kontoførende pengeinstitut.

SKAT har en aftale med VP og de kontoførende pengeinstitutter om at danske børsnoterede aktier i depot i Danmark, som ejes af skattepligtige personer i 12 lande, kan få indeholdt den efter dobbeltbeskatningen relevante udbytteskat (nettoafregning). Denne ordning kaldes VP-ordningen.

Ordningen sikrer, at der af udbytte til udlændinge alene indeholdes udbytteskat med den sats, udbyttet kan beskattes med i Danmark efter den relevante dobbeltbeskatningsoverenskomst. Dermed opstår der ikke en refusionssag.

Forudsætninger for at deltage i VP-ordningen er, at såvel aktionær som depotfører har valgt at gå med i ordningen, at de udbyttegivende aktier er indlagt i et depot i et dansk pengeinstitut i ejerens eget navn, ejeren afgiver dokumentation til pengeinstituttet om sine bopæls- og skatteforhold, og at dokumentationen skal fornys hver 5. år eller ved flytning til et andet land.

Udenlandske pengeinstitutter uden selvstændig konto i VP samarbejder med et (dansk) pengeinstitut, der har konto i VP for at kunne håndtere danske aktier/investeringsbeviser. Det udenlandske pengeinstitut opretter en konto med tilhørende depot i et dansk pengeinstitut, og placerer de danske aktier/investerings-

Confidential Pursuant to Protective Order

SKAT_MDL_001_00281061

beviser, som det udenlandske pengeinstituts kunder ejer, i dette depot, i det udenlandske pengeinstituts eget navn. Dette depot betegnes omnibusdepot (se bilag 2 – beskrivelse af omnibusdepoter).

Omnibusdepoter fremtræder som ejet af det udenlandske pengeinstitut og kan derfor ikke være med i VP-ordningen. Det betyder, at der skal indeholdes udbytteskat efter hovedreglen, p.t. 28 %.

En række danske investeringsforeninger og andre store investorer har desuden udlagt administrationen af danske aktier/investeringsbeviser til amerikanske og andre udenlandske banker. I dette tilfælde er der ikke tale om et ægte omnibusdepot, men et nominee-depot, som efter det oplyste kun indeholder værdipapirer tilhørende én investor, hvis danske skattestatus er kendt. Men da depotet fremtræder som ejet af det udenlandske pengeinstitut, kan det ikke være med i VP-ordningen. Der skal derfor indeholdes 28 % udbytteskat, som investorerne må søge refunderet.

### 7.2.2  Unoterede selskaber

Unoterede selskaber angiver og indberetter selv udbytte til aktionærerne ved at indsende udbytteindberetning til SKAT eller ved anvendelse af TastSelv. Indberetningen af udbyttemodtagere foretages ofte samtidig med angivelsen, selvom indberetning af udbyttemodtagere først skal ske senest den 20. januar det efterfølgende år, jf. skattekontrollovens § 9.

VP har udvidet sit forretningsområde til også at administrere unoterede selskaber. Fra 2010 skal VP også indberette udbyttemodtagere for disse selskaber.

### 7.2.3  Efterfølgende korrektioner

Regnskab 2 har oplysninger fra deres samarbejde med bankerne om, at de kontoførende institutter foretager korrektioner af de enkelte indberetninger af udbyttemodtagere som følge af fejl. Disse korrektioner kender det udloddende selskab ikke, idet det kontoførende institut ikke giver disse oplysninger videre. Det udloddende selskab har derfor ikke mulighed for at indsende korrigeret angivelse. Regnskab 2 har oplyst, at de ikke får viden om rettelser og ikke har modtaget korrigerede angivelser.

De kontoførende institutter retter fejlene via korrigeret indberetning. Regnskab 2 har oplyst, at hvis et kontoførende institut efter udlodning retter grundlaget for udlodningen får SKAT oftest ikke oplysning herom og afregningen ændres ikke. Det betyder, at der i disse situationer er forskel på det angivne og det indberettede. Såfremt det kontoførende institut opdager og retter fejl, er det uden økonomisk betydning for det udloddende selskab og SKAT.

Når det kontoførende institut retter fejl afregnes for lidt indeholdt eller for meget indeholdt udbytteskat. Dette beløb debiteres/krediteres bankkundens konto og afregnes til SKAT via regnearksordningen. Som følge heraf vil det økonomiske

Confidential Pursuant to Protective Order                SKAT_MDL_001_00281062

mellemværende mellem kunde og SKAT være korrekt opgjort.

Det udloddende selskab, som har afregnet udbytteskat på baggrund af oplysninger fra VP har ikke modtaget information om foretagne rettelse i det kontoførende pengeinstitut. Regulering af udbytteskat investor og SKAT i mellem sker udenom det udloddende selskab. Det udloddende selskabs afregning af udbytte og indeholdt udbytteskat påvirkes derfor ikke, idet det udloddende selskabs udbytte før afregning af udbytteskat fortsat er uændret. Resultatet er udelukkende, at det udloddende selskabs angivelse ikke stemmer overens med indberetningen.

### 7.2.4 Afstemninger mellem angivelse og indberetning

Der er ingen automatiske afstemninger i SKATs systemer mellem angivelser og indberetninger. Der foretages heller ikke manuelle afstemninger.

Årligt gennemføres der en rykning på baggrund af en samkøring mellem det udloddende selskabs selvangivelses felt 37 (udloddet udbytte ifølge regnskabet) og de indgivne udbytteangivelser. Regnskab 2 har oplyst, at mangler selskabets udbytteangivelse rykkes selskabet. Såfremt der er difference foretages intet.

For 2008 udbyttekørslen var startdifferencen 34 milliarder, hvor størstedelen ifølge Regnskab 2 formentlig er udlodninger datter/moder-selskaber og fejlagtigt indkomstår i TastSelv.

Regnskab 2 har oplyst, at der udsendes rykkerskrivelser til de selskaber, som ikke har angivet udbytte.

Det udloddende selskab angiver udbytteskat i måneden efter vedtagelsen af udbytte, mens indberetning af udbyttemodtagere skal ske senest den 20. januar det efterfølgende år (se bilag 3 – tidslinie over udbytteskat). Dette betyder, at der er en stor tidsforskel på, hvornår de forskellige oplysninger er SKAT i hænde, hvilket gør at en eventuel afstemning mellem det angivne og det indberettede først kan ske op til et år efter angivelse er modtaget. Den udarbejde tidslinie er konfereret og godkendt både af Regnskab 2 samt Borger og Virksomhed.

Regnskab 2 har i april 2010 foretaget en afstemning mellem VPs oplysninger til de udloddende selskaber og indberetningen til Skat vedrørende C20-indexets oplysning om udloddet udbytte udloddet i 2009 (de 20 mest omsatte aktier på Københavns Fondsbørs). 9 af C20-indexets selskaber har udloddet og indgår i afstemningen.

Afstemningen er foretaget på grundlag af de i 3S angivne udbytter med reduceret udbytteskat ifølge dobbeltbeskatningsoverenskomst og de løbende indberetninger fra VP.

Afstemningen for de 9 C20-selskaber viser, at 1 selskab stemmer, og at 8 selskaber ikke stemmer.

Confidential Pursuant to Protective Order

3 selskaber fremstår uden indberetning af udbyttemodtager omfattet af VP-ordningen uagtet de 3 selskaber har oplyst udlodninger til aktionærer i VP-ordningen på kr. 5.202.583.

Regnskab 2 har oplyst, at de øvrige 5 selskaber udviser mindre differencer, som må tilskrives, at der er ændret i tallene i tiden mellem udarbejdelse af afstemningsliste og indberetning af de aktionærer, som indgår i tallet.

Samlet set er det ikke muligt, at efterforske differencerne, da der mangler revisionsspor om hvilket kontoførende pengeinstitut aktien er i depot.

Borger og Virksomhed er af den opfattelse, at det på tværs af systemerne er muligt at lave udsøgninger, således at en tilnærmelsesvis afstemning kan finde sted.

Det er Regnskab 2's opfattelse, at afstemning mellem angivelse og indberetning skal ske ved at "vende processen om", således at angivelse og indberetning skal ske samtidig (fremrykning af indberetningspligten). Dermed kan der indføres automatisk afstemning. Endvidere skal VP/pengeinstitutterne afstå fra, at rette når optælling (afstemningslister) er udarbejdet. Eventuelle efterfølgende rettelser skal foretages i samarbejde med SKAT.

En fremrykning af indberetningspligten kræver, at Skatteministeren benytter sin bemyndigelse i Skattekontrollovens § 9 A, stk. 5 til ændring af fristerne for indberetning af udbyttemodtagere.

### 7.3   Refusion af indeholdt skat

Refusioner knytter sig primært til ejere af børsnoterede aktier og investeringsbeviser, der ikke er omfattet af VP-ordningen.

Er aktieejer ikke fuldt skattepligtig til Danmark, kan der, hvis der er en dobbeltbeskatningsoverenskomst (DBO) med det land, hvori der er skattepligt, søges om refusion efter den gældende DBO. Refusion er en tilbagesøgning af for meget indeholdt udbytteskat, og dermed en ændring af det først angivne og indberettede.

### 7.3.1 Anmodning om refusion

Udbyttenota sendes til aktionæren få dage efter, det er vedtaget, at der skal udloddes udbytte. Når aktionæren har modtaget udbyttenotaen, kan der anmodes om refusion. Refusioner sker ved fremsendelse af blanket (06.003) og kopi af udbyttenota. Blanketten skal være stemplet af den udenlandske skattemyndighed i det land, aktionæren er skattepligtig til.

