# Exhibit 44

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
MASTER DOCKET 18-MD-2865(LAK)

_____
                                              )
IN RE:                                        )
                                              )
CUSTOMS AND TAX ADMINISTRATION OF             )
THE KINGDOM OF DENMARK                        )
(SKATTEFORVALTNINGEN) TAX REFUND              )
SCHEME LITIGATION                             )
                                              )
_____)


C O N F I D E N T I A L


VIDEO DEPOSITION OF
LEIF N. JEPPESEN
Copenhagen, Denmark
Monday, September 27, 2021


Reported by: CHRISTINE MYERLY

Page 82

1    MR. SMITH: Objection to form. I think
2 that has been agreed.
3          (Danish clarification.)
4    A    Yes.
5 BY MR. BAHNSEN:
6    Q    But you are telling me that
7 whether they get to keep the dividend or not depends
8 on some agreement that may have been made with the
9 lender, correct?
10   MR. SMITH: Objection to the form.
11   A    Correct.
12 BY MR. BAHNSEN:
13   Q    So, is it clear to SKAT who, as
14 between the borrower and the lender, is entitled to
15 the dividend?
16   MR. SMITH: Objection to the form.
17   A    No, that is not necessarily clear.
18 But it is also not significant when it comes to
19 determining actual ownership.
20 BY MR. BAHNSEN:
21   Q    Is it significant when it comes to
22 determining taxation on the dividend?
23   MR. SMITH: Objection to the form.
24   A    No.
25   MR. SMITH: Mr. Bahnsen, we have been

Page 83

1 going for about another hour here. I don't know if
2 you are at a point to take a short break or --
3    MR. BAHNSEN: Well, Mr. Jeppesen, would
4 you like to take a break at this point?
5    THE WITNESS: Yes, thank you.
6    MR. BAHNSEN: Sure. Is ten minutes okay?
7    THE WITNESS: Yes.
8    THE INTERPRETER: Yes.
9    MR. BAHNSEN: Can we go off the record,
10 please.
11   THE VIDEOGRAPHER: The time is 10:10 a.m.
12 New York time and we are going off the record.
13         (Off the record.)
14   THE VIDEOGRAPHER: The time is 10:22 a.m.
15 New York time and we are back on the record.
16 BY MR. BAHNSEN:
17   Q    Mr. Jeppesen, I want to try and
18 just make sure I understood some of what we have
19 been talking about here in connection with the risks
20 that you saw with share lending. Okay?
21   A    Yes.
22   Q    Is the issue that SKAT cannot
23 determine the beneficial owner of the dividend
24 because of the possibility that shares had been
25 lent?

Page 84

1    MR. SMITH: Objection to the form.
2    A    Yes. The problem is that the
3 person registered with VP is not necessarily the
4 beneficial owner.
5 BY MR. BAHNSEN:
6    Q    Was stock lending a common
7 occurrence in 2006?
8    MR. SMITH: Objection to form.
9    A    I don't actually know anything
10 about that. It was not something that I had dealt
11 with before.
12 BY MR. BAHNSEN:
13   Q    Do you know whether others had an
14 understanding of the incidents of stock lending in
15 the market?
16   MR. SMITH: Objection to the form.
17   A    I can see here that this was
18 referenced in our legal guidelines from that time.
19 BY MR. BAHNSEN:
20   Q    So -- well, do you know beginning
21 when they were referenced in the legal guidelines?
22   MR. SMITH: Objection to form.
23   A    I don't know -- no, I don't know
24 when they were included -- when they began to be
25 included.

Page 85

1 BY MR. BAHNSEN:
2    Q    Were they included in the legal
3 guidelines when you were still at SKAT?
4    A    Yes.
5    Q    So the problem you described where
6 the person registered at VP is not necessarily the
7 beneficial owner, that presents a problem for SKAT,
8 correct?
9    MR. SMITH: Objection to form.
10   A    Yes.
11 BY MR. BAHNSEN:
12   Q    Is that because SKAT needs to make
13 a determination of beneficial ownership before it
14 knows who is entitled to a VP claim?
15   THE INTERPRETER: Sorry, can you repeat
16 that?
17   Q    Is it a problem because SKAT needs
18 to make a determination as to beneficial ownership
19 before it knows who is entitled to a reclaim?
20   A    Yes.
21   Q    And that is a tax determination as
22 to who is the beneficial owner, correct?
23   MR. SMITH: Objection to the form.
24   A    Yes.
25

