# Exhibit 68

TAX CONVENTION WITH THE NETHERLANDS

GENERAL EFFECTIVE DATE UNDER ARTICLE 37: 1 JANUARY 1994

TABLE OF ARTICLES

CHAPTER I--------------------------SCOPE OF THE CONVENTION
Article 1--------------------------------General Scope
Article 2--------------------------------Taxes Covered
CHAPTER II-------------------------DEFINITIONS
Article 3--------------------------------General Definitions
Article 4--------------------------------Resident
Article 5--------------------------------Permanent Establishment
CHAPTER III------------------------TAXATION OF INCOME
Article 6--------------------------------Income from Real Property
Article 7--------------------------------Business Profits
Article 8--------------------------------Shipping and Air Transport
Article 9--------------------------------Associated Enterprises
Article 10-------------------------------Dividends
Article 11-------------------------------Branch Tax
Article 12-------------------------------Interest
Article 13-------------------------------Royalties
Article 14-------------------------------Capital Gains
Article 15-------------------------------Independent Personal Services
Article 16-------------------------------Dependent Personal Services
Article 17-------------------------------Directors' Fees
Article 18-------------------------------Artistes and Athletes
Article 19-------------------------------Pensions Annuities. Alimony
Article 20-------------------------------Government Service
Article 21-------------------------------Professors and Teachers
Article 22-------------------------------Students and Trainees
Article 23-------------------------------Other Income
Chapter IV-------------------------------Elimination of Double Taxation
Article 24-------------------------------Basis of Taxation
Article 25-------------------------------Methods of Elimination of Double Taxation
CHAPTER V--------------------------SPECIAL PROVISIONS
Article 26-------------------------------Limitation on Benefits
Article 27-------------------------------Offshore Activities
Article 28-------------------------------Non-Discrimination
Article 29-------------------------------Mutual Agreement Procedure
Article 30-------------------------------Exchange of Information and Administrative Assistance
Article 31-------------------------------Assistance and Support in Collection
Article 32-------------------------------Limitation of Articles 30 and 31

Article 33----------------------------Diplomatic Agents and Consular Officers
Article 34----------------------------Regulations
Article 35----------------------------Exempt Pension Trusts
Article 36----------------------------Exempt Organizations
CHAPTER VI-----------------------FINAL PROVISIONS
Article 37----------------------------Entry into Force
Article 38----------------------------Termination
Memorandum of Understanding---of 13 October, 1993
Notes of Exchange-------------------of 13 October, 1993
Letter of Submittal -----------------of 23 April, 1993
Letter of Transmittal----------------of 12 May, 1993
Protocol--------------------------------of 13 October, 1993
Notes of Exchange (Protocol)------of 13 October, 1993
Letter of Submittal (Protocol)------of 21 October, 1993
Letter of Transmittal (Protocol)----of 22 October, 1993
The "Saving Clause"-----------------Paragraph 1 of Article 24

MESSAGE

FROM THE PRESIDENT OF THE UNITED STATES

TRANSMITTING

THE CONVENTION BETWEEN THE UNITED STATES OF AMERICA
AND THE KINGDOM OF THE NETHERLANDS FOR THE AVOIDANCE OF
DOUBLE TAXATION AND THE PREVENTION OF FISCAL EVASION WITH RESPECT TO
TAXES ON INCOME, SIGNED AT WASHINGTON ON DECEMBER 18, 1992

LETTER OF SUBMITTAL

DEPARTMENT OF STATE,
*Washington, April 23, 1993.*

The PRESIDENT,
*The White House.*

THE PRESIDENT: I have the honor to submit to you, with a view to its transmission to the Senate for advice and consent to ratification, the Convention Between the Government of the United States of America and the Government of the Kingdom of the Netherlands for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, signed at Washington on

December 18, 1992. The Convention would replace the 1948 income tax convention between the United States and the Netherlands, which was last amended in 1965.

The Convention provides maximum withholding rates of tax at source on payments of dividends, interest and royalties which are generally the same as those both in the U.S. model and in the existing U.S.- Netherlands treaty. These provisions are generally favorable for U.S. investors in the Netherlands because they provide certainty and in most cases substantially reduce the tax cost of investing there.

The taxation of capital gains under the new Convention will be essentially the same as under the existing treaty and the U.S. model, except that a special "fresh-start" rule, similar to the rule in the U.S.-Canada income tax convention, is provided to increase basis to fair market value as of the end of 1984 (due to a change in U.S. law) for gains on certain U.S. real property interests that have been held continuously by a Netherlands resident since 1980. In addition, deferral of tax on gains arising from certain corporate reorganizations is provided until such gains are also recognized in the other State, provided the payment of the tax is adequately secured.

As with the existing convention, business profits in general are taxable in the other country only to the extent attributable to a permanent establishment there. In addition, the new Convention preserves the U.S. right to impose its branch tax on U.S. branches of Netherlands corporations. This tax is not imposed under the existing treaty. The Convention will also accommodate a provision of the 1986 Tax Reform Act that attributes to a permanent establishment income that is earned during the life of the permanent establishment, but is deferred, and not received until after the permanent establishment no longer exists.

Special rules are provided for the taxation of income from offshore mineral exploration activities. Under these rules, a relatively short presence on a country's continental shelf by a driller is adequate for the driller to be treated as having a permanent establishment in that country. Similar rules are found in U.S. treaties with other countries bordering the North Sea.

The Convention provides, as in the U.S. model, for exclusive residence country taxation of profits from international operation of ships and aircraft. Unlike the model, however, the reciprocal exemption does not extend to income from the use or rental of containers and from the non-incidental rental of ships and aircraft. Under the new Convention, such income is treated as business profits.

The Convention provides conditions under which each country may tax income derived by individual residents of the other country from independent personal services or as employees, as well as pension income and social security benefits. Special relief is granted to visiting students, trainees, and researchers. Items of income not specifically dealt with may be taxed only in the country of residence.

The Convention provides that the Netherlands and the United States will recognize each other's public charities on a reciprocal basis for purposes of exempting the organizations from tax.

The benefits of the Convention are limited to residents of the two countries meeting certain standards designed to prevent residents of third countries from inappropriately deriving benefits from the Convention. The existing convention contains no such limitation on benefits, although similar standards are found in other recent U.S. income tax conventions. This is one of the most significant elements in the new Convention.

The Convention also provides for the elimination of another abuse relating to the granting of U.S. treaty benefits to third-country permanent establishments of Netherlands corporations that are exempt from tax in the Netherlands. Under the new Convention, if the Netherlands has not dealt satisfactorily with this so-called "triangular case" problem through legislation prior to Senate consideration of the Convention, negotiations will be reopened to address this issue.

The Convention seeks to assure that the country of residence of a taxpayer will avoid double taxation of income which arises in the other country and has been taxed there in accordance with the treaty's provisions by generally allowing a credit against its own tax in an amount equal to the income tax paid in the other country.

In addition, the Convention includes standard administrative provisions which will permit the tax authorities of the two countries to cooperate to resolve issues of potential double taxation and to exchange information relevant to implementing the Convention and the domestic laws imposing the taxes covered by the Convention. The Convention also provides for future arbitration for the resolution of certain disputes that cannot be resolved under traditional tax treaty procedures. Arbitration will not be used until both countries agree that experience with such procedures in other contexts have been satisfactory. The Convention also includes non-discrimination provisions standard to treaties to avoid double taxation which apply to all taxes at all levels of government.

The Convention will enter into force 30 days after the date that the Governments have notified each other that their constitutional requirements have been satisfied. The provisions will take effect for taxes payable at source, for payments made and for other taxes for taxable years beginning on or after January 1 following the date of entry into force. Where the 1948 convention affords a more favorable result for a taxpayer than the new Convention, the taxpayer may elect to continue to apply the provisions of the 1948 convention, in its entirety, for one additional year.

An Understanding, which provides guidance to taxpayers and tax authorities on the proper interpretation of the rules, and an exchange of notes are included for the information of the Senate.

A technical memorandum explaining in detail the provisions of the Convention is being prepared by the Department of the Treasury and will be submitted separately to the Senate Committee on Foreign Relations.

The Department of the Treasury and the Department of State cooperated in the negotiation of the Convention. It has the full approval of both Departments.

Respectfully submitted,

WARREN CHRISTOPHER

Enclosures: As stated.

.

## LETTER OF TRANSMITTAL

THE WHITE HOUSE, *May 12,1993.*

*To the Senate of the United States:*

I transmit herewith for the advice and consent of the Senate to ratification the Convention Between the Government of the United States of America and the Government of the Kingdom of the Netherlands for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, signed at Washington on December 18, 1992. An Understanding and exchange of notes are enclosed for the information of the Senate. Also transmitted for the information of the Senate is the report of the Department of State with respect to the Convention.

The Convention replaces the existing income tax convention between the United States and the Kingdom of the Netherlands signed at Washington in 1948 and last amended in 1965. It is intended to reduce the distortions (double taxation or excessive taxation) that can arise when two countries tax the same income, thereby enabling U.S. firms to compete on a more equitable basis in the Netherlands and further enhancing the attractiveness of the United States to Dutch investors. In general, the Convention follows the pattern of other recent U.S. income tax treaties and is based on the U.S. and OECD Model treaties and recent income tax conventions of both parties. It will serve to modernize tax relations between the two countries.

I recommend that the Senate give early and favorable consideration to the Convention and give its advice and consent to ratification.

WILLIAM J.CLINTON.

## MEMORANDUM OF UNDERSTANDING

UNDERSTANDING REGARDING THE CONVENTION BETWEEN THE KINGDOM OF THE NETHERLANDS AND THE UNITED STATES OF AMERICA FOR THE AVOIDANCE OF DOUBLE TAXATION AND THE PREVENTION OF FISCAL EVASION WITH RESPECT TO TAXES ON INCOME, SIGNED ON DECEMBER 18, 1992

I. IN REFERENCE TO PARAGRAPH 1 OF ARTICLE 4 (RESIDENT)

It is understood that for purposes of the Convention, the Government of one of the States, its political subdivisions or local authorities are to be considered as residents of that State.

## II. IN REFERENCE TO PARAGRAPH 4 OF ARTICLE 4 (RESIDENT)

It is understood that, if a company is a resident of the Netherlands under paragraph 1 of Article 4 (Resident) and, because of the application of Section 269 B of the Internal Revenue Code, such company is also a resident of the United States under paragraph 1 of Article 4 (Resident), the question of its residency for the purposes of the application of this Convention shall be subject to a mutual agreement procedure as laid down in paragraph 4 of Article 4 (Resident).

## III. IN REFERENCE TO ARTICLE 7 (BUSINESS PROFITS)

It is understood that with respect to paragraphs 1 and 2 of Article 7 (Business Profits), where an enterprise of one of the States carries on business in the other State through a permanent establishment situated therein, the profits of that permanent establishment shall not be determined on the basis of the total income of the enterprise, but shall be determined only on the basis of that portion of the income of the enterprise that is attributable to the actual activity of the permanent establishment in respect of such business. Specifically, in the case of contracts for the survey, supply, installation or construction of industrial, commercial or scientific equipment or premises, or of public works, when the enterprise has a permanent establishment, the profits attributable to such permanent establishment shall not be determined on the basis of the total amount of the contract, but shall be determined on the basis only of that part of the contract that is effectively carried out by the permanent establishment. The profits related to that part of the contract that is carried out by the head office of the enterprise shall not be taxable in the State in which the permanent establishment is situated.

## IV. IN REFERENCE TO ARTICLE 9 (ASSOCIATED ENTERPRISES), ARTICLE 12 (INTEREST) AND ARTICLE 29 (MUTUAL AGREEMENT PROCEDURE)

Nothing in paragraph 1 of Article 9 (Associated Enterprises) or paragraph 5 of Article 12 (Interest) shall prevent either State from determining the appropriate amount of interest deduction of an enterprise not only by reference to the amount of interest with respect to any particular debt-claim but also by reference to the overall amount of debt capital of the enterprise. In the context of a mutual agreement procedure under Article 29 (Mutual Agreement Procedure), the amount of the interest deduction shall be determined in a manner consistent with the principles of paragraph 1 of Article 9, by reference to conditions in commercial or financial relations which prevail between independent enterprises dealing at arm's length. Those principles are more fully examined and explained in OECD publications regarding "thin capitalization".

## V. IN REFERENCE TO ARTICLE 9 (ASSOCIATED ENTERPRISES)
## AND ARTICLE 29 (MUTUAL AGREEMENT PROCEDURE)

In accordance with paragraph 3 of Article 29 (Mutual Agreement Procedure) the competent authorities shall endeavor to resolve by mutual agreement any case of double taxation arising by reason of an allocation of income, deductions, credits or allowances caused by the application of internal law regarding thin capitalization, earnings stripping, or transfer pricing, or other provisions potentially giving rise to double taxation. In this mutual agreement procedure, the proper allocation of income, deductions, credits or allowances under the Convention will be determined in a manner consistent with the principles of paragraph 1 of Article 9 (Associated Enterprises) by reference to conditions in commercial or financial relations that prevail between independent enterprises dealing at arm's length. Consistent with the mutual agreement procedures of other income tax conventions, including those entered by both States, a procedure under Article 29 (Mutual Agreement Procedure) concerning an adjustment in the allocation of income, deductions, credits or allowances by one of the States might result either in a correlative adjustment by the other State or in a full or partial readjustment by the first-mentioned State of its original adjustment.

## VI. IN REFERENCE TO SUBPARAGRAPH 2 (a)
## AND PARAGRAPH 4 OF ARTICLE 10 (DIVIDENDS)

It is understood that a beneficial owner of the dividends, who holds depository receipts or trust certificates evidencing beneficial ownership of the shares in lieu of the shares themselves in the company in question, may also claim the treaty benefits of subparagraph 2 (a) of Article 10 (Dividends). In addition, it is understood that where a person loans shares (or other rights the income from which is subject to the same taxation treatment as income from shares) and receives from the borrower an obligation to pay an amount equivalent to any dividend distribution made with respect to the shares or other rights loaned during the term of such loan, such person shall be treated as the beneficial owner of the dividend paid with respect to such shares or other rights for purposes of the application of Article 10 (Dividends) to any such equivalent amount.

## VII. IN REFERENCE TO PARAGRAPH 1 OF ARTICLE 14 (CAPITAL GAINS)

In determining for purposes of paragraph 1 of Article 14 (Capital Gains) whether the assets of a corporation resident in the United States consist, directly or indirectly, for the greater part of real property situated in the United States and whether the stock of such corporation is a "United States real property interest", the United States confirms that it will take into account the fair market value of all of the assets of the corporation, including intangible business assets such as goodwill, whether or not appearing as an asset on the balance sheet for tax purposes, going concern value and intellectual property.

## VIII. IN REFERENCE TO PARAGRAPH 8 OF ARTICLE 14 (CAPITAL GAINS)

It is understood that paragraph 8 of Article 14 shall not apply to an alienation of property by a resident of one of the States if the tax that would otherwise be imposed on such alienation by the other State cannot reasonably be imposed or collected at a later time. For example, under the domestic law of the United States, a foreign corporation that qualifies as a "United States real property holding corporation" is taxed in some circumstances if it transfers its assets to a United States corporation in a reorganization. In such a case, only if the shareholders of such foreign corporation agree to reduce basis (if and only to the extent available) by "closing agreement" can the tax that otherwise would be imposed on such alienation be reasonably imposed or collected at a later time.

## IX. IN REFERENCE TO PARAGRAPH 4 OF ARTICLE 19 (PENSIONS, ANNUITIES, ALIMONY)

It is understood that the term "other public pensions" as used in paragraph 4 of Article 19 (Pensions, Annuities, Alimony) is intended to refer to United States tier 1 Railroad Retirement benefits.

## X. IN REFERENCE TO ARTICLE 26 (LIMITATIONS ON BENEFITS)

It is understood that a taxpayer claiming benefits under the Convention must be able to provide upon request sufficient proof to establish the taxpayer's entitlement to such benefits. It is further understood, however, that the need to provide proof that a taxpayer fulfills the requirements of Article 26 ( Limitation on Benefits) can impose a severe administrative burden on the taxpayer.

It is understood, therefore, that the competent authorities will endeavor to develop by mutual agreement reasonable procedures for the periodic reporting of the facts necessary to support entitlement to benefits. In developing such procedures, the competent authorities will strive to minimize the frequency of reporting. For example, once an entitlement to benefits has been documented and in the absence of relevant changes in the facts and circumstances, a taxpayer should not be required annually to provide proof that he is entitled to the benefits of the Convention, provided he reports relevant changes in facts and circumstances.

## XI. IN REFERENCE TO PARAGRAPHS 1 (d) AND 4 OF ARTICLE 26 (LIMITATION ON BENEFITS)

It is understood that the proof a Dutch resident investment organization (a "beleggingsinstelling" in the sense of Article 28 of the "Wet op de vennootschapsbelasting 1969") has of the number of its Dutch resident individual and corporate shareholders as a result of the procedure used by such Dutch resident investment organization when claiming a reimbursement of tax withheld on its foreign dividend and interest income under paragraph 1(b) of Article 28 of the "Wet op de vennootschapsbelasting l969",

can be used by such Dutch investment organization to show that it fulfills the requirements of paragraph 1(d), respectively paragraph 4 of Article 26 (Limitation on Benefits).

## XII. IN REFERENCE TO PARAGRAPH 2 OF ARTICLE 26 (LIMITATION ON BENEFITS)

As illustrated by the following examples, it is understood that in applying the rules of paragraph 2 of Article 26 (Limitation on Benefits), the proportionate share of activities of a resident of one of the States that are a component part of or directly related to a trade or business conducted by another resident of that State who claims treaty benefits may be attributed to the latter resident under subparagraph 2 (e) for purposes of applying the substantial trade or business test under subparagraph 2 (c). In addition, for purposes of subparagraph 2 (c), the proportionate share of activities of a resident of one of the States attributable to a trade or business conducted in the other State will be used for purposes of the test under subparagraph 2 (c).

*Example 1*

NLCo, a Netherlands corporation, owns 100 percent of the stock of USCo, a U.S. corporation, and 50 percent of the stock of NLSub, a Netherlands corporation. FCo, a French corporation, holds the remaining 50 percent of the stock of NLSub. NLCo and FCo do not directly conduct an active trade or business. USCo and NLSub are engaged in the same active trade or business. For each of the four most recently concluded taxable years, the asset values, gross income and payroll expenses of these corporations that are attributable to the trade or business were as follows:

|  | USCo | NLSub |
|---|---|---|
| Assets | $300 | $50 |
| Income | 50 | 10 |
| Payroll | 60 | 10 |

NLCo receives payments of interest and dividends from USCo. In order for these payments to be entitled to treaty benefits under paragraph 2 of Article 26, NLCo must be considered to be engaged m the active conduct of a substantial trade or business in the Netherlands. Under subparagraph 2 (c), the ratios of the assets, income and payroll attributable to NLCo to the assets, income and payroll attributable to USCo must be at least 10 percent.