Efter rentecirkulæret skal SKAT tilbagebetale refusionen inden 1 måned efter kravets fremsættelse for at undgå rentebetaling. Imidlertid kan angivelses- og betalingsfristen medføre, at der kan gå op til henholdsvis 40 og 60 dage fra generalforsamlingen til betalingen skal ske. Derfor kan en hurtig anmodning om refu-

Confidential Pursuant to Protective Order

sion bevirke tilbagebetaling af udbytteskat til aktionærer, inden den indeholdte udbytteskat er angivet og betalt. Regnskab 2 berosætter dog ofte refusionssagerne indtil, der er sket angivelse og/eller en betaling fra selskabet. Regnskab 2 har oplyst, at problemet kan løses ved at angivelse og indberetning foretages samtidig (fremrykning af indberetningspligten).

Regnskab 2 udfører ikke kontrol af, om den pågældende investor reelt er aktionær i det pågældende selskab, eller om den pågældende investor reelt er skattepligtig til det pågældende udland. Blanketten gennemses af Regnskab 2 for at kontrollere, om alle oplysninger er med. Herefter udbetales refusionen.

Anvendelsen af Omnibusdepoter betyder, at der udskrives flere udbyttenotaer (swift-meddelelser) for den enkelte aktie. Det er Regnskab 2s opfattelse, at denne problemstilling besværliggør en kontrol af, hvorvidt der tilbagesøges udbytteskat mere end en gang pr. aktie.

Omnibusdepoter og nominee depoter (depot hvor de deponerede aktier ejes af andre end den registrerede depotindehaver) medfører desuden, at der ikke er kendskab til de reelle ejere af aktierne, hvorfor refusion udbetales uden dokumentation for ejerskabet og den faktiske udlodning.

Regnskab 2 har oplyst, at refusioner indtastes i 3S, med oplysning om navn, adresse/bankkonto, beløb, udloddende selskab (CVR), bundtnr. (systemjournal og revisionsspor). Bundnummeret gør det muligt at følge sporet fra SAP38 tilbage til 3S og de(n) fysiske blanket(ter) i Regnskab 2's arkiv.

Blanketter arkiveres fysisk i Regnskab 2's arkiv i de tastede bundter. Der oprettes ingen journalsager.

### 7.3.2 Regnearksordningen

For at reducere SKATs ressourceforbrug i forbindelse med anmodning om refusion, er der indgået en aftale mellem SKAT, Danske Bank, Nordea, SEB og Amagerbanken om en regnearksordning. Ved denne ordning indsender bankerne regneark udvisende hvilke udenlandske kunder, der har fået indeholdt udbytteskat med for høj sats i forhold til dobbeltbeskatningsaftalen mellem Danmark og det pågældende udland. For hver kunde oplyses identitet, aktie, udbyttes størrelse og den ønskede reduktion i udbytteskatten. Der sker ingen registrering af refusion i 3S.

Regnearket arkiveres elektronisk på H-drevet på det udloddende selskab samt udskrives og arkiveres fysisk med bilag i Regnskab 2.

### 7.3.3 Bogføring og udbetaling af refusion

Ved modtagelse hos Regnskab 2 tastes blanketten i 3S på de relevante år. På grundlag heraf dannes i 3S en udbetalingsrapport.

Confidential Pursuant to Protective Order                    SKAT_MDL_001_00281065

Udbetalingsrapporten redigeres efter den enkelte indsenders ønsker eller SKATs valg af bundtning af flere refusionsanmodninger.

Alle refusioner bogføres manuelt i SAP 38.

Hvis der er flere udbetalinger til samme investor eller pengeinstitut bogføres refusionerne som ét beløb til udbetaling via SAP 38. Vurdering af hensigtsmæssigheden i at slå beløb sammen og underretningen til pengeinstituttet foretages af den, som behandler refusionsanmodningen.

Anmodning om refusion kan vedrøre udbytte for flere år, og vil i dette tilfælde blive bogført samlet i SAP38 på udbetalingsåret. Udbytte kan refunderes i op til 20 år efter indeholdelse af kildeskatten. Fra og med 2011 ændres dette til 3 år.

### 7.4    IT-understøttelse af opgaven

Til brug for udbytteskatteadministrationen benyttes et specielt modul i selskabsskattesystemet 3S. I 3S tastes angivelse for alle selskaber, indberetning for unoterede selskaber og refusion for alle selskaber på de relevante år. 3S modtager også indberetning fra VP-ordningen om danske modtagere af udbytte fra børsnoterede og unoterede selskaber. For udenlandske modtagere modtages kun oplysning fra børsnoterede selskaber.

Borger og Virksomhed har oplyst, at 3S fungerer, som et indberetningsmodul i lighed med øvrig manuel indberetning til eKapitaldelsystemerne på andre områder. Det vil sige, at 3S videresender de indtastede oplysninger til delsystemet UDBY under eKapital (det tidligere RKO), hvor alle oplysninger om udbyttemodtagere samles for både unoterede og børsnoterede aktier samt alle investeringsbeviser/aktier i investeringsforeninger/selskaber. Dette sker uanset om de er børsnoterede/unoterede eller opdelt i personer og selskaber.

Udbetaling af refusion nedskriver den angivne udbytteskat i 3S og udbetales gennem SAP38. Der er en indbygget kontrol i 3S, der gør opmærksom på, såfremt der anmodes om mere i refusion end der er angivet i udbytteskat. Regnskab 2 har kun 1 gang været udsat for, at denne situation opstod.

Indberetninger om udbyttemodtagere, hvor der er indeholdt udbytteskat fra børsnoterede selskaber, sker elektronisk via VP til RKO/eKapital.

I 2008 er oplysninger fra 3S om udbytter og udbytteskat blevet tilgængelige via Business Object. Oplysninger modtaget i RKO/eKapital er også tilgængelige i Business Objects.

### 7.5    Opgørelse af nettoprovenu fra refusionsordningen

Provenuet fra kildebeskatningen af valutariske udlændinge kan ikke opgøres på baggrund af tallene i bogholderisystemet (SAP 38), da beløbene ikke splittes op på det år, refusionen reelt vedrører. Det betyder f.eks., at beløb bogført i 2009

Confidential Pursuant to Protective Order

reelt kan vedrøre et eller flere tidligere indkomstår.

En opgørelse vil kræve, at tal til brug for opgørelse af nettoprovenuet skal udsø-
ges, sammenstilles og beregnes ud fra SAP38, 3S, RKO/eKapital og BO. Hertil
kommer usikkerheder i datamaterialet i form af, at refusioner fra regnearksord-
ningen ikke tastes i 3S, samt at bogføring af refusioner sker på udbetalingsåret.

Departementet har i samarbejde med Borger og Virksomhed samt Regnskab 2
udarbejdet en opgørelse over nettoprovenuet. Det er samstemmende oplyst, at de
foretagne udsøgninger er behæftet med stor usikkerhed. Der er dog i enhederne
ikke enighed om, dels hvordan nettoprovenuet bør opgøres, dels om det kan bli-
ve negativt, og dels om det overhovedet kan opgøres.

## 7.6    Tidligere undersøgelser

Intern Revision har erfaret, at området udbytteskat tidligere har været undersøgt
ved 3 tilfælde. Det ses ikke umiddelbart, at der er sket en opfølgning på de ne-
denstående undersøgelser.

### 7.6.1 Rapport om reduceret udbytteskat for udenlandske investorer

Told- og Skatteregion København har i sommeren 2000 udarbejdet en rapport
(j.nr. 99-5129-354) om den dokumentation, som de kontoførende institutter har
liggende vedrørende kontohavere, som er omfattet af VP-ordningen. Undersø-
gelsen omfattede 2 danske banker. Regionen konkluderede, at der kun i 37 % af
tilfældene var den korrekte dokumentation til stede i bankerne. Regionen anbefa-
lede, at SKAT følger op på denne undersøgelse, samt at der sker en undersøgelse
af andre banker.

### 7.6.2 Notat om udbytteadministrationen

På baggrund af et notat udarbejdet af den daværende udbytteadministration og
kontrolkontor den 16. marts 2005 til SKATs direktion omhandlende udbyttead-
ministrationen og de problemer, der knytter sig hertil, blev der nedsat en ar-
bejdsgruppe i sommeren 2006. Arbejdsgruppen havde til hensigt at arbejde vide-
re med problemstillingerne fra nævnte notat.

I maj 2007 har arbejdsgruppen udarbejdet et notat, hvori der oplistes fordele og
ulemper i forbindelse med en fremrykning af den obligatoriske indberetnings-
pligt. Herudover har arbejdsgruppen anbefalet, at der igangsættes et nærmere
analysearbejde vedrørende konsekvenserne ved en sådan fremrykning af indbe-
retningspligten. Notatet var en del af et problemkatalog vedrørende udbytteskat.

Borger og Virksomhed har oplyst, at rapporten fra denne gruppe blev opstarten
til projekt "Fremrykket ligning" og efterfølgende "Projekt e-kapital", for så vidt
angår indberetningsdelen af udbytte (ikke angivelse).

Regnskab 2 har oplyst, at manglende fokus og organisationsændringer gjorde, at

Confidential Pursuant to Protective Order                                    SKAT_MDL_001_00281067

der på angivelsesdelen ikke kom noget ud af arbejdsgruppens problemkatalog.