Page 86

1  BY MR. BAHNSEN:
2       Q    Actually, if we can take a quick
3  side journey here, I want to just go back over my
4  understanding of the process you described earlier
5  from a tax determination.  So to start at the very
6  beginning, SKAT receives a reclaim application,
7  correct?
8       MR. SMITH:  Objection to form.
9       A    Yes.
10 BY MR. BAHNSEN:
11      Q    The question before SKAT is who is
12 the beneficial owner of the dividend, correct?
13      MR. SMITH:  Objection to form.
14      A    Yes.
15 BY MR. BAHNSEN:
16      Q    And the reason that SKAT needs to
17 know is because only the beneficial owner is
18 entitled to the reclaim, correct?
19      MR. SMITH:  Objection to form.
20      A    Correct.
21 BY MR. BAHNSEN:
22      Q    Otherwise, there is a risk that
23 SKAT is paying the wrong person a reclaim, correct?
24      MR. SMITH:  Objection to form.
25      A    No.  The risk is that SKAT pays

Page 87

1  out a refund even though the individual in question
2  is not entitled to a refund.
3  BY MR. BAHNSEN:
4       Q    After SKAT makes the determination
5  on beneficial ownership, did you say that that
6  determination can be reviewed by the Danish national
7  tax tribunal?
8       MR. SMITH:  Objection to form.
9       A    Well, not the decision about
10 repayment of withheld dividend tax, but the issue of
11 who the beneficial owner is can be changed by the
12 Danish national tax tribunal.
13 BY MR. BAHNSEN:
14      Q    Does the Danish national tax
15 tribunal hear matters that are not tax matters?
16      A    I believe that cases involving
17 determination of property values can also be brought
18 before the Danish national tax tribunal.
19      Q    Are those matters brought before
20 the tax tribunal in relation to a question about tax
21 on those properties?
22      MR. WEINSTEIN:  Objection to form.
23      A    No.
24 BY MR. BAHNSEN:
25      Q    In the event the national tax

Page 88

1  tribunal reviews a determination on who the
2  beneficial owner is, can a Danish court then review
3  that decision further?
4       MR. SMITH:  Objection to form.
5       A    Yes.
6  BY MR. BAHNSEN:
7       Q    Are there multiple levels of court
8  review?
9       MR. SMITH:  Objection to form.
10      A    Yes.
11 BY MR. BAHNSEN:
12      Q    What, if anything, did SKAT do to
13 control the question of beneficial ownership when it
14 received a reclaim application?
15      MR. SMITH:  Objection to form.
16      A    I have no knowledge about that.
17 BY MR. BAHNSEN:
18      Q    Did SKAT verify the declarations
19 of ownership that accompanied reclaim applications?
20      MR. SMITH:  Objection to form.
21      A    I do not know.  That was not my
22 area.
23 BY MR. BAHNSEN:
24      Q    Can you turn back to what was
25 marked as Exhibit 3943, please.  This was your

Page 89

1  e-mail to Susanne Andersen, correct?
2       MR. SMITH:  Hold on one second,
3  Mr. Bahnsen, just identifying the document.
4       THE INTERPRETER:  Ready.
5  BY MR. BAHNSEN:
6       Q    Okay.  This was your e-mail to
7  Ms. Andersen, correct?
8       THE WITNESS:  Yes.
9       Q    If you look at the top of the
10 e-mail header, there appear to be two attachments to
11 the e-mail, do you see that?
12      THE WITNESS:  Yes.
13      Q    If you look at the first
14 attachment, it appears to be a note from Finn
15 Mikkelsen, do you see that?
16      MR. SMITH:  Objection to form.
17 BY MR. BAHNSEN:
18      Q    Are you on the page --
19      MR. SMITH:  Do you want to restate your
20 question --
21           (Crosstalk.)
22      A    Yes.
23 BY MR. BAHNSEN:
24      Q    Who is Mr. Mikkelsen?
25      THE WITNESS:  I don't remember.  I don't

Page 94

1    MR. BAHNSEN: Everybody in the room agree
2 that the phrase should be "beneficial owner" in the
3 transcript?
4    MS. EGHOLM: Yes.
5    MR. SMITH: One second. In his response,
6 did he say entitled to receive --
7    MR. WEINSTEIN: Are you speaking on the
8 record right now or --
9    MR. SMITH: For a translation issue, was
10 his response, did he said "dividend refund" or just
11 "dividend"?
12    THE INTERPRETER: He said dividend refund.
13    MS. EGHOLM: In the first part of the
14 sentence he said "dividend refund," the second part
15 it was "dividend."
16    MR. SMITH: Okay. Sorry about that.
17 BY MR. BAHNSEN:
18    Q    Okay. So, Mr. Jeppesen, the
19 essential question before SKAT, when it receives a
20 reclaim application, is who is the beneficial owner
21 of the shares, correct?
22    MR. SMITH: Objection to form.
23    A    The essential question is whether
24 the person applying for the refund is in fact the
25 beneficial owner.