NLCo has no assets, income or payroll that are attributable to the trade or business. The assets, income and payroll of NLSub that are related to the trade or business may be attributed to NLCo, however, under subparagraph 2 (e) (vi), since NLCo and FCo together have a controlling beneficial interest in NLSub and FCo is a resident of a member state of the European Communities. In accordance with subparagraph 2 (e), therefore, 50 percent of NLSub's assets, income and payroll are

attributed to NLCo for purposes of paragraph 2 (c). The amounts attributed to NLCo and the percentage of USCo's corresponding amounts are as follows:

|  | NLCo | NLCo as a percentage of USCo |
|---|---|---|
| Assets | $25 | 8.3 |
| Income | 5 | 10.0 |
| Payroll | 5 | 8.3 |

Since none of these percentages is greater than 10 percent, NLCo is not entitled to benefits under Article 26 under the general test of paragraph 2 (c). Moreover, application of the three-year average rule under that paragraph does not change the result, since the relevant amounts for the three preceding years (and the resulting ratios) are equal to those for the first preceding taxable year.

*Example 2*

The facts are the same as in Example 1, except that NLCo owns only 80 percent of the stock of USCo. For purposes of subparagraph 2 (c), the measures of USCo's assets, gross income and payroll expense must be multiplied by NLCo's percentage ownership interest in the stock of USCo. Consequently, the values attributable to USCo and NLSub after taking into account NLCo's percentage ownership interest in the stock of these companies, and the ratio of the amounts attributed from NLSub to NLCo to the amounts attributable to USCo are as follows:

|  | USCo | NLSub | NLCo as a percentage of USCo |
|---|---|---|---|
| Assets | $240 | $25 | 10.4 |
| Income | 40 | 5 | 12.5 |
| Payroll | 48 | 5 | 10.4 |

Since all of these percentages exceed 10 percent, NLCo would be entitled to treaty benefits with respect to the payments received from USCo under paragraph 2.

## XIII. IN REFERENCE TO SUBPARAGRAPH (a) OF PARAGRAPH 2 AND SUBPARAGRAPH (m) OF PARAGRAPH 8 OF ARTICLE 26 (LIMITATION ON BENEFITS)

It is understood that for purposes of subparagraph (a) of paragraph 2 and subparagraph (m) of paragraph 8 of Article 26 (Limitation on Benefits), a bank only will be considered to be engaged in the active conduct of a banking business if it regularly accepts deposits from the public or makes loans to

the public, and an insurance company only will be considered to be engaged in the active conduct of an insurance business if its gross income consists primarily of insurance or reinsurance premiums, and investment income attributable to such premiums.

### XIV. IN REFERENCE TO PARAGRAPH (1) OF ARTICLE 9 (ASSOCIATED ENTERPRISES) AND SUBPARAGRAPH (d) (i) OF PARAGRAPH 5 OF ARTICLE 28 (LIMITATION ON BENEFITS)

It is understood that for purposes of paragraph 1 of Article 9 (Associated Enterprises), in determining whether an enterprise participates directly or indirectly in the management, control or capital of another enterprise, an enterprise may be considered an associated enterprise with respect to an enterprise in which its only interest is represented by evidences of indebtedness where such indebtedness provides the holder of the indebtedness with the right to participate in the management, control or capital of the enterprise that issued the indebtedness, or such holder in practice participates in such management, control or capital.

### XV. IN REFERENCE TO PARAGRAPHS 2 (a) (i) AND 2 (c) OF ARTICLE 26 (LIMITATION ON BENEFITS)

It is understood that in applying the measurement of "substantiality" as referred to in subparagraph 2 (a) (i) of Article 26, the factors referred to in subparagraph 2 (c) of Article 26 as used in a specific case will take into account the fact that there might be a less than 100% participation in the income-producing activity.

For example, if a Dutch resident corporation has a 10% interest in a US corporation, in applying the substantiality test to - for instance - dividends received from the US corporation, each of the US corporations' factors as referred to in subparagraph 2 (c) of Article 26 must be multiplied by the Dutch resident's percentage share in the US corporation.

The above also applies to subparagraph 2 (e) (vi) of Article 26 (Limitation on Benefits). For example, take the case where both the income-producing corporation, resident of the US, and the corporation which is engaged in an active trade or business in the Netherlands are controlled by five Netherlands investment companies.



One of the investors (A) owns a 50 percent interest in the income-producing corporation; the other four investors (B, C, D and E) each own a 12.5 percent interest in the income-producing corporation. The Dutch investor (E) owns a 50 percent interest in the corporation engaged in an active trade or business; the other four investors (A, B, C, and D) each own a 12.5 percent interest in the corporation engaged in an active trade or business.

The corporation engaged in an active trade or business in the Netherlands has assets valued at $1 million, and the assets of the U.S. corporation are valued at $6 million. The Netherlands corporation has gross income of $10 million, and gross income of the U.S. corporation is $40 million. The payroll of the Netherlands corporation is $1 million, and the U.S. corporation's payroll is $5 million.

In applying the substantiality test to the dividends paid by the US corporation and received by the five Dutch investors, each of the factors must be multiplied by the investor's percentage share in the corporation engaged in an active trade or business in the Netherlands, respectively by the investor's percentage share in the US corporation. The dividends paid to the Netherlands investors (B, C and D) and the dividends paid to the 50 percent owner of the corporation engaged in active trade or business in the Netherlands (E) would pass the substantiality test. The three ratios described in the preceding paragraph as applied to the three Netherlands investors (B, C and D) would remain 16.7 percent, 25 percent, and 20 percent, respectively. The three ratios described in the preceding paragraph as applied to the Dutch investor (E) are 66.7 percent, 100 percent, and 80 percent.

The dividends paid to the Netherlands investor (A) will not pass the substantiality test; since in this case the three ratios are 4.2 percent, 6.25 percent, and 5 percent.

## XVI. IN REFERENCE TO PARAGRAPH 2 (e)
## OF ARTICLE 26 (LIMITATION ON BENEFITS)

For the purpose of subparagraphs 2 (e) (vi) and 2 (e) (vii) of Article 26 the following states are regarded as an "identified State" having effective provisions for the exchange of information at the date of signature of the Convention with the United States: Australia, Austria, Barbados, Belgium, Bermuda, Canada, Costa Rica, Cyprus, Denmark, Dominica, Dominican Republic, Egypt, Finland, France, Germany, Grenada, Honduras, Iceland, Ireland, Jamaica, Korea, Malta, Marshall Islands, Mexico, Morocco, New Zealand, Norway, Pakistan, Philippines, St. Lucia, Sweden, Trinidad, and Tobago.

And with the Netherlands: Aruba, Australia, Austria, Belgium, Brazil, Bulgaria, Canada, China, Czechoslovakia, Denmark, Finland, France, Germany, Greece, Hungary, India, Ireland, Indonesia,

Israel, Italy, Korea, Luxembourg, Malaysia, Malta, Morocco, Netherlands Antilles, New Zealand, Norway, Pakistan, Philippines, Poland, Romania, Singapore, South Africa, Spain, Sri Lanka, Surinam, Sweden, Thailand, Turkey, United Kingdom, Zambia, and Zimbabwe.

It is understood that states may be added to or eliminated from the preceding lists by agreement between the competent authorities of both States.


## XVII. IN REFERENCE TO PARAGRAPH 2 (h)
## OF ARTICLE 26 (LIMITATION ON BENEFITS)

It is understood that in treating an activity conducted in another member state of the European Communities as conducted in the Netherlands under subparagraph 2 (h) of Article 26 (Limitation on Benefits) (and subject to the restrictions therein), the activity in such other state may be conducted by any person which, if it conducted such activity in the Netherlands, would have its proportionate share of such activity attributed to the resident of the Netherlands considered to conduct such activity under subparagraph 2 (e) of Article 26 (Limitation on Benefits).


## XVIII. IN REFERENCE TO PARAGRAPH 3 (a)
## OF ARTICLE 26 (LIMITATION ON BENEFITS)

It is understood that for purposes of paragraph 3 (a) of Article 26 (Limitation on Benefits) a person will be considered to be engaged in "supervision and administration" activities, only if it engages in a number of the kinds of activities listed below. For example, a person will be considered a headquarters company if it performs a significant number of the following functions for the group: group financing (which cannot be its principal function), pricing, marketing, internal auditing, internal communications and management. A simple comparison of the amount of gross income that the headquarters company derives from its different activities cannot be used alone to determine whether group financing is, or is not, the company's principal function. The above-mentioned functions are intended to be suggestive of the types of activities in which a headquarters company will be expected to engage; it is not intended to be exhaustive.

Furthermore, it is understood that in determining if a substantial portion of the overall supervision and administration of the group is provided by the headquarters company, the activities it performs as a headquarters company for the group it supervises must be substantial in comparison to the same activities for the same group performed within the multinational.

For example, a Japanese corporation establishes a subsidiary in the Netherlands to function as a headquarters company for its European and North American operations. The Japanese corporation also has two other subsidiaries functioning as headquarter companies; one for the African operations and one for the Asian operations. The Dutch headquarters company is the parent company for the subsidiaries through which the European and North American operations are carried on. The Dutch headquarters

company supervises the bulk of the pricing, marketing, internal auditing, internal communications and management for its group. Although the Japanese overall parent sets the guidelines for all of its subsidiaries in defining the world-wide group policies with respect to each of these activities, and assures that these guidelines are carried out within each of the regional groups, it is the Dutch headquarters company that monitors and controls the way in which these policies are carried out within the group of companies that it supervises. The capital and payroll devoted by the Japanese parent to these activities relating to the group of companies the Dutch headquarter company supervises is small, relative to the capital and payroll devoted to these activities by the Dutch headquarters company. Moreover, neither the other two headquarter companies, nor any other related company besides the Japanese parent company, perform any of the above-mentioned headquarter activities with respect to the group of companies that the Dutch headquarter company supervises. In the above case the Dutch headquarters company will be considered to provide a substantial portion of the overall supervision and administration of the group it supervises.

## XIX. IN REFERENCE TO PARAGRAPH 7
## OF ARTICLE 26 (LIMITATION ON BENEFITS)

For purposes of paragraph 7 of Article 26 (Limitation on Benefits), in determining whether the establishment, acquisition, or maintenance of a corporation resident of one of the States has or had as one of its principal purposes the obtaining of benefits under this Convention, the competent authority of the State in which the income in question arises may consider the following factors (among others):

(1) The date of incorporation of the corporation in relation to the date that this Convention entered into force;

(2) the continuity of the historical business and ownership of the corporation;

(3) the business reasons for the corporation residing in its State of residence;

(4) the extent to which the corporation is claiming special tax benefits in its country of residence;

(5) the extent to which the corporation's business activity in the other State is dependent on the capital, assets, or personnel of the corporation in its State of residence; and

(6) the extent to which the corporation would be entitled to treaty benefits comparable to those afforded by this Convention if it had been incorporated in the country of residence of the majority of its shareholders.

## XX. IN REFERENCE TO PARAGRAPH 7
## OF ARTICLE 26 (LIMITATION ON BENEFITS)

It is understood that a company resident of one of the States will be granted the treaty benefits under paragraph 7 of Article 26 (Limitation on Benefits) with respect to the income it derives from the other State, if such company:

(1) holds stocks and securities the income from which is not predominantly from sources in the other State;

(2) has widely dispersed ownership; and

(3) employs in its state of residence a substantial staff actively engaged in trades of stocks and securities owned by the company.

It is further understood that paragraph 7 of Article 26 (Limitation on Benefits) will not apply if any of the above-mentioned factors is absent.

## XXI. IN REFERENCE TO PARAGRAPH 7
## OF ARTICLE 26 (LIMITATION ON BENEFITS)

It is understood that in applying paragraph 7 of Article 26 (Limitation on Benefits), the legal requirements or the facilitation of the free flow of capital and persons within the European Communities, together with the differing internal income tax systems, tax incentive regimes, and existing tax treaty policies among member states of the European Communities, will be considered. Under such paragraph, the competent authority is instructed to consider as its guideline whether the establishment, acquisition or maintenance of a company or the conduct of its operations has or had as one of its principal purposes the obtaining of benefits under this Convention. The competent authority may, therefore, determine under a given set of facts, that a change in circumstances that would cause a company to cease to qualify for treaty benefits under paragraphs 1 and 2 of Article 26 (Limitation on Benefits) need not necessarily result in a denial of benefits. Such changed circumstances may include a change in the state of residence of a major shareholder of a company, the sale of part of the stock of a Netherlands company to a person resident in another member state of the European Communities, or an expansion of a company's activities in other member states of the European Communities, all under ordinary business conditions. The competent authority will consider these changed circumstances (in addition to other relevant factors normally considered under paragraph 7 of Article 26) in determining whether such a company will remain qualified for treaty benefits with respect to income received from United States sources. If these changed circumstances are not attributable to tax avoidance motives, this also will be considered by the competent authority to be a factor weighing in favor of continued qualification under paragraph 7 of Article 26.

## XXII. IN REFERENCE TO PARAGRAPH 8 (d) (iv)
## OF ARTICLE 26 (LIMITATION ON BENEFITS)

For purposes of subparagraph 8 (d) (iv) of Article 26 (Limitation on Benefits), the stock exchanges of Frankfurt, London and Paris will in any case be listed. The competent authorities of both States may agree to add or remove stock exchanges from the list.

## XXIII. IN REFERENCE TO PARAGRAPH 8 (e)

OF ARTICLE 26 (LIMITATION ON BENEFITS)

It is understood that the term "related persons" as used in subparagraph 8 (e) of Article 26 (Limitation on Benefits) means associated enterprises under Article 9 (Associated Enterprises) and their owners.


## XXIV. IN REFERENCE TO PARAGRAPH 8 (f)
## OF ARTICLE 26 (LIMITATION ON BENEFITS)

In order to meet the "substantial and regular trading" tests under subparagraph 8 (f) of Article 26 (Limitation on Benefits), a person claiming benefits under the Convention need not prove that it has not engaged in, but may need to rebut evidence that it has engaged in, a pattern of trades on a recognized stock exchange in order to meet these tests.


## XXV. IN REFERENCE TO PARAGRAPH 8 (k)
## OF ARTICLE 26 (LIMITATION ON BENEFITS)

When a corporation resident in one of the States that is entitled to benefits under Article 26 (Limitation on Benefits) acquires a controlling interest in a corporation resident in a third state that in turn owns a controlling interest in a second corporation resident in the first-mentioned State, that second corporation may not be entitled to the benefits of the Convention due to the provisions of subparagraph 8 (k) of Article 26 with respect to income derived from sources within the other State. It is understood that in these circumstances the competent authority of the other State, in considering a request for benefits under the Convention under paragraph 7 of Article 26 (Limitation on Benefits), will consider favorably a plan of reorganization submitted by the second corporation resident in the first-mentioned State, if such plan would result in the second corporation being entitled to the benefits of the Convention within a reasonable transition period (determined without regard to paragraph 7 of Article 26 (Limitation on Benefits)).


## XXVI. IN REFERENCE TO ARTICLE 27 (OFFSHORE ACTIVITIES)

It is understood that transport of supplies or personnel between one of the States and a location where activities are carried on offshore in that State or between such locations is to be considered as transport between places in that State.


## XXVII. IN REFERENCE TO PARAGRAPH 5
## OF ARTICLE 29 (MUTUAL AGREEMENT PROCEDURE)

A. It is understood that the States will in any case exchange diplomatic notes as provided in paragraph 5 of Article 29 (Mutual Agreement Procedure), when the experience within the European Communities with regard to the application of the Convention on the elimination of double taxation in connection with the adjustment of profits of associated enterprises, signed on 23 July 1990, or the application of paragraph 5 of Article 25 of the tax convention between the United States of America and the Federal Republic of Germany for the avoidance of double taxation and the prevention of fiscal evasion with respect to taxes on income and capital and to certain other taxes, signed on 29 August 1989, has proven to be satisfactory to the competent authorities of both States. After a period of three years after the entry into force of the Convention, the competent authorities shall consult in order to determine whether the conditions for the exchange of diplomatic notes have been fulfilled.

B. If the competent authorities of both States agree to submit a disagreement regarding the interpretation or application of this Convention specific case to arbitration according to paragraph 5 of Article 29, the following procedures will apply:

1. If, in applying paragraphs 1 to 4 of Article 29, the competent authorities fail to reach an agreement within two years of the date on which the case was submitted to one of the competent authorities, they may agree to invoke arbitration in a specific case, but only after fully exhausting the procedures available under paragraphs 1 to 4 of Article 29. The competent authorities will not generally accede to arbitration with respect to matters concerning the tax policy or domestic law of either State.

2. The competent authorities shall establish an arbitration board for each specific case in the following manner:

(a) An arbitration board shall consist of not fewer than three members. Each competent authority shall appoint the same number of members, and these members shall agree on the appointment of the other member(s).

(b) The other member(s) of the arbitration board shall be from either State or from another OECD member country. The competent authorities may issue further instructions regarding the criteria for selecting the other member(s) of the arbitration board.

(c) Arbitration board member(s) (and their staffs) upon their appointment must agree in writing to abide by and be subject to the applicable confidentiality and disclosure provisions of both States and the Convention. In case those provisions conflict, the most restrictive condition will apply.

3. The competent authorities may agree on and instruct the arbitration board regarding specific rules of procedure, such as appointment of a chairman, procedures for reaching a decision, establishment of time limits, etc. Otherwise, the arbitration board shall establish its own rules of procedure consistent with generally accepted principles of equity.

4. Taxpayers and/or their representatives shall be afforded the opportunity to present their views to the arbitration board.

5. The arbitration board shall decide each specific case on the basis of the Convention, giving due consideration to the domestic laws of the States and the principles of international law. The arbitration board will provide to the competent authorities an explanation of its decision. The decision of the arbitration board shall be binding on both States and the taxpayer(s) with respect to that case. While the decision of the arbitration board shall not have precedential effect, it is expected that such decisions ordinarily will be taken into account in subsequent competent authority cases involving the same taxpayer(s), the same issue(s), and substantially similar facts, and may also be taken into account in other cases where appropriate.

6. Costs for the arbitration procedure will be borne in the following manner:
      (a) Each State shall bear the cost of remuneration for the member(s) appointed by it, as well as for its representation in the proceedings before the arbitration board;
      (b) the cost of remuneration for the other member(s) and all other costs of the arbitration board shall be shared equally between the States; and
      (c) the arbitration board may decide on a different allocation of costs.

However, if it deems appropriate in a specific case, in view of the nature of the case and the roles of the parties, the competent authority of one of the States may require the taxpayer(s) to agree to bear that State's share of the costs as a prerequisite for arbitration.

7. The competent authorities may agree to modify or supplement these procedures; however, they shall continue to be bound by the general principles established herein.