*7.6.3 Revision af udbytteadministration ved Skattecenter Ballerup*

Intern Revision har i 2005 foretaget revision af udbytteadministrationen ved Skattecenter Ballerup (J.nr. 05-0721-006524). Intern Revision konkluderede bl.a. i denne forbindelse, at det ikke var tilfredsstillende, at det i visse situationer er muligt for modtagere af udbytte at få udbetalt udbytteskat, selvom der ikke til SKAT er indbetalt den indeholdte udbytteskat. Intern Revision bemærkede desuden, at udbytteadministrationen har ydet en stor indsats med at gøre opmærksom på de problemer der er/har været, bl.a. ved udarbejdelse af et problemkatalog (som er udarbejdet til brug for ovenstående arbejdsgruppe).

## 8. Konklusion

Formålet med undersøgelsen har været, at undersøge refusionsordningen i forbindelse med for meget betalt kildeskat af udbytte, herunder opgørelse af SKATs provenu fra kildebeskatningen af udlændinge.

Intern Revision konstaterer på baggrund heraf, at

- der kun med stor usikkerhed kan opgøres et tilnærmelsesvist korrekt nettoprovenu fra refusionsordningen ud fra de oplysninger, der er i SKATs systemer om udbytte og refusioner, idet en opgørelse af provenuet fra kildebeskatningen af valutarisk udlændinge vil kræve, at tal skal udsøges, sammenstilles og beregnes ud fra SAP38, 3S, RKO og BO. Hertil kommer usikkerheder i datamaterialet,

- SKAT mangler indberetninger/oplysninger til at kunne opgøre et korrekt nettoprovenu fra refusionsordningen, idet refusion via regnearksordningen ikke tastes i 3S, hvilket gør datamaterialet ufuldstændigt,

- forretningsprocesserne til registrering, opkrævning og sagsbehandling af udbytteskat er dokumenteret, men har ikke været fuldt opdateret,

- regnskabs- og IT-systemer ikke i tilstrækkelig grad understøtter en korrekt opgørelse af nettoprovenu fra refusionsordningen. Baggrunden herfor er, at refusioner kan tilbagesøges i op til 20 år, og bogføring i SAP38 af refusioner sker på udbetalingsåret. Indberetning af udbyttemodtagere lagres i RKO/eKapital eller 3S afhængigt af aktien/papirets art og aktionærens skattestatus.

Confidential Pursuant to Protective Order                    SKAT_MDL_001_00281068

Intern Revision konstaterer yderligere, at

- SKAT ikke har etableret en egentlig proces til styring af de samlede indberet-
  ninger, der skal benyttes ved opgørelse af nettoprovenuet, da der afhængigt af
  aktien/papirets art indberettes enten til 3S eller RKO/eKapital,

- der foretages ingen afstemninger mellem de udbytter, som selskaberne angi-
  ver, og de udbytter, som indberettes for udbyttemodtagere. Der gennemføres
  ligeledes ikke kontrol af, om den udbytteskat, som selskaberne indbetaler, og-
  så stemmer med den af udbyttemodtagere selvangivne udbytteskat. Afstem-
  ningsproblematikken er desuden påvirket af den tidsmæssige forskydning på
  næsten 1 år mellem angivelse og indberetning,

- der kan refunderes udbytteskat før, skatten er indbetalt/indberettet til SKAT,

- anvendelsen af Omnibusdepoter betyder, at der udskrives flere udbyttenotaer
  (swift-meddelelser) for den enkelte aktie. Der foretages ingen kontrol af, hvor-
  vidt der tilbagesøges udbytteskat mere end en gang pr. aktie,

- der føres ingen kontrol i forbindelse med refusionsanmodninger med om inve-
  stor reelt er aktieejer og om investor reelt er skattepligtig til Danmark eller ej,

- der ses ikke, at være fulgt op på de undersøgelser, som tidligere har været
  igangsat af SKAT på området.

## 9.    Anbefaling

Intern Revision skal på basis af ovenstående konklusion anbefale, at

- der etableres et overordnet ansvar for hele processen til håndtering af udbyt-
  tebeskatningen,

- der etableres et kontrolmiljø, som sikrer at der er overensstemmelse mellem
  angivelse og indberetning,

- der foretages en fornyet vurdering af den tidligere etablerede arbejdsgruppes
  problemkatalog for udbytteskat,

## 10.    Høring hos de reviderede enheder

Udkast til rapport har været til udtalelse hos de reviderede enheder.

Intern Revision har efter en gennemgang af de modtagne høringssvar taget en af
konklusionerne ud.

Confidential Pursuant to Protective Order

Koncerncentret, Jura og Samfundsøkonomi har ikke haft bemærkninger til rap-
porten.

Bemærkninger fra Regnskab 2 samt Borger og Virksomhed af faktuel karakter er
indsat løbende under afsnittene 1-7. Høringssvar fremgår af bilag 4.

Mads Blokhus            /    Bo Daugaard

Confidential Pursuant to Protective Order                          SKAT_MDL_001_00281070

Bilag 1



SKAT_MDL_001_00281071

Bilag 2

### Beskrivelse af Omnibusdepoter



IR – marts 2015

Confidential Pursuant to Protective Order

SKAT_MDL_001_00281072

Confidential Pursuant to Protective Order

SKAT_MDL_001_00281073

Bilag 3a



Tidslinie over udbytteskat før 2010

Bilag 3b





**SKATTEMINISTERIET**

**Bilag 4**

Intern Revision

10. maj 2010

**Høringssvar**

*Regnskab 2 har følgende bemærkninger til rapporten:*

*Bemærkning til rapporten*

Til afsnit 7.2.4 anfører Regnskab 2, at der ikke foretages afstemning mellem angivelse og indberetning. Derfor opdages en manglende angivelse (og betaling) ikke, hvis der kun er indsendt indberetning af udbyttemodtagere. Og indberetningen medfører godskrivning af udbytteskatten.

For de ca 2 millioner aktionærer i børsnoterede selskaber giver indberetningen af udbyttemodtagere ingen afstemningsmulighed overfor det udloddende selskabs angivelse.

Til afsnit 8, Konklusion anfører Regnskab 2 vedrørende den manglende afstemning af refusioner, at da udlændinge typisk får indeholdt udbytteskat med 28%, som er hovedreglen, er det ikke muligt at udskille udlændinges udbytte før refusion i 3S.

*Ønsker til løsning af uhensigtsmæssighederne*

Med forårspakken 2010 er der åbnet mulighed for, at fristen for indberetning af udbyttemodtagerne kan blive sammenfaldende med fristen for at angive og betale udbytteskat. Det må forventes, at denne mulighed udnyttes. Kombineres denne mulighed for fristsammenfald med en elektronisk indberetningsordning af udbytteangivelse/indberetning af udbyttemodtagere opnås en optimal løsning på området. Der kan herved spares en blanket baseret forretningsgang, ligesom den pt manglende afstemningsmulighed opnås.

VP ordningen udvides til at omfatte alle lande, som Danmark har en dobbeltbeskatningsoverenskomst med og til alle aktionærer, såvel fysiske som juridiske personer. Derved vil problemet med afstemning af refusioner og indeholdt udbytteskat blive løst. Samtidig sikres det, at der pr aktie kun gives reduktion 1 gang, hvor refusion i princippet kan ske for samme aktie i flere led.

Confidential Pursuant to Protective Order                                    SKAT_MDL_001_00281075

Det må kræves for at være med i VP ordningen, at udenlandske aktieejere indberettes som aktieejere. Pengeinstitutterne, som står for depoterne, indestår for rigtigheden af den særlige skattestatus, som er markeret på depoterne.

*Opfølgning på udbytteadministrationen*

Som bemærkning til revisionens konklusion om opfølgning på tidligere undersøgelser samt bemærkningen i afsnit 7.6.2 om manglende fokus skal det oplyses, at siden 2003 har udbytteskatteadministrationen/Regnskab 2 haft adskillige tiltag overfor og sammen med HC og andre.

Summarisk oversigt:

2003
Udvidelse af VP ordningen

2004
Nedsættelse af arbejdgruppe for at finde ansvarligt kontor i HC
Nedsættelse af arbejdgruppe til genoptagelse af brug af 3 S

2005
Fortsat arbejde med brug af 3 S
Nedsættelse af arbejdsgruppe om fristændring for indberetning af udbyttemodtagere

2006
Henvendelse til HC om manglende afstemning mellem angivelse og godskrivning af udbyttemodtagere.

I forbindelse med etablering af kompetencecenter Udbytte- og Royaltyskat blev udsendt en Intern meddelelse 30.11.2006, som i bilag 3 havde en opregning af udbytteskat og de udfordringer som pressede på at blive løst.

2007
Refusioner og fristerne herfor
Udvidelse af VP ordningen sammen med Finansrådet

2008
Med i Projekt Fremrykket Ligning – fremrykket indberetning af udbyttemodtagere

Møde med Departementet
(som har resulteret i lovændringer)

Foreslået hurtig digitalisering af udbytteadministrationen

Confidential Pursuant to Protective Order                     SKAT_MDL_001_00281076

2009
Vedtaget nyt lovgrundlag for indberetningsfristen, bemyndigelse til ministeren

2010
Fremsat ovenanførte forslag om harmonisering af angivelse/indberetningsfrister
og digitaliseret indberetningordning af udbytteangivelse/indberetning


*Borger og Virksomhed har følgende bemærkninger til rapporten:*

*Bemærkninger til rapporten*

Udlodninger fra investeringsforeninger indberettes ikke gennem 3S, selvom de
er unoterede. Dette gælder, fra og med 2010 også de unoterede investeringssel-
skaber.