Page 95

1 BY MR. BAHNSEN:
2    Q    And we have been talking a little
3 bit about the possibility of shared lending,
4 correct?
5    MR. SMITH: Objection to the form.
6    A    Correct.
7 BY MR. BAHNSEN:
8    Q    Shared lending is something that
9 happens in the market on a regular basis, correct?
10    MR. SMITH: Objection to the form.
11    A    Correct.
12 BY MR. BAHNSEN:
13    Q    Share lending is not illegal, is
14 it?
15    MR. SMITH: Objection to the form.
16    A    It is not.
17 BY MR. BAHNSEN:
18    Q    And the problem you identified
19 with share lending is that it means SKAT may not
20 know who the beneficial owner is, correct?
21    MR. SMITH: Objection to the form.
22    THE INTERPRETER: I'm sorry, the last part
23 of your question, that SKAT did not --
24 BY MR. BAHNSEN:
25    Q    Know who the beneficial owner is,

Page 96

1 correct.
2    A    Correct.
3    Q    Do nominee accounts affect SKAT's
4 ability to determine who the beneficial owner is
5 when there has been shared lending?
6    MR. SMITH: Objection to the form.
7    A    So, not necessarily. In
8 principle, whoever applies for a refund is -- has to
9 document that he is the -- is the beneficial owner.
10 BY MR. BAHNSEN:
11    Q    Do you know what documents SKAT
12 requested in support of that question?
13    MR. SMITH: Objection to the form.
14    A    I don't know -- not generally, no.
15 BY MR. BAHNSEN:
16    Q    With respect to the 2006 TDC case
17 that we were talking about earlier, did the
18 documents that were included with the reclaim
19 application prove beneficial ownership?
20    MR. SMITH: Objection to the form.
21    A    I do not know. I was not involved
22 in that.
23 BY MR. BAHNSEN:
24    Q    If you could turn back to
25 Exhibit 3941 for a minute, please. And your e-mail

Page 97

1 on 25th of January, on the top of the third page.
2 You are requesting additional documentation,
3 correct?
4    MR. SMITH: One second, Mr. Bahnsen, we
5 are just identifying the document.
6    A    Ready.
7 BY MR. BAHNSEN:
8    Q    So the question is, do you recall
9 our discussion earlier as to why you were requesting
10 these additional documents?
11    MR. SMITH: Objection to the form.
12    A    Yes.
13 BY MR. BAHNSEN:
14    Q    Was your answer earlier that it
15 was because the documents that were submitted with
16 the application were not enough for SKAT to
17 determine beneficial ownership?
18    MR. SMITH: Objection to the form.
19    A    So, I don't know whether there
20 have been documentation or appendices with the
21 application before they were sufficient, but the
22 declaration here -- but the declaration here was not
23 sufficient in order for us to determine beneficial
24 ownership.

Page 98

1  BY MR. BAHNSEN:
2      Q    Can you please flip forward a few
3  pages to Exhibit 3943, again, an e-mail you sent
4  Ms. Andersen.
5      A    Ready.
6      Q    What does the last line of your
7  e-mail request of Ms. Andersen?
8          MR. SMITH: Objection to the form.
9      A    I asked whether they are currently
10 or whether they are planning to carry out dividend
11 tax -- withheld dividend tax refund control.
12 BY MR. BAHNSEN:
13     Q    Did you ever receive a response to
14 this question?
15     A    I don't remember.
16     Q    Do you recall learning whether
17 SKAT was carrying out controls with respect to
18 dividend tax refunds?
19         MR. SMITH: Objection to the form.
20     A    No. What I was looking for here
21 was a way to get more knowledge about what documents
22 could be exchanged in order for us to elaborate on
23 our legal guidelines.
24 BY MR. BAHNSEN:
25     Q    What specifically did you want to