## XXVIII. IN REFERENCE TO ARTICLE 30
## (EXCHANGE OF INFORMATION AND ADMINISTRATIVE ASSISTANCE

If a United States "reporting corporation" (as defined for purposes of section 6038A of the United States Internal Revenue Code) that is a United States resident, or a United States permanent establishment of a United States "reporting corporation" that is not a United States resident, has neither possession of nor access to records that may be relevant to the United States income tax treatment of any transaction between it and a foreign "related party" (as defined in section 6038A of the United States Internal Revenue Code), and such records are under the control of a Netherlands resident and are maintained outside the United States, then the United States shall request such records from the Netherlands through an exchange of information under Article 30 (Exchange of Information and Administrative Assistance) before issuing a summons for such records to the United States "reporting corporation", provided that under all the circumstances presented, the records will be obtainable through the request on a timely and efficient basis. For purposes of this paragraph, records will be considered to be available on a timely and efficient basis if they can be obtained within 180 days of the request or such other period agreed upon in mutual agreement between the competent authorities, except where the statute of limitations may expire in a shorter period. Similar principles shall apply with respect to the application of section 6038C.

It is understood that for purposes of applying the conduit base reduction test set forth in subparagraph (d) of paragraph 5 of Article 26 (Limitation on Benefits), the competent authority of one of the States will, as an initial matter, confine its requests for information with respect to a resident of the other State to the information necessary to determine whether such resident is a conduit company, as defined in subparagraph (m) of paragraph 8 of Article 26.

Such competent authority will request additional information needed to determine whether the conduit base reduction test has been satisfied only after determining that a company is a conduit company.


## XXIX. IN REFERENCE TO PARAGRAPH 1 OF ARTICLE 30
## (EXCHANGE OF INFORMATION AND ADMINISTRATIVE ASSISTANCE)

It is understood that persons concerned with the "administration" of taxes, as that term is used in paragraph 1 of Article 30 (Exchange of Information and Administrative Assistance) include, in the United States, the "tax-writing committees of Congress" and the "General Accounting Office". Information exchanged under the Convention that is otherwise confidential under the Convention may be received under the same requirement of confidentiality by these bodies and may be used only in the performance of their role of overseeing the administration of United States tax laws.

Congress's and the "General Accounting Office's" role in overseeing the administrative of United States tax law is understood to be limited to ensuring that the administration of the tax law by the executive branch is honest, efficient, and consistent with legislative intent.


## XXX.  IN REFERENCE TO ARTICLE 31
## (ASSISTANCE AND SUPPORT IN COLLECTION)

It is understood that in applying Article 31 (Assistance and Support in Collection) the following shall be taken into account:

    1. The requested State shall not be obliged to accede to the request of the applicant State:

        (a) if the applicant State has not pursued all appropriate collection action in its own jurisdiction;

        (b) in those cases where the administrative burden for the requested State is disproportionate to the benefit to be derived by the applicant State.

    2.The request for administrative assistance in the recovery of a tax claim shall be accompanied by:

        (a) an official copy of the instrument permitting enforcement in the applicant State;

(b) where appropriate, certified copies of any other document required for recovery;

(c) a certification by the competent authority of the applicant State that, under the laws of that State, the revenue claim has been finally determined.

For the purposes of this Article, a revenue claim is finally determined when the applicant State has the right under its internal law to collect the revenue claim and all administrative and judicial rights of the taxpayer to restrain collection in the applicant State have lapsed or been exhausted.

3. A revenue claim of the applicant State that has been finally determined may be accepted for collection by the competent authority of the requested State and, subject to the provisions of paragraph 7, if accepted shall be collected by the requested State as though such revenue claim were the requested State's own revenue claim finally determined in accordance with the laws applicable to the collection of the requested State's own taxes.

4. Where an application for collection of a revenue claim in respect of a taxpayer is accepted:

(a) by the United States, the revenue claim shall be treated by the United States as an assessment under United States laws against the taxpayer as of the time the application is received; and

(b) by the Netherlands, the revenue claim shall be treated by the Netherlands as an amount payable under appropriate Netherlands law, the collection of which is not subject to any restriction.

5. Nothing in this Article shall be construed as creating or providing any rights of administrative or judicial review of the applicant State's finally determined revenue claim by the requested State, based on any such rights that may be available under the laws of either State. If, at any time pending execution of a request for assistance under this Article, the applicant State loses the right under its internal law to collect the revenue claim, the competent authority of the applicant State shall promptly withdraw the request for assistance in collection.

6. Subject to this paragraph, amounts collected by the requested State pursuant to this Article shall be forwarded to the competent authority of the applicant State. Unless the competent authorities of the States otherwise agree, the ordinary costs incurred in providing collection assistance shall be borne by the requested State and any extraordinary costs so incurred shall be borne by the applicant State.

7. The requested State may allow deferral of payment or payment by installments, if its laws or administrative practice permit it to do so in similar circumstances, but it shall first inform the applicant State. Any interest received by the requested State as a result of the allowance of a deferral of payment or payment by installments will be transferred to the competent authority of the applicant State.

8. A revenue claim of an applicant State accepted for collection shall not have in the requested State any priority accorded to the revenue claims of the requested State.

9. The competent authorities may under this Article grant assistance in collecting any tax deferred by operation of paragraph 8 of Article 14 (Capital Gains).

10. The competent authorities of the States shall agree upon the mode of application of this Article. The competent authorities of the States may further agree to modify or supplement these procedures, however, they shall continue to be bound by the general principles established herein.


NOTES OF EXCHANGE

DEPARTMENT OF STATE
*Washington.*

His Excellency, HANS MEESMAN,
*Ambassador of the Kingdom of the Netherlands.*

EXCELLENCY, I have the honor to refer to the Convention signed today between the United States of America and the Kingdom of the Netherlands for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income and to propose on behalf of the Government of the United States of America the following:

Both Governments confirm that their respective countries recognize the principle that the Convention, once in force, is binding upon both parties and must be performed by them in good faith and in accordance with generally accepted rules of international law. The Governments further confirm their recognition that they should avoid enactment or interpretation of legislation or other domestic measures that would prevent the performance of their obligations under the Convention.

On the other hand, both Governments recognize the possibility of significant changes in the national taxation laws which may affect implementation of the Convention. The Governments agree in principle that in such a case an appropriate amendment of the Convention might be necessary. Whether and to the extent to which such an amendment is necessary and acceptable will be determined in consultation and negotiation between the two Governments.

Furthermore, the Government of the United States gives its assurances to the Government of the Netherlands, that, in the event a state or local government in the United States seeks to impose a tax on the income of airline or shipping companies resident in The Netherlands in circumstances where the Convention would preclude a Federal income tax on that income, the United States Government will contact the state or local government seeking to impose the tax in an effort to persuade that government to refrain from imposing the tax.

Finally, in the course of the negotiations leading to the conclusion of the Convention signed today, the negotiators developed and agreed upon a memorandum of understanding intended to give guidance both to the taxpayers and the tax authorities of our two countries in interpreting various provisions contained in the Convention. It is my Government's view that as we both gain experience in administering the Convention, the competent authorities may in the context of a mutual agreement procedure under Article 29 of the Convention develop and publish amendments to the understandings and interpretations laid down in the attached memorandum of understanding.

If the above-mentioned understandings and the interpretation of the various provisions laid down in the attached memorandum of understanding meet with the approval of the Government of the Kingdom of the Netherlands, this Note and your Note in reply thereto will constitute a common and binding understanding by our Governments of the Convention and of the contents and the role of the memorandum of understanding relating to the Convention.

Accept, Your Excellency, the expression of my highest consideration.

For the Secretary of State:

EUGENE J. McALLISTER.


WASHINGTON, DC, *December 18, 1992*.

The Honorable LAWRENCE S. EAGLEBURGER,
*Secretary of State of the United States of America.*

Mr. SECRETARY: I have the honour to confirm receipt of your Note of today's date which reads as follows:

"I have the honour to refer to the Convention signed today between the United States of America and the Kingdom of the Netherlands for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with respect to Taxes on Income and to propose on behalf of the Government of the Netherlands the following:

Both Governments confirm that their respective countries recognize the principle that the Convention, once in force, is binding upon both parties and must be performed by them in good faith and in accordance with generally accepted rules of international law. The Governments further confirm their recognition that they should avoid enactment or interpretation of legislation or other domestic measures that would prevent the performance of their obligations under the Convention.

On the other hand, both Governments recognize the possibility of significant changes in the national taxation laws which may affect implementation of the Convention. The Governments agree in principle that in such a case an appropriate amendment of the Convention might be necessary. Whether and to

the extent to which such an amendment is necessary and acceptable will be determined in consultation and negotiation between the two Governments.

Furthermore, the Government of the United States gives its assurances to the Government to The Netherlands, that, in the event a state or local government in the United States seeks to impose a tax on the income of airline or shipping companies resident in The Netherlands in circumstances where the Convention would preclude a Federal income tax on that income, the United States Government will contact the state or local government seeking to impose the tax in an effort to persuade that government to refrain from imposing the tax.

Finally, in the course of the negotiations leading to the conclusion of the Convention signed today, the negotiators developed and agreed upon a memorandum of understanding intended to give guidance both to the taxpayers and the tax authorities of our two countries in interpreting various provisions contained in the Convention. It is my Government's view that as we both gain experience in administering the Convention, the competent authorities may in the context of a mutual agreement procedure under Article 29 of the Convention develop and publish amendments to the understandings and interpretations laid down in the attached memorandum of understanding.

If the above-mentioned understandings and the interpretation of the various provisions laid down in the attached memorandum of understanding meet with the approval of the Government of the Kingdom of the Netherlands, this Note and your Note in reply thereto will constitute a common and binding understanding by our Governments of the Convention and of the contents and the role of the memorandum of understanding relating to the Convention."

I have the honour to inform you, that my Government agrees to the above.

Accept, Your Excellency, the expression of my highest consideration.

HANS MEESMAN,
*Ambassador of the Kingdom*
*of the Netherlands.*


CONVENTION BETWEEN THE UNITED STATES OF AMERICA AND THE KINGDOM OF THE NETHERLANDS FOR THE AVOIDANCE OF DOUBLE TAXATION AND THE PREVENTION OF FISCAL EVASION WITH RESPECT TO TAXES ON INCOME


The Government of the United States of America and the Government of the Kingdom of the Netherlands, desiring to replace by a new convention the Convention between the United States of America and the Kingdom of the Netherlands with respect to taxes on income and certain other taxes signed at Washington on April 29, 1948, as modified and supplemented by the Supplementary Convention signed at Washington on December 30, 1965,

Have agreed as follows:

## CHAPTER I
## SCOPE OF THE CONVENTION

## ARTICLE 1
## General Scope

1. This Convention shall apply to persons who are residents of one or both of the States, except as otherwise provided in the Convention.

2. The Convention shall not restrict in any manner any exclusion, exemption, deduction, credit, or other allowance now or hereafter accorded:
> a) by the laws of either State, except, as regards the Netherlands, with respect to Article 25 (Methods of Elimination of Double Taxation); or
> b) by any other agreement between the States.

## ARTICLE 2
## Taxes Covered

1. The existing taxes to which this Convention shall apply are in particular::
> (a) in the Netherlands:
>> - de inkomstenbelasting (income tax),
>> - de loonbelasting (wages tax),
>> - de vennootschapsbelasting (company tax),
>
> including the government share in the net profits of the exploitation of natural resources levied pursuant to the Mining Act 1810 (Mijnwet 1810) with respect to concessions issued from 1967, or pursuant to the Netherlands Continental Shelf Mining Act of 1965 (Mijnwet Continentaal Plat 1965) hereinafter referred to as "profit share",
>> - de dividendbelasting (dividend tax),
>
> (hereinafter referred to as "Netherlands tax");
> b) in the United States: the Federal income taxes imposed by the Internal Revenue Code (but excluding social security taxes), and the excise taxes imposed on insurance premiums paid to foreign insurers and with respect to private foundations (hereinafter referred to as "United States tax").

The Convention shall, however, apply to the excise taxes imposed on insurance premiums paid to foreign insurers only to the extent that the risks covered by such premiums are not reinsured with a person not entitled to the benefits of this or any other convention which provides exemption from these taxes.

2. The Convention shall apply also to any identical or substantially similar taxes which are imposed after the date of signature of the Convention in addition to, or in place of, the existing taxes. The competent authorities of the States shall notify each other of any substantial changes which have been made in their respective taxation laws.

CHAPTER II
DEFINITIONS

ARTICLE 3
General Definitions

1. For the purposes of this Convention, unless the context otherwise requires:

a) the term "State" means the Netherlands or the United States, as the context requires; the term "States" means the Netherlands and the United States;

b) the term "the Netherlands" comprises the part of the Kingdom of the Netherlands that is situated in Europe and the part of the sea bed and its sub-soil under the North Sea, over which the Kingdom of the Netherlands has sovereign rights in accordance with international law for the purpose of exploration for and exploitation of the natural resources of such areas, but only to the extent that the person, property, or activity to which this Convention is being applied is connected with such exploration or exploitation;

c)   i) the term "United States" means the United States of America, but does not include Puerto Rico, the Virgin Islands, Guam, or any other United States possession or territory;

ii) when used in a geographical sense, the term "United States" means the states thereof and the District of Columbia. Such term also includes (A) the territorial sea thereof and (B) the sea bed and sub-soil of the submarine areas adjacent to that territorial sea, over which the United States exercises sovereign rights in accordance with international law for the purpose of exploration for and exploitation of the natural resources of such areas, but only to the extent that the person, property, or activity to which this Convention is being applied is connected with such exploration or exploitation;

d) the term "person" includes an individual, an estate, a trust, a company and any other body of persons;

e) the term "company" means any body corporate or any entity which is treated as a body corporate for tax purposes;

f) the terms "enterprise of one of the States" and "enterprise of the other State" mean respectively an enterprise carried on by a resident of one of the States and an enterprise carried on by a resident of the other State;

g) the term "nationals" means:

i) all individuals possessing the nationality or citizenship of one of the States;

ii) all legal persons, partnerships and associations deriving their status as such from the laws in force in one of the States;

h) the term "international traffic" means any transport by a ship or aircraft operated by an enterprise of one of the States, except when the ship or aircraft is operated solely between places within the other State;

i) the term "competent authority" means:

i) in the Netherlands: the Minister of Finance or his duly authorized representative; and

ii) in the United States: the Secretary of the Treasury or his delegate.

2. As regards the application of the Convention by one of the States any term not defined therein shall, unless the context otherwise requires or the competent authorities agree to a common meaning pursuant to the provisions of Article 29 (Mutual Agreement Procedure), have the meaning which it has under the law of that State concerning the taxes to which the Convention applies.

## ARTICLE 4
## Resident

1. For the purposes of this Convention, the term "resident of one of the States" means any person who, under the laws of that State, is liable to tax therein by reason of his domicile, residence, place of management, place of incorporation, or any other criterion of a similar nature, or that is an exempt pension trust, as dealt with in Article 35 (Exempt Pension Trust) and that is a resident of that State according to the laws of that State, or an exempt organization, as dealt with in Article 36 (Exempt Organizations) and that is a resident of that State according to the laws of that State. If, under the laws of the two States, an individual is a resident of both States, his residence for purposes of the Convention shall be determined under the rules of paragraph 2. An individual who is a resident of one of the States under the law of that State, or who is a citizen of the United States, and who is not a resident of the other State under its law, will, for the purposes of this paragraph, be treated as a resident of the State of which he is a resident or citizen only if (i) he would be a resident of that State and not a third State, under the principles of subparagraphs (a) and (b) of paragraph 2 of this Article, if that third State is one with which the first-mentioned State does not have a comprehensive income tax Convention, or (ii) he is a resident of that State and not a third State, if that third State is one with which the first-mentioned State does have a comprehensive income tax Convention, under the provisions of that Convention. However,

a) the term "resident of one of the States" does not include any person who is liable to tax in that State in respect only of income from sources in that State; and

b) in the case of income derived or paid by an estate or trust, the term "resident of one of the States" applies only to the extent that the income derived by such estate or trust (other than an exempt pension trust or an exempt organization organized in the form of a trust, described above in this paragraph), is subject to tax in that State as the income of a resident, either in its hands or in the hands of its beneficiaries.

2. Where by reason of the provisions of paragraph 1, an individual is a resident of both States, then his status shall be determined as follows:

a) he shall be deemed to be a resident of the State in which he has a permanent home available to him; if he has a permanent home available to him in both States, he shall be deemed to be a resident of the State with which his personal and economic relations are closer (centre of vital interests);

b) if the State in which he has his centre of vital interests cannot be determined, or if he has not a permanent home available to him in either State, he shall be deemed to be a resident of the State in which he has an habitual abode;

c) if he has an habitual abode in both States or in neither of them, he shall be deemed to be a resident of the State of which he is a national;

d) if he is a national of both States or of neither of them, the competent authorities of the States shall settle the question by mutual agreement.

3. Where by reason of the provisions of paragraph 1, a person other than an individual or a company is a resident of both States, the competent authorities of the States shall settle the question by mutual agreement and determine the mode of application of the Convention to such person.

4. Where by reason of the provisions of paragraph 1, a company is a resident of both States, the competent authorities of the States shall endeavour to settle the question by mutual agreement, having regard to the company's place of effective management, the place where it is incorporated or otherwise constituted and any other relevant factors. In the absence of such agreement, such company shall not be entitled to claim any benefits under this Convention, except that such company may claim the benefits of paragraph 4 of Article 25 (Methods of Elimination of Double Taxation) and of Articles 28 (Non-discrimination), 29 (Mutual Agreement Procedure) and 37 (Entry into Force).


ARTICLE 5
Permanent Establishment

1. For the purposes of this Convention, the term "permanent establishment" means a fixed place of business through which the business of an enterprise is wholly or partly carried on.

2. The term "permanent establishment" includes especially:

a) a place of management;
b) a branch;
c) an office;
d) a factory;
e) a workshop; and
f) a mine, an oil or gas well, a quarry or any other place of extraction of natural resources.

3. A building site or construction or installation project constitutes a permanent establishment only if it lasts more than twelve months.

4. Notwithstanding the preceding provisions of this Article, the term "permanent establishment" shall be deemed not to include:

a) the use of facilities solely for the purpose of storage, display or delivery of goods or merchandise belonging to the enterprise;

b) the maintenance of a stock of goods or merchandise belonging to the enterprise solely for the purpose of storage, display or delivery;

c) the maintenance of a stock of goods or merchandise belonging to the enterprise solely for the purpose of processing by another enterprise;

d) the maintenance of a fixed place of business solely for the purpose of purchasing goods or merchandise, or of collecting information, for the enterprise;

e) the maintenance of a fixed place of business solely for the purpose of carrying on, for the enterprise, any other activity of a preparatory or auxiliary character;

f) the maintenance of a fixed place of business solely for any combination of the activities mentioned in subparagraphs (a) to (e), provided that the overall activity of the fixed place of business resulting from this combination is of a preparatory or auxiliary character.

5. Notwithstanding the provisions of paragraphs 1 and 2, where a person other than an agent of an independent status to whom paragraph 6 applies is acting on behalf of an enterprise and has, and habitually exercises, in one of the States an authority to conclude contracts in the name of the enterprise, that enterprise shall be deemed to have a permanent establishment in that State in respect of any activities which that person undertakes for the enterprise, unless the activities of such person are limited to those mentioned in paragraph 4 which, if exercised through a fixed place of business, would not make this fixed place of business a permanent establishment under the provisions of that paragraph.