Tasteopgaven gennem 3S omfatter (efter ændringen i L201) alene unoterede
danske aktier som ikke er indskrevet i Værdipapircentralen. De ikke indskrevne
unoterede selskaber kan dog indberette elektronisk (TP- indberetning eller bånd,
kassette mv.) udenom 3S og direkte til delsystem UDBY.

Der indberettes om udenlandske udbyttemodtagere uanset om udlodningen
stammer fra børsnoterede eller unoterede aktier/beviser

BO er en kopiregistrering af oplysninger indberettet efter de obligatoriske indbe-
retningspligter og er derfor ikke noget selvstændigt register.

Afsnit 7.2.3 efterfølgende korrektioner omhandler alene indberetningen foretaget
af de kontoførende. Retter selskabet selv, som har indberetningspligt vil de jo
også kunne rette angivelsen, da de selv står for begge dele.

Afsnit 7.2.4 omtales i 6 afsnit en undersøgelse der siger, at 3 børsnoterede sel-
skaber fremstår uden indberetning om udbyttemodtagerne. Borger og Virksom-
hed har vanskelig ved at tro at det er sandt, da indberetningen kommer fra de
kontoførende og ikke fra selskabet selv. Det skulle være et sammentræf, såfremt
der ikke er flere udbyttemodtagere og at de alle skulle have samme kontoførende
institut.

Hvis den omtalte undersøgelse alene omfatter den administrative indberetning
om VP-ordningen, hvilket Borger og Virksomhed formoder, så kan undersøgel-
sen virke misvisende, idet indberetningerne om udbyttemodtagerne (uanset VP-
ordning eller ej) vil indgå i e-Kapitalindkomstregistret UDBY eller IFPA.

I afsnit 7.2.4, tredjesidste afsnit anføres, at Borger og virksomhed er af den op-
fattelse at det på tværs af systemerne er muligt at lave udsøgninger, således at en
tilnærmelsesvis afstemning kan finde sted. Dette er korrekt for de unoterede, idet
der er sammenfald mellem angivelsen og indberetningspligt om udbyttemodta-
gerne og, som I selv og udbytteadministrationen anfører, at både angivelse og
indberetning for de unoterede i de fleste tilfælde indsendes samtidig. Det mener
Borger og Virksomhed fortsat.

Confidential Pursuant to Protective Order

For de børsnoterede er det først muligt når ændringen (L201) slår igennem fra og med 2010. Dog vil den optimale afstemning først kunne etableres når den løbende indberetning forhåbentlig indføres fra og med 2011. Ovenstående har Borger og Virksomhed sagt flere gange på vores møder, og det vil være unfair at skrive den tekst der står.

Til bilag 1 bemærkes, at alle indberetninger samles (børsnoterede/unoterede og investeringsforeninger/selskaber i samme indgangstest under delsystem e-Kapital). Er oplysningerne korrekte, kan de umiddelbart ikke deles i danske og udenlandske, idet såfremt der for de udenlandske er en dansk identifikation, så sendes disse samme vej som de danske, hvilket betyder, at de kommer på R75, skattemappe eller medtages på årsopgørelsen såfremt det viser sig at oplysningen om valutarisk udlænding var forkert og personen fx er fuld skattepligtig. Som supplement hertil kan nævnes:

- at afviste sendes ud til den indberetningspligtige (det kontoførende/depotføreren eller selskabet).

- at de valutariske udlændinge uanset dansk identifikation udveksles med udlandet efter EU-rentebeskatningsdirektivet eller ud fra en DBO – aftale, hvis oplysningerne er omfattet af disse.

Til bilag 3 bemærkes, at der er nogle faktuelle fejlinformationer. Dels med definitionen af børsnoteret og unoteret kontra indberetningsreglerne efter SKL, dels vedr. sidste frist for indberetning til SKAT. Det er ikke sidste frist for indberetning til SKAT, det er rettidig frist for indberetning til SKAT efter SKL. Indberetning til SKAT kan altid foretages, men via edb medie kun frem til og med 1. juli indkomståret (modtagerens indkomstår) + 2 (2010 regler). For 2009 og tidligere var fristen 1. oktober i året efter indkomståret. Intern Revision har efterfølgende opdelt bilag 3 i regelsættet før og efter 2010.

Afslutningsvis skal nævnes, at VP–ordningen (den administrative indberetning, der indberettes til Ballerup) ikke kommer i e-Kapital som anført i bilag 3.
*Tiltag på området*

Borger og Virksomhed har oplyst, at der er sket en række tiltag på området, her kan nævnes:

2009:
Indberetningen vedrørende indkomståret 2009 (udbyttemodtagerens)
Der indføres obligatorisk indberetningspligt af CVR/SE nr. og navn på den udloddende investeringsforening mv. (før frivillig)

Gennem e-Kapital projektet sættes fokus på, at alle opfylder den pålagte indberetnings-pligt

Confidential Pursuant to Protective Order                    SKAT_MDL_001_00281078

Der indføres obligatorisk indberetningspligt om depotkoden
(investeringsforeninger mv.). Dvs. aktier/beviser i pensionsdepoter er ikke
længere undtaget fra indberetningspligt.

2010:
Indberetningen vedrørende indkomståret 2010 (udbyttemodtagerens)
Generelt ændres definitionen af børsnoterede og unoterede til – optaget til handel
på et reguleret marked, eller ikke optaget til handel på et reguleret marked.

Den ændrede definition betyder, at flere af de tidligere unoterede aktier vil blive
indberettet elektronisk via de kontoførende institutter. Det betyder, at
indberetningerne fra selskaberne selv indskrænkes og der sikres en bedre og
fyldestgørende indberetning.

Der indføres obligatorisk indberetningspligt af CVR/SE nr. på den udloddende
selskab (børsnoterede) mv.

Der indføres obligatorisk indberetningspligt om depotkoden (aktier mv.). Dvs.
aktier i pensionsdepoter er ikke længere undtaget fra indberetningspligt.

5 % reglen om undtagelse fra indberetningspligt ophæves og der skal indberettes
om den hvortil udlodningen er foretaget.

Åbningstiderne udvides for IT-indberetning til 1. juli indkomståret + 2

2011:
Der indføres løbende indberetningspligt om udloddede udbytter til både personer
og selskaber

Konklusionens sidste afsnit synes unfair ud fra de ændringer, som SKAT har
gennemført med L201. Der kan gøres mere, men der er med disse ændringer,
samt en indberetningsmæssig afstemning gennem 3S og UDBY, så er der gjort et
stort gennembrud på området.

Det er desuden Borger & Virksomheds opfattelse, at der med de løbende korrek-
tioner af indberetningssystemerne og lovgrundlaget for indberetningerne 2009 –
2011 er gjort væsentlige tiltag til understøttelse af afstemningen og indberetnin-
gen, men mener dog, at følgende løsningsforslag kunne være relevante:

- Afstemninger - f.eks vil en styrket indberetningskontrol på kildegrundla-
  get (selskab/depotregistrering) være en god løsning.
- Indførsel af en hjemmel, som gør de forskellige kontoførende institutter
  ansvarlige for korrekt administration/indberetning af udbytteskat. En
  hjemmel som svarer til hjemlen i Kildeskattelovens § 65 omkring hæftel-
  se ved anvendelse/administration af frikort.
- Indberetning af råderet (fuldmagtsforhold) over de enkelte depoter, idet
  man herved vil få at vide, hvem der har det reelle ejerskab over aktierne
  (Gennemsigtighed i deponeringen).

Confidential Pursuant to Protective Order

SKAT_MDL_001_00281079

- Ændret kunderegistrering og indberetning af ejerforhold, således at et par enkelte af de eksisterende ejerstatuskoder splittes yderligere op. Fx i ejerforhold der på udlandssiden gælder eneejer person, eneejer selskab, flere end 2 ejere og administrator.
- IT – understøttelse af hele frikortproceduren (udstedelse, registrering) og udstilling i lighed med Forespørgsel på udbytteindeholdelsesprocent
- En indberetningsmarkering for at personen er med i den såkaldte "VP – ordning"

Med skattereformen blev det muligt at foretage forskellige systemtiltag der vil kunne forbedre indberetningen om udbyttemodtagerne, og som ligeledes kan bane vejen for at foretage en bedre afstemning af udlodninger fra både børsnoterede, unoterede og investeringsforeningsbeviser mv.

Confidential Pursuant to Protective Order



**SKATTEMINISTERIET**

**Audit Report**

Department Manager
Peter Loft

**Internal Audit**
Copenhagen Audit Center

internrevision@skat.dk
May 10, 2010

J.no. 09-172022
Plan no.: 09-203
Finance Year: 2009

# Investigation of the proceeds from withholding tax on foreign shareholders - dividend tax

## 1. Introduction

*Background of the investigation*

The Ministry of Taxation, in connection with an attempt to calculate the proceeds from the withholding tax on foreign shareholders' dividends from Danish limited companies and investment funds, has encountered the problem that it is possible that too much withholding tax is refunded via the so-called refund scheme.

Approximately 75,000 Danish companies distribute dividends each year and the annual distribution has been up to approximately 300 billion according to received declarations.

On October 21, 2009, Internal Audit received a request from the Department Manager for an investigatory audit of the refund scheme.