Page 99

1  elaborate on the guidelines?
2          MR. SMITH: Objection to form.
3      A    It was a question of how to -- who
4  was the beneficial owner of the shares and how to
5  document this with the documentation available.
6  BY MR. BAHNSEN:
7      Q    Were those guidelines ever
8  created?
9          MR. SMITH: Objection to the form.
10     A    They were already -- sorry.
11 Information about who the beneficial owner was and
12 determination thereof was already in our legal
13 guidelines. The issue was then if we could be more
14 specific and whether there were any outstanding
15 questions that we needed to clarify.
16 BY MR. BAHNSEN:
17     Q    Did this issue arise because you
18 had identified a way in which SKAT would not
19 determine beneficial ownership?
20         MR. SMITH: Objection to the form.
21     A    There was a risk that we would not
22 be able to make this determination; there might have
23 been outstanding questions that we had in connection
24 with stock lending, especially in cases including
25 stock lending with an option of sale.

Page 100

1  BY MR. BAHNSEN:
2      Q    What is an early warning?
3          MR. SMITH: Objection to the form.
4          (Danish clarification.)
5      A    So, an early warning is a
6  notification made to authorities about issues that
7  might be -- issues that might become problems in the
8  media, for example, and also where the minister
9  might need to become involved.
10 BY MR. BAHNSEN:
11     Q    Is this a process within SKAT or
12 the legal office in the legal department?
13         MR. SMITH: Objection to the form.
14     A    This is in SKAT.
15 BY MR. BAHNSEN:
16     Q    Can anyone in SKAT prepare an
17 early warning?
18     A    Anybody can highlight a problem
19 and ask their superiors to bring it forward in the
20 system.
21     Q    Does an early warning have to be
22 approved by somebody?
23         MR. SMITH: Objection to form.
24     A    So, in the final analysis, before
25 this becomes an early -- an early warning, this

Page 101

1  needs to be approved by the board of directors.
2  BY MR. BAHNSEN:
3      Q    Who is the board of directors?
4      A    So, I don't remember all the
5  names, but Ole Kjær was the top director.
6      Q    Without their names, functionally,
7  what was the job of the board of directors?
8          MR. SMITH: Objection to the form.
9          THE INTERPRETER: Are you asking
10 individual titles?
11         MR. BAHNSEN: No. I am asking what was --
12 as a body, what was the role of the executive board.
13         MR. SMITH: Objection to form.
14         (Danish clarification.)
15     A    Well, we were -- we coordinated --
16 we coordinated tasks within SKAT.
17 BY MR. BAHNSEN:
18     Q    Were you a member of the executive
19 board?
20         MR. SMITH: Objection to form.
21     A    Yes. While I was head of legal, I
22 was, yes.
23 BY MR. BAHNSEN:
24     Q    When you became a senior
25 consultant you were no longer a member of the

Page 122

1      MR. SMITH: Objection to form.
2      A      So, yes, it is legal. I did write
3  that at some point. But that should be seen in the
4  light of that I am not aware of any rules making
5  this specifically illegal. So, the term "legal"
6  should be taken with some reservation.
7  BY MR. BAHNSEN:
8      Q      We can come back to that in just a
9  second. Just so I am clear with what you are
10 saying, you don't recall actually writing the
11 document you have before you, do you?
12     MR. SMITH: Objection to form.
13     A      Correct.
14 BY MR. BAHNSEN:
15     Q      But you recall writing something
16 either similar or identical to the paragraph you
17 just read, correct?
18     MR. SMITH: Objection to form.
19     A      No. I remember when reading this
20 that I wrote this.
21 BY MR. BAHNSEN:
22     Q      I am sorry. So you are saying
23 that this document that we have been looking at for
24 a while is something that you wrote, correct?
25     MR. SMITH: Objection to the form.

Page 123

1      A      Yes.
2  BY MR. BAHNSEN:
3      Q      Okay. Thank you. Now, back to
4  the point I think you were making a second ago. You
5  are suggesting that there is a difference between
6  the legal ownership and the beneficial ownership of
7  the shares, correct?
8      MR. SMITH: Objection to the form.
9      THE INTERPRETER: Hang on one second,
10 please.
11     (Danish clarification.)
12     MR. WEINSTEIN: This came up the other
13 day. There is no different translation --
14     THE INTERPRETER: The problem is with
15 legal owner and beneficial owner in Danish is
16 translated the same. I can only say is there a
17 difference between beneficial owner and beneficial
18 owner. It makes no sense when I translate this.
19 BY MR. BAHNSEN:
20     Q      Is this paragraph that you wrote,
21 Mr. Jeppesen, describing a situation where SKAT
22 would have to determine which of two people is the
23 beneficial owner?
24     MR. SMITH: Objection to the form.
25     A      Yes, that is the issue.