6. An enterprise shall not be deemed to have a permanent establishment in one of the States merely because it carries on business in that State through a broker, general commission agent or any other agent of an independent status, provided that such persons are acting in the ordinary course of their business.

7. The fact that a company which is a resident of one of the States controls or is controlled by a company which is a resident of the other State, or which carries on business in that other State (whether through a permanent establishment or otherwise), shall not of itself constitute either company a permanent establishment of the other.

CHAPTER III
TAXATION OF INCOME

ARTICLE 6
Income From Real Property

1. Income derived by a resident of one of the States from real property (including income from agriculture or forestry) situated in the other State may be taxed in that other State.

2. The term "real property" shall have the meaning which it has under the law of the State in which the property in question is situated. The term shall in any case include property accessory to real property, livestock and equipment used in agriculture and forestry, rights to which the provisions of general law respecting landed property apply, usufruct of real property and rights to variable or fixed payments as consideration for the working of, or the right to work, mineral deposits, sources and other natural resources; ships and aircraft shall not be regarded as real property.

3. The provisions of paragraph 1 shall apply to income derived from the direct use, letting, or use in any other form of real property.

4. The provisions of paragraphs 1 and 3 shall also apply to the income from real property of an enterprise and to income from real property used for the performance of independent personal services.

5. A resident of one of the States who is liable to tax in the other State on income from real property situated in the other State may elect for any taxable year to compute the tax on such income on a net basis as if such income were attributable to a permanent establishment in such other State. Any such election shall be binding for the taxable year of the election and all subsequent taxable years unless the competent authorities of the States, pursuant to a request by the taxpayer made to the competent authority of the State of which the taxpayer is a resident, agree to terminate the election.

6. Exploration and exploitation rights of the sea bed, its sub-soil, and natural resources found therein (including rights to interests in, or to benefits of, assets to be produced by such exploration or exploitation) shall be regarded as real property situated in the State in which such sea bed, sub-soil, and natural resources are located. Such rights shall be considered to pertain to the property of a permanent establishment in that State to the same extent that any item of real property located in that State would be considered to pertain to a permanent establishment in that State.

ARTICLE 7
Business Profits

1. The profits of an enterprise of one of the States shall be taxable only in that State unless the enterprise carries on business in the other State through a permanent establishment situated therein. If the enterprise carries on business as aforesaid, the profits of the enterprise may be taxed in the other State but only so much of them as is attributable to that permanent establishment.

2. Subject to the provisions of paragraph 3, where an enterprise of one of the States carries on business in the other State through a permanent establishment situated therein, there shall in each State be attributed to that permanent establishment the profits which it might be expected to make if it were a distinct and separate enterprise engaged in the same or similar activities under the same or similar conditions and dealing wholly independently with the enterprise of which it is a permanent establishment.

3. In determining the profits of a permanent establishment, there shall be allowed as deductions expenses which are incurred for the purposes of the permanent establishment, including executive and general administrative expenses, research and development expenses, interest, and other expenses incurred for the purposes of the enterprise as a whole (or the part thereof which includes the permanent establishment), whether incurred in the State in which the permanent establishment is situated or elsewhere.

4. No profits shall be attributed to a permanent establishment by reason of the mere purchase by that permanent establishment of goods or merchandise for the enterprise.

5. For the purposes of the preceding paragraphs the profits to be attributed to the permanent establishment shall include only the profits derived from the assets or activities of the permanent establishment and shall be determined by the same method year by year unless there is good and sufficient reason to the contrary.

6. Where profits include items of income which are dealt with separately in other Articles of the Convention, then the provisions of those Articles shall not be affected by the provisions of this Article.

7. The United States tax on insurance premiums paid to foreign insurers, to the extent that it is a covered tax under paragraph 1 (b) of Article 2 (Taxes Covered), shall not be imposed on insurance or reinsurance premiums which are the receipts of a business of insurance carried on by an enterprise of the Netherlands whether or not that business is carried on through a permanent establishment in the United States.


ARTICLE 8
Shipping And Air Transport

1. Profits derived by an enterprise of one of the States from the operation of ships or aircraft in international traffic shall be taxable only in that State.

2. For the purposes of this Article, profits from the operation of ships or aircraft in international traffic include profits derived from the rental of ships or aircraft if such rental profits are incidental to profits described in paragraph 1.

3. The provisions of paragraph 1 shall also apply to the proportionate share of profits derived from the participation in a pool, a joint business or an international operating agency. The proportionate share shall be treated as derived directly from the operation of ships or aircraft in international traffic.


ARTICLE 9
Associated Enterprises

1. Where

    a) an enterprise of one of the States participates directly or indirectly in the management, control or capital of an enterprise of the other State; or

    b) the same persons participate directly or indirectly in the management, control, or capital of an enterprise of one of the States and an enterprise of the other State,

and in either case conditions are made or imposed between the two enterprises in their commercial or financial relations which differ from those which would be made between independent enterprises, then any income, deductions, receipts, allowances or outgoings which would, but for those conditions, have accrued to one of the enterprises, but, by reason of those conditions, have not so accrued, may be included in the profits of that enterprise and taxed accordingly.

It is understood, however, that the fact that associated enterprises have concluded arrangements, such as cost sharing arrangements or general services agreements, for or based on the allocation of executive, general administrative, technical and commercial expenses, research and development expenses and other similar expenses, is not in itself a condition as meant in the preceding sentence.

2. Where one of the States includes in the profits of an enterprise of that State - and taxes accordingly - profits on which an enterprise of the other State has been charged to tax in that other State, and the profits so included are profits which would have accrued to the enterprise of the first-mentioned State if the conditions made between the two enterprises had been those which would have been made between independent enterprises, then that other State shall make an appropriate adjustment to the amount of the tax charged therein on those profits. In determining such adjustment, due regard shall be had to the other provisions of this Convention and the competent authorities of the States shall if necessary consult each other.

ARTICLE 10
Dividends

1. Dividends paid by a company which is a resident of one of the States to a resident of the other State may be taxed in that other State.

2. However, such dividends may also be taxed in the State of which the company paying the dividends is a resident and according to the laws of that State, but if the beneficial owner of the dividends is a resident of the other State, the tax so charged shall not exceed:

    a) 5 percent of the gross amount of the dividends if the beneficial owner is a company which holds directly at least 10 percent of the voting power of the company paying the dividends;

    b) 15 percent of the gross amount of the dividends in all other cases.

The provisions of subparagraph (b) instead of the provisions of subparagraph (a) shall apply in the case of dividends paid by a United States person which is a Regulated Investment Company or Real Estate Investment Trust or in the case of dividends paid by a Dutch company, which is a

"beleggingsinstelling" in the sense of Article 28 of the Netherlands Corporation Tax Act (Wet op de vennootschapsbelasting 1969) (hereinafter referred to as "beleggingsinstelling").

However, neither the provisions of subparagraph (a) nor (b) shall apply in the case of:

        i) a dividend paid by a United States person which is a Real Estate Investment Trust, if such dividend is beneficially owned by a resident of the Netherlands, other than a Dutch company which is a "beleggingsinstelling" or other than an individual holding a less than 25 percent interest in the Real Estate Investment Trust; such dividends shall instead be taxable at the rate provided in the domestic law of the United States;

        ii) a dividend paid by a Dutch company, which is a "beleggingsinstelling", and which invests in real estate to the same extent as is required of a Real Estate Investment Trust, if the dividend is beneficially owned by a resident of the United States, other than an individual holding a less than 25 percent interest in the Dutch company, or other than a Regulated Investment Company or Real Estate Investment Trust; such dividends shall instead be taxable at the rate provided in the domestic law of the Netherlands.

    3. The provisions of paragraph 2 shall not affect the taxation of the company in respect of the profits out of which the dividends are paid.

    4. The term "dividends" as used in this Convention means income from shares or other rights participating in profits, as well as income from other corporate rights which is subjected to the same taxation treatment as income from shares by the laws of the State of which the company making the distribution is a resident. For the purposes of this paragraph, the term "dividends" also includes, in the case of the Netherlands, income from profit sharing bonds ("winstdelende obligaties") and, in the case of the United States, income from debt obligations carrying the right to participate in profits.

    5. The provisions of paragraphs 1 and 2 shall not apply if the beneficial owner of the dividends, being a resident of one of the States, carries on business in the other State of which the company paying the dividends is a resident, through a permanent establishment situated therein, or performs in that other State independent personal services from a fixed base situated therein, and the holding in respect of which the dividends are paid forms part of the business property of such permanent establishment or pertains to such fixed base. In such case the provisions of Article 7 (Business Profits) or Article 15 (Independent Personal Services), as the case may be, shall apply.

    6. Where a company which is a resident of one of the States derives profits or income from the other State, that other State may not impose any tax on the dividends paid by the company, except insofar as such dividends are paid to a resident of that other State or insofar as the holding in respect of which the dividends are paid forms part of the business property of a permanent establishment or pertains to a fixed base situated in that other State, nor, except as provided in Article 11 (Branch Tax), subject the company's undistributed profits to a tax on the company's undistributed profits, even if the dividends paid or the undistributed profits consist wholly or partly of profits or income arising in such other State.

ARTICLE 11
Branch Tax

1. A corporation which is a resident of one of the States and which has a permanent establishment in the other State or which is subject to tax on a net basis in that other State under Article 6 (Income from Real Property) or under paragraph 1 of Article 14 (Capital Gains), may be subject in that other State to a tax in addition to the tax allowable under the other provisions of this Convention. Such tax, however, may be imposed only on that portion of the business profits of the corporation attributable to the permanent establishment under this Convention or the income subject to tax on a net basis under Article 6 (Income from Real Property) or under paragraph 1 of Article 14 (Capital Gains) and reduced for all taxes chargeable in that State on such profits and income, other than the additional tax referred to herein, and further reduced (but not below zero) for any increase in the net equity attributable to such permanent establishment at the end of the taxation year, as measured from the end of the preceding taxation year, and increased (but not in excess of the accumulated profits) for any decrease in the net equity attributable to such permanent establishment at the end of the taxation year, as measured from the end of the preceding taxation year.

2. Notwithstanding paragraph 4, for purposes of this Article, the term "accumulated profits" means the excess of the aggregate profits referred to in paragraph 1 of this Article for all the preceding taxation years during which this Convention was in effect, over the aggregate profits taxed under this Article during such preceding taxation years.

3. The tax referred to in paragraph 1 shall not be imposed at a rate exceeding the rate specified in paragraph 2 (a) of Article 10 (Dividends).

4. In the case of the United States, the additional tax described in paragraph 1 may be imposed upon the "dividend equivalent amount" (as that term is defined in the law of the United States as on the date of signature of this Convention and as that law may be amended from time to time, but only to the extent that this definition, as amended, is in conformity with the principles of this Article).

5. Notwithstanding paragraph 4, no additional tax may be imposed under paragraph 1 with respect to income subject to tax under paragraph 1 of Article 14 (Capital Gains) which is derived from the disposition of shares or other comparable corporate rights in a company


ARTICLE 12
Interest

1. Interest arising in one of the States and beneficially owned by a resident of the other State shall be taxable only in that other State.

2. The term "interest" as used in this Convention means income from debt-claims of every kind, whether or not secured by mortgage, and not carrying a right to participate in the debtor's profits, and in particular, income from government securities, and income from bonds or debentures, including premiums and prizes attaching to such securities, bonds, or debentures, and an excess inclusion with respect to a residual interest in a real estate mortgage investment conduit, as well as other income that is treated as income from money lent by the taxation law of the State in which the income arises. The term does not include income dealt with in Article 10 (Dividends). Penalty charges for late payment shall not be regarded as interest for the purpose of this Convention.

3. The provisions of paragraph 1 shall not apply if the beneficial owner of the interest, being a resident of one of the States, carries on business in the other State, in which the interest arises, through a permanent establishment situated therein, or performs in that other State independent personal services from a fixed base situated therein, and the interest paid is attributable to such permanent establishment or fixed base. In such case the provisions of Article 7 (Business Profits) or Article 15 (Independent Personal Services), as the case may be, shall apply.

4. Interest shall be deemed to arise in one of the States when the payer is that State itself, or a political subdivision, a local authority, or a resident of that State. Where, however, the person paying the interest, whether he is a resident of one of the States or not, has in one of the States a permanent establishment or a fixed base in connection with which the indebtedness on which the interest is paid was incurred, or has income otherwise subject to the tax described in Article 11 (Branch Tax), and such interest is borne by such permanent establishment or fixed base or is allocable to the income subject to the tax described in Article 11 (Branch Tax), then such interest shall be deemed to arise in the State in which the permanent establishment or fixed base is situated or in which the income is subject to the tax described in Article 11 (Branch Tax).

5. Where, by reason of a special relationship between the payer and the beneficial owner or between both of them and some other person, the amount of the interest, having regard to the debt-claim for which it is paid, exceeds the amount which would have been agreed upon by the payer and the beneficial owner in the absence of such relationship, the provisions of this Article shall apply only to the last-mentioned amount. In such case the excess part of the payments shall remain taxable according to the laws of each State, due regard being had to the other provisions of this Convention.

6. A State may not impose any tax on interest paid by a resident of the other State, except insofar as

        a) the interest is paid to a resident of the first-mentioned State;

        b) the interest is attributable to a permanent establishment or a fixed base situated in the first-mentioned State; or

        c) the interest arises in the first-mentioned State and is not paid to a resident of the other State.

Where the payer of the interest is a resident of one of the States and has a permanent establishment in the other State or has income otherwise subject to the tax described in

Article 11 (Branch Tax), then to the extent the amount of the interest arising in such other State by reason of the permanent establishment or by reason of income subject to the tax described in Article 11 (Branch Tax) exceeds the total amount of interest paid by such permanent establishment or in connection with income otherwise subject to the tax described in Article 11 (Branch Tax), such excess amount, shall be treated as interest derived and beneficially owned by a resident of the first-mentioned State.

7. The provisions of paragraph 1 shall not apply to an excess inclusion with respect to a residual interest in a real estate mortgage investment conduit.

ARTICLE 13
Royalties

1. Royalties arising in one of the States and beneficially owned by a resident of the other State shall be taxable only in that other State.

2. The term "royalties'" as used in this Convention means payments of any kind received as a consideration for the use of, or the right to use, any copyright of literary, artistic, or scientific work (but not including motion pictures or works on film, tape or other means of reproduction used for radio or television broadcasting), any patent, trademark, trade name, brand name, design or model, plan, secret formula or process, or for information concerning industrial, commercial or scientific experience. The term "royalties" also includes gains derived from the alienation of any such right or property which are contingent on the productivity, use, or disposition thereof.

3. The provisions of paragraph 1 shall not apply if the beneficial owner of the royalties, being a resident of one of the States, carries on business in the other State, in which the royalties arise, through a permanent establishment situated therein, or performs in that other State independent personal services from a fixed base situated therein, and the royalties are attributable to such permanent establishment or fixed base. In such case the provisions of Article 7 (Business Profits) or Article 15 (Independent Personal Services), as the case may be, shall apply.

4. Where, by reason of a special relationship between the payer and the beneficial owner or between both of them and some other person, the amount of the royalties, having regard to the use, right, or information for which they are paid, exceeds the amount which would have been agreed upon by the payer and the beneficial owner in the absence of such relationship, the provisions of this Article shall apply only to the last-mentioned amount. In such case the excess part of the payments shall remain taxable according to the laws of each State, due regard being had to the other provisions of this Convention.

5. A State may not impose any tax on royalties paid by a resident of the other State, except insofar as

a) the royalties are paid to a resident of the first-mentioned State;

b) the royalties are attributable to a permanent establishment or a fixed base situated in the first-mentioned State;

c) the contract under which the royalties are paid was concluded in connection with a permanent establishment or a fixed base which the payer has in the first-mentioned State, and such royalties are borne by such permanent establishment or fixed base and are not paid to a resident of the other State; or

d) royalties are paid in respect of intangible property used in the first-mentioned State and not paid to a resident of the other State, but only where the payer has also received a royalty paid by a resident of the first-mentioned State, or borne by a permanent establishment or fixed base situated in that State, in respect of the use of that property in the first-mentioned State and provided that the use of the intangible property in question is not a component part of nor directly related to the active conduct of a trade or business in which the payer is engaged as meant in paragraph 2 of Article 26 (Limitation on Benefits).

## ARTICLE 14
## Capital Gains

1. Gains derived by a resident of one of the States from the disposition of real property situated in the other State may be taxed in the other State. For the purposes of this paragraph the term "real property situated in the other State" shall include:

a) real property referred to in Article 6 (Income from Real Property); and

b) shares or other comparable corporate rights in a company that is a resident of that other State, the assets of which company consist, directly or indirectly, for the greater part of real property situated in that other State, and an interest in a partnership, trust, or estate, to the extent that it is attributable to real property situated in that other State.

In the United States, the term includes a "United States real property interest" as defined in the Internal Revenue Code on the date of signature of this Convention, and as amended from time to time without changing the general principles described in this paragraph.

2. a) Where after the date this Convention enters into force a person who has been a resident of one of the States continuously since June 18, 1980, alienates real property situated in the other State, the alienation of which could not be taxed by the other State under the provisions of the prior Convention as defined in paragraph 2 of Article 37 (Entry into Force), and either:

i) the resident owned the alienated property continuously from June 18, 1980 until the date of alienation; or

ii) each of the following conditions is satisfied:

A) the resident acquired the alienated property in a transaction that qualified for non-recognition (determined without regard to section 897 of the Internal Revenue Code) for purposes of taxation in the other State, and the resident has owned the property continuously since such acquisition; and

B) the resident's initial basis in the alienated property was equal to either the basis of the property that the resident exchanged for the alienated property, or the basis of the alienated property in the hands of the person transferring the property to the resident immediately prior to the transfer; then the gain liable to tax in the other State under this Article shall be reduced by the portion of the gain attributable proportionately, on a monthly basis, to the period ending on December 31, 1984, or such greater portion as is shown to the satisfaction of the competent authority of that other State to be attributable to that period.

b) The provisions of this paragraph shall not apply unless, during the period from January 1, 1992, through the date of alienation, the resident, and any other person who owned the property during such period, was entitled to the benefits of this Article under Article 26 (Limitation on Benefits), or would have been so entitled if the Convention had been in effect throughout such period. In addition, during the period from June 18, 1980, through December 31, 1991, each person who owned the property must have been a resident of one of the States under the prior Convention as defined in paragraph 2 of Article 37 (Entry into Force).

c) The provisions of this paragraph shall not apply to the alienation of property that:

i) formed part of the property of a permanent establishment, or pertained to a fixed base, situated in the other State at any time on or after June 18, 1980;

ii) was acquired directly or indirectly by any person on or after June 18, 1980, in a transaction that did not qualify for non-recognition (determined without regard to section 897 of the Internal Revenue Code), or in a transaction in which it was acquired in exchange for an asset that was acquired in a transaction that did not qualify for non-recognition (determined without regard to section 897 of the Internal Revenue Code); or

iii) was acquired, directly or indirectly, by any person on or after June 18, 1980, in exchange for property described in clause (i) or (ii) of this subparagraph, or property the alienation of which could have been taxed by the other State under the provisions of the prior Convention as defined in paragraph 2 of Article 37 (Entry into Force).