*Briefly about dividend tax*

When a company distributes dividends, dividend tax must be treated in accordance with the rules in sections 65-67 of the Withholding Tax Act (*Kildesskatteloven*).

According to section 66, paragraph 2 of the Withholding Tax Act, companies that approve the dividend distribution must provide information on the approval (declaration). The notice must be filed no later than the month following said approval for dividend distribution, concurrent with the expiration of the company's deadline for reporting withheld taxable income and employment tax.

According to section 9B, paragraphs 1-2 and section 10A of the Tax Control Act (*skattekontrolloven*), companies and funds, etc., who are obligated to withhold dividend tax in accordance with section 65 of the Withholding Tax Act, must report dividend recipients each year for the companies that distributed dividends in the preceding calendar year.

Confidential Pursuant to Protective Order

SKAT_MDL_001_00281058_T

VP (the Danish Central Securities Depository (*Værdipapircentralen*)), administers the dividend tax and reduction in cases where a Danish listed company distributes dividends to the shareholders. The information received from VP provides the basis of the company's report. VP forwards an electronic report to SKAT on 20 January, the year following the distribution year.

Unlisted companies declare and self-report dividend distributions to SKAT. Dividends must be reported no later than the tenth of month following its approval and distribution and reported to SKAT on 20 January, the year following the distribution year.

When the recipient of the dividend fall under section 2, paragraph 1 of the Withholding Tax Act (Limited Tax Liability), he can apply for a tax refund to reach the tax rate specified in Double Taxation Agreement.


## 2.    Audit Area

The investigation has included a review of how the calculation of the net proceeds from the withholding tax from foreign shareholders is supported by relevant laws, systems and data and statistical material.

The investigation was carried out between October 2009 and April 2010.


## 3.    Scope

The investigation has included dividends distributed by companies and investment funds in Denmark, as covered by section 16A of the Tax Assessment Act (*Ligningsloven*).

Content-free distribution to foreign parent companies is not included in this investigation.

The investigation has also not included concealed dividends, for example in connection with goods/housing, etc.


## 4.    Audit Goals

The goal with the audit investigation has been to investigate whether:

- Accurate net proceeds for the refund scheme can be calculated from the dividend reports submitted to SKAT;
- SKAT lacks reporting/information to be able to calculate accurate net proceeds from the refund scheme;
- The business processes for collecting dividend tax are documented and known; and
- Accounting and IT systems adequately support the accurate calculation of net proceeds from the refund scheme.

Confidential Pursuant to Protective Order                    SKAT_MDL_001_00281058_T

5.    **Assessment Criteria**

The investigation included the following assessment criteria:

- Legislative Decree 2009-03-11, No. 176 on the imposition of income tax the State (Tax Assessment Act);
- Legislative Decree 2005-11-14, No. 1086 on the Withholding Tax Act, Order 2009-12-11, No. 1247 on the Withholding Tax Act (Withholding Tax Notice);
- Legislative Decree 2009-10-26, No. 1001 on imposition of income tax on public limited companies etc., (Corporation Tax Act) (*selskabsskatteloven)*;
- Legislative Decree 2005-11-24, No. 1126 on the Tax Supervision Act (*Skattekontrolloven*), Double Taxation Agreements; and
- Circular No. 63 of 1993-04-28 on the reduction of dividend tax concerning Double Taxation Agreements (VP scheme).

6.    **Audit Method**

The audit was carried out by means of meetings and interviews with the Ministry of Taxation Legal Department (*Skatteministeriet Jura*), and Socio-Economic Department (*Samfundsøkonomi*), the then-exisiting Main Center, Process and Digitalization (*Hovedcenter, Proces & Digitalisering*) now Citizen and Business (*Borger og Virksomhed*) and Midtjylland, Accounting.

Furthermore, there was a collection, review, and assessment of relevant materials such as internal descriptions, guidelines and business procedures.

The investigation has been carried out by Jens Lundgaard, Tina Laustsen, Linda Severinsen and Ro Daugaard.

7.    **Observations**

*7.1    Organization and responsibilites for the task*

Several process owners share the responsibility for SKAT's process of handling dividend taxation. Noone has the overall responsibility for the entire process.

On October 1, 2006, a strategic center was established in the Ballerup Tax Center (*Skattecenter Ballerup*) for dividend and royalty tax. On January 1, 2009, the strategic center was organizationally relocated to Central Jutland, Accounting (*Midtjylland, Regnskab*), in a department called Accounting 2 (*Regnskab 2*).

According to the internal communication of November 21, 2006 (in effect until November 2, 2009), the duties of the strategic center are to key-in reporting and declaration forms; to designate reminder procedures regarding non-reporting and declaration; to process refund applications; to process attestation of tax liability for Danes with foreign shares; to conduct dividend accounting functions as well as control; and to account for payments and declarations, etc.

Confidential Pursuant to Protective Order

Accounting 2 has informed that it is not within their operating area to carry out actual checks on dividend reporting. Accounting 2 only checks that the dividend has been declared for each stated company. Initiatives (*Indsats*) carry out all other checks concerning dividend taxation.

Internal Audit has received a process description for dividend tax. Internal Audit has updated this in collaboration with Accounting 2 (see Appendix 1).

Citizen and Business (*Borger og Virksomhed*) is the process owner for the dividend declarations and the mandatory reports on dividend recipients. The process owner for dividend declarations has long been identified, but it was not until the end of 2009 that a process owner was identified for dividend tax reporting. The reason for this is that there was no focus on this area in the past.

## 7.2  Reporting and declaration of dividend tax

Up to 150,000 forms are received each year, which are manually entered into the systems. TastSelv was introduced on January 1, 2004, and its use has only slowly increased. Currently around 20% of the companies use TastSelv.

The distributing company must state and pay dividend tax in the month following the approval of dividends, while reporting of dividend recipients must be made no later than January 20 of the following year, cf., Tax Supervision Act, section 9.

### 7.2.1  Listed companies

Listed companies/investment funds report dividends based on reconciliation lists from VP. VP reports dividend recipients electronically on behalf of the account-holding financial institution.

SKAT has an agreement with VP and the account-holding financial institutions that Danish listed shares in custody accounts in Denmark, owned by taxable persons in twelve countries, may have the relevant dividend tax withheld after double taxation (net settlement). This scheme is called the VP scheme.

The scheme ensures that dividends to foreign shareholders are only subject to dividend tax at the rate at which the dividend can be taxed in Denmark under the relevant Double Taxation Agreement. Thus, a refund case does not arise.

Prerequisites for participating in the VP scheme is that: both shareholder and custodian have decided to participate in the scheme; that the dividend yielding shares are deposited in a custodian account at a Danish financial institution in the owner's own name; that the owner submits documentation to the financial institution about his residence and tax circumstances; and that the documentation is renewed every five years or upon moving to another country.

Foreign financial institutions without an independent account in VP cooperate with a (Danish) financial institution that has an account in VP in order to handle Danish shares/investment certificates. The foreign financial institution creates an account with a corresponding custodian in a Danish financial institution. The

Confidential Pursuant to Protective Order

foreign financial institution then places the Danish shares/investment certificates, owned by the foreign financial institution's clients, in the foreign financial institution's own name in this custodian account. This account is called an omnibus account (see Appendix 2 -description of omnibus account).

Foreign financial institutions appear as the owners of the Omnibus accounts and these can therefore not be included in the VP scheme. This means that dividend tax must be withheld according to the general rule, 28%.

In addition, a number of Danish investment companies and other large investors have placed the administration of Danish shares/investment certificates in US and other foreign banks. In this case, this is not a real omnibus account, but a nominee account, which according to the information only contains securities belonging to an investor with a known Danish tax status. However, since the foreign financial institution appears to own the account, it cannot be included in the VP scheme. Therefore, a 28% dividend tax must be withheld, which investors must apply to have refunded.

### 7.2.2  Unlisted companies

Unlisted companies declare and report dividends to shareholders themselves by submitting dividend reports to SKAT or using TastSelv. The reporting of dividend recipients is often made at the same time as the declaration, although the reporting of dividend recipients must not be made until 20 January of the following year, cf. Tax Supervision Act section 9.

VP has expanded its business area to also manage unlisted companies. From 2010, VP will also report dividend recipients for these companies.

### 7.2.3  Subsequent corrections

From its cooperation with the banks, Accounting 2 has recieved information showing that the accounting institutions make corrections of errors to the individual dividend recipient reports. The distributing company is not made aware of these corrections, as the accounting institution does not forward this information. Therefore, the distributing company does not have the opportunity to submit a corrected declaration. Accounting 2 has stated that it has no knowledge of corrections and has not received corrected declarations.

Accounting institutions correct the errors via corrected reporting. Accounting 2 has informed that if an account holding institution corrects the basis for the distribution after distribution, SKAT is usually not informed and the settlement is not changed. This means that in this situation there is a difference between the declared and the reported. If the accounting institution detects and corrects errors, it is of no financial importance to the distributing company and to SKAT.

When the accounting institution corrects errors, too little or too much dividend tax is withheld. This amount is debited/credited to the bank customer's account and paid to SKAT via the accounting scheme. As a result, the settlement of accounts between the customer and SKAT will be accurate.

Confidential Pursuant to Protective Order

The distributing company, which has calculated dividend tax based on VP's information, has not been informed of the accounting institution's correction. Adjustments of dividend tax between the investor and SKAT occur outside the distributing company. Consequently, the distributing company's settlement of dividends and withheld dividend tax is not affected, since the dividend company's dividend before settlement of dividend tax remains the same. The result is only that the declaration of the distributing company does not match the reporting.