Page 124

1  BY MR. BAHNSEN:
2      Q      So, just so that I understand, the
3  parties that would be involved in this scenario,
4  there could be a lender of shares who believes he is
5  the owner of the shares, correct?
6      MR. SMITH: Objection to form.
7      A      Yes.
8  BY MR. BAHNSEN:
9      Q      There could also be somebody who
10 buys shares who believes that they are the owner of
11 those shares, correct?
12     MR. SMITH: Objection to the form.
13     A      Correct.
14 BY MR. BAHNSEN:
15     Q      As you have been saying all along,
16 only one of those people can be the beneficial owner
17 of the shares under Danish tax law, correct?
18     MR. SMITH: Objection to the form.
19     A      Correct.
20 BY MR. BAHNSEN:
21     Q      Is it possible for the buyer of
22 the shares in that hypothetical to claim he is the
23 owner without making a false statement?
24     MR. SMITH: Objection to the form.
25     (Danish clarification.)

Page 125

1      A      So, if a buyer -- if a buyer buys
2  borrowed shares, he is then registered with VP and
3  can as such receive dividends. So, he might be
4  under the impression that he is the owner of the
5  shares.
6      However, if the buyer knows or should have
7  known that he is buying borrowed shares, then the
8  purchase agreement should specify whether the
9  original owner or the new owner is the one to
10 receive dividend and be the one entitled to apply
11 for a refund. However, the refund application for
12 tax purposes can -- can in this scenario only be
13 made by the beneficial owner.
14 BY MR. BAHNSEN:
15     Q      What if the buyer is unaware that
16 they have purchased from a -- withdrawn. What if
17 the buyer is unaware that they are purchasing
18 borrowed shares?
19     MR. SMITH: Objection to the form.
20     A      Then the buyer would be in good
21 faith and registered as the owner with VP.
22 BY MR. BAHNSEN:
23     Q      Does that mean that they would
24 also have a claim to beneficial ownership?
25     MR. SMITH: Objection to the form.

CONFIDENTIAL
Leif N. Jeppesen - September 27, 2021

33 (Pages 126 to 129)

Page 126

1     A    So again, that depends on the
2 agreement made about borrowing the shares.  They can
3 be -- if we are talking about transferable shares,
4 they can be the -- they can be the beneficial owner.
5 But at the time this was one of the issues that
6 still lacked clarification.
7 BY MR. BAHNSEN:
8     Q    To be clear, I am not asking you
9 to resolve the question of who is the beneficial
10 owner.  I am just asking if it is possible for that
11 person to believe that they are the beneficial
12 owner.  Do you understand?
13     MR. SMITH:  Objection to the form.
14     A    Yes, it is possible because they
15 are registered as owners with VP.
16 BY MR. BAHNSEN:
17     Q    That question of who is actually
18 the beneficial ownership is for SKAT to control,
19 correct?
20     MR. SMITH:  Objection to the form.
21     A    Correct.
22 BY MR. BAHNSEN:
23     Q    This is a complicated question of
24 Danish tax law that we are trying to determine,
25 correct?

Page 127

1     MR. SMITH:  Objection to the form.
2     A    Yes.
3 BY MR. BAHNSEN:
4     Q    So, if we can go back to the other
5 person in our example here, we have been talking
6 about the buyer, but if we go back to the original
7 owner, the lender, can that person also claim
8 ownership of the shares?
9     MR. SMITH:  Mr. Bahnsen, I think we have
10 been going over this for almost an hour now.  I
11 think he has answered every permeation of the
12 question, including this question, which I believe
13 you asked before.  We ask that we move onto a
14 different topic here.
15     MR. BAHNSEN:  Mr. Smith, if you have an
16 objection to form or foundation, you may state it as
17 such.  Otherwise I will proceed with my questions as
18 I see fit here.  I appreciate that we have been
19 talking about this for a while, but this is
20 complicated.  I want to make sure I understand the
21 witness correctly.
22     MR. SMITH:  That is understood.  As we
23 said before, Mr. Jeppesen, you know, is trying to
24 accommodate some family issues as well, so if we can
25 move this along it would be appreciated but noted.