3. Gains from the alienation of personal property forming part of the business property of a permanent establishment which an enterprise of one of the States has in the other State or of personal property pertaining to a fixed base available to a resident of one of the States in the other State for the purpose of performing independent personal services, including such gains from the alienation of such permanent establishment (alone or with the whole enterprise) or of such fixed base, may be taxed in that other State.

4. Notwithstanding the provisions of paragraph 3, gains from the deemed alienation of tangible depreciable personal property forming part of the business property of a permanent establishment which an enterprise of one of the States has in the other State under paragraph 3 of Article 27 (Offshore Activities) or of tangible depreciable personal property pertaining to a fixed base available to a resident of one of the States in the other State under paragraph 5 of Article 27 (Offshore Activities) for the purpose of performing independent personal services, shall be taxable only in the State of residence of the enterprise if the period during which the tangible depreciable personal property forms part of the

business property of such permanent establishment or pertains to such fixed base is less than 3 months and provided that the actual alienation of the tangible depreciable personal property does not take place within 1 year after the date of its deemed alienation. If the gain from the deemed alienation of the tangible depreciable personal property is taxable only in the State of residence of the enterprise, in determining the profits of the permanent establishment or the fixed base in the other State the depreciation with respect to such tangible depreciable personal property will be based on the lower of book value or market value, measured when such property became part of the business property of the permanent establishment or such property first pertained to the fixed base.

5. Notwithstanding the provisions of paragraph 3, gains derived by an enterprise of one of the States from the alienation of ships and aircraft operated in international traffic, and of personal property pertaining to the operation of such ships and aircraft shall be taxable only in that State.

6. Gains described in Article 13 (Royalties) shall be taxable in accordance with the provisions of Article 13.

7. Gains from the alienation of any property other than property referred to in paragraphs 1 through 5 shall be taxable only in the State of which the alienator is a resident.

8. Where a resident of one of the States alienates property in the course of a corporate organization, reorganization, amalgamation, division or similar transaction and profit, gain or income with respect to such alienation is not recognized or is deferred for the purpose of taxation in that State. then any tax that would otherwise be imposed by the other State with respect to such alienation will also be deferred to the extent and time as such tax would have been deferred if the alienator had been a resident of the other State, but no longer and in no greater amount than in the first-mentioned State provided that such tax can be collected upon a later alienation and the collection of the amount of tax in question upon the later alienation is secured to the satisfaction of the competent authority of both of the States. The competent authorities of the States shall develop procedures for implementing this paragraph.

9. The provisions of paragraph 7 shall not affect the right of each of the States to levy according to its own law a tax on gains from the alienation of shares or other corporate rights participating in profits in a company, the capital of which is wholly or partly divided into shares and which, under the laws of that State is a resident thereof, derived by an individual who is a resident of the other State and who:

      a) has, at any time during. the five-year period preceding the alienation, been a resident of the first-mentioned State, and

      b) at the time of the alienation owns, either alone or together with related individuals, at least 25 percent of any class of shares of such company.

For purposes of this paragraph the term "related individuals" means the alienator's spouse and his relatives (by blood or marriage) in the direct line (ancestors and lineal descendants) and his relatives (by whole or half blood or by marriage) in the second degree in the collateral line (siblings or their spouses).

ARTICLE 15

<u>Independent Personal Services</u>

1. Income derived by an individual who is a resident of one of the States from the performance of personal services in an independent capacity shall be taxable only in that State, unless such services are not performed in that State and the income derived therefrom is attributable to a fixed base regularly available to the individual in the other State for the purpose of performing his activities.

2. The term "personal services in an independent capacity" includes especially independent scientific, literary, artistic, educational or teaching activities as well as the independent activities of physicians, lawyers, engineers, architects, dentists and accountants.

ARTICLE 16
<u>Dependent Personal Services</u>

1. Subject to the provisions of Articles 17 (Directors' Fees), 19 (Pensions, Annuities, Alimony), 20 (Government Service), and 21 (Professors and Teachers), salaries, wages, and other similar remuneration derived by a resident of one of the States in respect of an employment shall be taxable only in that State unless the employment is exercised in the other State. If the employment is so exercised, such remuneration as is derived therefrom may be taxed in that other State.

2. Notwithstanding the provisions of paragraph 1, remuneration derived by a resident of one of the States in respect of an employment exercised in the other State shall be taxable only in the first-mentioned State if

      a) the recipient is present in the other State for a period or periods not exceeding in the aggregate 183 days in the taxable year concerned;

      b) the remuneration is paid by, or on behalf of, an employer who is not a resident of the other State; and

      c) the remuneration is not borne by a permanent establishment or a fixed base which the employer has in the other State.

3. Notwithstanding the preceding provisions of this Article, remuneration derived by a resident of one of the States in respect of an employment as a member of the regular complement of a ship or aircraft operated in international traffic, shall be taxable only in that State.

ARTICLE 17
<u>Directors' Fees</u>

Directors' fees or other remuneration derived by a resident of one of the State. in his capacity as a member of the board of directors, a "bestuurder" or a "commissaris" of a company which is a resident of the other State may be taxed in that other State. However such remuneration shall be taxable only in the

first-mentioned State to the extent to which such remuneration is derived from services rendered in that State.


# ARTICLE 18
## Artistes And Athletes

1. Notwithstanding the provisions of Articles 15 (Independent Personal Services) and 16 (Dependent Personal Services), income derived by a resident of one of the States as an entertainer, such as a theatre, motion picture, radio, or television artiste, or a musician, or as an athlete, from his personal activities as such exercised in the other state, may be taxed in that other State except where the amount of the gross receipts derived by such entertainer or athlete for the taxable year concerned, including expenses reimbursed to him or borne on his behalf, from such activities does not exceed 10,000 United States dollars or its equivalent in Netherlands guilders on January 1 of the taxable year concerned. In the latter case the exemption can be applied by means of a refund of tax which may have been levied at the source. An application for such refund has to be lodged after the end of the taxable year concerned and within three years after that year.

2. Where income in respect of activities exercised by an entertainer or an athlete in his capacity as such accrues not to the entertainer or athlete but to another person, that income of that other person may, notwithstanding the provisions of Articles 7 (Business Profits) and 15 (Independent Personal Services), be taxed in the State in which the activities of the entertainer or athlete are exercised, unless it is established that neither the entertainer or athlete nor persons related thereto participate directly or indirectly in the profits of that other person in any manner, including the receipts of deferred remuneration, bonuses, fees, dividends, partnership distributions, or other distributions.


# ARTICLE 19
## Pensions Annuities. Alimony

1. Subject to the provisions of paragraph 2 of Article 20 (Government Service), pensions and other similar remuneration derived and beneficially owned by a resident of one of the States in consideration of past employment and any annuity shall be taxable only in that State.

2. If, however, an individual deriving remuneration referred to in paragraph 1 was a resident of the other State at any time during the five-year period preceding the date of payment, the remuneration may be taxed in the other State if the remuneration is paid in consideration of employment exercised in the other State and the remuneration is not paid in the form of periodic payments, or a lump sum is paid in lieu of the right to receive an annuity.

3. The provisions of paragraph 2 shall not apply to the portion of the remuneration or lump sum referred to in paragraph 2 that is contributed to a pension plan or retirement account under such circumstances that, if the remuneration or lump sum had been received from a payer in the State of the

recipient's residence, the imposition of tax on the payment by the State of the recipient's residence would be deferred until the amount of the payment was withdrawn from the pension plan or retirement account to which it was contributed.

4. Subject to the provisions of paragraph 2 of Article 20 (Government Service), pensions and other payments made under the provisions of a public social security system and other public pensions paid by one of the States to a resident of the other State or a citizen of the United States shall be taxable only in the first-mentioned State.

5. The term "annuity" as used in this Article means a stated sum payable periodically at stated times during life or during a specified or ascertainable period of time under an obligation to make the payments in return for adequate and full consideration in money or money's worth.

6. Alimony paid to a resident of one of the States shall be taxable only in that State. The term "alimony" as used in this paragraph means periodic payments made pursuant to a written separation agreement or a decree of divorce, separate maintenance, or compulsory support, as well as lump sum payments in lieu thereof, which payments are taxable to the recipient under the laws of the State of which he is a resident.


ARTICLE 20
Government Service

1.        a) Remuneration, other than a pension, paid by one of the States or a political
        subdivision or a local authority thereof to an individual in respect of services rendered to that
        State or subdivision or authority shall be taxable only in that State.
                b) However, such remuneration shall be taxable only in the other State if the services
        are rendered in that State and the individual is a resident of that State who:
                        i) is a national of that State; or
                        ii) did not become a resident of that State solely for the purpose of rendering the
        services.

2.        a) Any pension paid by, or out of funds created by, one of the States or a political
        subdivision or a local authority thereof to an individual in respect of services rendered to that
        State or subdivision or authority shall be taxable only in that State.
                b) However, such pension shall be taxable only in the other State if the individual is a
        resident of, and a national of, that State.

3. The provisions of Articles 16 (Dependent Personal Services), 17 (Directors' Fees) and 19 (Pensions, Annuities, Alimony) shall apply to remuneration and pensions in respect of services rendered in connection with a business carried on by one of the States or a political subdivision or a local authority thereof.

ARTICLE 21
Professors And Teachers

1. An individual who visits one of the States for a period not exceeding two years for the purpose of teaching or engaging in research at a university, college or other recognized educational institution in that State, and who was immediately before that visit a resident of the other State shall be taxable only in that other State on any remuneration for such teaching or research for a period not exceeding two years from the date he first visits the first-mentioned State for such purpose. If the visit exceeds two years, the first-mentioned State may tax the individual under its national law for the entire period of the visit, unless in a particular case the competent authorities of the States agree otherwise.

2. This Article shall not apply to income from research if such research is undertaken not in the public interest but primarily for the private benefit of a specific person or persons.

ARTICLE 22
Students And Trainees

1. An individual who immediately before visiting one of the States is a resident of the other State and is temporarily present in the first-mentioned State for the primary purpose of:
> a) full-time study at a recognized university, college or school in that first-mentioned State; or
> b) securing training as a business apprentice, shall be exempt from tax in the first-mentioned State in respect of:
>> i) all remittances from abroad for the purpose of his maintenance, education or training, and
>> ii) any remuneration for personal services performed in the first-mentioned State for any taxable year in an amount that does not exceed 2,000 United States dollars or its equivalent in Netherlands guilders on January 1 of that taxable year.

The benefits under this paragraph shall only extend for such period of time as may be reasonable or customarily required to effectuate the purpose of the visit.

2. An individual who immediately before visiting one of the States is a resident of the other State and is temporarily present in the first-mentioned State for a period not exceeding three years for the purpose of study, research or training solely as a recipient of a grant, allowance or award from a scientific, educational, religious or charitable organization or under a technical assistance program entered into by one of the States, a political subdivision or a local authority thereof shall be exempt from tax in the first-mentioned State on:
> a) the amount of such grant, allowance or award; and
> b) any remuneration for personal services performed in the first-mentioned State for any taxable year provided such services are in connection with his study, research or training or are

incidental thereto, in an amount that does not exceed 2,000 United States dollars or its equivalent in Netherlands guilders on January 1 of that taxable year.

3. An individual may not claim the benefits of this Article or Article 21 (Professors and Teachers) if, during the immediately preceding period, the individual claimed the benefits of such other Article.

ARTICLE 23
Other Income

1. Items of income of a resident of one of the States, wherever arising, not dealt with in the foregoing Articles of this Convention shall be taxable only in that State.

2. The provisions of paragraph 1 shall not apply to income, other than income from real property as defined in paragraph 2 of Article 6 (Income from Real Property), if the beneficial owner of the income, being a resident of one of the States, carries on business in the other State through a permanent establishment situated therein, or performs in that other State independent personal services from a fixed base situated therein, and the income is attributable to such permanent establishment or fixed base. In such case the provisions of Article 7 (Business Profits) or Article 15 (Independent Personal Services), as the case may be, shall apply.

CHAPTER IV
ELIMINATION OF DOUBLE TAXATION

ARTICLE 24
Basis of Taxation

1. Notwithstanding any provision of the Convention except paragraph 2, each of the States may tax its residents and nationals as if the Convention had not come into effect. For this purpose, as regards the United States, the term national shall include a former citizen, not being a national of the Netherlands, whose loss of United States citizenship has as one of its principal purposes the avoidance of income tax, but only for a period of 10 years following such loss.

2. The provisions of paragraph 1 shall not affect
       a) the benefits conferred by one of the States under paragraph 2 of Article 9 (Associated Enterprises), under paragraph 4 of Article 19 (Pensions, Annuities, Alimony), and under Articles 25 (Methods of Elimination of Double Taxation), 28 (Non-Discrimination), and 29 (Mutual Agreement Procedure); and
       b) the benefits conferred by one of the States under Articles 20 (Government Service), 21 (Professors and Teachers), 22 (Students and Trainees), and 33 (Diplomatic Agents and Consular Officers), upon individuals who are neither citizens of that State, nor, in the case of the United States, lawful permanent residents of the United States.

3. For the implementation of paragraphs 1 and 2 of Article 7 (Business Profits), paragraph 5 of Article 10 (Dividends), paragraph 3 of Article 12 (Interest), paragraph 3 of Article 13 (Royalties), paragraph 3 of Article 14 (Capital Gains), paragraph 1 of Article 15 (Independent Personal Services), and paragraph 2 of Article 23 (Other Income), any income, gain or expense attributable to a permanent establishment or fixed base during its existence is taxable or deductible in the State where such permanent establishment or fixed base is situated even if the payments are deferred until such permanent establishment or fixed base has ceased to exist. Nothing in the preceding sentence shall affect the application to such deferred payments of rules regarding the accrual of income and expenses according to the domestic law of each of the States.

Gains from the alienation of personal property that at any time formed part of the business property of a permanent establishment or fixed base that a resident of one of the States has or had in the other State may be taxed by that other State only to the extent that the gain is attributable to the period in which the personal property in question formed part of the afore-mentioned business property. Such tax may be imposed on such gains at the time when realized and recognized under the laws of that other State, if that date is within 3 years of the date on which the property ceases to be part of the business property of the permanent establishment or fixed base.

4. If, immediately prior to the date of a hearing before the United States Senate Foreign Relations Committee regarding consent to ratification of this Convention, the Netherlands law does not contain provisions which prevent tax avoidance or evasion with respect to taxes on income in the situation where:

    a) an enterprise of the Netherlands derives interest or royalties from another state, which interest or royalties are attributable to a permanent establishment of that enterprise in a third jurisdiction;

    b) the income of such permanent establishment is subject to special or low taxation because of a "tax haven" regime (including, but not necessarily limited to, regimes intended to encourage the use of the third jurisdiction for tax avoidance purposes with respect to investment income); and

    c) the income of such permanent establishment is exempt from tax in the Netherlands, then a provision aimed at the prevention of tax avoidance or evasion with respect to taxes on such interest or royalty income derived by an enterprise of the Netherlands from the United States will be agreed upon between both States and will be laid down in a separate Protocol to this Convention.

ARTICLE 25

Methods of Elimination of Double Taxation

1. Notwithstanding the provisions of paragraph 2 of Article 24 (Basis of Taxation), the Netherlands may include in the basis of taxation the items of income which under paragraph 4 of Article 19 (Pensions, Annuities, Alimony) and Article 20 (Government Service) are taxable only in the United States.

2. Where a resident or national of the Netherlands derives items of income which according to Article 6 (Income from Real Property), Article 7 (Business Profits), paragraph 5 of Article 10 (Dividends), paragraph 3 of Article 12 (Interest), paragraph 3 of Article 13 (Royalties), paragraphs 1 and 3 of Article 14 (Capital Gains), Article 15 (Independent Personal Services) insofar as such income is subject to United States tax, paragraph 1 of Article 16 (Dependent Personal Services), paragraph 4 of Article 19 (Pensions, Annuities, Alimony), Article 20 (Government Service), and paragraph 2 of Article 23 (Other Income) of this Convention are taxable in the United States and are included in the basis of the taxation, the Netherlands shall exempt such items by allowing a reduction of its tax. This reduction shall be computed in conformity with the provisions of Netherlands law for the avoidance of double taxation. For that purpose the said items of income shall be deemed to be included in the total amount of the items of income which are exempt from Netherlands tax under those provisions.

3. Further, the Netherlands shall allow a deduction from the Netherlands tax for the items of income which according to paragraph 2 of Article 10 (Dividends), Article 17 (Directors' Fees), and Article 18 (Artistes and Athletes) of the Convention may be taxed in the United States to the extent that these items are included in the basis of the taxation. The amount of this deduction shall be equal to

      a) in the case of dividends which may be taxed in the United States according to paragraph 2, subparagraph (a) of Article 10 (Dividends), 5 percent of such dividends;

      b) in the case of dividends which may be taxed in the United States according to paragraph 2, subparagraph (b) of Article 10 (Dividends), 15 percent of such dividends;

      c) in the case of other dividends, which may be taxed in the United States according to paragraph 2 (i) of Article 10 (Dividends), 15 percent of such dividends; and,

      d) in the case of other items of income mentioned in this paragraph, the tax paid in the United States on such other items of income,

but shall in no case exceed the amount of the reduction which would be allowed if the items of income so included were the sole items of income which are exempt from Netherlands tax under the provisions of Netherlands law for the avoidance of double taxation.

4. In accordance with the provisions and subject to the limitations of the law of the United States (as it may be amended from time to time without changing the general principle hereof), the United States shall allow to a resident or national of the United States as a credit against the United States tax on income:

      a) the appropriate amount of income tax paid or accrued to the Netherlands by or on behalf of such resident or national, except the income tax paid to the Netherlands in the cases referred to in paragraph 9 of Article 14 (Capital Gains) or in paragraph 2 of Article 19 (Pensions, Annuities, Alimony); and

      b) in the case of a United States company owning at least 10 percent of the voting stock of a company which is a resident of the Netherlands and from which the United States company receives dividends, the appropriate amount of income tax paid or accrued to the Netherlands by or on behalf of the distributing company with respect to the profits out of which the dividends are paid.

Such appropriate amount shall be based upon the amount of income tax paid or accrued to the Netherlands, but the credit shall not exceed the limitations (for the purpose of limiting the credit to the

United States tax on income from sources outside the United States) provided by United States law for the taxable year.

For the purposes of this paragraph, the taxes referred to in paragraphs 1 (a) and 2 of Article 2 (Taxes Covered) shall be considered income taxes.

5. Notwithstanding the provisions of paragraph 4 of this Article, the United States shall allow to a resident or a national of the United States, as a credit against the United States tax on income, the appropriate amount of profit share paid by or on behalf of such resident or national to the Netherlands. The appropriate amount shall be the product of

   (i) the creditable profit share income base and

   (ii) the maximum statutory United States tax rate applicable to such resident or national for such taxable year.