### 7.2.4  Reconciliations between declaration and reporting

There are no automatic reconciliations in SKAT's systems between declarations and reports. No manual reconcilations occur either.

Annually, there is an adjustment based upon the correlation between the tax return of the distributing company's self-reporting item 37 (distribution of dividends according to accounting) and the submitted dividend declarations. Accounting 2 informs if the company's dividend declaration is missing. If there is a discrepency, nothing is done.

For the 2008 dividend undertaking, the starting difference was DKK 34 billion, the majority of which, according to Accounting 2, is probably daughter/parent companies' distributions and incorrect income year in TastSelv.

Accounting 2 has stated that reminders are sent to the companies that have not reported dividends.

The distributing company reports dividend tax in the month following the approval of the dividend, while reporting of dividend recipients must be made by January 20 of the following year (see Appendix 3, timeline of dividend tax). This means that there is a large time lag between the receipts of various information, which means that any reconciliation between the stated and the reported can only take place up to one year after the receipt of the declaration. Accounting 2 and Citizen and Business have both discussed and approved the prepared timeline.

In April 2010, Accounting 2 provided a reconciliation between VP's information to the distributing companies and the reporting to SKAT regarding the C20 index's information on the dividend distributed in 2009 (the twenty most traded shares on the Copenhagen Stock Exchange). Nine of the C20 index companies have distributed and are included in the reconciliation.

The reconciliation was conducted on the basis of the dividends specified in 3S with reduced dividend tax according to the double taxation agreement and the ongoing reports from VP.

The reconciliation for the nine C20 companies shows that one company is accurate and eight companies are not accurate.

Confidential Pursuant to Protective Order                                    SKAT_MDL_001_00281058_T

It appears that three companies were without notification of the dividend received through the VP scheme despite of the three companies having announced distributions to shareholders in the VP scheme of DKK 5,202,583.

Accounting 2 has stated that the other five companies show minor differences, which must be attributed to changes in the figures from the time the reconciliation list were prepared and the shareholder reporting occurred, which are included the figure.

Overall, it is not possible to investigate the differences, as there is no audit trail of what account-holding financial institution held the share in custody.

Citizen and Business is of the opinion that it is possible to make selections across the systems so that an approximate reconciliation can take place.

It is the opinion of Accounting 2 that the reconciliation between declaration and reporting must be done by "reversing the process," so that declaration and reporting are done simultaneously (in advance of the reporting requirement). This allows for automatic reconciliation. Furthermore, VP/financial institutions must refrain from correcting when accounting (reconciliation lists) are prepared. Any subsequent corrections must be made in cooperation with SKAT.

An increase in the duty to report requires that the Minister of Taxation to use his authority in the Tax Control Act section 9A paragraph 5 to amend the deadlines for dividend recipients' reporting.

### 7.3    Refund of withheld tax

Refunds primarily relate to owner-listed shares and investment certificates that are not covered by the VP scheme.

If the shareholder is not fully taxable in Denmark, and if there is a Double Taxation Agreement (DTA) with the country that has a tax liability, a refund can be applied for according to the applicable DTA. The refund is a reimbursement request of too much withheld dividend tax, and thus a change to that initially stated and reported.

### 7.3.1    Refund request

Dividend notes are sent to the shareholder a few days after a dividend distribution has been approved. Once the shareholder has received the dividend note, a refund can be requested. Refunds are made by submitting the form (06.003) and a copy of the dividend note. The foreign tax authority in the country where the shareholder is taxable must stamp the form.

According to the Interest Circular (*rentecirkulæret*), SKAT must repay the refund within one month of the request in order to avoid paying interest. However, the deadline for declaration and payment may mean that it can take up to 40 and 60 days from the time of the general meeting, respectively, for the

Confidential Pursuant to Protective Order

payment to be made. Therefore, a prompt request for refund may result in the reimbursement of dividend tax to shareholders before the withheld dividend tax is declared and paid. However, Accounting 2 often suspends the refund cases until a declaration and/or the company has made payment. Accounting 2 has stated that the problem can be solved by simultaneous declaration and reporting (advance reporting obligation).

Accounting 2 does not carry out checks on whether the investor in question is actually a shareholder in the company in question or whether the investor in question is in fact liable for tax in the foreign country. The form is reviewed by Accounting 2 to check whether all information is included. The refund is then paid.

The use of omnibus accounts means that multiple dividend notes (swift messages) are printed for each share. It is the opinion of Accounting 2 that this problem makes it difficult to check whether dividend tax is recovered more than once per year per share.

In addition, omnibus accounts and nominee accounts (acccounts where persons other than the registered account holder own the deposited shares) mean that the real owners of the shares are not known, so refunds are paid without proof of ownership and actual distribution.

Accounting 2 has stated that refunds are entered in 3S, with information on name, address/bank account, amount, distributing company (CVR), bundle no. (system journal and audit trail). The base number makes it possible to follow the trail from SAP38 back to 3S and the physical form(s) in Accounting 2's archive.

Forms are physically stored in Accounting 2's archive in keyed-in bundles. There are no case files created.

### 7.3.2  The accounting scheme

In order to reduce SKAT's consumption of resources in connection with the refund request, an agreement has been entered into between SKAT, Danske Bank, Nordea, SEB and Amagerbanken concerning the accounting scheme. Under this scheme, the banks submit spreadsheets showing which foreign customers that have had dividend tax withheld at a rate in excess of the Double Taxation Agreement between Denmark and the foreign country in question. For each customer, the identity, share, size of dividends and the desired reduction in dividend tax are stated. No refund is recorded in 3S.

The spreadsheet is electronically filed on the H-drive of the distributing company and is physically printed and filed with attachments in Accounting 2.

### 7.3.3  Accounting and disbursement of refund

Upon receipt at Accounting 2, the form in 3S will be keyed-in for the relevant years. On this basis, a payout report is created in 3S.

Confidential Pursuant to Protective Order

The payout report is edited according to the individual submitter's requests or SKAT's choice of bundling multiple refund requests.

All refunds are manually accounted for in SAP 38.

If there are multiple payments to the same investor or financial institution, the refunds are accounted for as a disbursement amount via SAP 38. Assessment of the appropriateness of pooling amounts and the notification to the bank is made by the person processing the refund request.

Refund requests may concern dividends for several years, and if this is the case, are entered in as a single entry in SAP38 in the payment year. Dividends can be refunded for up to twenty years after the tax is withheld. From 2011, this will change to three years.

## 7.4    IT-support of the task

For the purpose of the dividend tax administration, 3S, a specific module, is used for the corporate tax system. In 3S, entry for all companies, reporting for unlisted companies and refunds for all companies in the relevant years are keyed-in. 3S also receives a report from the VP scheme on Danish recipients of dividends from listed and unlisted companies. For foreign recipients, information is only received from listed companies.

Citizen and Business has informed that 3S functions as a reporting module similar to other manual reporting in eCapital (*eKapital*) systems for other areas. This means that 3S forwards the keyed-in information to the module UDBY under eCapital (previously RKO) where all the information about dividend recipients are gathered for both unlisted and listed shares as well as all the investment certificates/shares in all investment organizations/companies. This occurs irrespective if it is listed/unlisted or divided into persons and companies.

At payment of refund, the stated dividend tax is noted in 3S and is paid through SAP38. There is a built-in check in 3S that notifies you if more is requested in refunds than stated in dividend tax. Accounting 2 has only faced this situation on one occasion.

Reporting of dividend recipients with withheld dividend tax from listed companies occurs electronically via VP to RKO/eCapital.

In 2008, information in 3S on dividend and dividend tax became available via Business Object. Information received in RKO/eCapital also became available in Business Object.

## 7.5    Estimation of net proceeds from the refund scheme

The proceeds from withholding tax on foreign shareholders cannot be calculated based on the figures in the accounting system (SAP 38), since the amounts are not separated by the year to which the refund actually relates. This means, for example, that amounts logged in 2009 may actually relate to one or more previous

Confidential Pursuant to Protective Order

SKAT_MDL_001_00281058_T

years of income.

An inventory will require figures to be used to calculate the net proceeds to be selected, compiled and calculated based on SAP38, 3S, RKO /eCapital and BO. In addition, there are uncertainties in the data material in the form that refunds from the accounting scheme are not keyed-into 3S, and that refunds are logged in the payment year.

The Ministry, in collaboration with Citizen and Business as well as Accounting 2, has prepared a statement of net proceeds. It is unanimously stated that the selections are subject to great uncertainty. However, the departments do not agree on how the net proceeds should be calculated, including whether the result can be negative and whether the net proceeds can be calculated at all.

### 7.6    Previous investigations

Internal Audit has learned that the area of dividend tax has previously been examined on three occasions. It is not immediately apparent that there has been a follow-up to the studies below.

### 7.6.1    Report about reduced dividend tax for foreign investors

Copenhagen Custom and Tax Authority (*Told- og Skatteregion København*) has prepared a report (J. No. 99-5129-354) about the documentation that the account holding institutions have concerning account holders that are included in the VP scheme. The investigation included two Danish banks. The Authority concluded that the banks were presented with the correct documentation in only 37% of the cases. The Authority recommended that SKAT follow up on this report, as well as conduct an investigation of other banks.

### 7.6.2    Memorandum on dividend administration

On the basis of a memorandum prepared on March 16, 2005, by the then exisiting dividend administration and control office to SKAT's management on the dividend administration and the related problems, a working group was set up in the summer of 2006. The intent of the working group was to address the issues set out by said memorandum.