Page 128

1 BY MR. BAHNSEN:
2     Q    So, Mr. Jeppesen, if you have
3 matters that require your attention outside of here,
4 I am more than happy to allow you to attend to them
5 on the condition that we are allowed to complete our
6 deposition here.  I am going to give you the choice.
7 We can either finish today or we can finish another
8 day.
9     A    Would it be okay with me just to
10 make a quick call and see how things are?
11     MR. BAHNSEN:  Of course it would.  I
12 apologize.  I was unaware that there were issues
13 that were going on today until they were first
14 mentioned about an hour ago.  Why don't we take a
15 break.
16     MR. SMITH:  Let me ask this, how much
17 longer do you think you have in terms of
18 questioning?
19     MR. BAHNSEN:  Look, I -- can we go off the
20 record first?
21     THE VIDEOGRAPHER:  Standby.  The time is
22 12:26 p.m. New York time.  We are going off the
23 record.
24     (Off the record.)
25     THE VIDEOGRAPHER:  The time is 12:42 p.m.

Page 129

1 New York time and we are back on record.
2 BY MR. BAHNSEN:
3     Q    Mr. Jeppesen, for the period of
4 time that you were the director of SKAT's legal
5 department, was there anybody in the legal
6 department that was more senior than you?
7     MR. SMITH:  Objection to form.
8     A    As I mentioned earlier, Ole Kjær.
9 BY MR. BAHNSEN:
10     Q    You reported to Mr. Kjær?
11     A    So, Ole Kjær was the top director
12 who was then reporting to the department secretary
13 within the -- within the ministry of taxation.
14     Q    Was Mr. Kjær director in the legal
15 division of SKAT?
16     THE INTERPRETER:  Was he what, sorry?
17     Q    Was he a director within the legal
18 division of SKAT?
19     A    No.  I was the head of the legal
20 division.  He was the director of SKAT.
21     Q    Was his title director of SKAT?
22     (Danish clarification.)
23     A    So he was the director of SKAT --
24 in SKAT.
25     THE WITNESS:  In SKAT.

Page 130

1  (Danish clarification.)
2  THE INTERPRETER: I am asking the other
3  Danish -- Kirsten, the translator, is asking the
4  other Danish people in the room how to translate
5  this correctly.
6  A   Okay. So he was the, again, top
7  guy of SKAT, he was the director of the entire
8  thing. The whole national tax administration had
9  him as the top guy.
10 Q   So, you were in a pretty senior
11 position, correct?
12 MR. SMITH: Objection to form.
13 A   Compared to who?
14 BY MR. BAHNSEN:
15 Q   Was there only one person between
16 you and the permanent secretary to the Ministry of
17 Taxation?
18 MR. SMITH: Objection to form.
19 A   Yes.
20 BY MR. BAHNSEN:
21 Q   Is there anybody above the
22 permanent secretary?
23 MR. SMITH: Objection to form.
24 A   No.
25 THE WITNESS: Yes, the minister, of

Page 131

1  course.
2  A   Except for the minister, of
3  course.
4  BY MR. BAHNSEN:
5  Q   Of course. Were the other people
6  who sat on the executive board director level
7  positions?
8  MR. SMITH: Objection to form.
9  A   Yes.
10 BY MR. BAHNSEN:
11 Q   Was there anybody below the level
12 of a director on the executive board?
13 A   I believe that other people might
14 have sat in on meetings, but the executive board
15 itself was composed of seven directors, as far as I
16 remember.
17 Q   Very well. During the last break
18 we just took, Mr. Jeppesen, did you discuss any of
19 your testimony with the lawyers for SKAT?
20 A   No.
21 Q   Before the break, we were talking
22 at some length about an example, correct?
23 MR. SMITH: Objection to the form.
24 A   Correct.
25

Page 132

1  BY MR. BAHNSEN:
2  Q   I would like to get what you
3  understood to be the main point of your warning in
4  2007. Can you describe that for me?
5  MR. SMITH: Objection to form.
6  A   So, the main issue was to uncover
7  who the beneficial owner was, especially in cases --
8  no. In cases where shares had been borrowed and
9  especially in cases where they subsequently had been
10 sold.
11 BY MR. BAHNSEN:
12 Q   At the time you wrote the warning,
13 did SKAT know who the beneficial owners were in
14 those circumstances?
15 MR. SMITH: Objection to the form.
16 A   No. That had yet to be clarified.
17 BY MR. BAHNSEN:
18 Q   Is it fair to say that you were
19 warning of a risk that SKAT would make erroneous
20 refunds of dividend withholding tax?
21 MR. SMITH: Objection to the form.
22 (Danish clarification.)
23 A   So, no, that was not my immediate
24 concern. What my early warning was about was
25 clarification of the fact that the -- was to clarify