For purposes of determining the appropriate amount, the following terms shall have the following meanings:

   a) The creditable profit share income base is the excess of the income subject to the company income tax (excluding the income not subject to the profit share) that is derived from sources within the Netherlands (before deduction of the profit share due) over the creditable company income tax base.

   b) The creditable company income tax base is the effective company income tax rate divided by the maximum statutory United States tax rate applicable to such resident or national for such taxable year, multiplied by the income subject to the company income tax (excluding the income not subject to the profit share) that is derived from sources within the Netherlands (before deduction of the profit share due)

   c) The effective company income tax rate is the company income tax paid on the income subject to the company income tax (excluding the income not subject to the profit share) divided by the income subject to the company income tax, excluding the income not subject to the profit share and before deduction of the profit share due.

The appropriate amount is also subject to any other limitations imposed by the law of the United States, as it may be amended from time to time, which apply to taxes creditable under sections 901 or 903 of the Internal Revenue Code for persons claiming benefits under this Convention. In applying such limitations to the company tax, the creditable company income tax base (as defined in (b), above) must be used for purposes of those limitations. Any profit share paid in excess of the appropriate amount only may be used as a credit in another taxable year, and only against United States tax on the creditable profit share income base (as defined in (a), above). If a credit is claimed in respect of the profit share, the taxpayer may not claim a deduction for United States taxable income purposes with respect to any foreign taxes for which a credit against United States tax on income may be claimed under sections 901 or 903 of the Internal Revenue Code, or profit share, paid or accrued in such year. No credit shall be allowed under paragraph 4 of this Article for any Netherlands tax for which a credit is claimed under the provisions of this paragraph.

6. Where a United States citizen is a resident of the Netherlands:

a) with respect to items of income not exempt from Netherlands tax under paragraph 2, nor dealt with in paragraph 7 of this Article, that under the provisions of this Convention are exempt from United States tax or that are subject to a reduced rate of United States tax when derived by a resident of the Netherlands who is not a United States citizen, the Netherlands shall allow as a credit against Netherlands tax, subject to the provisions of Netherlands tax law regarding credit for foreign tax, only the tax paid, if any, that the United States may impose under the provisions of this Convention, other than taxes that may be imposed solely by reason of citizenship under paragraph 1 of Article 24 (Basis of Taxation);

b) for purposes of computing United States tax under subparagraph (a), the United States shall allow as a credit against United States tax the income tax paid to the Netherlands after the credit referred to in subparagraph (a); the credit so allowed shall not reduce the portion of the United States tax that is creditable against the Netherlands tax in accordance with subparagraph (a); and

c) for the exclusive purpose of relieving double taxation in the United States under subparagraph (b), items of income referred to in subparagraph (a) shall be deemed to arise in the Netherlands to the extent necessary to avoid double taxation of such income under subparagraph (b).

7. Where a resident of one of the States derives gains or a remuneration or a lump sum which may be taxed in the other State in accordance with paragraph 9 of Article 14 (Capital Gains), or with paragraph 2 of Article 19 (Pensions, Annuities, Alimony), that other State shall allow a deduction from its tax on such gains, remuneration or lump sum. The amount of this deduction shall be equal to the tax levied in the first-mentioned State on the said gains, remuneration or lump sum, but shall in no case exceed that part of the income tax, as computed before the deduction is given, which is attributable to the said gains, remuneration or lump sum. For the exclusive purpose of relieving double taxation in the United States under this paragraph, items of income referred to in this paragraph shall be deemed to arise in the Netherlands to the extent necessary to avoid double taxation of such income under this paragraph.

CHAPTER V
SPECIAL PROVISIONS

ARTICLE 26
Limitation on Benefits

1. A person that is a resident of one of the States and derives income from the other State shall be entitled, in that other State, to all the benefits of this Convention only if such person is:

a) an individual;

b) a State, or a political subdivision or local authority thereof;

c) a company meeting any of the following tests:

i) the principal class of its shares is listed on a recognized stock exchange located in either of the States and is substantially and regularly traded on one or more recognized stock exchanges;

ii)    A) more than 50 percent of the aggregate vote and value of all of its shares is owned, directly or indirectly, by five or fewer companies which are resident of either State, the principal classes of the shares of which are listed and traded as described in subparagraph (c) (i), and

B) the company is not a conduit company, as defined in subparagraph 8 (m); or

iii) in the case of a company resident in the Netherlands,

A) at least 30 percent of the aggregate vote and value of all of its shares is owned, directly or indirectly, by five or fewer companies resident in the Netherlands, the principal classes of the shares of which are listed and traded as described in subparagraph (c) (i);

B) at least 70 percent of the aggregate vote and value of all of its shares is owned, directly or indirectly, by five or fewer companies that are residents of the United States or of member states of the European Communities, the principal classes of shares of which are substantially and regularly traded on one or more recognized stock exchanges; and

C) the company is not a conduit company, as defined in subparagraph 8 (m); or

iv) in the case of a conduit company (as defined in paragraph 8 (m) that satisfies the requirements of subparagraph (c) (ii) (A) or (c) (iii) (A) and (B), such company satisfies the conduit base reduction test set forth in paragraph 5 (d).

d) a person:

i) more than 50 percent of the beneficial interest in which (or, in the case of a company, more than 50 percent of the aggregate vote and value of all of its shares, and more than 50 percent of the shares of any "disproportionate class of shares") is owned, directly or indirectly, by qualified persons; and

ii) which meets the base reduction test described in paragraph 5; or

e) a not-for-profit organization that, by virtue of that status, is generally exempt from income taxation in its State of residence, provided that more than half of the beneficiaries, members, or participants, if any, in such organization are qualified persons.

2.    a) A person resident in one of the States shall also be entitled to the benefits of this Convention with respect to income derived from the other State if such person is engaged in the active conduct of a trade or business in the first-mentioned State (other than the business of making or managing investments, unless these activities are banking or insurance activities carried on by a bank or insurance company), and

i) the income derived in the other State is derived in connection with that trade or business in the first-mentioned State and the trade or business of the income recipient is substantial in relation to the income producing activity, or

ii) the income derived in the other State is incidental to that trade or business in the first -mentioned State.

b) Income is derived in connection with a trade or business if the income-producing activity in the other State is a line of business which forms a part of or is complementary to the trade or business conducted in the first-mentioned State by the income recipient.

c) Whether the trade or business of the income recipient is substantial will generally be determined by reference to its proportionate share of the trade or business in the other State, the nature of the activities performed and the relative contributions made to the conduct of the trade or business in both States. In any case, however, the trade or business of the income recipient will be deemed to be substantial if, for the preceding taxable year, the average of the ratios for the following three factors exceeds 10 percent (or in the case of a person electing to apply subparagraph (h), 60 percent) and each of the ratios exceeds 7.5 percent (or in the case of a person electing to apply subparagraph (h), 50 percent) provided that for any separate factor that does not meet the 7.5 percent test (or in the case of a person electing to apply subparagraph (h), the 50 percent test) in the first preceding taxable year the average of the ratios for that factor in the three preceding taxable years may be substituted:

i) the ratio of the value of assets used or held for use in the active conduct of the trade or business by the income recipient in the first-mentioned State (without regard to any assets attributed from a third state under subparagraph (h), except in the case of a person electing to apply subparagraph (h)) to all, or, as the case may be, the proportionate share of the value of such assets so used or held for use by the trade or business producing the income in the other State;

ii) the ratio of gross income derived from the active conduct of the trade or business by the income recipient in the first-mentioned State (without regard to any gross income attributed from a third state under subparagraph (h), except in the case of a person electing to apply subparagraph (h) to all, or, as the case may be, the proportionate share of the gross income so derived by the trade or business producing the income in the other State; and

iii) the ratio of the payroll expense of the trade or business for services performed within the first-mentioned State (without regard to any services attributed from a third state under subparagraph (h)), except in the case of a person electing to apply subparagraph (h)) to all, or, as the case may be, the proportionate share of the payroll expense of the trade or business for services performed in the other State.

d) Income derived from a State is incidental to a trade or business conducted in the other State if the income is not described in subparagraph (b) and the production of such income facilitates the conduct of the trade or business in the other State (for example, the investment of the working capital of such trade or business). In the case of a person electing to apply subparagraph (h), the income that is considered incidental to the trade or business shall not be greater than four times the amount of income that would have been considered incidental to the trade or business actually conducted in the Netherlands.

e) A person that is a resident of one of the States is considered to be engaged in the active conduct of a trade or business in that State (and is considered to carry on all, or, as the case may be, the proportionate share of such trades or businesses) if such person:

i) is directly so engaged;

ii) is a partner in a partnership that is so engaged;

iii) is a person in which a controlling beneficial interest is held by a single person which is engaged in the active conduct of a trade or business in that State;

iv) is a person in which a controlling beneficial interest is held by a group of five or fewer persons each member of which is engaged in activity in that State which is a component part of or directly related to the trade or business in that State;

v) is a company that is a member of a group of companies that form or could form a consolidated group for tax purposes according to the law of that State (as applied without regard to the residence of such companies), and the group is engaged in the active conduct of a trade or business in that State;

vi) owns, either alone or as a member of a group of five or fewer persons that are qualified persons, residents of a member state of the European Communities, or residents of an identified state, a controlling beneficial interest in a person that is engaged in the active conduct of a trade or business in the State in which such owner is resident; or

vii) is, together with another person that is so engaged, under the common control of a person (or a group of five or fewer persons) which (or, in the case of a group, each member of which) is a qualified person, a resident of a member state of the European Communities or a resident of an identified state.

For purposes of subparagraphs (e) (vi) and (e) (vii), an "identified State" includes any third country, identified by agreement of the competent authorities, which has effective provisions for the exchange of information with the State in which the person being tested under this paragraph is a resident.

f) For purposes of subparagraph (e), a person (or group) shall be deemed to own a "controlling beneficial interest" in another person if it holds directly or indirectly a beneficial interest which represents more than 50 percent of the value and voting power in such other person, provided that:

i) an interest consisting of 50 percent or less of the value and voting power of any third person shall not be considered for purposes of determining the percentage of indirect ownership held in such other person; and

ii) no person shall be considered to be part of a group owning a controlling beneficial interest in an entity unless such person holds directly a beneficial interest which represents at least 10 percent of the value and voting power in such entity.

g) For purposes of subparagraph (e), a person (or group) shall be deemed to have "common control" of two persons if it holds a controlling beneficial interest in each such person.

h) For purposes of applying the rules of this paragraph, where a person that is a resident of the Netherlands is engaged in the active conduct of a trade or business in the Netherlands (or considered to be so engaged under the rules of subparagraph (e)), and activity that is a component part of, or directly related to that trade or business, consistent with the rules of subparagraph (e), is also conducted in other member states of the European Communities, that person may elect to treat all, or, as the case may be, the proportionate share of such activity as if it were conducted solely in the Netherlands, provided that each of the following three ratios exceeds 15 percent:

i) the ratio of the value of assets used or held for use in the active conduct of the trade or business within the Netherlands (without regard to any assets attributed from a third state under this subparagraph) to all, or, as the case may be, the proportionate share of the value of such assets so used or held for use within all such member states;

ii) the ratio of gross income derived from the active conduct of the trade or business within the Netherlands (without regard to any gross income attributed from a third state under this subparagraph) to all, or, as the case may be, the proportionate share of the gross income so derived within all such member states; and

iii) the ratio of the payroll expense of the trade or business for services performed within the Netherlands (without regard to any services attributed from a third state under this subparagraph) to all, or, as the case may be, the proportionate share of the payroll expense of the trade or business for services performed within all such member states.

3. A person that is a resident of one of the States shall also be entitled to all the benefits of this Convention if that person functions as a headquarter company for a multinational corporate group. A person shall be considered a headquarter company for this purpose only if:

a) it provides a substantial portion of the overall supervision and administration of the group, which may include, but cannot be principally, group financing;

b) the corporate group consists of corporations resident in, and engaged in an active business in, at least five countries, and the business activities carried on in each of the five countries (or five groupings of countries) generate at least 10 percent of the gross income of the group;

c) the business activities carried on in any one country other than the State of residence of the headquarter company generate less than 50 percent of the gross income of the group;

d) no more than 25 percent of its gross income is derived from the other State;

e) it has, and exercises, independent discretionary authority to carry out the functions referred to in subparagraph (a);

f) it is subject to the same income taxation rules in its country of residence as persons described in paragraph 2; and

g) the income derived in the other State either is derived in connection with, or is incidental to, the active business referred to in subparagraph (b).

If the gross income requirements of subparagraphs (b) (c) or (d) of this paragraph are not fulfilled, they will be deemed to be fulfilled if the required ratios are met when averaging the gross income of the preceding four years.

4.          a) A company resident in the Netherlands shall also be entitled to the benefits of Article 10 (Dividends), 11 (Branch Tax), 12 (Interest) or 13 (Royalties) if:

i) more than 30 percent of the aggregate vote and value of all of its shares (and more than 30 percent of the shares of any "disproportionate class of shares") is owned, directly or indirectly, by qualified persons resident in the Netherlands;

ii) more than 70 percent of all such shares is owned, directly or indirectly, by qualified persons and persons that are residents of member states of the European Communities; and

iii) such company meets the base reduction test described in paragraph 5.

b) In determining whether, pursuant to subparagraph (a) (ii), a company's shares are owned by residents of member states of the European Communities, only those shares shall be considered which are held by persons that are residents of states with a comprehensive income tax Convention with the United States, as long as the particular dividend, profit or income subject to the branch tax, interest, or royalty payment in respect of which treaty benefits are claimed would be subject to a rate of tax under that Convention that is no less favorable than the rate of tax applicable to such company under Articles 10 (Dividends), 11 (Branch Tax), 12 (Interest) or 13 (Royalties) of this Convention.

5.    a) A person meets the base described in this paragraph if:

i) less than 50 percent of such person's gross income is used, directly or indirectly, to make deductible payments in the current taxable year to persons that are not qualified persons; or

ii) in the case of a person resident in the Netherlands,

A) less than 70 percent of such gross income is used, directly or indirectly, to make deductible payments to persons that are not qualified persons; and

B) less than 30 percent of such gross income is used, directly or indirectly, to make deductible payments to persons that are neither qualified persons nor residents of member states of the European Communities.

b) For purposes of this paragraph, the term "gross income" means gross income for the first taxable year preceding the current taxable year; provided that the amount of gross income for the first taxable year preceding the current taxable year will be deemed to be no less than the average of the annual amounts of gross income for the four taxable years preceding the current taxable year.

c) For purposes of this paragraph, the term "deductible payments" includes payments for interest or royalties, but does not include payments at arm's length for the purchase or use of or the right to use tangible property in the ordinary course of business or remuneration at arm's length for services performed in the country of residence of the person making such payments. Types of payments may be added to or eliminated from the exceptions mentioned in the preceding definition of "deductible payments" by mutual agreement of the competent authorities.

d) For purposes of paragraph 1 (c), the conduit base reduction test means the base reduction test described in this paragraph, except that the term "deductible payments" for this purpose means only those payments described in subparagraph (c):

i) that are made to an associated enterprise (as described in Article 9 (Associated Enterprises)), except that whether two enterprises are associated will be determined for this purpose without regard to the residence of either enterprise; and

ii) that are subject to an aggregate rate of tax (including withholding tax) in the hands of the recipient that is less than 50 percent of the rate that would be applicable

had the payment been received in the State of residence of the payer, and subject to the normal taxing regime in that State.

6. A person, resident of one of the States, which derives from the other State income mentioned in Article 8 (Shipping and Air Transport) and which is not entitled to the benefits of this Convention because of the foregoing paragraphs, shall nevertheless be entitled to the benefits of this Convention with respect to such income if:

a) more than 50 percent of the beneficial interest in such person (or in the case of a company, more than 50 percent of the value of the stock of such company) is owned, directly or indirectly, by qualified persons or individuals who are residents of a third state; or

b) in the case of a company, the stock of such company is primarily and regularly traded on an established securities market in a third state, provided that such third state grants an exemption under similar terms for profits as mentioned in Article 8 of this Convention to citizens and corporations of the other State either under its national law or in common agreement with that other State or under a Convention between that third state and the other State.

7. A person resident of one of the States, who is not entitled to benefits of this Convention because of the foregoing paragraphs, may, nevertheless, be granted benefits of this Convention if the competent authority of the State in which the income in question arises so determines. In making such determination, the competent authority shall take into account as its guideline whether the establishment, acquisition, or maintenance of such person or the conduct of its operations has or had as one of its principal purposes the obtaining of benefits under this Convention. The competent authority of the State in which the income arises will consult with the competent authority of the other State before denying the benefits of the Convention under this paragraph.

8. The following provisions apply for purposes of this Article:

a) The term "principal class of shares" is generally the ordinary or common shares of the company, provided that such class of shares represents the majority of the voting power and value of the company. When no single class of shares represents the majority of the voting power and value of the company, the "principal class of shares" is generally those classes that in the aggregate possess more than 50 percent of the voting power and value of the company. In determining voting power, any shares or class of shares that are authorized but not issued shall not be counted and in mutual agreement between the competent authorities appropriate weight shall be given to any restrictions or limitations on voting rights of issued shares. The "principal class of shares" also includes any "disproportionate class of shares". Notwithstanding the preceding rules, the "principal class of shares" may be identified by mutual agreement between the competent authorities of the States.

b) The term "shares" shall include depository receipts thereof or trust certificates thereof.

c) The term "disproportionate class of shares" means any class of shares of a company resident in one of the States that entitles the shareholder to disproportionately higher participation, through dividends, redemption payments or otherwise, in the earnings generated in the other State by particular assets or activities of the company.

d) The term "recognized stock exchange" means:

i) any stock exchange registered with the Securities and Exchange Commission as a national securities exchange for purposes of the Securities Exchange Act of 1934;

ii) the Amsterdam Stock Exchange;

iii) the NASDAQ System owned by the National Association of Securities Dealers, Inc. or the parallel market of the Amsterdam Stock Exchange; and

iv) any other stock exchange agreed upon by the competent authorities of both States, including, for this purpose, any stock exchanges listed in an exchange of notes signed at the later of the dates on which the respective governments have notified each other in writing that the formalities constitutionally required for the entry into force of the Convention as meant in Article 37 (Entry into Force) in their respective States have been complied with.

However, with respect to closely held companies, the term "recognized stock exchange" shall not include the stock exchanges mentioned under subparagraph (iii), or if so indicated in mutual agreement between the competent authorities, under subparagraph (iv).

e) The term "closely held company" means a company of which 50% or more of the principal class of shares is owned by persons, other than qualified persons or residents of a member state of the European Communities, each of whom beneficially owns, directly or indirectly, alone or together with related persons more than 5% of such shares for more than 30 days during a taxable year.

f) The shares in a class of shares are considered to be substantially and regularly traded on one or more recognized stock exchanges in a taxable year if:

i) trades in such class are effected on one or more of such stock exchanges other than in de minimis quantities during every month; and

ii) the aggregate number of shares of that class traded on such stock exchange or exchanges during the previous taxable year is at least 6 percent of the average number of shares outstanding in that class during that taxable year.