In May 2007, the working group prepared a memorandum listing the advantages and disadvantages of increasing the mandatory reporting obligation. In addition, the working group has recommended that a closer analysis be conducted on the consequences of such an increase in the reporting obligation. The memorandum was part of the chronology of issues concerning dividend tax.

Citizen and Business has informed that the report from this group led to the start-up of the project "Advance Equation" (*Fremrykket ligning*) and the subsequent "Project e-capital" (*Projekt e-kapital*) regarding the reporting part of dividend (not declarations).

Confidential Pursuant to Protective Order

SKAT_MDL_001_00281058_T

Accounting 2 has stated that a lack of focus and organizational changes meant that the working group's chronology of issues did not include anything on the declaration section.

*7.6.3  Audit of Dividend Administration at Ballerup Tax Center*

In 2005, Internal Audit audited the dividend administration at the Ballerup Tax Center (J. No. 05-0721-006524). In connection with this, Internal Audit concluded, e.g., that it was unsatisfactory that in certain situations it was possible for dividend recipients to receive dividend tax, even if the withheld dividend tax had not been paid to SKAT. Internal Audit also noted that the dividend administration has put a lot of effort into drawing attention to the problems that exist/have existed by e.g., preparing a chronology of issues (which was prepared for use by the above working group).

## 8.   Conclusion

The purpose of the investigation has been to assess the refund scheme in connection with too much withheld dividend tax, including the calculation of SKAT's proceeds from the withholding tax on foreign shareholders.

Based on this, Internal Audit finds that

- that an approximate correct net proceeds from the refund scheme can only be calculated with great uncertainty from the information available in SKAT's dividend and refund system, as a calculation of the proceeds from the withholding tax on foreign shareholders will require that figures be selected, compiled and calculated based on SAP38, 3S, RKO and BO. In addition, there are uncertainties in the data material;

- SKAT lacks reporting/information to be able to calculate the correct net proceeds from the refund scheme, since refunds via the accounting scheme is not keyed-into 3S, which makes the data material incomplete;

- Business processes for registration, collection and processing of dividend tax have been documented, but have not been fully updated;

- accounting and IT systems do not adequately support the correct calculation of net proceeds from the refund scheme. The reason for this is that refunds can be recovered for up to 20 years, and accounting in SAP38 of refunds takes place during the payment year. Reporting of dividend recipients is stored in RKO/eCapital or 3S depending on the share/type of security and the shareholder's tax status.

Confidential Pursuant to Protective Order

SKAT_MDL_001_00281058_T

Internal Audit further finds that

- SKAT has not established an actual process for managing the total reports to be used in the calculation of the net proceeds, depending on the nature of the share/security being reported either to 3S or RKO /eCapital;

- no reconciliation is made between the dividends declared by the companies and the dividends reported to the dividend recipients. It is also not possible to check whether the dividend tax paid by the companies also corresponds to the dividend tax declared by dividend recipients. The reconciliation problem is also affected by the time lag of almost one year between declaration and reporting;

- dividend tax can be refunded before the tax is paid/reported to SKAT;

- the use of Omnibus accounts means that several dividend notes are printed (SWIFT messages) for a single share. There is no check as to whether dividend tax is requested more than once per share;

- there are no checks in connection with refund requests as to whether the investor is actually a shareholder and whether the investor is in fact liable for tax in Denmark or not;

- it does not appear that the previous investigations initated by SKAT have been followed up on.

## 9.    Recommendation

On the basis of the above conclusion, Internal Audit recommends that

- a central management is established for the entire process of dealing with dividend taxation;

- a control environment is established to ensure consistency between declaration and reporting;

- a re-assessment of the previously established working group's chronology of issues for dividend tax.

## 10.    Consultation with the audited entities

Draft report has been provided to the audited entities for comments.

After reviewing the recieved comments, Internal Audit has removed one of its conclusions.

Confidential Pursuant to Protective Order

The Corporate Center (*Koncerncentret*), Legal (*Jura*) and Social Economics (*Samfundsøkonomi*) did not comment on the report.

Comments from Accounting 2 as well as Citizen and Business of a factual nature have been given continuously under Sections 1-7. Consultation responses are given in Appendix 4.

Mads Blokhus                    Bo Daugaard

13 of 13

Confidential Pursuant to Protective Order                    SKAT_MDL_001_00281058_T

Appendix

**Process description for dividend tax**



Confidential Pursuant to Protective Order                    SKAT_MDL_001_00281058_T

Appendix 2      **Description of Omnibus Account**



Confidential Pursuant to Protective Order

SKAT_MDL_001_00281058_T

# Timeline of dividend tax before 2010

Appendix 3a



VP processing of listed companies

**VP**
The company gives VP notification of distribution.

**VP**
VP calculates dividend tax and gives the company a reconciliation list.

**VP**
1/20 VP notifies RKO of recipients of dividends but not for the qualified tax scheme (skattebegunstigede ordninger).

Companies that are included in this description are:
* A/S
* ApS
These companies should always have been created as liable for corporate tax in SKAT's system
* IF – Investment funds are not liable for corporate tax, but they distribute
* Investment firms are liable for dividend tax and distribute

Listed shares means:
Shares/company certificates/funds traded on a regulated market and registered with VP.

Unlisted shares means:
Shares/company certificates that are not traded on a regulated market but registered with VP.

**Dividend recipients**
Dividend recipients who are not liable for tax in Denmark can apply for reimbursement of dividend tax if they are not included in the VP scheme

**Reporting of dividend recipients**
**Listed companies**
VP Reports dividend recipients on behalf of the account holding institutions.
**Unlisted companies**
The company reports dividend recipients.

**Declaration and payment**
Companies that are registered as income tax payers on the 10th of the month declares and pays dividend tax on the 10th of the month following the approval at the general meeting.

**Declaration and payment**
Companies that are registered as income tax payers on the last business day in the month declare and pay dividend tax on the last business day of the month following the approval at the general meeting.

ROUGH TRANSLATION

The company's ordinary general meeting where dividend distribution is approved shall take place five months or less after the close of accounting for the financial year

The financial year where April 1 is in the company's accounting period, is the company's income year

Deferred income year | Advance income year

1/20

Information for the current year is visible in the tax folder and R75

| Company financial year | January | February | March | April | May | June | July | August | September | October | November | December | January | February | March |

1/20 is the final deadline for shareholders to send dividend reports to SKAT

3S receives information about dividend recipients from unlisted companies and the VP scheme.

**VP scheme**
VP Reports foreign share recipients for foreign listed companies.

—simultaneous—  3S  —in the month of January—  RKO UDBY

**Accounting 2**
Manual accounting of refunds based on printouts from 3S.

Daily transfer of declarations with payment demands

**Accounting 2**
Consolidation of field 37 of the company tax declaration and the dividend declaration.

SAP38

Skatteministeriets Interne Revision
01-02-2010

SKAT_MDL_001_00281058_T

16

Confidential Pursuant to Protective Order

Appendix 3b

# Timeline of dividend tax after 2010

SKAT_MDL_001_002811058_T

Confidential Pursuant to Protective Order

ROUGH TRANSLATION



Companies that are included in this description are:
* A/S
* ApS
These companies should always have been created as liable for corporate tax in SKAT's system
* IF – Investment funds are not liable for corporate tax, but they distribute
* Investment firms are liable for dividend tax and distribute

Listed shares means:
Shares/company certificates/funds traded on a regulated market and registered with VP.

Unlisted shares means:
Shares/company certificates that are not traded on a regulated market but registered with VP.

**VP processing of listed companies**

**VP**
The company gives VP notification of distribution.

**VP**
VP calculates dividend tax and gives the company a reconciliation list.

**VP**
1/20 VP notifies eCapital of dividend recipients.

**Dividend recipients**
Dividend recipients who are not liable for tax in Denmark can apply for reimbursement of dividend tax if they are not included in the VP scheme

**Reporting of dividend recipients**
**Listed companies**
VP Reports dividend recipients on behalf of the account holding institutions.
**Unlisted companies**
The company reports dividend recipients.

**Declaration and payment**
Companies that are registered as income tax payers on the 10th of the month declares and pays dividend tax on the 10th of the month following the approval at the general meeting.

**Declaration and payment**
Companies that are registered as income tax payers on the last business day of the month declare and pay dividend tax on the last business day of the month following the approval at the general meeting.

The company's ordinary general meeting where dividend distribution is approved shall take place five months or less after the close of accounting for the financial year

The financial year when April 1 is in the company's accounting period, is the company's income year

Deferred income year | Advance income year

Company financial year | January | February | March | April | May | June | July | August | September | October | November | December | January | February | March

Five months maximum

Information for the current year is visible in the tax folder and R75

1/20 is the final deadline for shareholders to send dividend reports to SKAT

17

**VP scheme**
VP Reports foreign share recipients for foreign listed companies.

simultaneous

3S

1/20 and simultaneous until 7/1 of the income year

eCapital UDBY

3S receives information about dividend recipients from unlisted companies and the VP scheme.

**Accounting 2**
Manual accounting of refunds based on printouts from 3S.

Daily transfer of declarations with payment demands

**Accounting 2**
Consolidation of field 37 of the company tax declaration and the dividend declaration.

SAP38

THE MINISTRY OF TAXATION

**Appendix 4**

Internal Audit

May 10, 2010

**Consultation response**

*Accounting 2 has the following comments to the report:*

*Comments to the report*

To Section 7.2.4, Accounting 2 states that no reconciliation is made between declaration and reporting. Therefore, a missing declaration (and payment) will not be detected if only dividend recipients have been reported. And the reporting entails crediting of dividend tax.