Page 133

1  that -- that we needed to uncover who the beneficial
2  owner was in cases -- in case of stock lending that
3  then went on to have sale of the shares.
4  BY MR. BAHNSEN:
5  Q   What happened to the early warning
6  that you drafted?
7  MR. SMITH: Objection to the form.
8  A   So, it remained a draft because
9  the executive board had already had changes to the
10 legislation presented to them so that they had
11 already become aware of the issue -- that Ole Kjær
12 had already become aware of the issue.
13 BY MR. BAHNSEN:
14 Q   Was Ole Kjær aware that there
15 could be two people claiming to own the same shares?
16 MR. SMITH: Objection to the form.
17 A   So, the registered owner of shares
18 with VP can legitimately in good faith maintain --
19 claim to be the owner. However, somebody who had
20 lent out shares with the possibility of them being
21 sold further on, well, who of the two is then the
22 beneficial owner, and that issue had at the time yet
23 to be clarified.
24 BY MR. BAHNSEN:
25 Q   Do you know whether it was ever

Page 138

1           MR. SMITH: Objection to form.
2        A     Yes, but only the first part of
3    it.
4    BY MR. BAHNSEN:
5        Q     Do you know what ever happened to
6    the reclaim application -- the 2006 TDC reclaim
7    application that we have been talking about today?
8           MR. SMITH: Objection to form.
9        A     No. No.
10   BY MR. BAHNSEN:
11       Q     Do you know whether it was paid to
12   the applicant?
13          MR. SMITH: Objection to the form.
14          THE INTERPRETER: Whether it was paid?
15   BY MR. BAHNSEN:
16       Q     Yes.
17       A     I believe by -- after having
18   looked through the papers, that they were -- that it
19   was in fact paid. But I was not involved in that.
20       Q     Did you believe that was the
21   correct outcome?
22          MR. SMITH: Objection to the form.
23       A     I have no idea. I don't know
24   anything about that.
25

Page 139

1    BY MR. BAHNSEN:
2        Q     Do you know what information SKAT
3    collects from reclaim applicants in support of
4    dividend reclaim applications?
5           MR. SMITH: Objection to form.
6        A     In overall terms, yes, I do know.
7    BY MR. BAHNSEN:
8        Q     Is a declaration of beneficial
9    ownership one of the items SKAT collected in 2006?
10          MR. SMITH: Objection to the form.
11       A     I don't remember the specific
12   wording of the declaration.
13   BY MR. BAHNSEN:
14       Q     Was the declaration completed by
15   the reclaim applicant?
16          MR. SMITH: Objection to the form.
17       A     Yes.
18   BY MR. BAHNSEN:
19       Q     Just so I am clear, it was the
20   applicant who stated that they were the beneficial
21   owner, correct?
22          MR. SMITH: Objection to the form.
23       A     Correct.
24   BY MR. BAHNSEN:
25       Q     Was there any sort of --

Page 140

1        A     Whether they were the beneficial
2    owner or not is the question. As far as I remember,
3    the form itself was not specific enough, is what I
4    remember to be -- to be one of the problems.
5        Q     Are you saying that the
6    declaration did not request enough information for
7    SKAT to determine the question of beneficial
8    ownership?
9           MR. SMITH: Objection to form.
10       A     Yes.
11   BY MR. BAHNSEN:
12       Q     Do you have an opinion on the
13   value of declarations as evidence?
14          MR. SMITH: Objection to the form.
15       A     So, the declarations were
16   insufficient to determine who the beneficial owner
17   was, especially in connection with stock lending and
18   the right to sell the shares.
19   BY MR. BAHNSEN:
20       Q     Do you think that -- withdrawn.
21   Can you turn, please, to page 27 of Exhibit 3966.
22   Let me know when you are there.
23          THE WITNESS: Yes.
24       Q     Do you remember telling Mr. Tynell
25   that you are skeptical of declarations?

Page 141

1           MR. SMITH: Objection to form.
2        A     Yes, in general terms.
3    BY MR. BAHNSEN:
4        Q     Did you discuss an example --
5           THE WITNESS: Yes.
6        Q     -- where -- I am sorry. The
7    answer is yes?
8        A     I jumped the gun, sorry.
9        Q     What was the example that you gave
10   Mr. Tynell?
11       A     It was an example from my time at
12   the Copenhagen Tax Administration. I had seen a
13   declaration from a Danish police officer -- or that
14   I had seen from a Danish police officer a
15   declaration from a foreign individual maintaining to
16   be married to Queen Elizabeth.
17       Q     Did you believe that the foreign
18   individual in that case was actually married to
19   Queen Elizabeth?
20          THE INTERPRETER: I don't think I
21   translated this correctly. The police officer had
22   gone abroad, obtained a declaration stating that he,
23   the Danish police officer, was married to Queen
24   Elizabeth. Whether the witness believes that to be
25   the case is emphatically no. It was meant in jest.