For purposes of this subparagraph, any pattern of trades conducted in order to meet the "substantial and regular trading" tests will be disregarded.

g) The term "qualified person" means:

i) a person that is entitled to benefits of this Convention pursuant to the provisions of paragraph 1; and

ii) a citizen of the United States.

h) The term "member state of the European Communities" means, unless the context requires otherwise:

i) the Netherlands; and

ii) any other member state of the European Communities with which both States have in effect a comprehensive income tax Convention.

i) The term "resident of a member state of the European Communities" means a person that would be considered a resident of any such member state under the principles of Article 4 (Resident) and would be entitled to the benefits of this Convention under the principles of paragraph 1, applied as if such member state were the Netherlands, and that is otherwise

entitled to the benefits of the Convention between that person's state of residence and the United States.

j) The not-for-profit organizations referred to in subparagraph 1 (e) of this Article include, but are not limited to, pension funds, pension trusts, private foundations, trade unions, trade associations, and similar organizations, provided, however, that in all events, a pension fund, pension trust, or similar entity organized for purposes of providing retirement, disability, or other employment benefits that is organized under the laws of a State shall be entitled to the benefits of the Convention if the organization sponsoring such fund, trust, or entity is entitled to the benefits of the Convention under this Article.

k) The reference in subparagraph (c) (ii) and clauses (A) and (B) of subparagraph (c) (iii) of paragraph 1 to shares that are owned, directly or indirectly, shall mean that all companies in the chain of ownership that are used to satisfy the ownership requirements of the respective clause or subparagraph, must meet the residence requirements that are described in such clause or subparagraph.

1) For the purpose of paragraphs 2, 3 and 5, the competent authorities may by mutual agreement, notwithstanding the provisions of these paragraphs, determine transition rules for newly-established business operations, newly-established corporate groups or newly-established headquarter companies.

m) For purposes of subparagraph (1) (c) (ii) (B) and (1) (c) (iii) (C), the term "conduit company" means a company that makes payments of interest, royalties and any other payments included in the definition of deductible payments (as defined in subparagraph (5) (c)) in a taxable year in an amount equal to or greater than 90 percent of its aggregate receipts of such item's during the same taxable year. Notwithstanding the previous sentence, a bank or insurance company shall not be considered to be a conduit company if it (i) is engaged in the active conduct of a banking or insurance business and (ii) is managed and controlled by associated enterprises (within the meaning of Article 9 (Associated Enterprises), except that whether two enterprises are associated will be determined for this purpose without regard to the residence of either enterprise) that are qualified persons.


ARTICLE 27
Offshore Activities

1. The provisions of this Article shall apply notwithstanding any other provision of this Convention. However, this Article shall not apply where offshore activities of a person constitute for that person a permanent establishment under the provisions of Article 5 (Permanent Establishment) or a fixed base under the provisions of Article 15 (Independent Personal Services).


2. In this Article the term "offshore activities" means activities which are carried on offshore in connection with the exploration or exploitation of the seabed and its sub-soil and their natural resources, situated in one of the States.

3. An enterprise of one of the States which carries on offshore activities in the other State shall, subject to paragraph 4, be deemed to be carrying on, in respect of those activities, business in that other State through a permanent establishment situated therein, unless the offshore activities in question are carried on in the other State for a period or periods not exceeding in the aggregate 30 days in a calendar year.

For the purposes of this paragraph:

> a) where an enterprise carrying on offshore activities in the other State is associated with another enterprise and that other enterprise continues, as part of the same project, the same offshore activities that are or were being carried on by the first-mentioned enterprise, and the afore-mentioned activities carried on by both enterprises - when added together - exceed a period of 30 days, then each enterprise shall be deemed to be carrying on its activities for a period exceeding 30 days in a calendar year;
> b) an enterprise shall be regarded as associated with another enterprise if one holds directly or indirectly at least one third of the capital of the other enterprise or if a person holds directly or indirectly at least one third of the capital of both enterprises.

4. However, for the purposes of paragraph 3, the term "offshore activities" shall be deemed not to include:

> a) one or any combination of the activities mentioned in paragraph 4 of Article 5 (Permanent Establishment);
> b) towing or anchor handling by ships primarily designed for that purpose and any other activities performed by such ships; or
> c) the transport of supplies or personnel by ships or aircraft in international traffic.

5. A resident of one of the States who carries on offshore activities in the other State, which consist of professional services or other activities of an independent character, shall be deemed to be performing those activities from a fixed base in the other State if the offshore activities in question last for a continuous period of 30 days or more.

6. Salaries, wages and other similar remuneration derived by a resident of one of the States in respect of an employment connected with offshore activities carried on through a permanent establishment in the other State may, to the extent that the employment is exercised offshore in that other State, be taxed in that other State.

7. Where documentary evidence is produced that tax has been paid in the United States on the items of income that may be taxed in the United States according to Article 7 (Business Profits) or Article 15 (Independent Personal Services) in connection with respectively paragraph 3 or paragraph 5 of this Article, and according to paragraph 6 of this Article, the Netherlands shall allow a reduction of its tax, which shall be computed in conformity with the rules laid down in paragraph 2 of Article 25 (Methods of Elimination of Double Taxation).

ARTICLE 28
Non-discrimination

1. Nationals of one of the States shall not be subjected in the other State to any taxation or any requirement connected therewith, which is other or more burdensome than the taxation and connected requirements to which nationals of that other State in the same circumstances are or may be subjected. This provision shall, notwithstanding the provisions of Article 1 (General Scope), also apply to persons who are not residents of one or both of the States. However, for the purposes of United States tax, a United States national who is not a resident of the United States and a Netherlands national who is not a resident of the United States are not in the same circumstances.

2. The taxation on a permanent establishment which an enterprise of one of the States has in the other State shall not be less favourably levied in that other State than the taxation levied on enterprises of that other State carrying on the same activities. This provision shall not be construed as obliging one of the States to grant to residents of the other State any personal allowances, reliefs, and reductions for taxation purposes on account of civil status or family responsibilities which it grants to its own residents.

3. Except where the provisions of paragraph 1 of Article 9 (Associated Enterprises), paragraph 5 of Article 12 (Interest), or paragraph 4 of Article 13 (Royalties) apply, interest, royalties and other disbursements paid by a resident of one of the States to a resident of the other State shall, for the purposes of determining the taxable profits of the first-mentioned resident, be deductible under the same conditions as if they had been paid to a resident of the first-mentioned State.

4. Enterprises of one of the States, the capital of which is wholly or partly owned or controlled, directly or indirectly, by one or more residents of the other State, shall not be subjected in the first-mentioned State to any taxation or any requirement connected therewith which is other or more burdensome than the taxation and connected requirements to which other similar enterprises of the first-mentioned State are or may be subjected.

5. Contributions paid by, or on behalf of, an individual who exercises an employment and who is a resident of one of the States or who is temporarily present in that State, to a pension plan that is recognized for tax purposes in the other State will, in determining the income derived from his employment, be treated in the same way for tax purposes in the first-mentioned State as a contribution paid to a pension plan that is recognized for tax purposes in that first-mentioned State, provided that
> a) such individual is not a national of the first-mentioned State; and
> b) such individual was contributing to such pension plan before he became a resident of the first-mentioned State or before he became temporarily present in that State; and
> c) the competent authority of the first-mentioned State agrees that the pension plan corresponds to a pension plan recognized for tax purposes by that State.

6. Nothing in this Article shall be construed to prevent or limit the application by either State of its tax on branch profits described in Article 11 (Branch Tax).

7. The provisions of this Article shall, notwithstanding the provisions of Article 2 (Taxes Covered) apply to taxes of every kind and description imposed by one of the States or a political subdivision or local authority thereof.


ARTICLE 29
Mutual Agreement Procedure

1. Where a person considers that the actions of one or both of the States result or will result for him in taxation not in accordance with the provisions of this Convention, he may, irrespective of the remedies provided by the domestic law of those States, present his case to the competent authority of the State of which he is a resident or national.

2. The competent authority shall endeavour, if the objection appears to it to be justified and if it is not itself able to arrive at a satisfactory solution, to resolve the case by mutual agreement with the competent authority of the other State, with a view to the avoidance of taxation which is not in accordance with the Convention. Any agreement reached shall be implemented notwithstanding any time limits or other procedural limitations in the domestic law of the States, provided that the competent authority of the other State has received notification that such a case exists within six years from the end of the taxable year to which the case relates.

3. The competent authorities of the States shall endeavour to resolve by mutual agreement any difficulties or doubts arising as to the interpretation or application of the Convention. In particular the competent authorities of the States may agree:

a) to the same attribution of income, deductions, credits, or allowances of an enterprise of one of the States to its permanent establishment situated in the other State;

b) to the same allocation of income, deductions, credits, or allowances between persons;

c) to the same characterization of particular items of income;

d) to the same application of source rules with respect to particular items of income;

e) to a common meaning of a term;

f) to increases in any specific amounts referred to in the Convention to reflect economic or monetary developments; and

g) to the application of the provisions of domestic law regarding penalties, fines, and interest in a manner consistent with the purposes of the Convention.

They may also consult together for the elimination of double taxation in cases not provided for in the Convention.

4. The competent authorities of the States may communicate with each other directly for the purpose of reaching an agreement in the sense of the preceding paragraphs.

5. If any difficulty or doubt arising as to the interpretation or application of this Convention cannot be resolved by the competent authorities in a mutual agreement procedure pursuant to the previous

paragraphs of this Article, the case may, if both competent authorities and the taxpayer(s) agree, be submitted for arbitration, provided the taxpayer agrees in writing to be bound by the decision of the arbitration board. The decision of the arbitration board in a particular case shall be binding on both States with respect to that case. The provisions of this paragraph shall have effect after the States have so agreed through the exchange of diplomatic notes.

6. If the competent authority of one of the States becomes aware that the law of one of the States is or may be applied in a manner that may impede the full implementation of this Convention, that competent authority shall inform the competent authority of the other State in a timely manner. At the request of one of the States, the competent authorities shall consult with each other with a view to establishing a basis for the full implementation of this Convention. The consultations described in this paragraph should begin within six months of the date on which the competent authority of the first-mentioned State informed the competent authority of the other State.


ARTICLE 30
Exchange of Information And Administrative Assistance

1. The competent authorities of the States shall exchange such information as is necessary for carrying out the provisions of this Convention or of the domestic laws of the States concerning taxes covered by the Convention insofar as the taxation thereunder is not contrary to the Convention, including for the assessment, collection, administration, enforcement, prosecution before an administrative authority or initiation of prosecution before a judicial body, or determination of appeals with respect to the taxes covered by the Convention. The exchange of information is not restricted by Article 1 (General Scope). Any information received by one of the States shall be treated as secret in the same manner as information obtained under the domestic laws of that State and shall be disclosed only to persons or authorities (including courts and administrative bodies) involved in the above functions in relation to taxes covered by the Convention. Such persons or authorities shall use the information only for such purposes. They may disclose the information in public court proceedings or in judicial decisions. A State may use information obtained under this Convention as evidence before a criminal court only if prior authorization has been given by the competent authority which has supplied the information. However, the competent authorities may mutually agree to waive the condition of prior authorization.

2. If information is requested by one of the States in accordance with this Article, the other State shall obtain the information to which the request relates in the same manner and to the same extent as if the tax of the first-mentioned State were the tax of that other State and were being imposed by the other State. If specifically requested by the competent authority of a State, the competent authority of the other State shall endeavor to provide information under this Article in the form of depositions of witnesses and authenticated copies of unedited original documents (including books, papers, statements, records, accounts, and writings), to the same extent such depositions and documents can be obtained under the laws and administrative practices of that other State with respect to its own taxes.

3. The States may release to the arbitration board, established under the provisions of paragraph 5 of Article 29 (Mutual Agreement Procedure), such information as is necessary for carrying out the arbitration procedure. Such release of information shall be subject to the provisions of Article 32 (Limitation of Articles 30 and 31) and to paragraph 2 of this Article. The members of the arbitration board shall be subject to the limitations on disclosure described in paragraph 1 of this Article with respect to any information so released.


## ARTICLE 31
### Assistance And Support in Collection

1. The States undertake to lend assistance and support to each other in the collection of the taxes which are the subject of the present Convention, together with interest, costs, and additions to the taxes and fines not being of a penal character.

2. In the case of applications for enforcement of taxes, revenue claims of each of the States which have been finally determined may be accepted for enforcement by the other State and collected in that State in accordance with the laws applicable to the enforcement and collection of its own taxes. The State to which application is made shall not be required to enforce executory measures for which there is no provision in the law of the State making the application.

3. Any application shall be accompanied by documents establishing that under the laws of the State making the application the taxes have been finally determined.

4. The assistance provided for in this Article shall not be accorded with respect to the citizen, corporations, or other entities of the State to which application is made, except in cases where the exemption or reduced rate of tax granted under the Convention to such citizens, corporations or other entities has, according to mutual agreement between the competent authorities of the States, been enjoyed by persons not entitled to such benefits.


## ARTICLE 32
### Limitation of Articles 30 And 31

In no case shall the provisions of Articles 30 (Exchange of Information and Administrative Assistance) and 31 (Assistance and Support in Collection) be construed so as to impose on one of the States the obligation:

a) to carry out administrative measures at variance with the laws and administrative practice of that or of the other State;

b) to supply information which is not obtainable under the laws or in the normal course of the administration of that or of the other State;

c) to supply information which would disclose any trade, business, industrial, commercial, or professional secret or trade process, or information, the disclosure of which would be contrary to public policy.


ARTICLE 33

Diplomatic Agents And Consular Officers

1. Nothing in this Convention shall affect the fiscal privileges of diplomatic agents or consular officers under the general rules of international law or under the provisions of special agreements.

2. For the purposes of the Convention an individual, who is a member of a diplomatic or consular mission of one of the States in the other State or in a third state and who is a national of the sending State, shall be deemed to be a resident of the sending State, but only if he is subjected therein to the same obligations in respect of taxes on income as are residents of that State.

3. The Convention shall not apply to international organizations, to organs or officials thereof and to individuals who are members of a diplomatic or consular mission of a third State, being present in one of the States and who are not subjected in either State to the same obligations in respect of taxes on income as are residents of that State.


ARTICLE 34

Regulations

1. The competent authorities of the States may by mutual agreement settle the mode of application of Articles 10 (Dividends), 11 (Branch Tax), 12 (Interest), 13 (Royalties) and 26 (Limitation on Benefits).

2. With respect to the provisions of this Convention relating to exchange of information and mutual assistance in the collection of taxes, the competent authorities may, by common agreement, prescribe rules concerning matters of procedure, forms of application and replies thereto, conversion of currency, disposition of amounts collected, minimum amounts subject to collection, and related matters.

3. The competent authorities of each of the States, in accordance with the practices of that State, may prescribe regulations necessary to carry out the other provisions of this Convention.

4. Where tax has been levied at source in excess of the amount of tax chargeable under the provisions of Articles 10 (Dividends), 12 (Interest) or 13 (Royalties), applications for the refund of the excess amount of tax must be lodged with the competent authority of the State having levied the tax, within a period of three years after the expiration of the calendar year in which the tax has been levied.

ARTICLE 35
Exempt Pension Trusts

1. Subject to the provisions of paragraph 2, income referred to in Articles 10 (Dividends) and 12 (Interest) derived by a trust, company or other organization constituted and operated exclusively to administer or provide benefits under one or more funds or plans established to provide pension, retirement or other employee benefits shall be exempt from tax in one of the States if it is a resident of the other State according to the laws of that other State and its income is generally exempt from tax in that other State.

2. The provisions of paragraph 1 shall not apply with respect to the income of a trust, company or other organization from carrying on a trade or business or from a related person other than a person referred to in paragraph 1.

ARTICLE 36
Exempt Organizations

1. A trust, company or other organization that is a resident of one of the States according to the laws of that State and that is operated exclusively for religious, charitable, scientific, educational, or public purposes shall be exempt from tax by the other State in respect of items of income, if and to the extent that

a) such trust, company or other organization is exempt from tax in the first-mentioned State, and
b) such trust company or other organization would be exempt from tax in the other State in respect of such items of income if it were organized, and carried on all its activities, in that other State.

2. The provisions of paragraph 1 shall not apply with respect to the income of a trust, company or other organization from carrying on a trade or business or from a related person other than a person referred to in paragraph 1.

3. The competent authorities of the States shall in mutual agreement develop procedures for implementing this Article.

CHAPTER VI
FINAL PROVISIONS

ARTICLE 37
Entry into Force

1. This Convention shall enter into force on the thirtieth day after the later of the dates on which the respective Governments have notified each other in writing that the formalities constitutionally required in their respective States have been complied with, and its revisions shall have effect for taxable years and periods beginning, or in the case of taxes payable at source, payments made, on or after the first day of January in the year following the date of entry into force.

2. Notwithstanding paragraph 1, where any greater relief from tax would have been afforded to a person entitled to the benefits of the Convention signed at Washington on April 29, 1948, between the Kingdom of the Netherlands and the United States of America with respect to taxes on income and certain other taxes, modified as set forth in the Protocol of Exchange of Instruments of Ratification signed at Washington on December 1, 1948, and subsequently modified and supplemented by the Supplementary Convention signed at Washington on December 30, 1965 ("prior Convention"), under that Convention than under this Convention, the prior Convention shall, at the election of such person, continue to have effect in its entirety for a twelve-month period from the date on which the provisions of this Convention would otherwise have effect under paragraph 1.

3. Subject to the provisions of paragraph 4, the prior Convention shall cease to have effect when the provisions of this Convention take effect in accordance with paragraphs 1 and 2.

4. This Convention shall not affect any Agreement in force extending the Convention signed at Washington on April 29, 1948, in accordance with Article XXVII thereof.

ARTICLE 38
Termination

This Convention shall remain in force until terminated by one of the States. Either State may terminate the Convention, through diplomatic channels, by giving notice of termination at least six months before the end of any calendar year after the expiration of a period of five years from the date of its entry into force. In such event the Convention shall cease to have effect for taxable years and periods beginning, or in the case of taxes payable at source, payments made, after the end of the calendar year in which the notice of termination has been given.

IN WITNESS whereof the undersigned, duly authorized thereto, have signed this Convention.

DONE at *Washington* this *eighteenth* day of *December, 1992*, in duplicate, in the English and Netherlands languages, the two texts being equally authentic.

FOR THE GOVERNMENT OF THE UNITED STATES OF AMERICA:
    (s) Eugene J. McAllister

FOR THE GOVERNMENT OF THE KINGDOM OF THE NETHERLANDS:
   (s) J. H. Meesman


PROTOCOL

PROTOCOL AMENDING THE TAX CONVENTION WITH
THE KINGDOM OF THE NETHERLANDS

MESSAGE

FROM

THE PRESIDENT OF UNITED STATES

TRANSMITTING

THE PROTOCOL AMENDING THE CONVENTION BETWEEN THE UNITED STATES OF
AMERICA AND THE KINGDOM OF THE NETHERLANDS FOR THE AVOIDANCE OF
DOUBLE TAXATION AND THE PREVENTION OF FISCAL EVASION WITH RESPECT TO
TAXES ON INCOME, SIGNED AT WASHINGTON ON OCTOBER 13, 1993


LETTER OF SUBMITTAL (PROTOCOL)

DEPARTMENT OF STATE,
*Washington, October 21, 1993.*

The PRESIDENT,
*The White House.*

   THE PRESIDENT: I have the honor to submit to you, with a view to its transmission to the Senate
for advice and consent to ratification, the Protocol Amending the Convention between the United States
of America and the Kingdom of the Netherlands for the Avoidance of Double Taxation and the
Prevention of Fiscal Evasion with respect to Taxes on Income, signed at Washington on October 13,
1993.