For the approximate 2 million shareholders in listed companies, the reporting of dividend recipients does not allow for reconsolidation with the distributing company's declaration.

To Section 8, Conclusion, regarding the lack of reconsolidation of refunds, Accounting 2 states that it is not possible to separate foreign shareholders' dividends before refunds in 3S because foreign shareholders get 28% of dividend tax withheld, which is also the general rule.

*Want to resolve the inadequacies*

With the 2010 spring package, it is possible that the deadline to report dividend recipients will coincide with the deadline to declare and pay dividend tax. This possibility is expected to be used. If this coincidence is combined with an electronic reporting scheme of dividend declaration/reporting of dividend recipients, an optimal solution will be achieved in this area. This can thereby save a form based business process, as well solve the reconcilation process, which is currently lacking.

The VP scheme is broadened to include all countries that Denmark has a Double Taxation Agreement with and to all shareholders, both natural and legal persons. This will solve the problem of reconciliating refunds with withheld dividend tax. At the same time, it is ensured that each share is only given a reduction once, where in principle refunds can be made for the same share in several stages.

18

To be included in the VP scheme, foreign shareholders are obligated to be reported as shareholders. The financial institutions that are responsible for the deposits, guarantee the accuracy of the special tax status noted on the deposits.

*Follow-up on the dividend administration*

As a comment to the audit's conclusion regarding follow-up to previous studies and the comment in section 7.6.2 regarding the lack of focus, it is stated that the dividend tax administration/Accounting 2 has taken several *steps* towards and together with HC and others since 2003.

Summary overview:

2003
Extension of the VP scheme.

2004
Setting up a working group to find responsible office in HC.
Setting up of a working group to resume use of 3S.

2005
Continued work with use of 3S.
Setting up a working group on change in deadline for reporting dividend recipients.

2006
Contact HC for lack of reconciliation between declaration and crediting of dividend recipients.

In connection with the establishment of the Competence Center Dividend and Royalty Tax (*kompetencecenter Udbytte- og Royaltyskat*), an internal communication was sent on November 30, 2006, which contained as Appendix 3, a list of dividend tax and the pressing challenges that needed to be resolved.

2007
Refunds and related deadlines.
Development of the VP scheme together with the Fiscal Council (*Finansrådet*).

2008
Included in Project Projected Equation (*Projekt Fremrykket Ligning*) - projected reporting of dividend recipients.

Meeting with the Ministry
(which resulted in legislative changes).

Proposed rapid digitalization of dividend administration.

Confidential Pursuant to Protective Order
SKAT_MDL_001_00281058_T

2009
Adopted new legal basis for the reporting deadline, authority to the Minister.

2010
Proposed abovementioned proposal for harmonization of declaration/reporting deadlines and digitalized reporting system of dividend declaration/reporting.

*Citizen and Business has the following comments to the report:*
*Comments to the report:*
Distributions from investment funds are not reported through 3S, even if unlisted. This applies, as of 2010, to the unlisted investment firms.

The keyed-in entries through 3S (after the change in L201) include only unlisted Danish shares that are not registered with VP. However, the unregistered unlisted companies can report electronically (TP reporting or tapes, cassette, etc.) outside 3S and directly to the subsystem UDBY.

Foreign dividend recipients are reported regardless of whether the distribution originates from listed or unlisted shares/certificates.

BO is a duplicate registration of information reported under the mandatory reporting obligations and is therefore not an independent register.

Section 7.2.3 subsequent corrections only deal with the reporting made by the account holders. If the company, which has a reporting obligation, corrects itself, it will also be able to correct the declaration, as the company itself is responsible for both.

In six paragraphs of Section 7.2.4, a study is discussed, which presents three listed companies that do not have any dividend recipient reporting. Citizens and Business have difficulty in believing that this is true, since the report comes from the account holders and not from the company itself. It would be a coincidence if there were no additional recipients of dividends and if they all would have the same account holding institution.

If the study referred to only includes the administrative reporting in the VP scheme, which Citizen and Business supposes, then the study may be misleading, as reporting on dividend recipients (regardless of VP scheme or not) will be included in the electronic capital gains registry (*e-Kapitalindkomstregistret*) UDBY or IFPA.

Section 7.2.4, third last paragraph, states that Citizen and Business are of the opinion that it is possible to make selections across the systems so that an approximate reconciliation can occur. This is true for the unlisted, as there is a connection between the declaration and the dividend reciepient-reporting obligation, in that, as you and the dividend administration state, both the declaration and reporting for the unlisted are in most cases submitted at the same time. Citizens and Business still believe this is so.

Confidential Pursuant to Protective Order

SKAT_MDL_001_00281058_T

For those listed, this is only possible once the amendment (L201) comes into effect in 2010. However, the optimum reconciliation can only be established once simultaneous reporting is introduced hopefully in 2011. Citizen and Business have stated the aforementioned several times during our meetings, and it would be unfair to write the text as presented.

For Appendix 1, it is noted that all reports are collected (listed/unlisted and investment funds/companies using the same entry in the eCapital sub-entry system). If the information is correct, it cannot be shared immediately in Danish or non-Danish, because if there is a Danish identification for the non-Danish, these are forwarded in the same way as the Danish, which means that they come to R75, the tax file or are included in the annual report if it it shown that the foreign exchange information was incorrect and the person, for example, is fully taxable. In addition, the following is stated:

- the rejection is sent to the party with the reporting obligation (the account holding/custodian or company).

- that foreign currencies, regardless of Danish identification, are exchanged abroad under the EU savings directive (*EU-rentebeskatningsdirektivet*) or under a DBO agreement, if the information is covered by them.

For Appendix 3, it is noted that there are some factual misstatements. Partially concerning the definition of listed and unlisted versus reporting rules according to SKL, and partially concerning the deadline for reporting to SKAT. It is not the last deadline for reporting to SKAT, it is a timely deadline for reporting to SKAT after SKL. Reporting to SKAT can always be made, but electronically only up to and including July 1 of the income year (recipient's income year) + 2 (2010 rules). For 2009 and previously, the deadline was October 1 of the year following the income year. Following this, Internal Audit has divided the regulatory framework for before and after 2010 in Appendix 3.

Finally, it is stated that the VP scheme (the administrative reporting reported to Ballerup) does not come into e-Capital as listed in Appendix 3.

*Initiatives in the area*

Citizen and Business has informed that a number of initiatives have been taken in this area, including:

2009:
Report on income year 2009 (dividend recipients).
A mandatory reporting obligation of CVR/SE No. and name for the issuing investment fund etc., is introduced (before it was voluntary).

Through the e-Capital project, the focus is on everyone fulfilling the required reporting duty.

Confidential Pursuant to Protective Order

A compulsory reporting obligation on the custodian code (investment funds, etc.) is introduced. I.e., shares/certificates held in custodian accounts for pension plans are no longer exempt from reporting obligations.

2010:
Report on income year 2010 (dividend recipient)
The definition of listed and unlisted listed companies is generally changed to trading on a regulated market, or not being admitted to trade on a regulated market.

The changed definition means that several of the previously unlisted shares will be reported electronically via the account-holding institutions. This means that the reports from the companies themselves are limited and ensures an improved and more satisfactory reporting.

A mandatory reporting duty by CVR/SE Number is imposed on the distributing company (listed), etc.

A mandatory reporting obligation for the custodian code (shares, etc.) is introduced. I.e., shares in custodian accounts for pension plans are no longer exempt from reporting obligations.

The five percent rule on exemption from reporting obligation is repealed and distribution recipient reporting becomes mandatory.

Opening hours are extended for IT reporting to July 1 of the income year + 2.

2011:
A simultanous-reporting obligation on distributed dividends for both persons and companies is imposed.

The final section of the conclusion seems unfair given the changes that SKAT has made with L201. More can be done, but with these changes, as well as a reporting reconciliation through 3S and UDBY, a major breakthrough has been made in this area.

In addition, it is Citizen and Business' opinion that considering the simultanious reporting system corrections and the legal basis for the reports 2009-2011, significant initiatives have been taken to support reconciliation and reporting. Nevertheless, it is believed that the following solutions can be relevant:

- Reconciliations - for example, a stronger reporting check of the source basis (company/custodian account registration) would be a good solution.
- The introduction of a directive that makes the various accounting institutions responsible for the correct administration/reporting of dividend tax. A directive that corresponds to the directive in section 65 of the Withholding Tax Act regarding liability for the use/administration of exemptions.
- Reporting of adviser (power of attorney) to the individual custodians, in order to know who has the actual ownership of the shares (Transparency of the custodian account).

22

Confidential Pursuant to Protective Order    SKAT_MDL_001_00281058_T

- Changed customer registration and ownership reporting so that a number of the existing ownership status codes are further split up. For example, for the foreign ownership relationship, the sole owner person, sole owner company, more than two owners, and administrator.
- IT - support for the entire exemption procedure (issuing, registering) and presentation similar to the query on dividend withholding percentage.
- A notification mark for the person being included in the so-called "VP scheme."

With the tax reform, it was possible to take various systemic initiatives that would improve the reporting of the dividend recipients, and that could also pave the way for a better reconciliation of distributions from listed, unlisted and investment fund certificates, etc.

Confidential Pursuant to Protective Order

SKAT_MDL_001_00281058_T