CONFIDENTIAL
Leif N. Jeppesen - September 27, 2021

37 (Pages 142 to 145)

Page 142

1  Q   What was the point of sharing this
2  example with Mr. Tynell?
3      MR. SMITH: Objection to form.
4  A   It was a good story.
5  BY MR. BAHNSEN:
6  Q   Did it also suggest that
7  declarations may not be sufficient evidence in some
8  cases?
9      MR. SMITH: Objection to the form.
10 A   So, this is not meant -- this is
11 not a direct consequence of the example that I gave.
12 Declarations in general are legal and true, but
13 there can be examples when they are not, which this
14 was a very evident example of.
15 BY MR. BAHNSEN:
16 Q   Did you suspect that people were
17 submitting declarations in connection with reclaim
18 applications that were untrue?
19     MR. SMITH: Objection to form.
20 A   Not necessarily. I mean, untrue
21 in what way? Because the issue remained who the
22 beneficial owner was when -- in connection with
23 stock lending, and then if those shares were to be
24 sold. The issue remained unresolved and not solved
25 by the use of these declaration forms.

Page 143

1  BY MR. BAHNSEN:
2  Q   Are you saying that SKAT would
3  still have had to determine the question of
4  beneficial ownership?
5      MR. SMITH: Objection to the form.
6  A   Yes.
7  BY MR. BAHNSEN:
8  Q   So if SKAT received two separate
9  declarations of beneficial ownership for the same
10 shares, SKAT would have to make a determination as
11 to which one is correct, correct?
12     MR. SMITH: Objection to the form.
13 A   Yes.
14 BY MR. BAHNSEN:
15 Q   And that determination is a
16 determination of Danish tax law, correct?
17     MR. SMITH: Objection to the form.
18 A   Yes.
19 BY MR. BAHNSEN:
20 Q   Do you recall whether the
21 declaration forms SKAT required in connection with
22 reclaims changed after your early warning?
23     MR. SMITH: Objection to the form.
24 A   I don't know whether that
25 happened.

Page 144

1  BY MR. BAHNSEN:
2  Q   You were never told that it had
3  changed, were you?
4      MR. SMITH: Objection to the form.
5  A   No.
6      MR. BAHNSEN: Tell you what, let's go off
7  the record, please.
8      THE VIDEOGRAPHER: Standby. The time is
9  1:21 p.m. New York time. We are going off the
10 record.
11     (Off the record.)
12     THE VIDEOGRAPHER: The time is 1:36 p.m.
13 New York time and we are back on record.
14     MR. BAHNSEN: Mr. Jeppesen, thank you very
15 much for your time today. I have no further
16 questions for you.
17     THE WITNESS: Okay. Thank you.
18     MR. SMITH: Does anybody else from the
19 defendants have any questions for Mr. Jeppesen?
20     MR. BAHNSEN: I will let them pipe up, but
21 I assume in a few seconds we can take the silence as
22 a no.
23     (No response.)
24     MR. SMITH: So we actually have a few
25 questions, Nick, but if we can go off the record for

Page 145

1  a moment.
2      MR. BAHNSEN: Sure.
3      THE VIDEOGRAPHER: Standby. The time is
4  1:37 p.m. New York time and we are going off the
5  record.
6      (Off the record.)
7      THE VIDEOGRAPHER: The time is 1:54 p.m.
8  New York time and we are back on record.
9           EXAMINATION
10 BY MR. SMITH:
11 Q   Good evening, Mr. Jeppesen. I
12 just have a few questions for you. Was it your
13 understanding that if someone borrowed shares, that
14 for the purpose of registration at VP securities,
15 the borrower would be the registered owner?
16 A   Yes.
17 Q   And as a result of the borrower
18 being the registered owner, a dividend distribution
19 made by a company would be made to the borrower?
20 A   Yes.
21 Q   However, under Danish tax law, it
22 was the lender that would be the beneficial owner.
23     MR. BAHNSEN: Objection to form.
24 BY MR. SMITH:
25 Q   So in this scenario, there's a