   The Protocol would prevent a particular form of tax treaty abuse known as "the triangular case,"
otherwise permitted by the Convention. Without the Protocol, a Dutch investor with a permanent
establishment in an offshore, low-tax jurisdiction could take advantage of the Convention's protections
against double taxation and evade virtually all U.S. and Dutch income taxes.

The United States and the Netherlands signed the Convention at Washington on December 18, 1992. The Convention was transmitted to the Senate for advice and consent to ratification on May 12, 1993. The Treasury Department and the State Department support transmittal of the Protocol to the Senate as soon as possible, so that the Senate can give its advice and consent to ratification of the Convention and the Protocol as a package.

A related exchange of notes is included for the information of the Senate.

The Department of the Treasury is preparing a technical memorandum explaining in detail the provisions of the Protocol. The Department of the Treasury will submit the memorandum separately to the Senate Committee on Foreign Relations.

The Department of the Treasury and the Department of State cooperated in the negotiation of the Protocol. The Protocol has the full approval of both Departments.

Respectfully submitted,

WARREN CHRISTOPHER

Enclosure: As stated.

LETTER OF TRANSMITTAL (PROTOCOL)

THE WHITE HOUSE, *October 22, 1993.*

*To the Senate of the United States:*

I transmit herewith for Senate advice and consent to ratification the Protocol Amending the Convention Between the United States of America and the Kingdom of the Netherlands for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, signed at Washington on October 13, 1993. A related exchange of notes is enclosed for the information of the Senate. Also transmitted for the information of the Senate is the report of the Department of State with respect to the Protocol.

The Protocol will prohibit a treaty abuse otherwise permitted by the Convention, which was previously transmitted to the Senate. The Protocol will prevent a Dutch investor in the United States from evading virtually all income taxes in both the United States and the Netherlands through a permanent establishment in a third, low-income jurisdiction. The Protocol and the Convention are intended to reduce the distortions of both double taxation and tax evasion. The two agreements will modernize tax relations between the United States and the Netherlands and will facilitate greater bilateral private sector investment.

I recommend that the Senate give early and favorable consideration to the Protocol, together with the Convention, and give its advice and consent to ratification.

WILLIAM J. CLINTON.

NOTES OF EXCHANGE (PROTOCOL)

Washington D.C., *October 13, 1993*

His Excellency
Adriaan Jacobovits de Szeged
*Ambassador of the Kingdom of the Netherlands*

Excellency,

I have the honour to refer to the Convention signed on 19 December 1992 between the United States of America and the Kingdom of the Netherlands for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with respect to Taxes on Income (hereinafter referred to as: the Convention) and to the Protocol signed today amending the Convention (hereinafter referred to as: the Protocol) and to propose on behalf of the Government of the United States of America the following:

In the course of the negotiations leading to the conclusion of the Protocol signed today, the negotiators developed and agreed upon a common understanding and interpretation of the following provisions. These understandings and interpretations are intended to give guidance both to the taxpayers and the tax authorities of our two countries in interpreting various provisions contained in the Convention and the Protocol. It is my Government's view that as we both gain experience in administering the Convention and the Protocol competent authorities may in the context of a mutual agreement procedure under Article 29 of the Convention develop and publish amendments to the understandings and interpretations laid down in the following.

I.    In reference to Article 10 (Dividends) and subparagraph 8 (b) of Article 26 (Limitation on Benefits):
For the purpose of Article 10 and subparagraph 8 (b) of Article 26, it is understood that depository receipts or trust certificates of shares will be considered to possess the rights attached to the shares which they replace, including the voting rights thereof.

II.   In reference to subparagraphs 2 (a) and (c) of Article 26 (Limitation on Benefits):
If a person resident in one of the States is engaged in the active conduct of a trade or business in that State and derives income from the other State without being engaged in the active conduct of a trade or business in the other State, and such person (and any associated person as meant in Article 26, paragraph 2 (e) (iii) through (vii)) does not own shares (other than shares that

generate income as described in subparagraph 2 (a) (ii) of Article 26) in the person from which the income is derived, then such parson shall qualify under paragraph 2 of Article 26 if:

      a. the income derived in the other State is derived in connection with the trade or business in the first-mentioned State, or

      b. the income derived in the other State is incidental to the trade or business in the first-mentioned State.

III.    In reference to paragraph 8 of Article 12 (Interest) and subparagraph 2 (a) of Article 26 (Limitation on Benefits):

      For the purpose of subparagraph 2 (a) of Article 26 and paragraph 8 of Article 12 it is understood that interest derived from group financing or portfolio investments shall be considered to be part of the business of making or managing investments.

IV.    In reference to subparagraphs 2 (e) (vi) and 2 (e) (vii) of Article 26 (Limitation on Benefits) and Article XVI of the Memorandum of Understanding:

      For the purpose of subparagraphs 2 (e) (vi) and 2 (e) (vii) of Article 26 the following states will be added to the states regarded as "identified states" having effective provisions for the exchange of information with the Netherlands: Portugal, Japan.

V.    In reference to subparagraph 3 (a) of Article 26 (Limitation on Benefits):

      For the purpose of subparagraph 3 (a) of Article 26 it is understood that the activities referred to in that subparagraph must be performed in the State of residence of the person performing such activities.

VI.    In reference to subparagraph 8 (d) (iv) of Article 26 (Limitation on Benefits) and Article XXII of the Memorandum of Understanding:

      For purposes of subparagraph 8 (d) (iv) of Article 26 the principal stock exchanges of Frankfurt, London, Paris, Brussels, Hamburg, Madrid, Milan, Sydney, Tokyo and Toronto will be considered to be "recognized stock exchanges".

VII.    In reference to subparagraph 8 (i) of Article 26 (Limitation on Benefits):

      It is understood that, in determining whether a person will be considered a "resident of a member state of the European Communities" for purposes of subparagraph 8 (i) of Article 26, such person will be considered to be otherwise entitled to the benefits of the Convention between that person's state of residence and the United States if that person is entitled to the benefits of such Convention with respect to the items of income derived from the United States under all provisions of such Convention with the exception of any provisions in such Convention relating to the limitation on benefits, except that such person must also satisfy any relevant provision relating to the limitation on benefits of such Convention, if Article 26 does not contain a provision that is of the same or similar nature as the provision in such Convention.

VIII.    In reference to paragraph 2 of Article 35 (Exempt Pension Trusts):

For the purpose of paragraph 2 of Article 35, a person is considered to be a related person if more than 80% of the vote or value of any class of the shares is owned by the person deriving the income.

If the foregoing understandings and interpretation of the various provisions meet with the approval of the Government of the Kingdom of the Netherlands this Note and your Note in reply thereto will constitute a common and binding understanding by our Governments of the Convention and the Protocol.

Accept, your Excellency, the expression of my highest consideration.

For the Secretary of State:
(s) Daniel K. Tarullo

Washington D.C., *October 13, 1993*

The Honorable Warren M. Christopher
*Secretary of State of*
*the United States of America*

Dear Mr. Secretary,

I have the honour to confirm the receipt of your Note of today's date which reads as follows:

"

Washington D.C., October 13, 1993

Excellency,

I have the honour to refer to the Convention signed on 18 December 1992 between the United States of America and the Kingdom of the Netherlands for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with respect to Taxes on Income (hereinafter referred to as: the Convention) and to the Protocol signed today amending the Convention (hereinafter referred to as: the Protocol) and to propose on behalf of the Government of the United States of America the following:

In the course of the negotiation leading to the conclusion of the Protocol signed today, the negotiators developed and agreed upon a common understanding and interpretation of the following provisions. These understandings and interpretations are intended to give guidance both to the taxpayers and the tax authorities of our two countries in interpreting various provisions contained in the Convention and the Protocol. It is my Government's view that as we both gain experience in administering the Convention and the Protocol competent authorities

may in the context of a mutual agreement procedure under Article 29 of the Convention develop and publish amendments to the understandings and interpretations laid down in the following.

I.     In reference to Article 10 (Dividends) and subparagraph 8 (b) of Article 26 (Limitation on Benefits):

For the purpose of Article 10 and subparagraph 8 (b) of Article 26, it is understood that depository receipts or trust certificates of shares will be considered to possess the rights attached to the shares which they replace, including the voting rights thereof.

II.    In reference to subparagraphs 2 (a) and (c) of Article 26 (Limitation on Benefits):

If a person resident in one of the States is engaged in the active conduct of a trade or business in that State and derives income from the other State without being engaged in the active conduct of a trade or business in the other State, and such person (and any associated person as meant in Article 26, paragraph 2 (e) (iii) through (vii)) does not own shares (other than shares that generate income as described in subparagraph 2 (a) (ii) of Article 26) in the person from which the income is derived, then such person shall qualify under paragraph 2 of Article 26 if:

      a.    the income derived in the other State is derived in connection with the trade or business in the first-mentioned State, or

      b.    the income derived in the other State is incidental to the trade or business in the first-mentioned State.

III.   In reference to paragraph 8 of Article 12 (Interest) and subparagraph 2 (a) of Article 26 (Limitation on Benefits):

For the purpose of subparagraph 2 (a) of Article 26 and paragraph 8 of Article 12 it is understood that interest derived from group financing or portfolio investments shall be considered to be part of the business of making or managing investments.

IV.    In reference to subparagraphs 2 (e) (vi) and 2 (e) (vii) of Article 26 (Limitation on Benefits) and Article XVI of the Memorandum of Understanding:

For the purpose of subparagraphs 2 (e) (vi) and 2 (e) (vii) of Article 26 the following states will be added to the states regarded as "identified states" having effective provisions for the exchange of information with the Netherlands: Portugal, Japan.

V.     In reference to subparagraph 3 (a) of Article 26 (Limitation on Benefits):

For the purpose of subparagraph 3 (a) of Article 26 it is understood that the activities referred to in that subparagraph must be performed in the State of residence of the person performing such activities.

VI.    In reference to subparagraph 8 (d) (iv) of Article 26 (Limitation on Benefits) and Article XXII of the Memorandum of understanding:

For purposes of subparagraph 8 (d) (iv) of Article 26 the principal stock exchanges of Frankfurt, London, Paris, Brussels, Hamburg, Madrid, Milan, Sydney, Tokyo and Toronto will be considered to be "recognized stock exchanges".

VII.    In reference to subparagraph 8 (i) of Article 26 (Limitation on Benefits):

It is understood that, in determining whether a person will be considered a "resident of a member state of the European Communities" for purposes of subparagraph 8 (i) of Article 26, such person will be considered to be otherwise entitled to the benefits of the Convention between that person's state of residence and the United States if that person is entitled to the benefits of such Convention with respect to the items of income derived from the United States under all provision of such Convention with the exception of any provisions in such Convention relating to the limitation on benefits, except that such person must also satisfy any relevant provision relating to the limitation on benefits of such Convention, if Article 26 does not contain a provision that is of the same or similar nature as the provision in such Convention.

VIII.    In reference to paragraph 2 of Article 35 (Exempt Pension Trusts):

For the purpose of paragraph 2 of Article 35, a person is considered to be a related person if more than 80% of the vote or value of any class of the shares is owned by the person deriving the income.

If the foregoing understandings and interpretation of the various provisions meet with the approval of the Government of the Kingdom of the Netherlands, this Note and your Note in reply thereto will constitute a common and binding understanding by our Governments of the Convention and the Protocol.

Accept, Your Excellency, the expression of my highest consideration.

For the Secretary of State:
(s) Daniel K. Tarullo

His Excellency
Adriaan Jacobovits de Szeged
Ambassador of the Kingdom of the Netherlands                                    "

I have the honour to inform you, that my Government agrees to the above.

Accept, Your Excellency, the expression of my highest consideration.

(s) A. P. R. Jacobovits de Szeged
Ambassador of the
Kingdom of the Netherlands

PROTOCOL AMENDING THE CONVENTION BETWEEN THE UNITED STATES OF AMERICA AND THE KINGDOM OF THE NETHERLANDS FOR THE AVOIDANCE OF DOUBLE TAXATION AND THE PREVENTION OF FISCAL EVASION WITH RESPECT TO TAXES ON INCOME

The Government of the United States of America and the Government of the Kingdom of the Netherlands, desiring to amend the Convention between the United States of America and the Kingdom of the Netherlands for the avoidance of double taxation and the prevention of fiscal evasion with respect to taxes on income, signed at Washington on December 18, 1992 (hereinafter referred to as "the Convention"),

Have agreed as follows:

## ARTICLE 1

Article 12 (Interest) of the Convention shall be amended by adding the following paragraph:

"8. Notwithstanding the provisions of paragraph 1, interest arising in one of the States and beneficially owned by an enterprise of the other State and attributable to a permanent establishment of that enterprise in a third jurisdiction, may also be taxed in the first-mentioned State if the profits of that permanent establishment are subject to an aggregate rate of tax, in the other State and the third jurisdiction in which the permanent establishment is situated, that is, in the case of interest arising in the first-mentioned State and beneficially owned by an enterprise of the other State before January 1, 1998, less than 50 percent of the general rate of company tax applicable in the other State, and in the case of interest arising in the first-mentioned State and beneficially owned by an enterprise of the other State on or after January 1, 1998, less than 60 percent of the general rate of company tax applicable in the other State, but the tax so charged shall not exceed 15 percent of the gross amount of such interest.

However, the provisions of this paragraph shall not apply to interest derived in connection with or incidental to the active conduct of a trade or business carried on by the permanent establishment in the third jurisdiction (other than the business of making or managing investments, unless these activities are banking or insurance activities carried on by a bank or insurance company)."

## ARTICLE 2

Article 13  (Royalties) of the Convention shall be amended by adding the following paragraph:

"6. Notwithstanding the provisions of paragraph 1, royalties arising in one of the States and beneficially owned by an enterprise of the other State and attributable to a permanent establishment of that enterprise in a third jurisdiction, may also be taxed in the first-mentioned State if the profits of that permanent establishment are subject to an aggregate rate of tax, in the other State and the third jurisdiction in which the permanent establishment is situated, that is, in the case of royalties arising in the first-mentioned State and beneficially owned by an enterprise of the other State before January 1, 1998, less than 50 percent of the general rate of company tax applicable in the other State, and in the case of. royalties arising in the first-mentioned State and beneficially owned by an enterprise of the other State

on or after January 1, 1998, less than 60 percent of the general rate of company tax applicable in the other State, but the tax so charged shall not exceed 15 percent of the gross amount of such royalties.

However, the provisions of this paragraph shall not apply if the royalties are received as a compensation for the use of, or the right to use, intangible property produced or developed by the permanent establishment itself."

ARTICLE 3

Article 24 (Basis of Taxation) of the Convention shall be amended by deleting paragraph 4.

ARTICLE 4

1. Article 25 (Methods of Elimination of Double Taxation) of the Convention shall be amended by omitting paragraph 2 and substituting the following paragraph:

"2. Where a resident or national of the Netherlands derives items of income which according to Article 6 (Income from Real Property), Article 7 (Business Profits) insofar as such income is subject to United States tax, paragraph 5 of Article 10 (Dividends), paragraph 3 of Article 12 (Interest), paragraph 3 of Article 13 (Royalties), paragraphs 1 and 3 of Article 14 (Capital Gains), Article 15 (Independent Personal Services) insofar as such income is subject to United States tax, paragraph 1 of Article 16 (Dependent Personal Services), paragraph 4 of Article 19 (Pensions, Annuities, Alimony), Article 20 (Government Service), and paragraph 2 of Article 23 (Other Income) of this Convention are taxable in the United States and are included in the basis of taxation, the Netherlands shall exempt such items by allowing a reduction of its tax. This reduction shall be computed in conformity with the provisions of Netherlands law for the avoidance of double taxation. For that purpose the said items of income shall be deemed to be included in the total amount of the items of income which are exempt from Netherlands tax under those provisions."

2. Article 25 (Methods of Elimination of Double Taxation) of the Convention shall be further amended by adding the following paragraph:

"8. Finally, the Netherlands shall allow a deduction from the Netherlands tax for the items of income which according to paragraph 8 of Article 12 (Interest) and paragraph 6 of Article 13 (Royalties) may be taxed in the United States to the extent that these items are included in the basis of taxation and are not exempt from tax in the Netherlands as profits of a permanent establishment under the Netherlands national taxing regime or under any bilateral or multilateral provision for the avoidance of double taxation agreed to by the Netherlands.

The amount of this deduction shall be equal to:

a) in the case of interest which may be taxed in the United States according to paragraph 8 of Article 12 (Interest), 15 percent of such interest;

b) in the case of royalties which may be taxed in the United States according to paragraph 6 of Article 13 (Royalties), 15 percent of such royalties,

but shall in no case exceed the amount of the reduction which would be allowed if the items of income so included were the sole items of income which are exempt from Netherlands tax under the provisions of Netherlands law for the avoidance of double taxation."

ARTICLE 5

Subparagraph k of paragraph 1 of Article 26 of the Convention shall be amended by replacing the words "must meet the residence requirements that are described in such clause or subparagraph." by the following: must be a resident of one of the States or a resident of a member state of the European Communities.

ARTICLE 6

Paragraph 2 of Article 35 of the Convention shall be amended by adding the following:

"The provisions of paragraph 1 shall also not apply with respect to dividends paid by a person resident in the United States that is a Real Estate Investment Trust from gains realizes on the disposition of real property situates in the Unites States."

ARTICLE 7

1. This Protocol shall enter into force on the later of the dates on which the respective Governments have notified each other in writing that the formalities constitutionally required in their respective States have been complied with, and its provisions shall have effect for taxable years and periods beginning on or after the first day of January in the year following the date of entry into force of the Convention.

2. Notwithstanding the provisions of paragraph 1, the provisions of paragraph 8 of Article 12 (Interest), paragraph 6 of Article 13 (Royalties) and paragraph 8 of Article 25 (Methods of Elimination of Double Taxation) of the Convention as added by this Protocol shall have effect for payments made on or after the thirtieth day after the date on which this Protocol has entered into force.

IN WITNESS WHEREOF the undersigned, duly authorized thereto, have signed this Protocol.

DONE in duplicate at Washington this thirteenth day of October, 1993, in the English and Netherlands languages, the two texts being equally authentic.

FOR THE GOVERNMENT OF
THE UNITED STATES OF
AMERICA:

    (s) Daniel K. Tarullo

FOR THE GOVERNMENT OF
THE KINGDOM OF THE
NETHERLANDS:

    (s) A.P. R. Jacobovits de Szeged